## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;**

Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office; AND**

**THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency.**

Defendants.

---

**COMPLAINT**

---

## INTRODUCTION

1.      Plaintiffs Colorado Apartment Association and Apartment Association of Metro Denver ("CAA" and "AAMD"), the Colorado Hotel and Lodging Association, Inc. ("CHLA"), and the NAIOP Colorado Chapter ("NAIOP Colorado") seek declaratory and injunctive relief under federal law against enforcement of:

a.      The Colorado Air Quality Control Commission's ("Commission") final regulation entitled Building Benchmarking and Performance Standards, 5 CCR 1001-32 ("Regulation 28") enacting regulations directed by the State of Colorado's House Bill 21-1286; and

b.      The City and County of Denver, Colorado's Denver Ordinance No. 20211310 ("Energize Denver Ordinance"), and the implementing rules for Energize Denver enacted by the Denver Office of Climate Action, Sustainability, and Resiliency, ("Denver OCASR") entitled "Rules & Regulations Governing Energize Denver Building Energy Performance Requirements" ("Energize Denver Regulations") (the Ordinance and Regulations may be collectively referred to as "Energize Denver").

2.      Both Regulation 28 and Energize Denver purport to establish and impose energy conservation standards on buildings and the appliances and equipment within those buildings. However, the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201-6422, preempts these standards on appliances and equipment, instead placing primary jurisdiction under the U.S. Department of Energy ("DOE").  Plaintiffs bring this action seeking to have Regulation 28 and Energize Denver declared unlawful and void due to EPCA's express preemption provision.

3.      Regulation 28 sets "building performance standards" for "covered buildings"

(commercial and multifamily buildings over 50,000 square feet) ("Covered Buildings") that require Covered Buildings to reduce the energy consumption or greenhouse gas emissions associated with consumer and commercial equipment and appliances in the buildings to meet the building performance standards with compliance deadlines beginning in 2026. Regulation 28 directly regulates "Covered Products"[1] regulated by the DOE under EPCA.

4.      Energize Denver sets "building performance standards" for "Covered Buildings" (commercial, multifamily, and certain industrial buildings over 25,000 square feet) which require Covered Buildings to reduce the energy consumption of Covered Products to meet the building performance standards with compliance deadlines beginning in 2024. Energize Denver directly regulates equipment in Covered Buildings regulated by the DOE under the EPCA.

5.      The building performance standards in both Regulation 28 and Energize Denver effectively require and force Covered Building owners to replace existing Covered Products (or in the context of new construction to choose Covered Products) that exceed current federal energy efficiency standards under EPCA.

6.      Regulation 28 and Energize Denver thus regulate the energy efficiency of Covered Products that are subject to regulation under, and thus are preempted by, the EPCA, 42 U.S.C. §§ 6201-6422, as amended by the National Appliance Energy Conservation Act of 1987 ("NAECA"), Public Law No. 100-12, and the Energy Policy Act of 1992 ("EPACT"), Public Law No. 102-486.[2]

---

[1] Under EPCA, the term "covered product" is used to described *consumer* equipment preempted under 42 U.S.C. § 6291 *et seq*. The term "covered equipment" is used to describe *commercial* equipment preempted under 42 U.S.C. § 6311 *et seq*. For simplicity, the term "Covered Product" is used to reference all covered products and covered equipment regulated by EPCA.
[2] Hereinafter, EPCA and all its subsequent amendments under NAECA and EPACT will be

7.      EPCA was born out of the oil crises of the 1970s and embodied Congress' concerns with energy independence, domestic supply, and national security.  EPCA requires a consistent national and practical approach to energy regulation, maintaining neutrality on energy sources and recognizing the need for a diverse energy supply.  Congress intended EPCA to preempt patchwork state or local laws that are unworkable, that undercut a coordinated national energy policy, that overlook the public's need for reliable and resilient energy, and that deny consumer choice.

8.      EPCA sets appliance efficiency standards which are design requirements or efficiency requirements for both consumer and commercial Covered Products.

9.      The purposes of the federal energy conservation program for Covered Products are to "provide Federal energy conservation standards applicable to covered products" and to "authorize the Secretary [of Energy] to prescribe amended or new energy conservation standards for each type (or class) of covered product" (42 U.S.C. § 6295(a)) in order to "conserve the energy resources of the Nation" (42 U.S.C. § 6312(a)).

10.      EPCA contains express preemption provisions that bar, with limited exceptions, any "[s]tate regulation, or revision thereof, concerning the energy efficiency, energy use, or water use of the covered products. . . ." 42 U.S.C. § 6297(c).

11.      EPCA reflects Congress's decision that the nation's energy policy cannot be dictated by state and local governments; such patchwork approach would be the antithesis of a national energy policy.

12.      Numerous provisions of Regulation 28 and Energize Denver challenged in this

---

collectively referred to as EPCA.

action conflict with and are preempted by EPCA by:

    a.    Requiring existing Covered Building owners to replace existing EPCA regulated Covered Products (both consumer and commercial) with products that exceed the federal standards that DOE established under EPCA, even if the Covered Products currently used are fully functional and meet current EPCA standards;

    b.    Forcing new buildings in Colorado to use EPCA regulated Covered Products that exceed federal DOE standards for both consumer and commercial Covered Products; and

    c.    Creating energy conservation standards that are not energy source neutral, forcing the replacement of Covered Products that use natural gas or other fossil fuels with electric Covered Products.

    13.    As a result, these challenged regulations are preempted by EPCA and violate the Supremacy Clause of Article VI of the United States Constitution.

    14.    Defendants' efforts to establish far-reaching energy requirements and building standards conflict with federal law, are contrary to the public interest, and impose irreparable harm on Plaintiffs' members.  Plaintiffs, on behalf of their members, bring this action seeking a declaration that Regulation 28, the Energize Denver Ordinance, and the Energize Denver Regulations are void and unenforceable and seeking to enjoin their enforcement.

## JURISDICTION

    15.    This Court has authority to grant the relief sought under 28 U.S.C. §§ 1331, 1343, and 2201, 42 U.S.C. §§ 1983 and 1988, and 42 U.S.C. § 6306(c).

**VENUE**

16.     Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants all have offices in this District, all Defendants reside in or are entities formed in this State of Colorado, and at least one of the individual Defendants performs their official duties in this District and so resides here for the purpose of § 1391.   Venue is also proper because the acts and events giving rise to the claims occurred at least in part in this District, and the regulations at issue will be enforced in this District.

**PARTIES**

17.     Plaintiff CAA is a Colorado nonprofit corporation authorized to conduct business in the State of Colorado (ID Number 19871275058).

      a.     Plaintiff CAA is a leading nonprofit, trade association representing the multifamily housing industry, including owners, developers, management companies, and vendors.  Plaintiff CAA is comprised of four local affiliates from across the state.  Plaintiff CAA represents over 3,600 members who own and manage over 350,000 apartments, which total more than $98 billion in assets.

      b.     Plaintiff CAA's members own Covered Buildings that are, and plan to construct new buildings that will be, subject to both Regulation 28 and Energize Denver, and will be harmed by Regulation 28 and Energize Denver.  *See* Attachment 1, Decl. of R. Rogers; Attachment 2, Decl. of J. Lorenzen; Attachment 3, Decl. of C. Lessard; Attachment 4, Decl. of J. Mason; Attachment 5, Decl. of K. Egelston.

18.     Plaintiff AAMD is a Colorado nonprofit corporation authorized to conduct business in the State of Colorado (ID Number 19871274473).

a.      Plaintiff AAMD is an association of local apartment building owners that promotes the multi-family rental housing industry in the Denver metropolitan area, including seeking improvements in the techniques of ownership and management.

b.      Plaintiff AAMD's members own Covered Buildings that are, and plan to construct new buildings that will be, subject to both Regulation 28 and Energize Denver, and will be harmed by Regulation 28 and Energize Denver.  *See* Attachments 1-5.

19.     Plaintiff CHLA is a Colorado nonprofit corporation authorized to conduct business in the State of Colorado (ID Number 19871239063).

a.      Plaintiff CHLA is a professional trade association that promotes the hotel and lodging industry in Colorado and advocates on behalf its hotel and lodging business members.

b.      Plaintiff CHLA's members own Covered Buildings that are, and plan to construct new buildings that will be, subject to both Regulation 28 and Energize Denver, and will be harmed by Regulation 28 and Energize Denver.  *See* Attachment 6, Decl. of A. Dunn; Attachment 7, Decl. of J. Damioli; Attachment 8, Decl. of W. Isenberg; Attachment 9, Decl. of N. Dimond.

20.     Plaintiff NAIOP Colorado is a Colorado nonprofit corporation authorized to conduct business in the State of Colorado (ID Number 19991185328).

a.      Plaintiff NAIOP Colorado is a commercial real estate development association that promotes and advocates on behalf of its commercial real estate industry members in Colorado.

b.      Plaintiff NAIOP Colorado's members own Covered Buildings that are, and

plan to construct new buildings that will be, subject to both Regulation 28 and Energize Denver, and will be harmed by Regulation 28 and Energize Denver. *See* Attachment 10, Decl. of D. Supple; Attachment 11, Decl. of T. Carlson.

21.     The building benchmarking and performance standards of both Regulation 28 and Energize Denver have already required Plaintiffs' members to submit benchmarking reports to the State of Colorado and the City and County of Denver for existing buildings, to begin immediately to conduct energy audits, create engineering plans, and begin the planning process for making material modifications to their Covered Buildings in order to meet the fast-approaching compliance deadlines of both regulations, all at significant expense to their members.

a.      These material modifications will irreparably change the physical systems of most of Plaintiffs' members' buildings subject to Regulation 28 and Energize Denver by forcing the removal of Covered Products utilizing fossil fuels such as natural gas and replacing them with electrified Covered Products.

b.      For example, Plaintiffs' members already completed preliminary energy audits that determined that their Covered Buildings cannot meet either regulation's building performance standards without replacing the fossil-fueled, EPCA regulated Covered Products in their existing buildings with electric Covered Products that exceed EPCA standards, and determined that replacement of the Covered Products will require the removal and replacement of the buildings' energy systems.

c.      The building performance standard requirements of these regulations will also require Plaintiffs' members to make significant capital expenditures, altering their existing financing contracts and impairing contractual obligations for the maintenance and

8

upkeep of the EPCA Covered Products currently used that now must be replaced prior to the end of their useful life.

d.      The building performance standard requirements of both regulations will decrease Plaintiffs' members' competitiveness because other similarly situated buildings under either the 50,000 square feet (Regulation 28) or 25,000 square feet (Energize Denver) thresholds will not bear these expenses, while Covered Buildings making these material modifications costs will all be reflected in increased operating costs (and will translate to either increased rental rates, lodging rates, etc.) and may result in reductions in net operating income and deteriorated property values when compared to similarly situated buildings.

e.      Plaintiffs' members' plans to build new buildings that are subject to both Regulation 28 and Energize Denver are negatively impacted because the members who have existing land, leases or contracts, financing agreements, substantially complete plans, permitting timeline restraints, and already purchased Covered Products, will need to change those plans to comply with the Regulations, causing harm to Plaintiffs.

f.      Plaintiffs' members accordingly are experiencing or will imminently experience harm in the form of economic injuries, altered business practices, and compliance burdens because of the regulations challenged here.

22.    Therefore, all Plaintiffs have one or more members that own or operate buildings (or plan to build new buildings) subject to both Regulation 28 and Energize Denver; do business in Colorado, and the City and County of Denver; and are suffering or will imminently suffer harm to their revenues and business operations as a result of Regulation 28 and Energize Denver.

23.     Defendant Jill Hunsaker Ryan is the Executive Director of the Colorado Department of Public Health and Environment ("CDPHE").  The Colorado Department of Public Health and Environment ("CDPHE") is the Colorado regulatory Department with jurisdiction and authority to implement the Colorado Air Pollution Prevention and Control Act ("Colorado APPCA"), C.R.S. § 25-7-101, *et seq*.   This includes implementation of Regulation 28 through oversight of the Colorado Air Pollution Control Division.

24.     Defendant Michael Ogletree is the Director of the Colorado Air Pollution Control Division ("Division"), which is a Division of the CDPHE that is tasked with air quality control and compliance under Colorado APPCA.  *See* C.R.S. § 25-7-103(2), (9); C.R.S. § 25-7-115.  The Division is specifically tasked with enforcement of Regulation 28 pursuant to C.R.S. § 25-7-122, as well as approving calculation methodologies under Regulation 28.

25.     Defendant Will Toor is the Executive Director of the Colorado Energy Office ("CEO"), which was created pursuant to C.R.S. § 24-38.5-101 and within the office of the Governor of Colorado.  The CEO is charged with administering Regulation 28 pursuant to C.R.S. §§ 24-38.5-112(1) and 24-38.5-112(1)(a).  Under Regulation 28, the CEO is also responsible for the implementation and continuation of Regulation 28.

26.     Defendant Jill Hunsaker Ryan, through CDPHE and the Division, and Defendant Will Toor, through the CEO, are charged with the enforcement and administration of Regulation 28 as adopted by the Commission.

27.     Defendant the City and County of Denver is a home rule municipality incorporated in the State of Colorado. COLO. CONST., Art. XX.

28.     Defendant Denver City Council is established pursuant to Article III of the

Charter of the City of Denver.

      a.     The Denver City Council is vested with "all legislative powers possessed by the City and County of Denver, conferred by Article XX of the Constitution of the State of Colorado, or contained in the Charter of the City and County of Denver." DENVER, CITY AND CTY., CHARTER, art. III, part 2, § 3.2.1.

      b.     The Denver City Council also has general police power "to enact and provide for the enforcement of all ordinances" in the City and County of Denver. *Id.* § 3.2.3.

      c.     The Denver City Council adopted the Energize Denver Ordinance by Council Bill No. CB21-1310 on November 22, 2021, as later signed by then Denver Mayor Michael B. Hancock on November 24, 2021.

29.     Defendant Mike Johnston is the presiding Mayor of the City and County of Denver.

30.     Defendant Denver OCASR is a regulatory office created under the Office of the Denver Mayor pursuant to the Denver Revised Municipal Code ("D.R.M.C."), Article XIX, § 2-401 *et seq*.  The Energize Denver Ordinance vests the Denver OCASR with creating rules governing building performance standards in Denver.  The Denver OCASR promulgated the Energize Denver Regulations, implementing the Energize Denver Ordinance.

31.     Defendant Elizabeth Babcock is the Executive Director of the Denver OCASR. The Executive Director of the Denver OCASR is charged under the Energize Denver Ordinance with promulgating the Energize Denver Regulations and enforcing any violations of the Energize Denver Regulations.

## THE CHALLENGED REGULATIONS

### I.     COLORADO HOUSE BILL 21-1286

32.     Colorado House Bill 21-1286 declares that the "Commission has both the statutory authority and the obligation to require a reduction of greenhouse gas emissions in the State in every sector including buildings."

33.     Colorado House Bill 21-1286 requires that the owners of Covered Buildings over 50,000 sq/ft shall submit a benchmarking report of their energy usage for the previous calendar year by June 1st of each year, starting on December 1, 2022.

34.     Further, Colorado House Bill 21-1286 directs that the Commission "shall promulgate" rules for Covered Buildings owners to achieve a reduction in greenhouse gas emissions associated with their Covered Buildings' operations of seven percent by 2026 and twenty percent by 2030 as compared to 2021 levels. *See* C.R.S. § 25-7-142(1), (8).

35.     Colorado House Bill 21-1286 authorizes CDPHE, through the Division, to collect civil penalties of up to five hundred dollars ($500) for a first violation and up to two thousand dollars ($2,000) for each subsequent violation of a Covered Building owners' failure to submit benchmarking data, and civil penalties of up to two thousand dollars ($2,000) for a first violation and up to five thousand dollars ($5,000) for each subsequent violation of a Covered Building owners' failure to meet the building performance standards adopted by the Commission.

### II.     COLORADO REGULATION 28

36.     Regulation 28 as adopted by the Commission sets "building performance standards" for Covered Buildings (commercial and multifamily buildings over 50,000 square feet) which require the owners of Covered Buildings to meet certain building performance standards by 2026 and 2030.

37.     Regulation 28 applies to both *existing* and *new* Covered Buildings, regardless of whether the Covered Buildings are undergoing any renovations or construction.  Thus Regulation 28 regulates and imposes restrictions on existing and installed EPCA regulated Covered Products as well as newly installed Covered Products.

38.     There are two building performance standards under Regulation 28: (1) an energy-use intensity ("EUI") score, which is calculated from a building's total site energy use per square foot per year; and (2) a greenhouse gas intensity ("GHG Intensity") score, which is calculated by the carbon dioxide equivalent ("CO2e") measured in kilograms of CO2e per square foot (kg/Co2e per sq/ft) emitted per year associated with the operations of a Covered Building.

39.     Regulation 28 sets compliance deadlines of 2026 and 2030 for a Covered Building to meet the performance standards through the implementation of energy efficiency measures, greenhouse gas intensity reductions, or combinations of both those options.

40.     Covered Building owners must demonstrate they have either (1) met the applicable building performance standard EUI score or (2) met the applicable GHG Intensity score.

41.     The EUI and GHG Intensity compliance targets are set on a "property type" basis, meaning that standards will differ depending on the property type of the Covered Building (e.g. office buildings, multifamily housing, and restaurants all have different EUI score and GHG Intensity targets).

42.     Covered Building owners are then given four main "compliance pathways" for meeting the 2026 and 2030 building performance standards.

a.     First, Covered Building owners can opt to achieve the 2026 and 2030 EUI building performance standard targets for their property type.

b.     Second, Covered Building owners can opt to reduce their EUI score by a flat percentage from their 2021 EUI baseline score, of 13% by 2026 and 29% by 2030.

c.     Third, Covered Building owners can opt to achieve the 2026 and 2030 GHG Intensity score set for their property type by reducing "greenhouse gas emissions attributable to the building's energy use through energy efficiency or replacing fossil fuel equipment with high-efficiency electric equipment".

d.     Fourth, Covered Building owners can opt to reduce their GHG Intensity score by a flat percentage from their 2021 GHG Intensity Score baseline, of 13% by 2026 and 29% by 2030.

43.     In order to reduce the EUI score of a Covered Building, the building owner must reduce the total amount of energy the building uses on a calendar year basis.

44.     In order to reduce a GHG Intensity score of a Covered Building, the building owner must reduce the total amount of greenhouse gas emissions attributable to energy use on a calendar year basis.

45.     Regulation 28 also allows a Covered Building owner to meet the building performance standards by purchasing Renewable Energy Credits ("RECs").  In order to qualify for the use of RECs, a Covered Building owner must submit an energy audit confirming they have "exhausted cost-effective energy efficiency and electrification measures for the [C]overed

[B]uilding."

46.     Finally, Regulation 28 allows Covered Building owners to modify their 2026 and 2030 compliance obligations by applying to the CEO for an adjusted EUI score, adjusted GHG intensity target, or an adjusted compliance timeline.

47.     The EUI and GHG intensity building performance standard obligations are not equivalent.

48.     In creating the two building performance standards, the Division admitted that its overarching goal was to reduce the greenhouse gas emissions associated with the building sector, and thus, the target methodologies for the EUI score and the GHG intensity scores were focused on reducing greenhouse gas emissions, not energy use.

49.     The final target methodology disclosed by the Division confirmed its aim of setting building performance standards that would meet the greenhouse gas reduction goals of Colorado: both the EUI score and GHG Intensity score targets are based on the percent of greenhouse gas emissions reductions attributable to energy use reductions.

50.     Further indicating the ulterior motive for the regulation, in that final target methodology, the 2026 and 2030 EUI score and GHG Intensity score targets were quantified in terms of the metric tons of CO2e expected to be reduced if the building performance standards were achieved on a sector wide basis.

51.     Both the EUI score and GHG Intensity score have been set so stringently as to effectively require Covered Building owners to choose electric Covered Products that exceed federal DOE standards.

52.     The only feasible way for the vast majority of Covered Buildings to meet the

energy reduction EUI score or the GHG Intensity score is to install electrified Covered Products that exceed federal DOE standards set under Section 6295 of EPCA (and in the case of existing Covered Buildings, remove fossil fueled Covered Products that meet EPCA standards and the related building systems infrastructure).

53.     Regulation 28 therefore both strongly favors electric Covered Products and effectively requires that a Covered Building owner install Covered Products that exceed federal DOE energy efficiency standards.

54.     The procedures in Regulation 28 allowing for a compliance timeline or building performance standard adjustment further emphasize that Regulation 28 is intended to force Covered Building owners into choosing electric Covered Products that exceed federal DOE efficiency standards.

55.     In order to apply for an adjusted compliance timeline, a Covered Building owner must submit documentation to the CEO including an "inventory of the natural gas equipment in the building including the age of the equipment and the energy savings associated with electrification of the equipment" and "[d]ocumentation demonstrating collaboration with the building's utility(ies) related to updating the electrical distribution infrastructure." 5 CCR 1001-32, Part C, II.A.1.

56.     Categories of Covered Building owners able to apply for a timeline adjustment include: affordable housing and under-resourced buildings; buildings undergoing major renovations that will still achieve the EUI or GHG Intensity building performance standards; buildings that can demonstrate they plan to replace existing heating and cooling systems at the end of their system of life if that end of life occurs after the compliance period; and buildings that

require updates to the electrical distribution infrastructure that cannot be timely completed to meet the performance standard deadline.

57.     For a building performance standard target adjustment, Covered Building owners must submit on a "CEO approved form" which at a minimum must include 2021 through the present annual benchmarking data with third-party verification and a list of property category types (e.g. allocation of square footage to multifamily, retail, gym, etc.) at the Covered Building.

58.     In order to adjust the building performance standards for "under resourced buildings", the CEO requires documentation that the building has examined "the feasibility of gas and electric beneficial electrification and/or gas or electric demand side management programs."

59.     "Beneficial electrification" is defined in Regulation 28 as "converting the energy source of a customer's end use from a nonelectric fuel source to a high-efficiency electric source, or avoiding the use of nonelectric fuel sources in new construction or industrial applications" in order to reduce net greenhouse gas emissions over the lifetime of the conversion to meet building performance standards.

60.     Under Regulation 28, there are no timelines governing the CEO's initial consideration of an adjustment request.  If the CEO denies a Covered Building owner's adjustment request, the Covered Building owner can apply to the CEO's executive director to review the denial determination within 90 days, and the executive director is then obligated to make a recommendation on the adjustment request within 120 days of the requested review.

61.     Failure to meet the 2026 and 2030 building performance standard compliance obligations subjects a Covered Building owner to fines and civil injunctive relief including orders to meet the Regulation 28 building performance standards.

62.     All of the above "compliance pathways" a Covered Building owner can pursue to meet the building performance standards require a Covered Building owner to replace existing EPCA regulated Covered Products (and in many instances, the Covered Building owner cannot meet the building performance standards in Regulation 28 by simply replacing existing Covered Products with Covered Products that meet current EPCA standards, instead having to choose electric Covered Products that exceed the federal efficiency standards of EPCA regulated products set by the DOE).

63.     Regulation 28 thus contains building performance standards that regulate and concern the energy efficiency and energy use of EPCA preempted Covered Products.

### III.     THE ENERGIZE DENVER ORDINANCE

64.     The Energize Denver Ordinance establishes a building performance program which requires Covered Building (commercial, multifamily buildings, and certain industrial buildings over 25,000 square feet) to meet energy use performance targets in calendar years 2024, 2027, and 2030.

65.     The Energize Denver Ordinance directs the Denver OCASR to establish rules by which every Covered Building is assigned a building type and EUI building performance standard target such that 30% total energy savings across all Covered Buildings is achieved by 2030.

66.     Under the Energize Denver Ordinance, Covered Building owners are subject to civil penalties for violating any provision of the Ordinance of up to $0.70 per year for each required kBtu reduction that the Covered Building owner fails to achieve in that year.

67.     Failure to pay any civil penalty within one hundred and eighty (180) days is considered a debt to the City and County of Denver until paid in full, and the debt represents a

perpetual lien on the property superior to all other liens, except for liens for general taxes and prior special assessments.

## IV.   THE ENERGIZE DENVER REGULATIONS

68.     The Energize Denver Regulations, as adopted by the Denver OCASR under the direction of the Energize Denver Ordinance, set 2030 "building performance standards" for Covered Buildings (commercial, multifamily, and certain industrial buildings over 25,000 square feet) which require the owners of Covered Building to meet certain building performance standards by 2024, 2027, and 2030 compliance deadlines.

69.     The Energize Denver Regulations apply to both *existing* and *new* Covered Buildings, regardless of whether the Covered Buildings are undergoing any renovations or construction.

70.     Like Regulation 28, Covered Buildings under the Energize Denver Regulations are given a target EUI performance score for the 2030 deadline, set by "property type".

71.     The 2024 and 2027 interim EUI building performance standards in the Energize Denver Regulations are then set drawing a "straight line" from the Covered Building's 2019 EUI score to the 2030 EUI building performance standard to determine interim targets for the 2024 and 2027 compliance year deadlines.[3]

72.     Also like Regulation 28, the EUI building performance standards in the Energize Denver Regulations are set so stringently as to effectively require a Covered Building owner to

---

[3] Certain property type categories, such as Aquariums, Convention Centers, Ice Rinks, and Indoor Arenas are given a flat 30% EUI reduction requirement by 2030 rather than an EUI building performance standard score.

install Covered Products that exceed federal DOE efficiency standards.[4]

73.     In other words, the EUI building performance pathway has been set so stringently that the only feasible way for a Covered Building to meet the energy reduction EUI goals is to install electrified Covered Products that exceed federal DOE standards set under Section 6295 of EPCA.

74.     The Energize Denver Regulations therefore both favor electric Covered Products and effectively require that the Covered Products a Covered Building owner installs exceed federal DOE energy efficiency standards.

75.     The Energize Denver Regulations allow compliance timeline and building performance standard target adjustments, but these adjustments do not affect this conclusion. Instead, the procedures for allowing a compliance timeline or building performance standard adjustment further emphasize that the Energize Denver Regulations are intended to force Covered Building owners into choosing electrified Covered Products and Covered Products that exceed federal DOE efficiency standards.

76.     For example, the Energize Denver Regulations allow a 10% increase to the 2030 EUI building performance standard target for Covered Buildings that have reached a 80% whole building electrification (meaning 80% of the building's systems are electrified).

77.     Under the Energize Denver Regulations, Covered Building owners can seek a timeline adjustment option (changing the 2024, 2027, or 2030 compliance deadlines) by

---

[4] The EUI targets for most categories of property types are essentially identical between Regulation 28 and the Energize Denver Regulations.  For example, the "multifamily housing" property type, which applies to CAA's and AAMD's members buildings, has a 2030 EUI target in Regulation 28 of 42.1, and a 2030 EUI target in the Energize Denver Regulations of 44.2, essentially a negligible difference.

submitting an application with a qualifying energy audit, a retrofitting plan that includes an evaluation of the electrification feasibility for natural gas equipment, and supporting documentation validating the reason for a timeline adjustment.

78.     Covered building owners can also seek credit for using renewable power that can be applied towards a building's total energy use (minimum five-year purchase contract). Separately, short term renewable contracts may be used for up to 20% of a buildings' electricity usage through 2026, or 10% from 2027 through 2030.

79.     All of the above "compliance pathways" a Covered Building owner can pursue to meet the building performance standards still require a Covered Building owner to replace existing EPCA regulated Covered Products with Covered Products that exceed efficiency standards of EPCA regulated Covered Products set by the DOE.

80.     The Energize Denver Ordinance and Energize Denver Regulations thus contain building performance standards that regulate and concern the energy efficiency and energy use of EPCA preempted Covered Products.

**FEDERAL LAW GOVERNING STATE AND LOCAL ENERGY REGULATIONS**

**I.     THE ENERGY POLICY AND CONSERVATION ACT**

81.     EPCA regulates the energy efficiency of both residential (or consumer) (42 U.S.C. § 6291 *et seq*) and industrial (or commercial) Covered Products (42 U.S.C. § 6311 *et seq*) and explicitly preempts state and local regulations "concerning the energy efficiency" and "energy use" of the Covered Product[5] for which DOE sets energy efficiency standards under EPCA.  42

---

[5] *See* footnote 1, *supra*, noting that the use of "Covered Product" herein applies to both "Covered Products" meaning *consumer* equipment preempted under EPCA, 42 U.S.C. § 6291 *et seq*. and

U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2).

82.     The Covered Products regulated by EPCA include consumer appliances such as air conditioners, water heaters, furnaces, clothes washers and dryers, and stoves (*see* 42 U.S.C. §§ 6292; 6295) and commercial equipment such as air conditioners, furnaces, water heaters, and clothes washers (*see* 42 U.S.C. §§ 6311(1); 6313).

83.     Those definitions are not tied to who is using the Covered Products.   A product qualifying as a "consumer product" but used in a commercial enterprise is still a "consumer product."  *See id.* §§ 6291(2), 6929(a), 6311(2)(A)(iii).  EPCA covered consumer heating and cooling equipment and water heaters are often installed in commercial establishments, in addition to their typical consumer (residential) installations.

84.     EPCA preempts any "energy conservation standard" set by a state or local government for consumer and commercial Covered Products.  42 U.S.C. § 6297(b); 42 U.S.C. § 6316(a)(10).

85.     "Energy use" is defined as "the quantity of energy directly consumed by a consumer or commercial product at point of use."  42 U.S.C. § 6291(4); 42 U.S.C. § 6311(4).  "Energy" is defined as "electricity, or fossil fuels," such as natural gas or propane.  42 U.S.C. § 6291(3); 42 U.S.C. § 6311(7).

86.     EPCA defines an "energy conservation standard" as "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use."  42

---

"Covered Equipment", meaning *commercial* equipment preempted under EPCA, 42 U.S.C. § 6311 *et seq.*

U.S.C. § 6291(6)(A); 42 U.S.C. § 6311(18).

87. The express preemption provision in EPCA states that "on the effective date of an energy conservation standard established in or prescribed under [42 U.S.C. § 6295] for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product unless the regulation" falls within certain enumerated exceptions. 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(a)(8), (b)(2)(A).

88. Putting these definitions together, EPCA preempts regulations relating to "the quantity of [fossil fuel] directly consumed by" (42 U.S.C. § 6291(4); 42 U.S.C. § 6311(4)) covered consumer and commercial Covered Products at the place where those Covered Products are used.

### A. Limited Exceptions to Preemption for Federal Energy Efficiency and Energy Use Standards for Consumer Covered Products.

89. EPCA provides a single exception for state building codes regulating consumer Covered Products in *existing construction*: a state may only regulate consumer Covered Products if the state applies for a waiver to the Secretary of DOE and the Secretary, through a stringent rulemaking process, finds that the state has established that the state regulation is needed to meet "unusual or compelling [s]tate or local energy or water interests," which are defined as interests "substantially different in nature or magnitude than those prevailing in the United States generally." 42 U.S.C. § 6297(d).

90. To Plaintiffs' knowledge, none of the Defendants have applied for or obtained a waiver of preemption for their regulations as they relate to *existing construction*.

91. For *new construction*, EPCA provides narrow exceptions for certain building codes regulating consumer Covered Products. 42 U.S.C. § 6297(f)(3).

92.     For consumer Covered Products in *new construction*, a state "energy conservation standard" will be exempted from preemption if it meets one of three sets of enumerated requirements:

a.     Under the first option to avoid preemption, a performance-based building code must meet all of the following guidelines: a) the code may depend on a baseline building design and its associated energy consumption, to which all other building designs will be compared (42 U.S.C. § 6297(f)(3)(D)); b) the baseline building design must not require consumer Covered Products to have a greater efficiency than the federal standard unless the State has received a waiver from DOE (42 U.S.C. § 6297 (f)(3)(B)); and c) any trade-off using a consumer Covered Product must be on a one-for-one equivalent energy use basis (42 U.S.C. § 6297(f)(3)(C)) (e.g. one energy source or type of equipment is not favored over another).

b.     Under the second option to avoid preemption a performance-based building code can, alternatively, establish one or more optional "packages" (referred to in EPCA as "combinations of items") which meets the baseline building design.  42 U.S.C. § 6297(f)(3).  However, in each case where a package includes a consumer Covered Product for which the efficiency standard exceeds the federal standard, the code must also include as an alternative a package in which that consumer Covered Product just meets, but does not exceed, the applicable federal standard.  42 U.S.C. § 6297(f)(3)(E).  Neither Regulation 28 nor the Energize Denver Ordinance and Energize Denver Regulations establish "packages" based on building baseline designs.  Therefore, this exemption does not apply.

c.     Third and finally, DOE can grant a waiver of preemption to a state for a

building code governing new construction if the state appeals to the Secretary of DOE and the Secretary, through a stringent rulemaking process, finds that the state has established that the state regulation is needed to meet "unusual or compelling [s]tate or local energy or water interests," which are defined as interests "substantially different in nature or magnitude than those prevailing in the United States generally." 42 U.S.C. § 6297(d). To Plaintiffs' knowledge, none of the Defendants have applied for a waiver of preemption for their regulations as they relate to *new construction*.

93.     These requirements, taken together, are intended to only allow codes for *new construction* that use consumption objectives and give builders a choice over how to increase overall building efficiency, ensuring an even-handed policy that does not force builders to choose one type of appliance or energy source over another. *See* S. Rep. 100-6 at 10-11 (1987); *see also id* at 26 (The provisions of § 6297(f)(3) "are designed to ensure that performance-based codes cannot expressly or effectively" require installation of higher efficiency products).

94.     Energy performance standards in building codes that force builders to choose one type of consumer Covered Product (or energy source) over another in *new construction* are thus preempted under EPCA.

95.     Further, EPCA's exceptions from preemption for performance-based building codes apply only to new construction, not to existing buildings or building renovations or replacements of existing systems, and do not allow the retroactive imposition of new requirements on existing systems. 42 U.S.C. § 6297(f)(1).

96.     In the design of new construction, trade-offs can be made in the efficiencies or projected energy consumption of various building features, including the building envelope, wall

and ceiling insulation, window area, lighting, HVAC equipment, and water heating equipment, to reach a desired overall building energy consumption objective.   However, when various components of an existing building are being altered or renovated, there is nothing to trade off against because the building envelope, insulation, lighting, etc. are already in place.  These adverse impacts are amplified for existing buildings when there are no plans to alter or renovate, and the renovations are due solely to the retroactive imposition of new requirements on existing systems. Performance-based building codes contemplate the entire building and all of its systems as a single design and cannot be applied retroactively in a piecemeal fashion, such as to renovations or replacements of systems or equipment.

97.     Both Regulation 28 and Energize Denver apply to *existing* Covered Buildings as well as *new* Covered Buildings and do not qualify for any of the exemptions from EPCA preemption, forcing building owners to choose consumer Covered Products that exceed federal standards and to prioritize electrified consumer Covered Products over fossil fuel-powered consumer Covered Products.

**B.  Limited Exemptions to Preemption for Federal Energy Efficiency and Energy Use Standards Governing Commercial Covered Products.**

98.     With limited exceptions, federal standards for commercial Covered Products preempt any state or local regulations concerning the energy efficiency or energy use of such Covered Products. 42 U.S.C. § 6316(b)(2).

99.     For state regulations governing commercial Covered Products in *existing construction*, the single exemption from preemption is identical to that for consumer Covered Products: the DOE can grant a waiver of preemption to a state (or locality) if the DOE, through a stringent rulemaking process, finds that the state (or locality) has established that the state

regulation is needed to meet "unusual or compelling [s]tate or local energy or water interests," which are defined as interests "substantially different in nature or magnitude than those prevailing in the United States generally."  42 U.S.C. §§ 6297(d) and 6316(b)(2)(D).

100.    To Plaintiffs' knowledge, none of the Defendants have applied for or obtained a waiver of preemption for their regulations as they relate to *existing construction*.

101.    There is also a limited exception from preemption for energy efficiency standards for commercial Covered Products in state or local building codes for *new construction*.  42 U.S.C. § 6316(b)(2)(B):

    a.    Only in the event that the American Society of Heating, Refrigerating and Air- Conditioning Engineers ("ASHRAE") amends standards contained in ASHRAE Standard 90.1 respecting any of the commercial Covered Products to specify a more stringent efficiency standard does EPCA permit a state or local building code to adopt that more stringent standard for those consumer Covered Products in *new* construction.  42 U.S.C. § 6316(b)(2)(B).  In other words, a state may only adopt standards for commercial Covered Products in *new construction* that meet, but do not exceed, current federal ASHRA 90.1 standards.

102.    Upon information and belief, neither Regulation 28 nor Energize Denver specifically adopt the ASHRAE Standard 90.1, but instead effectively mandate the installation of commercial Covered Products whose performance exceeds the ASHRAE standard by setting the energy conservation standards so stringently that they can only be met by installation of commercial Covered Products that exceed the ASHRAE Standard 90.1.

103.    Further, EPCA provides no exception from preemption for performance-based

building codes (energy conservation standards) for commercial Covered Products, unlike the exception from preemption for consumer Covered Products at 42 U.S.C. § 6297(f)(3).

104.    Regulation 28 and Energize Denver apply to *existing* Covered Building as well as *new* Covered Building, force building owners to choose commercial Covered Products that exceed federal standards, do not have a one-to-one energy equivalent energy use, and force building owners to prioritize electrified commercial Covered Products over fossil fuel-powered commercial Covered Products.

## ALLEGATIONS

### I.   COLORADO REGULATION 28 AND ENERGIZE DENVER REGULATE COVERED PRODUCTS PREEMPTED BY EPCA

105.    Both Regulation 28 and Energize Denver impose energy efficiency building performance standards that (1) regulate consumer and commercial Covered Products in both *existing* and *new* construction; (2) effectively require replacement of Covered Products that exceed federal DOE energy efficiency and energy use standards; and (3) conflict in fundamental ways with the standards passed by Congress and regularly updated by DOE by effectively requiring electrified Covered Products over fossil fuel utilizing Covered Products.

106.    During the pendency of the Regulation 28 rulemaking proceedings, and after Energize Denver was finalized, the United States Court of Appeals for the Ninth Circuit invalidated the City of Berkeley's comparable, though less stringent, building code which prohibited gas piping in new buildings (unlike Regulation 28 and Energize Denver, Berkeley's ordinance applied only to *new* construction and not *existing* buildings). *Cal. Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045 (9th Cir. 2023). Later, on a petition for rehearing en banc, the Ninth Circuit denied the petition for rehearing and issued an amended opinion in *Cal. Rest. Ass'n v. City of Berkeley*, 89

F.4th 1094 (9th Cir., Jan. 2, 2024).

107.    In the amended opinion, the Ninth Circuit held that "[b]y its plain text and structure, EPCA's preemption provision also encompasses building codes concerning the energy use of [C]overed [P]roducts." *Id.* at 1099.

108.    Both Regulation 28 and Energize Denver do exactly what the Ninth Circuit concluded was preempted – regulate the energy use (natural gas use) of EPCA-regulated Covered Products by requiring Covered Building owners to choose more efficient Covered Products, with a built-in bias towards electric over corresponding fossil fuel utilizing Covered Products.

109.    Regulation 28 and Energize Denver effectively and *de facto* prohibit the use of natural gas appliances in existing and new buildings by setting the energy conservation standards so stringent so as to provide Covered Building owners with no effective choice in reducing their energy consumption or greenhouse gas emissions other than to install electric Covered Products that exceed federal DOE standards.

110.    Despite the express preemption provisions of EPCA, Defendants seek to impose their own energy efficiency standards for Covered Products, both consumer and commercial, on Plaintiffs, their members, and all other similarly situated Covered Building owners in Colorado and Denver.

111.    Neither set of regulations have obtained the single and limited waiver from EPCA preemption for regulating Covered Products in *existing* construction.

112.    Neither set of regulations have met the statutory standards for exemption from EPCA preemption for *new construction* building codes.

113.    Nor have defendants obtained a waiver from preemption for their energy

conservation standards regulating *new construction*.  Regulation 28 and Energize Denver do not meet the statutory requirements for a waiver of EPCA preemption for *new* construction—and on information and belief, neither the State of Colorado, the Commission, the City and County of Denver, nor the Denver OCASR have applied for a waiver from preemption.

114.    Plaintiffs accordingly bring this action seeking a declaration that Regulation 28 and Energize Denver are preempted by EPCA and therefore unenforceable, as well as seeking an injunction to prevent enforcement of the regulations.

**A. Colorado Regulation 28 Mandates Energy Efficiency Standards for Covered Products and is Preempted by EPCA.**

115.    Regulation 28 requires existing and new Covered Buildings to meet building performance standards by 2026 and 2030 regardless of whether the *existing* covered buildings are undergoing renovations or changing out equipment.

116.    By its plain terms, Regulation 28 is a "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use" (42 U.S.C. § 6291(6)(A)) and is preempted by EPCA.

117.    More specifically, Regulation 28 requires a Covered Building owner to "reduce the energy consumption of the building through the implementation of energy efficiency measures and/or technologies to meet the applicable property type weather-normalized site EUI target" or GHG Intensity score target.

118.    As set forth in paragraphs 36-63, *supra*, Regulation 28 and the target methodology for setting the EUI and GHG Intensity score targets were clearly set to achieve a reduction in greenhouse gas emissions and are focused on achieving those targets by reducing a Covered Building's use of Covered Products that utilize fossil fuels.

119.    Plaintiffs' members have determined that the only way to meet the prescriptive building performance standards in Regulation 28 is to replace EPCA-regulated Covered Products in their buildings with Covered Products exceeding federal DOE energy efficiency standards. Simply put, there is no combination of non-EPCA Covered Products replacements (e.g. changing insulation, replacing non EPCA-regulated lights, etc.) that will allow a Covered Building to meet the building performance standards of Regulation 28 – only replacement of EPCA-regulated Covered Products with products that exceed federal DOE energy efficiency standards can achieve the building performance standards of Regulation 28.

### i.    Colorado Regulation 28 Regulates Covered Products in Existing Covered Buildings.

120.    Upon information and belief, there is no feasible way for Plaintiffs' members to meet the building performance standards in their existing buildings under Regulation 28 unless they replace both consumer and commercial Covered Products regulated under EPCA with new products that exceed the EPCA standards set by DOE.  *See* e.g. Attachment 3, Decl. of C. Lessard at ¶ 16; Attachment 7, Decl. of J. Damioli at ¶ 15.

121.    Further, upon information and belief, Plaintiff's members will be required to replace commercial Covered Products (which are compliant with EPCA and DOE energy efficiency standards) with equipment that exceeds the energy efficiency standards required under the federal ASHRAE 90.1 standard.

122.    Upon information and belief, "low hanging" energy efficiency measures involving non-EPCA Covered Products such as LED lights, windows, and other building envelop items, in and of themselves are not sufficient for the Covered Buildings to achieve the building performance

standards of Regulation 28.

123.     For Plaintiffs' members, the preliminary estimates for the costs of compliance with Regulation 28 by replacing Covered Products would cost significant capital, often in the millions of dollars.

124.     In addition, the existing HVAC infrastructure that would have to be replaced frequently has a long remaining useful life and is still being paid off, imposing an additional and unnecessary financial burden.

125.     Regulation 28 would cause Plaintiffs' members to immediately need to begin expending additional resources to hire consultants or conduct energy audits and begin the process of planning the engineering work necessary to remove existing infrastructure and install the new systems in order to meet the 2026 and 2030 compliance deadlines for Regulation 28.  *See* Attachments 1-10.

126.     There are significant technical challenges as well, as entire building systems would need to be renovated, likely displacing residents/tenants for prolonged periods of times in Plaintiffs' members' buildings.

127.     Further, these compliance costs would be passed down to residents/tenants through significant rent increases, causing economic hardship to residents/tenants and making Plaintiffs' members' Covered Buildings less competitive with buildings not covered by Regulation 28, ultimately harming their business and rental/tenant prospects in Colorado.  Requiring replacement of EPCA-regulated Covered Products would thus waste already expended capital, waste the resources for the manufacture of the current Covered Products, require additional resources for disposal of the Covered Products, displace residents, and increase rents.

**ii.** **Regulation 28 Regulates Covered Products in New Covered Buildings.**

128.     Upon information and belief, there is no feasible way for Plaintiffs' members to meet the building performance standards in their planned new buildings under Regulation 28 unless they rework building designs to replace both consumer and commercial Covered Products regulated under EPCA with new products that exceed the EPCA standards.  *See* Attachment 1, Decl. of R. Rogers at ¶¶ 17-18; Attachment 8, Decl. of W. Isenberg at ¶¶ 17-18; Attachment 9, Decl. of N. Dimond at ¶¶ 16-17.

129.     Upon information and belief, given the disparities between the reductions required by choosing the EUI score compliance pathway versus the GHG Intensity score compliance pathway, Plaintiffs' members are forced to choose electric Covered Products over fossil fuel powered Covered Products in new Covered Buildings.

130.     This conclusion is unchanged by Regulation 28 offering several different "pathways" towards compliance with the building performance standards – all of the compliance pathways in Regulation 28 mandate meeting standards that impose a "minimum level of energy efficiency or a maximum quantity of energy use" as described in 42. U.S.C. § 6291(6)(A) that are preempted by EPCA.

**B. Colorado Regulation 28 Does Not Meet Any of EPCA's Exemptions to Preemption.**

131.     Regulation 28 does not meet any of EPCA's exemptions to preemption.

132.     First, to Plaintiffs' knowledge, Defendants have not applied for or obtained the required waiver under EPCA, 42 U.S.C. § 6297(d), for the application of Regulation 28 to either *existing* or *new* construction.

133.     Second, EPCA provides no exemption for energy conservation standards in

building codes regulating Covered Products (consumer or commercial) in *existing* buildings. Because Regulation 28 imposes energy conservation standards on all existing and new Covered Buildings in the State of Colorado, it is preempted to the extent it regulates *existing* buildings because no waiver has been obtained.

134.    Third, as to *consumer* Covered Products in *new* Covered Buildings, Regulation 28 has not met the preemption exceptions for *consumer* Covered Products in new building codes under 42 U.S.C. § 6297(f) because Regulation 28 requires Covered Building owners to select Covered Products with energy efficiencies that exceed applicable energy conservation standards under Section 6295 of EPCA, in violation of 42 U.S.C. § 6297(f)(3)(B).

135.    Fourth, as to *commercial* Covered Products, Regulation 28 has not met the preemption exceptions for *commercial* Covered Products in *new* Covered Buildings under 42 USCA § 6316(b)(2)(B) because, upon information and belief, Regulation 28 effectively requires that Covered Building owners select commercial Covered Products that exceed the ASHRAE Standard 90.1.

**B. Energize Denver Mandates Energy Efficiency Standards for Covered Products and is Preempted By EPCA.**

136.    Energize Denver applies to all *existing* and *new* Covered Buildings in the City and County of Denver and requires existing and new Covered Buildings to meet building performance standards by 2024, 2027, and 2030 regardless of whether the existing Covered Buildings are undergoing renovations or changing out equipment with existing useful life.

137.    By its plain terms, Energize Denver sets "performance standard[s] which prescribes a minimum level of energy efficiency or a maximum quantity of energy use" (42 U.S.C. § 6291(6)(A)), and by doing so is preempted by EPCA.

138.    More specifically, Energize Denver requires a Covered Building owner "to meet energy performance targets in calendar years 2024, 2027, and 2030" and to "maintain the interim targets each subsequent year and shall maintain the final energy performance target indefinitely."

139.    As set forth in paragraphs 64-80, *supra*, Energize Denver was clearly set to achieve a reduction in greenhouse gas emissions, and is focused on achieving those targets (a) by replacing a Covered Building's use of Covered Products that utilize fossil fuels by forcing Covered Building owners to choose one energy source (electric Covered Products) over another (fossil fuel utilizing Covered Products) and (b) by providing incentives for electrified buildings, like the 10% increase in building performance standards when a building is 80% electrified and the energy offsets for RECs.

140.    Despite offering several different "pathways" towards compliance with the building performance standards, Energize Denver is a performance standard that requires existing and new Covered Buildings in Colorado to replace EPCA compliant Covered Products with products exceeding the DOE's energy efficiency standards in order to meet a "minimum level of energy efficiency or a maximum quantity of energy use" under 42. U.S.C. § 6291(6)(A) that is preempted by EPCA.

141.    EPCA does not provide an exemption from preemption for performance-based building codes for *existing* construction.  *See* 42 U.S.C. § 6297(f); 42 U.S.C. § 6316(b)(2).

**i.    Energize Denver Regulates Covered Products in Existing Covered Buildings.**

142.    Upon information and belief, there is no feasible way for Plaintiffs' members to meet the building performance standards in their existing buildings under Energize Denver unless they replace both consumer and commercial Covered Products regulated under EPCA with new

products that exceed the EPCA standards set by DOE.  *See* e.g. Attachment 3, Decl. of C. Lessard at ¶ 16.

143.    Further, upon information and belief, Plaintiff's members will be required to replace commercial Covered Products (which are compliant with EPCA and DOE energy efficiency standards) with equipment that exceeds the energy efficiency standards required under the federal ASHRAE 90.1 standard.

144.    Due to the preference (and credit for 80% building electrification), Plaintiffs' members have determined they must replace EPCA compliant fossil fuel-fired heating and cooling equipment with electric HVAC equipment, such as heat pumps, in order to meet the building performance standards in Energize Denver.

145.    Upon information and belief, "low hanging" energy efficiency measures involving non-EPCA Covered Products such as LED lights, windows, and other building envelop items, in and of themselves are not sufficient for the Covered Buildings to achieve the building performance standards of Energize Denver.

146.    As with Regulation 28, these retrofitting costs cause immediate and irreparable harms to Plaintiffs' members.  In many cases, the existing HVAC infrastructure not only is primarily already highly energy efficient, but also still has a long remaining useful life and is still being paid off.

147.    Energize Denver would thus cause Plaintiffs' members to immediately need to begin expending additional monies in order to hire consultants or energy audits and to begin the engineering work necessary to install these systems by the 2024, 2027, and 2030 compliance deadlines for Energize Denver.

148.     There are significant technical challenges as well, as entire building systems would need to be renovated.  The renovations would displace residents/tenants for prolonged periods of times in Plaintiffs' members Covered Buildings, decreasing the revenue the members typically receive from rent.

149.     Further, costs to change the building infrastructure would be passed down to residents/tenants, making Plaintiffs' members' Covered Buildings less competitive on the market with other buildings not covered by Energize Denver.  Requiring full electrification at this time would thus waste already expended capital, displace residents/tenants, and increase rents.

**ii.     Energize Denver Regulates Covered Products in New Covered Buildings.**

150.     Upon information and belief, there is no feasible way for Plaintiffs' members to meet the building performance standards in their planned new buildings under Energize Denver unless they rework building designs to replace both consumer and commercial Covered Products regulated under EPCA with new products that exceed the EPCA standards.  *See* Attachment 1, Decl. of R. Rogers at ¶¶ 17-18; Attachment 8, Decl. of W. Isenberg at ¶¶ 17-18; Attachment 9, Decl. of N. Dimond at ¶¶ 16-17; Attachment 11, Decl. of T. Carlson at ¶¶ 13-14.

151.     Upon information and belief, given the disparities between the reductions required by choosing the EUI score compliance pathway versus the GHG Intensity score compliance pathway, Plaintiffs' members are forced to choose electric Covered Products over fossil fuel powered Covered Products in new Covered Buildings.

152.     Further, given Energize Denver's preferential treatment to buildings that have achieved 80% electrification, the member example calculates that it is under further pressure to choose electric Covered Products over fossil fuel powered Covered Products.

153.    Therefore, Energize Denver regulates Covered Products in new construction.

**C.  Energize Denver Does Not Meet Any of EPCA's Exemptions to Preemption.**

154.    Energize Denver does not meet any of EPCA's exemptions to preemption. Energize Denver imposes energy conservation standards on all existing and new Covered Buildings in the City and County of Denver requiring replacement of *consumer* and *commercial* Covered Products for ones that exceed federal DOE energy efficiency standards and exceed ASHRAE Standard 90.1.

155.    First, to Plaintiffs' knowledge, Defendants have not applied for or obtained the required waiver under EPCA, 42 U.S.C. § 6297(d) for *existing* construction.  Without waiver, regulations that are more stringent than the federal regulations are preempted.  Thus, because Energize Denver imposes more stringent requirements and because no waiver has been obtained, Energize Denver is preempted to the extent they regulate existing buildings.

156.    Second, EPCA provides no exemption for energy conservation standards regulating Covered Products in *existing* buildings.   Because Energize Denver imposes energy conservation standards on all existing Covered Buildings in the State of Colorado, it is preempted to the extent it regulates *existing* buildings because no waiver has been obtained.

157.    Third, as to *new* construction, Energize Denver has not met the preemption exceptions for *consumer* Covered Products in *new* building codes under 42 U.S.C. § 6297(f) because:

a.    Energize Denver requires Covered Building owners to select Covered Products whose energy efficiencies exceed applicable energy conservation standards under Section 6295 of EPCA, in violation of 42 U.S.C. § 6297(f)(3)(B);

b.    Energize Denver does not provide a one-for-one equivalent energy use or equivalent cost basis for Covered Products that exceed the energy conservation standards established under Section 6295 of EPCA in violation of 42 U.S.C. § 6297(f)(3)(C) because Energize Denver forces Covered Building owners to choose electrified Covered Products over the use of fossil fuel Covered Products by incentivizing electrification by reducing the building performance standards for Covered Buildings that achieve 80% electrification and by providing direct energy credits for Covered Buildings purchasing RECs;

c.    The energy consumption or conservation objectives of Energize Denver are not specified in terms of fuel-neutral total consumption of energy, but are instead based on the total emissions of greenhouse gas emissions in violation of 42 U.S.C. § 6297(f)(3)(F) because the regulations force the adoption of Covered Products that use low-emitting or non-emitting fuel sources and by providing the incentives mentioned above to electrify the Covered Building.

158.    Fourth, as to *commercial* Covered Products, Energize Denver has not met the preemption exceptions for commercial Covered Products under 42 USCA § 6316(b)(2)(B) in *new* Covered Buildings because Energize Denver effectively requires that Covered Building owners select commercial Covered Products exceeding the ASHRAE Standard 90.1.

## CAUSES OF ACTION:

### First Cause of Action

### Colorado Regulation 28 is Preempted by EPCA as to Existing Covered Buildings

159.    Plaintiffs re-allege the preceding paragraphs as though set forth fully herein.

160.    Regulation 28 concerns the energy efficiency and energy use of EPCA regulated

Covered Products in existing buildings in Colorado.

161.    Regulation 28 requires greater energy efficiency and energy use standards than EPCA compliant consumer and commercial Covered Products in existing Covered Buildings and effectively prohibits the use of certain classes of EPCA compliant Covered Products (fossil fuel utilizing Covered Products), and is thus preempted by EPCA under 42 U.S.C. § 6297(b).

162.    Regulation 28 does not fall within the exceptions to preemption in EPCA for Covered Products in existing buildings because:

a.    The State of Colorado has not applied for a waiver from preemption.

b.    None of the applicable exemptions for *new* building codes for *consumer* or *commercial* Covered Products apply to *existing* buildings.

163.    Regulation 28 therefore violates the Supremacy Clause of Article VI of the United States Constitution, because Congress has expressly preempted the type of energy conservation standard enacted by Regulation 28 under EPCA and Regulation 28 fails to meet the exceptions to preemption under EPCA.

164.    Plaintiffs therefore request that the Court (i) declare Regulation 28 as it is applied to existing buildings as preempted by EPCA, and (ii) enjoin Defendants from enforcing Regulation 28.

## Second Cause of Action

### Colorado Regulation 28 is Preempted by EPCA as to New Covered Buildings

165.    Plaintiffs re-allege the preceding paragraphs as though set forth fully herein.

166.    Regulation 28 concerns the energy efficiency and energy use of EPCA regulated Covered Products in new buildings in Colorado.

167.     Regulation 28 requires greater energy efficiency and energy use standards for EPCA compliant Covered Products in new buildings than current federal standards under 42 U.S.C. § 6297(f)(3)(B) and effectively prohibits the use of certain classes of EPCA compliant Covered Products (fossil fuel utilizing Covered Products) that meet EPCA standards, and is thus preempted by EPCA.

168.     Regulation 28 does not fall within the exceptions to preemption in EPCA for *consumer* Covered Products in new buildings because none of the applicable exemptions for new building codes apply:

a.     The State of Colorado has not applied for a waiver from preemption for Regulation 28 as it applies to new building codes.

b.     Regulation 28 effectively requires EPCA regulated *consumer* Covered Products in new buildings to have an energy efficiency exceeding current applicable energy conservation standards established and prescribed under section 6295 of title 42.  *See* 42 U.S.C. § 6297(f)(3)(B), and effectively prohibits the use of certain classes of EPCA regulated Covered Products (fossil fuel utilizing Covered Products) that meet EPCA standards.

c.     Regulation 28 does not set objectives in terms of total consumption of energy, but rather focuses on the total reduction of greenhouse gas emissions by: making the GHG Intensity reduction compliance pathway more stringent than the EUI score compliance pathway; providing incentives for electrifying buildings; providing REC offsets, and providing for compliance and timeline adjustments that consider the electrification feasibility of new buildings in violation of 42 U.S.C. § 6297(f)(3)(C) and (F).

169.     Regulation 28 has not met the preemption exceptions for *commercial* Covered

Products in *new* construction under 42 U.S.C. § 6316(b)(2)(B) because:

        a.      The State of Colorado has not applied for a waiver from preemption for Regulation 28 as it applies to new commercial construction.

        b.      Regulation 28 effectively requires that Covered Building owners select commercial Covered Products that exceed the ASHRAE/IES Standard 90.1 for *new* building construction.

170.     Regulation 28 therefore violates the Supremacy Clause of Article VI of the United States Constitution, because Congress has expressly preempted the type of energy conservation standard enacted by Regulation 28 under EPCA, and Regulation 28 fails to meet the exceptions to preemption under EPCA.

171.     Plaintiffs therefore request that the Court (i) declare Regulation 28 as it is applied to new buildings as preempted by EPCA, and (ii) enjoin Defendants from enforcing Regulation 28 as it is applied to new buildings.

### Third Cause of Action

**The Energize Denver Ordinance and the Energize Denver Regulations are Preempted by EPCA as to Existing Covered Buildings**

172.     Plaintiffs re-allege the preceding paragraphs as though set forth fully herein.

173.     Energize Denver concerns the energy efficiency and energy use of EPCA regulated Covered Products in existing buildings in the City and County of Denver.

174.     Energize Denver requires the replacement of existing Covered Products with Covered Products that exceed the energy efficiency and energy use standards under Section 6295 in existing Covered Buildings and effectively prohibits the use of certain classes of EPCA regulated Covered Products (fossil fuel utilizing Covered Products) that meet EPCA standards, and is thus

preempted by EPCA under 42 U.S.C. § 6297(b).

175.     Energize Denver does not fall within the exceptions to preemption in EPCA for existing buildings because:

      a.     The City and County of Denver has not applied for a waiver from preemption.

      b.     None of the applicable exemptions for *consumer* or *commercial* Covered Products for *new* building codes apply to existing buildings.

176.     Energize Denver therefore violates the Supremacy Clause of Article VI of the United States Constitution because Congress has expressly preempted the type of energy conservation standard enacted by Energize Denver under EPCA, and Energize Denver fails to meet the exceptions to preemption under EPCA.

177.     Plaintiffs therefore request that the Court (i) declare the Energize Denver Ordinance and the Energize Denver Regulations as they are applied to existing buildings are preempted by EPCA, and (ii) enjoin Defendants from enforcing the Energize Denver Ordinance and the Energize Denver Regulations.

### Fourth Cause of Action

**The Energize Denver Ordinance and the Energize Denver Regulations Are Preempted by EPCA as to New Covered Buildings**

178.     Plaintiffs re-allege the preceding paragraphs as though set forth fully herein.

179.     Energize Denver concerns the energy efficiency and energy use of EPCA regulated Covered Products in new buildings in the City and County of Denver.

180.     Energize Denver requires new Covered Buildings to meet energy efficiency and energy use standards and effectively prohibits the use of certain classes of EPCA regulated Covered Products (fossil fuel utilizing Covered Products) that meet EPCA standards, and is thus preempted

by EPCA under 42 U.S.C. § 6297(b).

181.    The City and County of Denver has not applied for a waiver from preemption for Energize Denver as it applies to both consumer and commercial Covered Products in new buildings, and Energize Denver is thus preempted.

182.    Energize Denver does not fall within the exceptions to preemption in EPCA for *consumer* Covered Products in new buildings because none of the applicable exemptions for *new* building codes apply:

a.    Energize Denver requires the Covered Products in new buildings have an energy efficiency exceeding current applicable energy conservation standards established and prescribed under section 6295 of title 42, 42 U.S.C. § 6297(f)(3)(B), and effectively prohibits the use of certain classes of EPCA regulated Covered Products (fossil fuel utilizing Covered Products) that meet EPCA standards;

b.    Energize Denver does not set objectives in terms of total consumption of energy, but rather focuses on the total reduction of greenhouse gas emissions by providing incentives for 80% electrified buildings, providing REC offsets, and providing for compliance and timeline adjustments that consider the electrification feasibility of new buildings in violation of 42 U.S.C. § 6297(f)(3)(C) and (F).

183.    Energize Denver has not met the preemption exceptions for *commercial* Covered Products in new buildings under 42 USCA § 6316(b)(2)(B) because Energize Denver effectively requires that Covered Building owners select commercial Covered Products exceeding the ASHRAE Standard 90.1.

184.    Energize Denver therefore violates the Supremacy Clause of Article VI of the

United States Constitution, because Congress expressly preempted the type of energy conservation standard enacted by Energize Denver under EPCA, and Energize Denver fails to meet the exceptions to preemption under EPCA.

185.     Plaintiffs therefore request that the Court (i) declare the Energize Denver Ordinance and the Energize Denver Regulations as they are applied to new buildings are preempted by EPCA and (ii) enjoin Defendants from enforcing the Energize Denver Ordinance and the Energize Denver Regulations as they are applied to new buildings.

### REQUESTED RELIEF

186.     Plaintiffs, and their members, will be irreparably harmed if Regulation 28 and Energize Denver are not enjoined and are enforced.

187.     Plaintiffs, and their members, have already experienced and will continue to face economic injuries, including costs to undergo energy audits and begin retrofitting measures at Covered Buildings, loss of competitiveness in rental rates compared to similarly situated buildings that are below the Covered Building threshold of Regulation 28 and Energize Denver; their business planning, infrastructure investments, hiring decisions, jobs, and livelihoods are and will be affected; they face compliance burdens associated with Regulation 28 and Energize Denver; and their plans to build new Covered Buildings are negatively impacted by the compliance obligations associated with Regulation 28 and Energize Denver, including requiring them to change building plans and install Covered Products (both consumer and commercial) that exceed federal standards.

188.     Plaintiffs, and their members, have no adequate remedy at law for these irreparable harms.  Unless the Defendants are enjoined from effectuating and enforcing Regulation

28 and Energize Denver, Plaintiffs and their members will continue to be denied their legal rights.

189.    There will be no significant harm to Defendants from an injunction because Defendants have no legitimate interest in enforcing invalid laws and regulations.

190.    The balance of harms thus favors injunctive relief.

191.    An injunction is also in the public interest. The public interest is not served by enforcing invalid laws.  Moreover, EPCA embodies a strong public interest in the uniform national regulation of energy conservation and use policy, encouraging diverse domestic supply of energy, and protecting consumer choice, all of which is undermined by conflicting state regulation of these matters, exemplified by Regulation 28 and Energize Denver.

192.    In short, both Regulation 28 and Energize Denver are already causing substantial adverse consequences for Plaintiffs and the public.   The Defendants' efforts to bypass federal law to implement their own energy policies violate EPCA, are contrary to the public interest, and cause irreparable harm to Plaintiffs and their members.

193.    Plaintiffs therefore request that the Court (i) declare Regulation 28 and the Energize Denver Ordinance and the Energize Denver Regulations as they are applied to new and existing buildings are preempted by EPCA and (ii) enjoin Defendants from enforcing Regulation 28 and the Energize Denver Ordinance and the Energize Denver Regulations.

194.    Plaintiffs therefore request that the Court award the following relief:

a.    Issue a declaratory judgment under 28 U.S.C. § 2201(a) that Regulation 28, the Energize Denver Ordinance, and the Energize Denver Regulations are preempted by EPCA and are therefore void and unenforceable;

b.    Issue a preliminary injunction enjoining Defendants from implementing and

enforcing Regulation 28, the Energize Denver Ordinance, and the Energize Denver Regulations during the pendency of this action;

        c.      Issue a permanent injunction enjoining Defendants from implementing and enforcing Regulation 28, the Energize Denver Ordinance, and the Energize Denver Regulations;

        d.      Grant Plaintiffs costs of this suit, including reasonable attorneys' fees; and

        e.      Grant such other and further relief as the Court may deem just and proper.

Dated: April 22, 2024               Respectfully submitted,

GREENBERG TRAURIG, LLP

/s/ *Paul M. Seby*

Paul M. Seby
Matthew K. Tieslau
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Phone Number:  303.572.6500
Fax Number:  303.572.6540
E-Mail:   SebyP@gtlaw.com
         TieslauM@gtlaw.com

ATTORNEYS FOR PLAINTIFFS

*Attorneys for Plaintiffs*