**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-CV-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;

       *Plaintiffs*,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office;

       AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency.

       *Defendants.*

---

**STATE DEFENDANTS' PARTIAL MOTION TO DISMISS**

---

Defendants Jill Hunsaker Ryan, the Executive Director of the Colorado Department of Public Health and Environment; Michael Ogletree, the Director of the Colorado Air Pollution Control Division; and Will Toor, the Executive Director of the Colorado Energy Office, all in their official capacities (collectively the "State Defendants"), respectfully request the Court dismiss Plaintiffs' first and second claims for relief pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## BACKGROUND

Colorado recognizes that reducing greenhouse gas ("GHG") emissions to curb the impacts of climate change is imperative. In 2019, the Colorado General Assembly declared that Colorado is experiencing harmful impacts from climate change, that climate change adversely affects Colorado's economy, and that "[w]e must work together to reduce statewide [GHG] pollution . . . ." §§ 25-7-102(2)(a)-(c), Colo. Rev. Stat. (2019). That year, the Colorado General Assembly passed multiple bills to combat climate change and reduce GHG emissions, including House Bill ("HB") 19-1261, which established phased statewide GHG emissions reduction targets, ultimately leading to a 90 percent reduction in GHG emissions from 2005 levels by 2050. *Id.* § 25-7-102(2)(g). In 2023, these goals were amended to accomplish net zero statewide GHG pollution by 2050. § 25-7-102(2)(g)(I)(F) Colo. Rev. Stat. (2023).

Consistent with these goals, in 2021 the Colorado General Assembly passed HB 21-1286 to reduce GHG emissions from select large residential and commercial buildings ("Covered Buildings") seven (7) percent by 2026 and twenty (20) percent by 2030. § 25-7-142(8)(a)(II)(A), (B) Colo. Rev. Stat. (2023); Complaint, ¶ 34. HB 21-1286

also required, beginning in 2022, Covered Building owners to submit annual reports detailing their energy usage ("Benchmarking Requirements"). § 25-7-142(3), Colo. Rev. Stat.; Complaint, ¶ 33.

The General Assembly also directed the Air Quality Control Commission ("Air Commission") to establish statewide building performance standards to meet the statutory emission reductions. § 25-7-142(8)(c)(I), Colo. Rev. Stat. (2023); Complaint, ¶ 34. The Air Commission fulfilled this by adopting Regulation 28 in August 2023. 5 Colo. Code Regs. § 1001-32, (hereinafter "Regulation 28"). Regulation 28 refines the statutory Benchmarking Requirements and establishes enforceable standards for Covered Buildings to meet beginning in 2026 ("Performance Standards"). The Performance Standards are designed to accomplish the sector-wide GHG emissions reduction targets in HB 21-1286 while also allowing flexibility to accommodate particular circumstances of each Covered Building by providing Covered Building owners three compliance pathways. These include: combinations of energy efficiency measures; building envelope renovations, such as window and insulation improvements; and, in some instances, installation of solar generation systems. *See generally* Regulation 28, Part C; Complaint, ¶ 36. In addition to the compliance pathways, Covered Building owners may request adjustments to both performance targets and compliance timelines. Regulation 28, Part C § II. Each owner of a Covered Building is responsible for identifying their preferred compliance pathway and determining the actions they will take to achieve the compliance targets. Regulation 28, Part B §§ I.A.1., I.A.2.

Plaintiffs seek to enjoin implementation of Regulation 28 in its entirety, including the Benchmarking Requirements, arguing the Performance Standards are preempted by the federal Energy Policy and Conservation Act (EPCA). EPCA establishes test procedures, labeling, and energy targets for consumer products, including certain appliances, 42 U.S.C. § 6295, ("Covered Products") and expressly preempts state regulations "concerning the energy efficiency, energy use, or water use" of such products, 42 U.S.C. § 6297(c).

## STATEMENT OF CONFERRAL

On June 14, 2024, counsel for State Defendants conferred with Plaintiffs' counsel who requested State Defendants indicate that Plaintiffs oppose the motion and will respond as provided for under the rules.

## SUMMARY OF ARGUMENT

Plaintiffs' first two claims challenge the entirety of Regulation 28 on EPCA preemption grounds, but their Complaint contains no allegations that the Benchmarking Requirements are preempted by EPCA. Rather, the preemption arguments in their Complaint concern only the Performance Standards. *See* Complaint, ¶¶ 3, 5, 21.b. Therefore, State Defendants construe Plaintiffs' claims to be directed solely at the Performance Standards provisions of Regulation 28.[1] But Plaintiffs lack standing to

---

[1] To the extent Plaintiffs intend to argue EPCA preempts Regulation 28's Benchmarking Requirements, Plaintiffs lack standing to bring such a claim. The Benchmarking requirements exist independently in statute, apart from Regulation 28. § 25-7-142(3)(a), C.R.S. Thus, a decision invalidating Regulation 28 would not redress Plaintiffs' alleged injuries because they would still be subject to a statute requiring the benchmarking reports. To the extent Plaintiffs' Complaint could be construed as a challenge to the statute, such a challenge would raise statute of limitations issues. *See infra,* n.3.

challenge Regulation 28's Performance Standards, and, even if they had standing, their claims against the State Defendants are not ripe. Accordingly, the claims against the State Defendants should be dismissed.

As to standing, Plaintiffs cannot rely on organizational standing because they fail to establish that any of their members would have standing to challenge Regulation 28. Plaintiffs allege only speculative and theoretical injuries related to the Performance Standards. Plaintiffs' hypothetical injuries are insufficient to establish their standing to challenge Regulation 28. Further, Plaintiffs appear to rely on alleged injuries caused by the Benchmarking Requirements to establish standing to challenge the Performance Standards. However, injuries caused by the Benchmarking Requirements are not fairly traceable to the Performance Standards. Moreover, because the requirements that form the basis of Regulation 28's Performance Standards exist in statute, Plaintiffs have not shown a causal connection between Regulation 28 and their alleged injuries, or that their alleged injuries would be redressed by a favorable ruling. Finally, Plaintiffs lack prudential standing because the unique compliance obligations of each Covered Building owner require participation in the lawsuit of specific building owners who allege injury. Accordingly, Plaintiffs have failed to meet the minimum standing requirements imposed by Article III, and their first and second claims for relief should be dismissed under Fed. R. Civ. P. 12(b)(1).[2]

---

[2] Arguments based on constitutional limitations of the court's jurisdiction are properly raised under Rule 12(b)(1), while arguments based on prudential limitations are properly raised under Rule 12(b)(6). *Bruce v. City of Colorado Springs*, 2022 WL 16702252, at *13 (D. Colo. Sept. 27, 2022). To the extent possible, State Defendants parse their arguments accordingly.

As to ripeness, because Plaintiffs have not yet determined what they must do to comply with the Performance Standards, their claims are not ripe and must be dismissed.

## ARGUMENT

**I.  Plaintiffs lack standing to challenge Regulation 28's Performance Standards.**

### A.  Legal Standard

Under Fed. R. Civ. P. 12(b)(1), a court must dismiss claims for which it lacks subject matter jurisdiction. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Kan. Nat. Res. Coal. v. U.S. Dep't of Interior*, 971 F.3d 1222, 1231 (10th Cir. 2020) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "However, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *COPE v. Kan. State Bd. of Education*, 821 F.3d 1215, 1221 (10th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (citations omitted).

As organizations purporting to represent the interest of their individual members, Plaintiffs have standing to bring suit only if (1) at least one of their members would otherwise have standing to sue in their own right; (2) the interests they seeks to protect are germane to their organizational purpose; and (3) neither the claim asserted nor the relief requested requires the participation in the lawsuit of each of their individual members. *Speech First, Inc. v. Shrum,* 92 F.4th 947, 949 (10th Cir. 2024). Specific

allegations establishing the standing of "at least one identified member" of the organization must be pled to satisfy the first prong. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

### B. Plaintiffs lack standing because they have not demonstrated that their members would otherwise have standing to challenge Regulation 28.

To satisfy the first element above, Plaintiffs must show that (1) at least one of their members has suffered or will imminently suffer an injury in fact to a legally protected interest, (2) a causal connection between State Defendant's challenged conduct and their members' alleged injury, and (3) a likelihood that a favorable decision will redress the alleged injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The alleged injury must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* To establish causation, the injury must be "fairly traceable to the challenged action of the defendant." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (quoting *Friends of the Earth*, 528 U.S. at 180–81). To be redressable, "it must be 'likely,' as opposed to merely 'speculative,'" that the alleged injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (citations omitted). Plaintiffs have failed on all three counts.

### 1. Plaintiffs have not adequately alleged their members have suffered or will imminently suffer concrete, particularized, and imminent injury fairly traceable to the Performance Standards.

Plaintiffs fail to meet their burden of pleading injuries that are concrete and particularized and actual or imminent, as opposed to conjectural or hypothetical. Although Plaintiffs claim the Performance Standards "will ... require Plaintiffs' members

to make significant capital expenditures," Complaint, ¶ 21.c, the Complaint and supporting Declarations only speculate about potential costs and fail to identify a specific member that is making particularized significant expenditures to comply with the Performance Standards. Neither the Complaint nor the Declarations identify the chosen compliance pathways for any individual building, let alone what specific steps the owner must take to accomplish the relevant emissions reduction targets. *Id.* Thus, although there are conclusory allegations that appliances will need to be replaced, no specific building owner identifies this as a concrete injury. Further, the vague "capital expenditures" cited in the Complaint are not tied to any EPCA Covered Products.

The only concrete expenditures fairly traceable to Regulation 28 set out in the Complaint are costs associated with the Benchmarking Requirements. Complaint, ¶ 21. But the Complaint never alleges that the Benchmarking Requirements are preempted by EPCA, and any injury caused by the Benchmarking Requirements is not fairly traceable to the Performance Standards. *Utah Physicians for a Healthy Env't*, 21 F.4th at 1241. Plaintiffs mistakenly attempt to bootstrap alleged injuries from one section of Regulation 28—Benchmarking—to challenge a separate and distinct section of the regulation—Performance Standards. This does not satisfy their constitutional standing burden for either the first or second claim.

Plaintiffs' second claim, concerning new buildings, suffers from additional shortcomings. Nothing in Regulation 28 sets building construction requirements. Rather, Regulation 28 only applies after a building is constructed and is issued a certificate of occupancy. *See* Regulation 28, Part B § I. Further, owners of newly constructed

buildings are not required to choose a compliance pathway until their first benchmarking reporting deadline or 60 days after completion, whichever is sooner. Regulation 28, Part B § I.A.6.a. Any decisions related to Covered Products or building plans are entirely within the discretion of the building owner and such decisions occur before any regulatory obligations apply. Thus, the injuries Plaintiffs allege to support their claim that Regulation 28 is preempted by EPCA as the rule applies to new construction are even more speculative and remote and fail to satisfy their standing burden. *Friends of the Earth*, 528 U.S. at 180–81.

### 2. Plaintiffs' injuries are not caused by Regulation 28 or redressable by a favorable decision.

The factual allegations in Plaintiffs' Complaint appear to suggest that no state rule could accomplish the statutory directive to reduce GHG emissions from the building sector without requiring some Covered Building owners to replace EPCA-regulated Covered Products in Covered Buildings with Covered Products exceeding federal DOE energy efficiency standards. E.g., Complaint, ¶ 119. However, in adopting Regulation 28 the Air Commission lacked discretion to deviate from the statutory GHG reduction targets for the sector. § 25-7-142(8)(II), Colo. Rev. Stat. (2023). Plaintiffs' alleged injury was caused, if at all, by the Colorado General Assembly's 2021 decision both to set the stringent targets for the building sector and to specify which entities—owners of Covered Buildings—are subject to those targets.

For example, Plaintiffs allege "[b]oth the EUI score and GHG Intensity score have been set so stringently as to effectively require Covered Building owners to choose electric Covered Products that exceed federal DOE standards." Complaint ¶ 51.

However the Commission adopted the Performance Standards to comply with the statute, which requires a reduction in GHG emissions of seven percent by 2026 and 20 percent by 2030. §§ 25-7-142(8)(II)(A), (B), Colo. Rev. Stat. (2023). Because of this, Plaintiffs' complaints are with HB 21-1286, not Regulation 28.[3]

If Plaintiffs intended to challenge Regulation 28 and not HB 21-1286, then it was their burden to allege facts demonstrating that Regulation 28 causes injury separate and apart from HB 21-1286. The Complaint does not contain any concrete or particularized facts showing their alleged injuries were caused by Regulation 28 and would be redressed should this Court rule in their favor. To wit, even if Plaintiffs prevail on their claims in this case concerning Regulation 28, absent a statutory change, the Air Commission remains under statutory obligations to adopt rules that accomplish the statutory GHG emission reduction targets established in HB 21-1286.

With respect to Plaintiffs' second claim, the Complaint also fails to meet the causation and redressability prongs of the standing requirements. Plaintiffs only provide one declaration that discusses new construction plans. *See* Complaint, Exhibit 11, Declaration of Tyler Carlson. That declaration only states that two new buildings will be subject to the *Energize Denver program—not Regulation 28*.[4] For this additional reason,

---

[3] If the Complaint is construed as a challenge to the 2021 statute, then Plaintiffs' claims may be barred by the statute of limitations. *See* §§ 13-80-102(1)(g) & (h), Colo. Rev. Stat. (2023) (imposing a two-year statute of limitations for claims under a federal statute with no specific limitations period and for actions against public entities).

[4] Energize Denver includes buildings that are 25,000 square feet or more while Regulation 28 includes buildings that are 50,000 square feet or more.

Plaintiffs have failed to meet their burden to establish standing to challenge Regulation 28 as it applies to new buildings.

**C. Plaintiffs lack standing because their claims require the participation in the lawsuit of their individual members.**

Regulation 28 does not apply to building owner *associations*; rather, it requires individual building owners to choose a compliance pathway to achieve their Covered Building's specific targets. Regulation 28 requires Covered Building owners to conduct planning and analysis specific to their individual buildings to identify each building's compliance pathway. Regulation 28, Part B § I.A. Only after the compliance pathway is selected and the unique options for complying under that pathway are determined may any harms caused by Regulation 28 be identified. Therefore, any alleged harms from the rule would be unique to each individual Covered Building owner. Accordingly, to the extent Plaintiffs attempt to challenge Regulation 28 as applied to any particular owner of a Covered Building[5], such a challenge requires the participation of the individual member that owns the building, and Plaintiffs lack associational standing to assert such claims on behalf of their members.[6] *See Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 958 F.2d 1018, 1022 (10th Cir. 1992) (finding organization lacked standing to bring claim requiring court to "examine evidence particular to individual" members).

---

[5] The Complaint does not make clear whether Plaintiffs intend to challenge the Performance Standards on their face or as applied.

[6] This element of the organizational standing inquiry is prudential, § 3531.9.5, Rights of Others—Organization Standing, Wright & Miller  13A Fed. Prac. & Proc. Juris. § 3531.9.5 (3d ed.), thus, as discussed above, it is properly analyzed under Fed. Rule of Civ. Proc. 12(b)(6).

## II. Plaintiffs' challenge to Regulation 28 is not ripe.

### A. Legal Standard

"The purpose of the ripeness doctrine is to prevent the premature adjudication of abstract claims." *U.S. v Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). Although related to standing, ripeness is a separate doctrine. *See S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1157 (10th Cir. 2013). While standing concerns whether plaintiffs are the proper parties to bring the suit, "thus focusing on the qualitative sufficiency of the injury and whether the complainant has personally suffered the harm, [] [w]hen determining ripeness, a court asks whether this is the correct time for the complainant to bring the action." *Id.* (citations omitted). "As compared to standing, ripeness assumes that an asserted injury is sufficient to support standing, but asks whether the injury is too contingent or remote to support present adjudication." *Id.* (citing Wright & Miller 13B Fed. Prac. & Proc. Juris. § 3532.1 (3d ed. 2008)). Additionally, ripeness asks courts to determine whether "the case involves an uncertain or contingent future event that may not occur as anticipated, or indeed may not occur at all." *S. Utah Wilderness All.*, 707 F.3d at 1158 (citations omitted). It is the complainant's burden to allege facts demonstrating the appropriateness of invoking judicial resolution of the dispute. *Renne v. Geary*, 501 U.S. 312, 316 (1991).

Ripeness "involves both constitutional requirements and prudential concerns." *Cabral*, 926 F.3d at 693 (citation omitted).[7] Even when a claim meets Article III's "case

---

[7] A challenge to constitutional ripeness, like other challenges to a court's subject matter jurisdiction, is properly brought as a motion under Rule 12(b)(1), while a challenge to

or controversy" requirement, it may nonetheless be prudentially unripe for judicial review. *Id.* In weighing the prudential ripeness of a claim, courts consider two factors: (1) "the fitness of the issue for judicial review," and (2) "the hardship to the parties from withholding review." *Id.* (quoting *U.S. v. Bennett*, 823 F.3d 1316, 1326 (10th Cir. 2016)). In reviewing the first factor, courts "focus on whether the determination of the merits turns upon strictly legal issues or requires facts that may not yet be sufficiently developed." *Id.* (quoting *United States v. Ford*, 882 F.3d 1279, 1283 (10th Cir. 2018)). "A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Id.* (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). As for the second factor, courts consider whether a plaintiff "face[s] a direct and immediate dilemma" arising from the challenged conduct. *Id.* (quoting *Bennett*, 823 F.3d at 1328).

## B. Plaintiffs' first and second claims should be dismissed as unripe.

Plaintiffs' claims are not ripe because their alleged injuries related to the Performance Standards are too contingent and remote to support present adjudication. Plaintiffs first and second claims are based on almost identical allegations that Regulation 28 "requires greater energy efficiency and energy use standards for EPCA

---

prudential ripeness is properly brought as a motion under Rule 12(b)(6). *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216, 1227, 1230 (10th Cir. 2021). But, as noted in a leading treatise, "there would be little profit and considerable inefficiency in attempting to adopt different procedures" for determining the closely-related constitutional and prudential ripeness determinations. Wright & Miller, 13B Fed. Prac. & Proc. Juris. § 3532.7 (3d ed.). Accordingly, for purposes of ripeness, State Defendants do not parse their claims between Rules 12(b)(1) and 12(b)(6).

compliance Covered Products . . . and effectively prohibits the use of certain classes of EPCA compliant Covered Products . . . that meet EPCA standards . . . ." Complaint, ¶¶ 161, 167. Notwithstanding Plaintiffs' conclusory assertions, the Complaint fails to allege any facts suggesting that any of their members have, in fact, taken the steps necessary to assess what, if anything, they will need to do to comply with Regulation 28, let alone that doing so will require them to take any action with respect to an "EPCA compliant Covered Product."

Regulation 28 is structured to allow each Covered Building owner to undertake planning and analysis of their building's specific needs to identify the most appropriate compliance pathway. Regulation 28, Part B, § I.A. Although Plaintiffs generally allege that Regulation 28 requires Covered Buildings to take certain steps regarding Covered Products and creates standards disfavoring certain energy types, Complaint ¶¶ 12, 21.b, they fail to support these general claims with any specific factual allegations about any particular building. The allegations regarding the impacts of Regulation 28 on Covered Buildings are pled generally with regard to Plaintiffs' members, without reference to any particular member or any particular building. *Id.*, ¶¶ 120-27, 128-30. The lack of specificity in the Complaint is compounded by the supporting declarations, none of which indicate that any of Plaintiffs' members has determined that complying with Regulation 28 will require them to take any steps with regards to any specific Covered Product.

Moreover, many of Plaintiffs' allegations are pled "upon information and belief." *Id.*, ¶¶ 120-22, 128-29. Although "information and belief" pleading is appropriate where

the facts "are peculiarly within the possession and control of the defendant," such pleading arguably falls short of the minimum pleading requirements when the underlying facts are within the possession and control of a plaintiff. *See Wellons, Inc. v. Eagle Valley Clean Energy, LLC*, No. 15-CV-01252-RBJ, 2015 WL 7450420, at *2 (D. Colo. Nov. 24, 2015) (citing *Arista Records, L.L.C. v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010). Covered Building owners are responsible for selecting their compliance pathway and determining their options for complying with the Performance Standards, so the facts regarding those options (and the extent to which they preclude a Covered Building owner from using a Covered Product) are within Plaintiffs' possession and control and Plaintiffs' use of "information and belief" pleading is unjustified.

Even if these allegations were enough to satisfy Article III's "case or controversy" requirement, the contingent nature of Plaintiffs' claims would not be enough to pass muster under the prudential ripeness analysis. In *North Mill Street, LLC v. City of Aspen*, the Tenth Circuit considered the constitutional and prudential ripeness of a takings claim based on a zoning regulation. 6 F.4th 1216, 1229 (10th Cir. 2021). Although the court held that the claims were constitutionally ripe, it went on to analyze the prudential ripeness of their claims and held, in pertinent part, that the claims were not ripe because the plaintiff had "failed to adequately plead that 'the agency lacks the discretion to permit any development, *or the permissible uses of the property are known to a reasonable degree of certainty*.'" *Id.* at 1231 (emphasis added). Here, Plaintiffs' means of complying with the Performance Standards are not yet known to the degree of certainty necessary to allow this court to pass judgment on the validity of Regulation 28.

Plaintiffs' second claim faces additional ripeness hurdles because it concerns buildings that have not yet been built. Regulation 28, however, does not apply until after a building is constructed and is issued a certificate of occupancy. Regulation 28, Part B § I; *see* Section I.B.1, supra. Any possible injury to an owner of a Covered Building that has not yet been constructed is uncertain and contingent on future events, including whether the building is actually built and what types of equipment would provide its power or heating. Therefore, any potential future injury is too contingent or remote to support present adjudication. *S. Utah Wilderness All.,* 707 F.3d at 1160 (10th Cir. 2013).

Concerning the second prong of a ripeness review, because, as noted above, Plaintiffs have not yet selected their compliance pathways and any obligation to physically modify their Covered Buildings is not imminent, Plaintiffs do not face a "direct and immediate" dilemma and no hardship will result to either party from a decision to withhold judicial review until the facts relating to Plaintiffs' claims have developed to allow meaningful review. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).

## CONCLUSION

Because Plaintiffs lack standing to bring their first and second claims and their first and second claims are not ripe, State Defendants respectfully request that the Court dismiss these claims pursuant to Rules 12(b)(1) and 12(b)(6).

Respectfully submitted this 21st day of June, 2024.

PHILIP J. WEISER
Attorney General

*/s/ David Banas*
DAVID BANAS*
JACKIE CALICCHIO*
DAVID BECKSTROM**
W. CORY HALLER**
Assistant Attorneys General
Natural Resources and Environment Section
1300 Broadway, 7th Floor
Denver, CO 80203
Telephone: 720.508.6000
Email: David.banas@coag.gov
Jackie.calicchio@coag.gov
David.beckstrom@coag.gov
Cory.haller@coag.gov

* *Counsel of Record on behalf of Defendant Will Toor, in his Official Capacity as the Executive Director of the Colorado Energy Office*

**Counsel of Record on behalf of Defendants Jill Hunsaker Ryan, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, and Michael Ogletree, in his Official Capacity as the Director of the Colorado Air Pollution Control Division*