IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;

Plaintiffs,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MICHAEL JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency;

Defendants.

---

**DENVER'S MOTION TO DISMISS COMPLAINT**

---

The City and County of Denver; Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency (collectively referred to hereinafter as "Denver"), through undersigned counsel, hereby move to dismiss the Complaint in this matter and in support state as follows:

Certificate of Conferral

On June 12-13, 2024, undersigned counsel conferred with Plaintiffs' counsel regarding this motion and the reasons therefore, including that certain of the following deficiencies may be cured by amendment. Plaintiffs' counsel has indicated that this motion is opposed and will be responded to.

I.     INTRODUCTION

Plaintiffs are four organizations whose members either own or manage buildings in Colorado, some of which are located in Denver. In their Complaint they challenge the 2021 version of Denver's Ordinance, Energize Denver, which establishes a building performance program aimed at reducing greenhouse gas emissions in the city. The Energize Denver program requires buildings covered by the Ordinance to meet interim performance targets in 2024 and 2027 and then, a final goal in 2030.  Plaintiffs summarily state that the Ordinance cannot be complied with unless Plaintiffs install "Covered Products" which exceed federal energy efficiency guidelines, a compliance requirement they allege is pre-empted by federal law.[1] Plaintiffs make this allegation without identifying any specific Plaintiff association member, any specific building, or any specific Covered Product or Products that are implicated. Furthermore, other than broadly stating that "energy audits" have led them to conclude that unspecified association members cannot comply with Energize Denver without installing Overly Efficient Products, Plaintiffs include no factual allegations as to how they made this determination.

---

[1] Covered Products are consumer products such as refrigerators, air conditioners, water heaters, furnaces, etc. *See* 42 U.S.C. § 6292. For ease of discussion, for the remainder of this motion, Covered Products that exceed federal energy efficiency guidelines will be referred to as "Overly Efficient Products."

Moreover, Plaintiffs' "information and belief" allegations that Energize Denver cannot be complied with without the installation of Overly Efficient Products is inconsistent with the sworn-to allegations in the declarations accompanying the Complaint in that several declarants admit that certain of their buildings are already in compliance with Energize Denver. In addition, Plaintiffs' entire pre-emption argument is based on a tenuous Ninth Circuit decision which is not only inapplicable to Energize Denver, but which has never been adopted by this, or any other, jurisdiction. For these reasons and more, as explained more fully below, Plaintiffs have no standing to assert their claims, nor have they provided sufficient detail so as to satisfy applicable pleading standards. Accordingly, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

## II.     ENERGIZE DENVER ORDINACE AND REGULATIONS[2]

On December 20, 2016 the City and County of Denver first passed into law the High-Performance Existing Buildings Program ("Energize Denver" or "Ordinance") which has the stated purpose of "requir[ing] covered building owners to address existing building performance through energy efficiency, renewables, and/or renewable heating and cooling (electrification) to reduce greenhouse gas emissions from the built environment to further the City and County of Denver's climate action goal of zero greenhouse gas emissions in existing buildings by 2040." Denver Revised Municipal Code ("D.R.M.C."), §10-401 [Exhibit A]. Denver's Office of Climate Action, Sustainability, and Resiliency ("CASR") was given authority to adopt rules and

---

[2] The Energize Denver Ordinance and interpreting regulations are attached hereto as Exhibits A and B, respectively. Because these documents are referenced in the Complaint and are central to the Plaintiffs' claims [Doc. #1, ¶¶ 64-80], this Court may consider them as part of this motion to dismiss. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 138, 1385 (10th Cir. 1997).

3

regulations to implement the provisions of the Ordinance. *Id*. § 10-406 (hereinafter referred to as "CASR Regs") [Exhibit B].

On November 24, 2021, Denver passed into law performance goals for existing commercial buildings executed through a series of benchmarking targets. [Ex. A, §§ 10-404(a)]. For commercial buildings larger than 25,000 square feet, [3] Energize Denver requires that these covered buildings determine and report the subject building's Energy Use Intensity (EUI). EUI is the total energy use over 12 months divided by the building's total square footage and normalized for weather. [Ex. B, § 2.33]. Per regulation, every building type is given a target EUI to meet by 2030. For example, a distribution center is given a target EUI of 25.4, a restaurant is given a target EUI of 194.1, and a hotel is given an EUI of 61.1. [*Id*., § 4.3(A)]. Some types of buildings, such as ice arenas and convention centers, are not given an EUI target at all but are instead required to reduce their EUI by 30% overall. [*Id*.].

In order to assist the owners of covered buildings in reaching their 2030 goal and to achieve greenhouse gas emission reductions, Denver has established a set of interim targets based on the building's 2019 benchmarking data and does so by drawing a straight line from the covered building's 2019 baseline to the same building's final EUI target. [Ex. A, § 10-404(a); Ex. B, § 4.4(B)]. In this manner, CASR has set interim targets for both 2024 and 2027 which must be demonstrated by a Benchmark Submission due on June 1, 2025 and June 1, 2028 respectively. [Ex. B, § 4.8(A)(i)(a) and (b)].

Neither the D.R.M.C. nor the CASR Regs mandate the manner in which a Covered

---

[3] Although Energize Denver contains provisions for buildings smaller than 25,000 square feet, because the Complaint focuses exclusively on buildings larger than 25,000 square feet, this motion will also. [Doc. #1, ¶ 68].

Building meets its EUI target. However, if a building owner chooses to meet the EUI target through 80% whole building electrification, CASR offers a 10% increase to the 2030 EUI target. [*Id.*, § 4.5(A)]. Additionally, the CASR Regs offer a number of Alternate Compliance Options such as a Timeline Adjustment which gives a Covered Building additional time to meet its interim target [*Id.*, § 4.7(A)] and an alternate compliance option for a Covered Building that has been issued a 30% reduction goal or which is limited by the Landmark Preservation Board as to what energy efficient measures can be implemented. [*Id.*, § 4.7(C)]. Furthermore, proof of renewable power generation, either on- or off-site, is credited towards a building's total energy use. [*Id.*, § 4.8(C)]. Thus, a building owner has numerous available pathways by which to achieve the interim and final EUI goals.

### III.     ARGUMENT

#### A.   *Berkeley* does not apply to the circumstances described in the Complaint

Plaintiffs' preemption allegations stem from the narrow holding in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). [Doc. #1, ¶¶ 106-8]. However, Plaintiffs cannot establish that *Berkeley* controls in the circumstances pled in the Complaint. Furthermore, the decision has never been adopted in this or any other jurisdiction outside the Ninth Circuit.

The *Berkeley* decision itself is far from authoritative not only because of its holding, but because of its lack of support within the Ninth Circuit. After a petition for rehearing *en banc* was denied, a single judge authored the primary decision to which two judges filed separate, consenting opinions. Twelve judges dissented from the denial of the petition for rehearing and were very critical of the primary decision urging "any future court that interprets the Energy

5

Policy and Conservation Act not to repeat the panel opinion's mistake." *Id*. at 1119; *see also, Putting the Ban Back Together: A Critical Look at California Restaurant Association v. Berkeley*, 54 Envtl. L. Rep. 10325 (April, 2024) (finding panel opinion in *Berkeley* fundamentally flawed).

The Berkeley ordinance in question prohibited the installation of natural gas connections for new construction and it was this absolute prohibition that the court determined to be preempted by the EPCA. *Id*. at 1098. The court held that "by enacting the EPCA, Congress ensured that States and localities could not prevent consumers from using covered products in their homes, kitchens and business." In turn, Energize Denver contains no express prohibition regarding any type of energy source or Covered Product, although it admittedly incentivizes the use of renewable energy sources. [Ex. B, § 4.8(C)]. Nothing in *Berkeley* forbids the incentivization of one energy source over another nor does the case find preemption when compliance with a local ordinance is easier with the installation of certain products. *Berkeley* only deals with obvious and express prohibition of one type of energy. "We only decide that EPCA's preemptive scope applies to building codes that regulate the gas usage of covered appliances on premise where gas is otherwise available." *Berkeley*, 89 F.4th at 1103. Thus, Plaintiffs cannot demonstrate that *Berkeley* governs here.

B. <u>Plaintiff Organizations Have not Pled the Specific Facts Required to Establish Article III Standing</u>

The four organizations which are Plaintiffs here completely fail to plead the necessary factual elements for Article III organizational standing.[4]

---

[4] As Denver challenges standing based on the allegations in the Complaint, all material factual allegations in the Complaint are accepted as true. *Holt v. United States*, 46 F.3d 1000, 1002-03

       1. *Standing requires specific factual allegations*

Standing is an indispensable part of a plaintiff's case and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of litigation*.*" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). As such, affirmative factual allegations are required to establish standing and a plaintiff may not rely on arguments or conclusions. *FW/PBS, Inc. v. Dallas*, 492 U.S. 215, 231 (1990). Plaintiffs must allege specific facts to show jurisdiction and if they fail to make the necessary factual allegations, they have no standing. *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178, 189 (1936).

When Plaintiffs are organizations, as they are here, they must "make specific allegations establishing that at least one identified member has suffered or would suffer harm." *Summers v. Earth Island Institute*, 555 U.S. 488, 498 (2009); *see also Lujan*, 405 U.S. at 563 (organization plaintiffs lacked standing because no specific facts that one or more members directly affected). That means that each of the four Plaintiff organizations must establish that at least one of their members has been, or will imminently be, forced to install Overly Efficient Products for both existing and new buildings. When organizational plaintiffs fail to explicitly identify the individuals who have been, or imminently will be, harmed, they have no standing. *FW/PBS, Inc.*, 493 U.S. at 235.

The factual allegations required to establish Article III include that individual Plaintiff members "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

---

(10th Cir. 1995).

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Furthermore, the alleged injuries must be both particularized and concrete. *Id*., p. 340. Although a plaintiff with an alleged future injury may still have standing, the alleged future injury must be sufficiently imminent, which means "the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Dreihaus*, 572 U.S. 149, 158 (2014). For these reasons, speculative or hypothetical injuries may not serve as the basis for Article III standing. *See, e.g., Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 411 (2013) (alleged harm based on speculation and/or assumptions insufficient for Article III standing); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."). Furthermore, the allegation that a defendant has violated a federal statute is insufficient to establish standing unless a plaintiff has pled a concrete injury. *Id*. at 426.

        2.   *Plaintiffs Fail to Plead Specific Factual Details Necessary for Article III Standing*

Plaintiffs assert in two claims that Energize Denver is preempted by the EPCA because it "requires the replacement of existing Covered Products with [Overly Efficient Products] . . . and effectively prohibits the use of certain classes of EPCA regulated Covered Products" which rely on fossil fuels for new and existing buildings. [Doc. #1, ¶¶ 172-185].

Although this type of "effective prohibition" allegation is repeated several times in the Complaint [Doc. #1, ¶¶ 5, 51, 53, 72, 74, 102, 105, 109, 158, 174, 180, 182, 183], along with much "upon information and belief" pleading [Doc. #1, ¶¶ 102, 142, 143, 145, 150, 151], nowhere in the Complaint are there specific factual allegations which support these generalized allegations. As to Energize Denver specifically, completely absent are any details as to: 1) a

8

distinct Plaintiff association member that has determined that it must replace a Covered Product with an Overly Efficient Product; 2) a specific existing building in which a Covered Product must be replaced with an Overly Efficient Product; 3) a proposed new building with definite plans and a construction deadline, as opposed to vague plans for some unspecified future date, that must install Overly Efficient Products; 4) how Plaintiffs determined a specific Covered Product must be replaced with an Overly Efficient Product; 5) which implementation year (interim years 2024 or 2027, or final year 2030) a Plaintiff association member is unable to meet because they must replace a Covered Products with an Overly Efficient Product, or 6) why Plaintiffs have determined that Energize Denver goals cannot be complied with under any circumstance without the installation of an Overly Efficient Product.

Although Plaintiffs made twelve declarations part of their Complaint, the declarations do not contain the necessary information required to establish standing. First, the declarants most often do not distinguish between Energize Denver and Regulation 28, which itself is an impediment to Article III standing. More importantly, none of the declarants mention either Covered Products as a general category or a specific product which is included in the definition of Covered Products, for instance an air conditioner or furnace. Furthermore, as to any allegation that Energize Denver cannot be complied with except with the installation of Overly Efficient Products, several declarants contradict this allegation and admit that they own or manage buildings which already meet Energize Denver requirements. For instance, Ryan Rogers with Zocalo Community Development owns 12 developments subject to Energize Denver and currently manages six developments subject to Energize Denver; of those only three do not meet Ordinance performance requirements. [Doc. # 1-2, ¶¶ 8, 14]. James Lorenzen with Cornerstone

9

Apartment Services manages 24 multi-family buildings subject to Energize Denver; only 10 of these do not meet Ordinance performance standards. [Doc. # 1-3, ¶¶ 8, 14]. Craig Lessard with Woodspear PM-Member, LLC owns, operates and manages 15 buildings subject to either Energize Denver and/or Regulation 28 (the declarant is not specific) of which five do not meet one or both performance standards. [Doc. #1-4, ¶¶ 8, 9, 14]. Either these businesses have already installed Overly Efficient Products (which is not pled) or these declarants refute the "information and belief" allegations that Energize Denver cannot be complied with except with the installation of Overly Efficient Products and the allegations that Energize Denver "effectively" requires the installation of Overly Efficient Products.

### 3. *Plaintiffs Non-specific Allegations are Insufficient for Standing Purposes*

Although there are many allegations in the declarations included with the Complaint regarding the costs associated with energy audits and benchmarking requirements, Plaintiffs have made no claims that energy audits and benchmarking are in any way preempted by federal law. As regards to the Covered Products specifically, as shown above, Plaintiffs' allegations are so lacking in factual support that Plaintiffs have not met their burden of proof to establish standing. *See, e.g., FW/PBS,* 493 U.S at 235 (no standing when plaintiffs failed to identify specific individuals who were allegedly harmed by defendant's actions).

### 4. *Plaintiffs' allegations of harm are not particularized, concrete or imminent*

For very similar reasons, because there are no specific factual allegations regarding the need to install Overly Efficient Products, Plaintiffs' claims of alleged harm are neither particularized nor concrete. To be concrete, an injury "must actually exist." *Spokeo*, 578 U.S. at 340. Because Plaintiffs do not include any definite pleading regarding a specific Plaintiff

member who has or will imminently be forced by Energize Denver to install an Overly Efficient Product, they have not established a particularized, concrete injury that actually exists.

Furthermore, because Energize Denver is implemented through a series of interim target dates prior to the 2030 final target, and because Plaintiffs do not specify whether they will be in violation of an interim target or the final target, Plaintiffs have not established that any injury, even if it were sufficiently particularized or concrete, is imminent. An alleged future injury is sufficiently imminent "if the threatened injury is certainly impending, or there is a substantial risk that harm will occur." *Susan B. Anthony List*, 573 U.S. at 158 (quotations omitted). While a violation of the 2024 target may arguably be imminent, a violation of the 2027 or the 2030 targets has no such imminency. Plaintiffs simply cannot predict what changes will take place in the buildings, Covered Products, applicable laws, regulations and technology in the next six years which may or may not impact their ability to comply with the Ordinance. When Plaintiffs fail to demonstrate that the risk of future harm will materialize, they have no standing. *TransUnion*, 594 U.S. at 437. Plaintiffs therefore have no standing and their Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

C. <u>Once all Conclusory Allegations are Properly Disregarded, Plaintiffs do not Plausibly State a Cause of Action</u>

In addition to being insufficient for Article III standing, Plaintiffs' general and conclusory allegations do not suffice to state a cause of action upon which relief can be granted. "To survive a motion to dismiss for failure to state a claim upon which relief can be given, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility means that the plaintiff has pled facts which

11

allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. A complaint that offers only "'labels and conclusions' [or] 'naked assertion[s]' devoid of 'further factual enhancement'" is not sufficiently pled so as to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Iqbal*, 556 U.S. at 678 (2009), (citing *Twombly*, 550 U.S. at 577). Furthermore, allegations in a complaint that are supported only by conclusions, rather than facts, are not afforded the assumption of truth. *Id*. at 678, 679, 691. When examining the sufficiency of the allegations of a complaint under Fed. R. Civ. P. 12(b)(6), the Court should disregard conclusory allegations and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable. *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

It is not apparent from the Complaint whether or not Plaintiffs allege that Energize Denver, on its face, requires the installation of Overly Efficient Products. This lack of clarity strongly suggests that, even if they are attempting to assert preemption based on the facial requirements of the Ordinance, they have failed to do so. Furthermore, Plaintiffs have not referenced a specific section or sections of either the Ordinance or the CASR Regs which, they allege, require the installation of Overly Efficient Products. As such, any allegation that Energize Denver explicitly requires the installation of Overly Efficient Products is nothing more than a "naked assertion" and, therefore, insufficient for Rule 12(b)(6) purposes. *Iqbal*, 556 U.S. at 678.

Plaintiffs repeatedly plead that the Ordinance "effectively require[s] that Covered Products a Covered Building owner installs exceed federal DOE energy efficiency standards" and yet plead no specific facts to establish this allegation. [*See, e.g.*, Doc. #1, ¶ 74]. As mentioned in the previous section, Plaintiffs specify no particular Plaintiff association member,

no particular building, no particular Covered Product nor do they give any details, other than that the information came from energy audits [Doc. #1, ¶ 21(b)], as to how they have determined that Energize Denver "effectively" requires the installation of Overly Efficient Products. [Doc. #1, ¶¶ 5, 51, 53, 72, 74, 102, 105, 109, 158, 174, 180, 182, 183]. Absent this type of detailed pleading, Plaintiffs have not "nudged [their] claim[s] 'across the line from conceivable to plausible.'" *Iqbal,* 556 U.S. at 683, (citations and quotes omitted). Accordingly, the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### D.  Plaintiffs' Claims are Barred by the Statute of Limitations

A statute of limitations defense may be raised in a Rule 12(b) motion when the complaint makes clear that the right sued upon has lapsed. *Lee v. Rocky Mountain UFCW Unions & Emp'rs Tr. Pension Plan,* 13 F.3d 405, at *1 (10th Cir.1993) (Table). As noted in the motion to dismiss by proposed Intervenor-Defendants Coalition for Community Solar Access, Colorado Solar and Storage Association, Natural Resources Defense Council and Sierra Club ("Proposed Intervenors"), Plaintiffs' claims are untimely under both the 60-day statute of limitations period under the EPCA or the "catch-all" two-year statute of limitations under Colorado statute, C.R.S.A. § 13-80-102(h), that governs challenges to government action. The Energize Denver ordinance that Plaintiffs are challenging, establishing the interim benchmarking and target goal in 2024, 2027 and 2030, was passed into law on November 24, 2021, clearly more than two years prior to Plaintiffs' April 22, 2024 complaint. Plaintiffs' lawsuit is therefore barred by the applicable statute of limitations.

### IV.  CONCLUSION

For all the foregoing reasons, the Complaint in this matter must be dismissed pursuant to

Fed. R. Civ. P. 12(b)(1) because Plaintiffs do not have standing and/or pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs do not state a claim upon which relief can be given and the action is barred by the statute of limitations.

      Respectfully submitted this 24th day of June, 2024.

                    By: *s/ Michele A. Horn*
                          Michele A. Horn
                          Edward J. Gorman
                          Assistant City Attorneys
                          City and County of Denver
                          201 West Colfax Avenue, Dept. 1207
                          Denver, CO 80202-5332
                          (720) 913-3275
                          michele.horn@denvergov.org
                          edward.gorman@denvergov.org
                          *Attorneys for Defendants the City and County of Denver, Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency*

## CERTIFICATE OF SERVICE

      I hereby certify that on June 24, 2024, I caused a true and correct copy of the foregoing **DENVER'S MOTION TO DISMISS COMPLAINT** to be electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

Paul M. Seby
Matthew K. Tieslau
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, CO  80202
Email: sebyp@gtlaw.com
        tieslaum@gtlaw.com
*Attorneys for Plaintiffs*

                                                */s/ Shannon Egan*
                                                Shannon Egan, Paralegal
                                                City and County of Denver
                                                201 West Colfax Avenue,
                                                Dept. 1207
                                                Denver, Colorado  80202-5332