**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO
DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAOIP
COLORADO CHAPTER;

       *Plaintiffs,*

    v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the
Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his
Official Capacity as the Director of the Colorado Air Pollution Control Division; AND
WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy
Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER
MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION,
SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official
Capacity as the Executive Director of the Denver Office of Climate Action,
Sustainability, and Resiliency.

       *Defendants.*

_____

**MOTION TO INTERVENE AND MEMORANDUM OF POINTS AND AUTHORITIES
OF THE COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR
AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL,
AND SIERRA CLUB**

_____

## TABLE OF AUTHORITIES

**Cases**

*Kane Cnty. v. United States (Kane 2019)*, 928 F.3d 877 (10th Cir. 2019)....... 7, 8, 12, 13

*Kane Cnty. v. United States (Kane 2024)*, 94 F.4th 1017 (10th Cir. 2024).......... 7, 13, 14

*NRDC v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341 (10th Cir. 1978) ........... 8, 12, 13

*Pennsylvania v. President United States of Am.*, 888 F.3d 52 (3d Cir. 2018) ................ 8

*Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525 (9th Cir. 1983) ................................. 15

*San Juan Cnty. v. United States*, 503 F.3d 1163 (10th Cir.2007) (en banc).............. 7, 13

*Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977) ..................... 15

*Trbovich v. United Mine Workers*, 404 U.S. 528 (1972) ................................................. 13

*United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995) .................................... 13

*Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246 (10th Cir. 2001)......................... 7, 13, 14

*Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229 (10th Cir. 2021) ............................................................................................................................. 8

*W. Energy All. v. Zinke*, 877 F.3d 1157 (10th Cir. 2017) ....................................... 7, 8, 14

*WildEarth Guardians v. Nat'l Park Serv.*, 604 F.3d 1192 (10th Cir. 2010)................ 8, 13

**Statutes**

C.R.S. § 25-7-102(2)(b)..................................................................................................... 2

C.R.S. § 25-7-102(2)(g)(I) ................................................................................................ 3

C.R.S. § 25-7-142(1)........................................................................................................ 8

C.R.S. § 25-7-142(1)(a)............................................................................................... 3, 10

C.R.S. § 25-7-142(1)(b)........................................................................................... 3, 9, 10

C.R.S. § 25-7-142(1)(d)............................................................................................... 3, 11

C.R.S. § 25-7-142(1)(f)(I) .............................................................................................. 12

C.R.S. § 25-7-142(1)(g)..................................................................................................... 3

C.R.S. § 25-7-142(1)(h)..................................................................................................... 3

*C.R.S.* § 25-7-142(2)(j)..................................................................................................... 3

C.R.S. § 25-7-142(8)(a)(I) .............................................................................................. 14

C.R.S. § 25-7-142(8)(a)(II) ................................................................................ 3

C.R.S. § 25-7-142(8)(a)(III) ............................................................................ 14

C.R.S. § 25-7-142(8)(a)(V) ............................................................................. 14

C.R.S. § 25-7-142(8)(d) .................................................................................. 14

## Ordinances

Denver, Colo., Council Bill CB21-1310 (Nov. 24, 2021) ........................... 8, 10

Denver, Colo., Rev. Mun. Code ch. 10, art. XIV, § 10-404(a) ........................ 4

## Court Rules

D. Colo. Civ. R. 7.1(a) ..................................................................................... 2

Fed. R. Civ. P. 24(a)(2) ................................................................................. 1, 6

Fed. R. Civ. P. 24(b)(1) .................................................................................. 15

Fed. R. Civ. P. 24(b)(1)(B) .............................................................................. 2

## Regulations

87 Fed. Reg. 60926 (Oct. 7, 2022) (to be codified at 40 C.F.R. pts. 52, 81) ................. 2

Regulation 28, 5 C.C.R. § 1001-32 (2023) ...................................................... 3

## Other Authorities

American Lung Association, *State of the Air 2024: Most Polluted Cities* (last visited June 12, 2024) ..................................................................................... 2

Colorado Communities for Climate Action, Regulation 28 Rulemaking Prehearing Statement (June 5, 2023) ..................................................................... 9, 10

Colorado Governor's Office Climate Preparedness and Disaster Recovery, *Colorado Climate Preparedness Roadmap* (Dec. 2023) ............................................. 2

Denver Department of Public Health & Environment, *Denver 80 x 50 Climate Action Plan* (July 2018) ....................................................................................... 3

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................... 1

CONFERRAL STATEMENT ................................................................................... 2

BACKGROUND ..................................................................................................... 2

I.    Colorado's Building Performance Standards ....................................... 2

II.    Proposed Intervenors ........................................................................... 4

ARGUMENT........................................................................................................... 6

I.    Proposed Intervenors Are Entitled to Intervene as a Matter of Right................... 6

    A.    This Motion for Intervention is Timely. ........................................ 7

    B.    Proposed Intervenors Have Interests in this Action. .................... 7

    C.    Proposed Intervenors' Interests May Be Impaired by this Litigation.............. 12

    D.    Proposed Intervenors' Interests Are Not Adequately Represented.............. 13

II.    Alternatively, Proposed Intervenors Satisfy the Standard for Permissive Intervention........................................................................... 14

CONCLUSION ..................................................................................................... 15

## INTRODUCTION

In order to address buildings' significant contributions to climate-altering greenhouse gas emissions, health-harming air pollution, and rising energy costs, the Colorado Air Quality Control Commission and Denver City Council developed state and city-level building performance standards. These standards require the owners of large buildings to gradually reduce the emissions associated with those buildings' energy use, and provide numerous compliance pathways and flexibilities to achieve these reductions. Instead of taking advantage of these flexibilities and pursuing cost-effective building improvements that will benefit tenants, reduce harmful air pollution, and advance science-based climate objectives, Plaintiffs filed a lawsuit claiming that these standards are preempted by the federal Energy Policy and Conservation Act ("EPCA"). Plaintiffs' broad attack on these flexible standards seeks to undermine the longstanding balance of federal-state authority and give EPCA's preemption provision a more expansive reach than any court has recognized. While the Plaintiffs' claims lack merit, the Court should not even reach the merits. As explained in the Proposed Motion to Dismiss, all of the Plaintiffs' claims are barred by the statute of limitations.

Sierra Club, Natural Resources Defense Council ("NRDC"), Colorado Solar and Storage Association ("COSSA") and the Coalition for Community Solar Access ("CCSA") (collectively, "Proposed Intervenors") move to intervene as defendants to uphold the Building Performance Standards. The Court should grant this motion to intervene as of right, pursuant to Federal Rule of Civil Procedure 24(a)(2), because Proposed Intervenors meet the relevant requirements and intervention will not prejudice

any party. In the alternative, the Court should grant Proposed Intervenors' motion for permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(1)(B).

## CONFERRAL STATEMENT

Pursuant to Local Rule 7.1(a), counsel for Proposed Intervenors have conferred with the existing parties regarding this motion. Denver does not oppose the motion. The State Defendants take no position. The Plaintiffs oppose the motion.

## BACKGROUND

### I. Colorado's Building Performance Standards

Climate change, air pollution, and the increasingly volatile costs of fossil fuels are seriously harming Colorado, and threaten to intensify if the State fails to mount a strong, comprehensive policy response. Climate change is contributing to increased frequency and severity of wildfires in Colorado, as well as drought, decreased snowpack, and extreme weather from high winds to heat waves. C.R.S. § 25-7-102(2)(b); Colorado Governor's Office Climate Preparedness and Disaster Recovery, *Colorado Climate Preparedness Roadmap* 2 (Dec. 2023), https://drive.google.com/file/d/1jU1R5a1a6Xm 39UpCb3OJyj7SK_-otuqt/view; Movants' App., p. 7 - Bhatt Decl. Persistently unhealthy air quality has put Colorado's most populous areas along the Front Range in "Severe" nonattainment of federal air quality standards and led to an "F" grade in the American Lung Association's 2024 State of the Air Report. 87 Fed. Reg. 60926, 60936 (Oct. 7, 2022) (to be codified at 40 C.F.R. pts. 52, 81); American Lung Association, *State of the Air 2024: Most Polluted Cities*, https://www.lung.org/research/sota/city-rankings/most-polluted-cities (last visited June 12, 2024); Movants' App., p. 7 - Bhatt Decl.

To ensure that Colorado does its part to address the climate crisis while improving its air quality and shifting from reliance on costly fossil fuels to a thriving clean energy economy, the General Assembly set a target to reduce Colorado's economy-wide greenhouse gas emissions 50% by 2030, 75% by 2040, and 100% by 2050, with additional interim targets along the way. C.R.S. § 25-7-102(2)(g)(I). Denver has similarly set a target of reducing city-wide emissions 80 percent by 2050. Denver Department of Public Health & Environment, *Denver 80 x 50 Climate Action Plan* 1-3 (July 2018), https://climate.colorado.gov/denver-80x50-climate-action-plan.

In 2021, the Colorado General Assembly enacted House Bill 21-1286, recognizing that large buildings contribute significantly to Colorado's greenhouse gas emissions and air pollution, and that these emissions can be reduced through a flexible range of building improvements. C.R.S. § 25-7-142(1)(a)-(b), (d), (g)-(h). House Bill 21-1286 directed Colorado's Air Quality Control Commission ("AQCC" or "Commission") to enact performance standards that apply to most buildings 50,000 square feet or larger, and that reduce these buildings' greenhouse gas emissions 7% by 2026 and 20% by 2030. *Id.* § 25-7-142(2)(j), (8)(a)(II).

The Commission carried out this legislative directive in August 2023 by enacting Regulation 28, which provides a range of compliance pathways and provisions for adjusting and delaying compliance requirements. 5 C.C.R. § 1001-32. The owners of covered buildings have many compliance options, including weatherization, energy efficiency upgrades, replacing polluting fossil fuel equipment with non-emitting electric

equipment, and the use of distributed renewable energy and storage such as rooftop solar and batteries.

Colorado's statewide standards build on the foundation laid by Energize Denver, which sets energy performance standards for most buildings in Denver that are 25,000 square feet or larger, targeting 30% energy savings from these buildings by 2030. Denver, Colo., Rev. Mun. Code ch. 10, art. XIV, § 10-404(a). Like Regulation 28, it provides a flexible range of compliance pathways and adjustments, allowing each covered building owner to select the measures that will meet its performance targets most cost-effectively.

Together, House Bill 21-1286, Regulation 28, and the Energize Denver ordinance and regulations (collectively, "the Building Performance Standards" or "the Standards") are a critical part of Denver and Colorado's strategies to address buildings' significant contribution to city and statewide emissions, and to meet broader decarbonization objectives. They will also significantly reduce health-harming air pollution from energy use in large buildings.

## II.     Proposed Intervenors

Proposed Intervenors have a long history of advocating for the policies necessary to reduce harmful air pollution, advance the efficient use of clean energy, and avoid catastrophic harm from climate change, including the challenged Standards. Each Proposed Intervenor represents members who will benefit from the Standards' contributions to improved air quality, reduced greenhouse gas emissions, efficient homes and buildings, and Colorado's clean energy economy.

Sierra Club is a grassroots environmental organization with 19,310 members in Colorado. Movants' App., p. 1 - Tresedder Decl. These members include people harmed by climate change and air pollution, building decarbonization policy advocates, and renters that are directly affected by the energy use of covered buildings. Sierra Club's mission is to enjoy, explore, and protect the wild places of the Earth; to practice and promote the responsible use of the Earth's ecosystems and resources; and to educate and enlist humanity to protect and restore the quality of the natural and human environment. *Id.* One of Sierra Club's strategic objectives focuses on a clean and just energy transition, including the reduction of greenhouse gas emissions from fossil fuels used in buildings and the energy sector. *Id.* at 2.

NRDC is a national, nonprofit environmental and public health organization with several hundred thousand members nationwide. *Id.* at 22-23 - Trujillo Decl. NRDC engages in research, advocacy, media, and litigation related to protecting public health and the environment. One of NRDC's top priorities is to fight climate change by cutting carbon emissions and building the clean energy economy. As part of this work, NRDC promotes the use of sustainable energy sources and energy efficiency to reduce greenhouse gas pollution, lower consumer energy bills, and minimize the adverse environmental impacts of the built environment, including upstream impacts resulting from electricity generation and fossil fuel production.

COSSA is a nonprofit trade association serving energy professionals, solar companies, energy storage providers, and clean energy users in Colorado. *Id.* at 25 - Kruger Decl. COSSA's membership is comprised of clean energy users and nearly 300

solar- and storage-related businesses and advocates representing thousands of Colorado employees, including solar electric, solar thermal, and energy storage contractors. *Id.* COSSA and its members are advocates for policies to reduce greenhouse gas emissions attributable to buildings, including building performance standards. COSSA's members provide the equipment, services, and greenhouse gas reductions that building owners need to comply with the Standards challenged in this lawsuit. *Id.*

CCSA is a 501(c)(6) nonprofit trade association working to democratize solar energy by creating a more distributed, customer-centric electricity grid through access to community solar. *Id.* at 27 - Cray Decl. CCSA has fought to expand access to solar energy for customers and businesses that cannot participate in traditional on-site solar offerings across the country and is currently active in all major community solar markets at the state and federal level. CCSA and its members support the challenged Standards, which recognize community solar subscriptions as a potential compliance option.

### **ARGUMENT**

### I.      **Proposed Intervenors Are Entitled to Intervene as a Matter of Right.**

Intervention as a matter of right under Federal Rule of Civil Procedure 24(a)(2) is warranted if (1) the application is timely; (2) the applicant has an interest relating to the property or transaction that is the subject of the litigation; (3) the applicant's interest may as a practical matter be impaired or impeded by the litigation; and (4) the applicant's interest may not be adequately represented by the parties before the court. *Kane Cnty.*

*v. United States (Kane 2024)*, 94 F.4th 1017, 1029-30 (10th Cir. 2024). The rule is liberally construed to favor intervention. *W. Energy All. v. Zinke*, 877 F.3d 1157, 1164 (10th Cir. 2017). Proposed Intervenors meet the four relevant criteria.

### A. This Motion for Intervention is Timely.

Timeliness of intervention is evaluated "in light of all the circumstances." *Utah Ass'n of Cntys. v. Clinton*, 255 F.3d 1246, 1250 (10th Cir. 2001) (citation omitted). Proposed Intervenors have sought intervention just two months after the Complaint was filed, one business day after the State Defendants filed their responsive pleading, and on the same day Denver filed its responsive pleading. *Cf. id.* at 1250-51 (finding intervention motion timely when it was filed two and a half years after complaint, and after some initial proceedings). At this early stage of litigation, no party would suffer prejudice from granting this intervention motion. This motion is timely.

### B. Proposed Intervenors Have Interests in this Action.

The Tenth Circuit applies "practical judgment" to determine whether the strength of an applicant's interest in the subject of the litigation justifies intervention. *Kane Cnty. v. United States (Kane 2019)*, 928 F.3d 877, 891 (10th Cir. 2019). It is "indisputable" that an applicant's environmental concern constitutes an interest sufficient to meet this standard.[1] *Kane 2024*, 94 F.4th at 1030 (citing *WildEarth Guardians v. Nat'l Park Serv.*,

---

[1] An intervenor does not need to independently establish Article III standing if it seeks the same relief as an existing party. *Kane 2019*, 928 F.3d at 886-87 (citing *San Juan Cnty. v. United States*, 503 F.3d 1163, 1172 (10th Cir.2007) (en banc)). An applicant

604 F.3d 1192, 1198 (10th Cir. 2010)). The health effects of air pollution, which are closely related to these environmental concerns, have likewise been recognized as a legally protectable interest. *See Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241-46 (10th Cir. 2021). The interest requirement is also satisfied by an applicant's economic interests that would be affected by the outcome of the litigation, including its stare decisis effect. *See NRDC v. U.S. Nuclear Regul. Comm'n*, 578 F.2d 1341, 1344-45 (10th Cir. 1978). Finally, an applicant's "record of advocacy" on an issue can establish a sufficient interest, such as an interest in preserving a policy that the applicant helped develop. *Zinke*, 877 F.3d at 1165-66.

Proposed Intervenors have multiple, substantial interests that relate to the Building Performance Standards at issue in this lawsuit, many of which are among the core interests that House Bill 21-1286 and the Energize Denver ordinances were expressly designed to promote. C.R.S. § 25-7-142(1); City of Denver, Council Bill CB21-1310 (attached in App. to the Mot. for Judicial Notice, p. 56).

---

seeking to intervene to defend a challenged law seeks the same relief as the government defendant: "namely, the upholding of the law." *Id.* at 887 n.12 (citing *Pennsylvania v. President United States of Am.*, 888 F.3d 52, 57 n.2 (3d Cir. 2018)). Thus, Proposed Intervenors need not establish their independent standing because they seek the same relief as the Defendants and as one another. Nevertheless, as this Motion and the declarations included in the attached Appendix demonstrate, all Proposed Intervenors satisfy the Article III standing requirements. *See id.* at 888-89.

First, large buildings' energy use harms Proposed Intervenors' members by contributing significantly to air pollution, both through the buildings' direct combustion of fossil fuels and through their consumption of electricity that is generated by fossil fuel combustion. Movants' App., p. 8 - Bhatt Decl.; C.R.S. § 25-7-142(1)(b) (finding that impacts of buildings' energy consumption include "community health costs associated with air pollution"). The direct combustion of gas in buildings alone represents 5% of all emissions of ozone-forming nitrogen oxide pollution in the Front Range ozone nonattainment area—as much as all of the area's power plants. Colorado Communities for Climate Action, Regulation 28 Rulemaking Prehearing Statement at 9-13 (June 5, 2023), https://drive.google.com/file/d/1hKd4wu9Vvm9eBpHquZh1KrDeeLw7NMb9/view.

This pollution, which the challenged Standards will reduce, harms the health of Proposed Intervenors' members, who include students, retirees, renters, and utility customers. These members have experienced health harms ranging from fatigue to headaches, and they fear far worse if Colorado's air quality is not improved. Movants' App., pp. 9 - Bhatt Decl., 13 - Menke Decl., 18 - Hernandez Decl. Air pollution also harms members' aesthetic and recreational interests in their environment. Concerns about exposure to pollution have forced them to restrict their participation in the outdoor activities they love, including running, hiking, and birdwatching. *Id.* at 8-9, 13, 18. Air pollution also impairs visibility, harming members by obscuring natural scenery and creating a literal dark cloud over the cities they call home. *Id.* at 8-9, 13-14, 18.

Second, Proposed Intervenors' members have an interest in the Building Performance Standards' role in addressing covered buildings' meaningful contributions

to climate change, which is already harming them and their communities. For example, one member has evacuated his home twice in recent years to flee nearby wildfires. *Id.* at 9 - Bhatt Decl. He has now fireproofed his home at significant expense, and lives with a suitcase packed, ready to evacuate at a moment's notice. *Id.*

The General Assembly has determined that buildings represent "a significant source of greenhouse gas pollution in the state of Colorado," and that a building's emissions "produce impacts far beyond its walls … including … broader societal costs of anthropogenic climate change." C.R.S. § 25-7-142(1)(a)-(b). The Colorado Air Pollution Control Division has determined that large buildings emit 9.25 million metric tons of greenhouse gas emissions per year. Movants' App., p. 2 - Tresedder Decl. The challenged Standards will reduce these emissions and support climate resilience by promoting access to distributed energy generation, energy storage, and affordable cooling that can provide protection against weather-related grid outages, energy price spikes, and heat waves. City of Denver, Council Bill CB21-1310 (attached in App. to the Mot. for Judicial Notice, p. 56); Colorado Communities for Climate Action, Regulation 28 Rulemaking Prehearing Statement at 20. Proposed Intervenors have an interest in preserving these benefits.

Third, Proposed Intervenors' members include renters in covered apartment buildings who have an economic interest in utility bill savings from energy efficiency improvements that the Standards encourage their landlords to make. These members are concerned about rising energy bills, and frustrated that their bills are determined in part by building-level energy use practices that are out of their hands. Movants' App.,

pp. 14-15 – Menke Decl., 19-20 – Hernandez Decl. After being shocked by an especially high gas bill, one member turned her heat down by several degrees, choosing to go beyond her usual energy conservation habits and shiver rather than shell out. *Id.* at 19. All the while, her apartment continued to leak warm air through improperly sealed openings and hobble along with quick fixes to hot water lines. *Id.* House Bill 21-1286 aims to address precisely this type of problem, recognizing that "[b]uilding tenants that pay energy bills often lack the ability to implement building upgrades that could improve performance, reduce emissions, and reduce those costs." C.R.S. § 25-7-142(1)(d). The challenged Standards encourage covered building owners to implement compliance options that will save energy and reduce renters' bills by, among other things, upgrading windows and sealing drafty doors. They also allow apartment buildings to offset energy use through on-site solar and subscriptions in community solar gardens. These programs can be coupled with other programs offered by Colorado's utilities to help decrease the cost of electricity for renters. Movants' App., pp. 25-26 – Kruger Decl.

Fourth, COSSA and CCSA's members have business interests that will be impacted by this litigation. These members provide products and services that will help covered buildings meet the challenged Standards, including distributed renewable energy generation through rooftop solar and community solar gardens, battery storage, and energy management services throughout the supply chain that facilitate access to these programs. *Id.* Covered building owners have already initiated conversations with COSSA and CCSA members about services they plan to procure in order to meet the

11

Standards. *Id.* at 25, 27. If the Plaintiffs succeed in overturning the Standards, COSSA and CCSA members will suffer financial harm by losing business opportunities to help building owners comply with the Standards. *See NRDC*, 578 F.2d at 1344-45 (finding uranium mining company and trade association had sufficient interest in a suit that could affect the company's future opportunity to receive a license and obtain associated business opportunities). Business opportunities such as these can lead to job growth, as expressly contemplated by House Bill 21-1286. C.R.S. § 25-7-142(1)(f)(I).

Finally, Proposed Intervenors have an interest in preserving the policies that they collectively worked for years to help develop. At the state level, Sierra Club supported passage of House Bill 21-1286 through grassroots activism, NRDC filed public comments in the Regulation 28 rulemaking, and COSSA intervened as a party in the Regulation 28 rulemaking to advocate for inclusion of renewable energy as a compliance option. Movants' App., pp. 3-4 – Tresedder Decl., 23 – Trujillo Decl., 26 – Kruger Decl. Sierra Club, NRDC, and COSSA all served on the Energize Denver Task Force whose recommendations informed the Energize Denver ordinance and regulations. *Id.* at 3, 23, 26. Proposed Intervenors' broader record of advocacy on building decarbonization and clean energy includes years of advocacy in forums ranging from the General Assembly and Denver City Council to Colorado's Air Quality Control Commission and the Public Utilities Commission. *Id.* at 3, 27 – Cray Decl.

### C.   Proposed Intervenors' Interests May Be Impaired by this Litigation.

Establishing that an applicant's interest may be impaired by the litigation "presents a minimal burden." *Kane 2019*, 928 F.3d at 891 (quoting *WildEarth*

*Guardians*, 604 F.3d at 1199). The existence of an applicant's interest is typically sufficient to show that the litigation may impair it. *See Clinton*, 255 F.3d at 1253 (quoting *NRDC*, 578 F.2d at 1345). The applicant's interest may be indirect and contingent on the outcome of the litigation, as long as it is not "wholly remote and speculative." *San Juan Cnty.*, 503 F.3d at 1203 (quoting *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995)).

Here, Plaintiffs seek to enjoin implementation of the Standards, as well as a declaratory judgment that the Standards are "void and unenforceable." Compl. ¶ 194. As explained above, the Standards would benefit the Proposed Intervenors' members by reducing the air pollution they breathe, reducing the harms from climate change that they experience, reducing their gas and electric bills, and increasing their business opportunities. Granting Plaintiffs' requests to overturn the Standards would impair Proposed Intervenors' interest in obtaining these benefits, as well as their interest in preserving policies that they helped develop.

### D.   Proposed Intervenors' Interests Are Not Adequately Represented.

An applicant's "minimal" burden under the fourth criterion is satisfied by a showing that representation of its interests by existing parties "may be" inadequate. *Kane 2024*, 94 F.4th at 1030 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Representation is normally considered adequate only where the interests of the intervenor and an existing party are "identical." *Id.* at 1030, 1033. The fact that an applicant seeks the same form of relief as an existing party does not render their interests identical. *Id.* at 1032 (citing *Kane 2019*, 928 F.3d at 887 n.13). Where the

existing party is a government, the government usually cannot adequately represent both the narrow interests of a private intervenor and the public's broad set of competing interests. *Id.* at 1030 (citing *Zinke*, 877 F.3d at 1168; *Clinton*, 255 F.3d at 1256).

No existing party adequately represents Proposed Intervenors' interests. Plaintiffs of course hold directly adverse interests. As government entities, the Defendants must balance many competing interests in determining their policy and litigation positions, including interests adverse to Proposed Intervenors. These competing interests are reflected in the statutory directives that require multiple perspectives to be considered and harmonized in developing and implementing the Standards. *See, e.g.*, C.R.S. § 25-7-142(8)(a)(I), (8)(a)(III), (8)(a)(V), (8)(d) (requiring the State Standards to be informed by recommendations on wide-ranging topics made by a task force that includes representatives of building owners, architects, developers, energy utilities, and others). Moreover, Proposed Intervenors seek to defend both the City and State Standards, which situates them differently from either of the existing Defendants and creates unique interests in the cross-cutting dimensions of this case that affect both sets of Standards. Because Proposed Intervenors' interests are not identical to those of any existing party, they have met their minimal burden to show there may be inadequate representation of their interests.

## II.  Alternatively, Proposed Intervenors Satisfy the Standard for Permissive Intervention.

Alternatively, this Court should grant permissive intervention because Proposed Intervenors have "a claim or defense that shares with the main action a common question of law or fact" and the intervention will not "unduly delay or prejudice the

adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). Proposed

Intervenors' defenses are factually and legally related to the main action. They seek to

defend the Building Performance Standards and prevent an injunction against their

implementation. Intervention will not prejudice any existing party or delay the

proceedings, given the early stage of this case. *See supra*, Section I.A.

Moreover, Proposed Intervenors "will significantly contribute … to the just and

equitable adjudication of the legal questions presented." *Spangler v. Pasadena City Bd.

of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). Resolution of this litigation will be aided

by Proposed Intervenors' specialized knowledge of climate policy and law at local, state,

and federal levels, and their experience engaging in the legislative and rulemaking

processes that led to the challenged Standards. *See Sagebrush Rebellion, Inc. v. Watt*,

713 F.2d 525, 528 (9th Cir. 1983) (noting specialized expertise of environmental

nonprofit seeking intervention). In addition, the Proposed Intervenors have experience

litigating the legal issue at the heart of the Plaintiffs' claims: the scope of EPCA's

preemptive effect on state and local laws. *See* Movants' App., pp. 4 – Tresedder Decl.

Thus, the Proposed Intervenors satisfy the criteria for permissive intervention.

## CONCLUSION

For the reasons set forth above, Proposed Intervenors respectfully request that

this Court grant their motion to intervene as of right, or, in the alternative, for permissive

intervention.

Dated this 24th day of June, 2024

/s/ Matthew Gerhart
Matthew Gerhart
Senior Attorney
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

Jim Dennison
Staff Attorney
Sierra Club
1650 38th St # 103W
Boulder, CO 80301
(435) 232-5784
jim.dennison@sierraclub.org

***ATTORNEYS FOR SIERRA CLUB***

/s/ Ellen Howard Kutzer
Ellen Howard Kutzer
General Counsel
Colorado Solar and Storage Association
1536 Wynkoop St., Suite 104
Denver, CO 80202
(303) 333-7342
ekutzer@cossa.co

***ATTORNEY FOR COLORADO SOLAR AND
STORAGE ASSOCIATION AND COALITION
FOR COMMUNITY SOLAR ACCESS***

<u>/s/ Joe Vukovich</u>
Joe Vukovich
Staff Attorney
Natural Resources Defense Council
1152 15 T H ST. NW
Suite 300
Washington, D.C. 20005
(202) 717-8344
JVukovich@nrdc.org

***ATTORNEY FOR NATURAL RESOURCES
DEFENSE COUNCIL***

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of June, 2024, a true and correct copy of the foregoing **MOTION TO INTERVENE** was served via the CM/ECF system upon all counsel of record in this matter.


/s/ *Maddie Lipscomb*
Maddie Lipscomb