# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01093

**COLORADO APARTMENT ASSOCIATION et al.**

      Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, et al.**

      Defendants.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DENVER'S MOTION TO DISMISS COMPLAINT**
_____

Plaintiffs have challenged City and County of Denver, Colorado's Denver Ordinance No. 20211310 ("Energize Denver Ordinance"), and the implementing rules for Energize Denver issued by the Denver Office of Climate Action, Sustainability, and Resiliency entitled "Rules & Regulations Governing Energize Denver Building Energy Performance Requirements" ("Energize Denver Regulations") (the Ordinance and Regulations may be collectively referred to as "Energize Denver").  ECF No. 1, Complaint ("Compl.") at ¶ 1.  Energize Denver sets building performance standards for existing and new residential and commercial buildings ("Covered Buildings") over 25,000 square feet. Compl. ¶ 4; ECF No. 24-2 at 6.[1]  Energize Denver requires Covered Buildings to reduce the energy consumption or greenhouse gas emissions associated with consumer and commercial equipment and appliances in the Covered Buildings to meet the building performance standards with compliance deadlines that started in 2024.  Compl. ¶ 4.

At the federal level, the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201-6422, preempts state and local regulations "concerning the energy efficiency" and "energy use" of consumer and commercial equipment such as HVAC systems and domestic water heating systems ("Covered Products").  Compl. ¶¶ 3, 81-82; 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2).  Given EPCA's commands, Denver can only regulate Covered Products in existing buildings if it obtains a waiver from the Secretary of the Department of Energy.  Compl. ¶ 89.  For new buildings, Denver can only regulate

---

[1] Denver Defendants did not include an appendix with their motion, but instead attached two supporting documents.  Plaintiffs will cite to those documents as filed with the Court.

2

Covered Products if it either seeks a waiver or meets specific enumerated preemption criteria.  *Id.* at ¶ 92; 42 U.S.C. § 6297(f)(3)(D).  Denver has never sought a waiver, nor does Energize Denver meet any of the enumerated statutory preemption criteria.  Hence the basis for this litigation: Plaintiffs' assert that Energize seeks to regulate the energy efficiency of EPCA Covered Products and thus is preempted by EPCA.

## SUMMARY OF ARGUMENT

Plaintiffs have standing to bring this action.  Their members are the owners of Covered Buildings who are the explicit targets of Energize Denver.  It would be difficult to identify any stakeholder group more impacted by Energize Denver than the Plaintiffs' members: they are the ones who will have to do all the work, and pay for all of the work, to achieve compliance with the binding mandates of Energize Denver under threat of civil penalty.  Indeed, Denver Defendants admit that Plaintiffs' members are subject to Energize Denver, and *must* take immediate actions to determine the full scope of their compliance obligations under Energize Denver, including *evaluating* the impacts of Energize Denver on Covered Products in their Covered Buildings.  *See* ECF No. 24 at 4.

Plaintiffs' members are suffering concrete injuries under Energize Denver: they are already incurring compliance costs to comply with the first 2024 interim compliance date under the regulations.  Denver Defendants make the improbable claim that Plaintiffs' injuries are mere speculation, as if all of the Covered Buildings in Colorado could be modified to achieve the ambitious goals of Energize Denver without ever touching Covered Products.  Denver Defendants admit that Plaintiffs members are subject to Energize Denver, and *must* take immediate actions to determine the full scope of their

3

compliance obligations under Energize Denver, including *evaluating* the impacts of Energize Denver on covered products in their building. *See* ECF No. 24 at 4 (Energize Denver "set[s] interim targets for both 2024 and 2027 which must be demonstrated by a Benchmark Submission due on June 1, 2025 and June 1, 2028.").

Further, Denver Defendants look past the requirements of EPCA, conflating EPCA's preemption of any state regulation "*concerning* the energy efficiency" and "energy use" of EPCA "Covered Products" (ECF No. 1, Compl. at ¶¶ 81-88 (citing 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(a)(10), (b)(2)) with a requirement that Plaintiffs show at the pleading stage that Energize Denver not only "concerns" covered products, but that Plaintiffs show that Energize Denver requires Plaintiffs to replace covered products through costly and time-consuming engineering analyses.

Further, Denver Defendants' argument that Plaintiffs must set out the specific "compliance pathways" they are undertaking to comply with Energize Denver misreads EPCA's preemption provisions, which contain a blanket preemption on state or local regulations "*concerning* the energy efficiency" and "energy use" of EPCA "Covered Products". The Building Performance Standards in Energize Denver directly concern Covered Products, and Plaintiffs have adequately plead their claims and have met the applicable pleading standards to establish standing.

Even if Plaintiffs had to show that Energize Denver requires replacement of covered products at the pleading stage (which they do not), Denver Defendants are incorrect to assert that Plaintiffs must demonstrate which "compliance pathway" they have chosen to identify concrete and particularized harms. Plaintiffs have alleged that *any* of

4

the "compliance pathways" for complying with Energize Denver will impose immediate and irretrievable costs on Plaintiffs' members by requiring them to engage in costly engineering audits to evaluate replacement of Covered Products otherwise exempted from the Denver Defendants' regulation under EPCA.  Compl. ¶¶ 73, 79, 136-149.

Far from adhering to the standards of a motion to dismiss, Denver Defendants make a series of arguments better suited for motions for summary judgment or trial. Denver Defendants demand that to even have standing to proceed, Plaintiffs must prove their case on the merits at the complaint stage, prove the specific damages that they will suffer at each stage of compliance with Energize Denver and why.  This is not the law, and these arguments must be rejected.

Finally, Plaintiffs' claims are not barred by a statute of limitations.  First, EPCA's 60-day statute of limitations only applies to plaintiffs challenging a rule promulgated by the Secretary of the Department of Energy ("DOE") in a United States Court of Appeals, and not challenges to state regulations.  As such, the correct statute of limitations is either Colorado's default two-year statute of limitations for § 1983 actions or the two-year, catch-all statute of limitations for "[a]ll actions against any public or governmental entity or any employee of a public or governmental entity."  C.R.S. § 13-80-102(1)(h).  The operative Energize Denver Regulations challenged here were promulgated and signed into law on November 23, 2022 (*See* ECF No. 24-2 at 1), and may properly be challenged within the applicable two-year statute of limitations.

## ARGUMENT

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 678.

Plaintiffs have standing to bring suit on behalf of their members if (1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit. *Speech First, Inc. v. Shrum,* 92 F.4th 947, 949 (10th Cir. 2024) (citing *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181 (2000)).

As to the first prong, an association's member has standing to sue in their own right if the member has alleged they will (1) suffer an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins,* 578 U.S. 330, 338 (2016). To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a

legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992)).

I. **Plaintiffs have standing to challenge the Building Performance Standards in Energize Denver.**

Plaintiffs have established standing because Plaintiffs have shown that (1) at least one of each of their members has suffered or will suffer an injury in fact to a legally protected interest; (2) a causal connection between the Denver Defendant's challenged conduct and their members' alleged injury; and (3) a likelihood that a favorable decision will redress the alleged injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). These alleged injuries are both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id*. Further, these injuries are "fairly traceable to the challenged action of the defendant." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (quoting *Friends of the Earth*, 528 U.S. at 180–81). Finally, "it [is] 'likely,' as opposed to merely 'speculative,'" that the alleged injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (citations omitted).

A. **Plaintiffs and their members are injured by Energize Denver.**

When a plaintiff is "an object of the action (or forgone action) at issue . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-562. Plaintiffs' members' here have specifically alleged, and Denver Defendants concede, that their members are subject to Energize Denver for both new and existing buildings. *See*

*e.g.* ECF No. 1-2 at ¶¶ 8, 17 (CAA/AAMD member with existing and planned new buildings subject to Energize Denver); ECF No. 1-9 at ¶¶ 8, 17 (CHLA member concluding the same); ECF No. 1-11 at ¶¶ 9 (NAIOP Colorado member with existing buildings subject to Energize Denver); ECF No. 1-12 at ¶¶ 8, 13-14 (NAIOP Colorado member with new buildings under development required to make material modifications to its building plans); *see also* ECF No. 1, Compl. at ¶¶ 17-20.

Plaintiffs' members have also alleged that they have conducted analyses of these new and existing buildings and determined they are not currently in compliance with the building performance standards in Energize Denver and thus will have to take actions to come into compliance. *See e.g.* ECF No. 1-2 at ¶¶ 14, 17 (CAA/AAMD member whose has evaluated and concluded that their existing and new buildings are not in compliance with Energize Denver); ECF No. 1-9 at ¶¶ 14, 17 (The same for a CHLA member); ECF No. 1-11 at ¶¶ 14 (The same for a NAIOP Colorado member for existing buildings); ECF No. 1-12 at ¶¶ 8, 13-14 (The same for a NAIOP Colorado member for new buildings); *see also* ECF No. 1, Compl. at ¶¶ 21.

Plaintiffs' members have also alleged they will incur significant costs and capital expenditures (including engineering analyses and the cost to modify Covered Buildings) and be forced to materially modify their Covered Buildings (or plans for designing and constructing new buildings) in order to meet the building performance standards in Energize Denver. *See e.g.* ECF No. 1-2 at ¶¶ 15-18; ECF No. 1-9 at ¶¶ 15-18; ECF No. 1-11 at ¶¶ 15-16; ECF No. 1-12 at ¶¶ 8, 13-14; *see also* ECF No. 1, Compl. at ¶¶ 21 (same).

Plaintiffs' members' declaration are replete with the estimated costs of the ASHRAE level I and II energy audits that are required by Energize Denver and are necessary to evaluate a Covered Buildings' current compliance status, and what must be done to achieve compliance with Energize Denver, including determining which EPCA-Covered Products must be replaced to reduce a Covered Buildings' energy consumption. *See e.g.* ECF No. 1-2 at ¶¶ 12-13; ECF No. 1-3 at ¶¶ 12-13; ECF No. 1-4 at ¶¶ 12-13; ECF No. 1-5 at ¶¶ 12-13; ECF No. 1-6 at ¶ 11; ECF No. 1-7 at ¶¶ 12-13; ECF No. 1-9 at ¶¶ 12-13; ECF No. 1-10 at ¶¶ 12-13; ECF No. 1-11 at ¶¶ 12-13; ECF No. 1-12 at ¶¶ 11-12. Further, Plaintiffs' members will be subject to severe fines and civil injunctive relief if compliance with Energize Denver is not achieved, including for the interim 2024 building performance standards. Compl. ¶¶ 66-67; *see also* ECF No. 24-1 at Sec. 10-407(d)-(e) (Noting that any "covered building owner who violates any provision of" the Energize Denver regulations is "subject to a civil penalty" and that any penalties not paid are considered a "debt to the city" that constitutes a "perpetual lien on the property"). Plaintiffs (and their members) have alleged particularized and concrete injuries attributable to the performance standards under Energize Denver. Denver Defendants' claim that Plaintiffs' members have not specified whether they will be in violation of an interim or final building performance standards (ECF No. 24 at 11) also falls short because Denver Defendants admit that the interim 2024 standards must "be demonstrated by a Benchmark Submission due on June 1, 2025" (*Id.* at 4), meaning that the calendar year energy data for Plaintiffs' members buildings starting eight months ago on January 1, 2024 subjects Plaintiffs' members to fines and civil penalties.

9

Denver Defendant's argument that Plaintiffs lack standing is completely implausible: they agree that Plaintiffs' members are subject to Energize Denver, they agree that owners of Covered Buildings will need to take actions to meet the performance standards, in their regulations they specifically reference the electrification and replacement of covered products (*See* ECF No. 24-1 at Sec. 10-401. Purpose. ("The article's purpose is also to require [C]overed [B]uilding owners to address existing building performance through energy efficiency, renewables, *and/or renewable heating and cooling (electrification)* . . .), yet in their motion to dismiss they profess that it is entirely speculative that compliance with the performance standards will cost anything or require Plaintiffs to assess Covered Products.  The only thing that is clearly speculative is Denver Defendants' suggestion that the building performance standards in Energize Denver can be achieved at no cost or without targeting Covered Products.

In short, Plaintiffs' members are plainly subject to Energize Denver, have existing and planned new buildings not currently in compliance with Energize Denver, and *were already required* to spend money and materially modify their Covered Buildings to meet Energize Denver's first compliance deadline for the calendar year of 2024.  These alleged injuries are concrete and particularized, and based on initial energy audits and engineering evaluations completed by Plaintiffs' members, the costs of which Plaintiffs' members cannot recover.  Plaintiffs' alleged injuries are exactly the kind of injuries that EPCA is designed to prevent through the preemption of State regulations which would alter the DOE's regulatory scheme governing the efficiency of Covered Products.  *See Warth v. Seldin,* 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by

Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.") (internal quotations omitted).

Denver Defendants' attack on Plaintiffs' standing is essentially a merits argument that Plaintiffs have not proven each element of the preemption claims at the pleading stage, claiming that Plaintiffs' claims require a showing by a Plaintiff association member that they "must replace a Covered Product with an Overly Efficient Product." ECF No. 24 at 9. However, EPCA preempts any "State regulation, or revision thereof, concerning the energy efficiency, energy use, or water use of the [C]overed [P]roduct." 42 U.S.C. § 6297(c). And here, Denver Defendants admit that Energize Denver does indeed concern the energy efficiency and energy use of Covered Products. ECF No. 24 at 6 ("Energize Denver contains no express prohibition regarding any type of energy source or Covered Product, although it admittedly incentivizes the use of renewable energy sources."). That Plaintiffs have further plead that Energize Denver required the replacement of Covered Products is not a shortcoming of the pleading standard, but rather an additional representation of the harms (in addition to forced energy audits and building modifications Compl. ¶¶ 147-148; potential fines, *id.* at ¶¶ 66-67; and reduced ability to compete in the market compared to buildings not covered by Energize Denver, *id.* at ¶ 149) that Energize Denver causes.[2] Denver Defendants argue for exactly the type of "heightened fact

---

[2] For similar reasons, Denver Defendants' attempt to distinguish the *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024) are inapposite (ECF No. 24 at 5-6), because *Berkeley* only dealt with *new* building codes, and not regulations

11

pleading of specifics" rejected by the Supreme Court.  *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007); *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted.").

Where, as is the case here, "there are well-pleaded factual allegations, *a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  Thus "[a]sking for plausible grounds does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting Plaintiffs' claims.  *Twombly,* 550 U.S. at 545.

Plaintiffs' Complaint contains more than sufficient factual details to "raise a reasonable expectation that discovery will reveal evidence that Energize Denver is a regulation "concerning the energy efficiency" and "energy use" of the Covered Products preempted by EPCA.  The Complaint and Plaintiffs' members' declarations are clear that the members have employed engineering firms to evaluate their Covered Buildings' status using accepted engineering standards and found their Covered Buildings do not currently comply with the building performance standards, determined that they will need to conduct additional engineering analysis to determine how to comply, and that they will need to target covered products in order to meet the building performance standards.

---

concerning the energy efficiency of Covered Products in *existing* buildings.

*See* ECF No. 1, Compl. at ¶ 142-145; ECF No. 1-12 at ¶ 14; ECF No. 1-4 at ¶16. Indeed, these are precisely the actions Denver Defendants want owners of Covered Buildings to be taking: Denver Defendants cannot credibly claim that it is mere speculation that owners will be expending resources to evaluate and comply with the performance standards in Energize Denver, when the first interim compliance deadline started on January 1, 2024.

Plaintiffs have pled in great factual detail, supported with declarations, how Energize Denver directly concerns (and in many cases requires replacement of) covered products in violation of EPCA. There is not only a reasonable expectation, but a likelihood, that discovery and further factual development will reveal that Energize Denver at least in part concerns the energy efficiency of EPCA Covered Products (something Denver Defendants already acknowledge), and thus Plaintiffs' claims must be permitted to proceed. *Twombly,* 550 U.S. at 546 (A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

### B. Plaintiffs' injuries are redressable.

Although Denver Defendants do not argue that Plaintiffs' claims are not redressable, the injuries caused by Energize Denver are directly redressable in this court for the same reasons Regulation 28 is redressable. As the "object of" Energize Denver, there is "little question that" Energize Denver causes Plaintiffs, by and through their members, "injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-562; *See also* ECF No. 45 at Section I.B (discussing redressability

13

of Regulation 28).  The building performance standards causing Plaintiffs' (and Plaintiffs' members') injuries are contained in Energize Denver, and an order from this Court invalidating Energize Denver as preempted under EPCA will address those injuries.

### C. Plaintiffs' members are not indispensable to Plaintiffs' challenge to Energize Denver.

Denver Defendants also do not argue that Plaintiffs members are indispensable to Plaintiffs challenge to Energize Denver.  Regardless, for the same reasons stated in Plaintiffs' response to State Defendants' motion to dismiss, Plaintiffs' claims do not make "each injured party indispensable to proper resolution" of this case.  *See* ECF No. 45 at section I.C.)

## II. Plaintiffs' claims are ripe because Energize Denver is effective now and requires immediate action from Plaintiffs' members to meet the 2024 and 2027 compliance deadlines.

While not directly arguing Plaintiffs' claims are not ripe, Denver Defendants infer that Plaintiffs' claims may not be ripe because Plaintiffs have not specified "which implementation year (interim years 2024 or 2027, or final year 2030) a Plaintiff association member is unable to meet."  ECF No. 24 at 9.  However, as stated herein, Plaintiffs' members are currently subject to affirmative obligations and harms under Energize Denver, including being under an interim compliance year for the 2024 calendar year, being required to conduct costly energy audits to determine how to bring buildings into compliance, and being subject to market competition burdens when compared to buildings less than 25,000 square feet not subject to the requirements of Energize Denver.  Plaintiffs' claims are ripe for resolution.  *See also* ECF No. 45 at Section II.

## III. Plaintiffs' claims are not barred by any statute of limitations.

Denver Defendants make a passing reference to proposed Intervenor-Defendants' argument that Plaintiffs' claims are barred by a statute of limitations. ECF No. 24 at 13. As addressed in Plaintiffs' forthcoming response to the proposed Intervenor-Defendants' motion to dismiss, the correct statute of limitations for this action is either Colorado's default two-year statute of limitations for § 1983 actions or the two-year, catch-all statute of limitations under C.R.S. § 13-80-102(1)(h). The current operative Energize Denver Regulations challenged here were promulgated and signed into law on July 11, 2023 (*See* ECF No. 31 at 4), and may properly be challenged within the applicable two-year statute of limitations.

Plaintiffs' action was properly brought within the applicable two-year statute of limitations, and Denver Defendants argument that this case should be dismissed under a shorter statute of limitations lacks merit.

## CONCLUSION

For the reasons stated herein, Plaintiffs' third and fourth claims for relief against Energize Denver are adequately plead, establish standing, and the claims are ripe to proceed to adjudication. Further, no statute of limitations bars Plaintiffs' claims. Denver Defendants' motion to dismiss should be denied.

Dated:  August 9, 2024

GREENBERG TRAURIG, LLP

/s/ *Paul M. Seby*
Paul M. Seby
Matthew K. Tieslau
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Phone Number:  303.572.6500
Fax Number: 303.572.6540
E-Mail:
        TieslauM@gtlaw.com

*Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on the 9th of August 2024, a copy of the foregoing was served upon all parties using the Court e-filing system.

*s/ Paul M. Seby*
Paul M. Seby