IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01093

**COLORADO APARTMENT ASSOCIATION et al.**

Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, et al.**

Defendants.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' PARTIAL MOTION TO DISMISS**
_____

Plaintiffs challenge the Colorado Air Quality Control Commission's ("Commission") regulation entitled Building Benchmarking and Performance Standards, 5 CCR 1001-32 ("Regulation 28"), which set building performance standards for commercial and multifamily buildings over 50,000 square feet ("Covered Buildings"). Regulation 28 requires Covered Buildings to reduce the energy consumption or greenhouse gas ("GHG") emissions associated with the operation of the Covered Buildings, including the consumer and commercial equipment and appliances, to meet the building performance standards with compliance deadlines beginning in 2026. Compl. ¶ 3.

At the federal level, the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201-6422, preempts state and local regulations "concerning the energy efficiency" and "energy use" of consumer and commercial equipment such as HVAC systems and domestic water heating systems ("Covered Products"). Compl. ¶¶ 3, 81-82; 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2). Colorado can only regulate Covered Products in existing buildings if it obtains a waiver from the Secretary of the Department of Energy. Compl. ¶ 89. For new buildings, Colorado can only regulate Covered Products if it either seeks a waiver or meets specific enumerated preemption criteria. *Id.* at ¶ 92; 42 U.S.C. § 6297(f)(3)(D). Colorado has never sought a waiver, nor does Regulation 28 meet any of the enumerated preemption criteria. Hence the basis for this litigation: Plaintiffs assert that Regulation 28 seeks to regulate the energy efficiency of EPCA Covered Products and thus is preempted by EPCA.

**SUMMARY OF ARGUMENT**

Plaintiffs have standing to bring this action. Regulation 28 is in force and the first

2

compliance dates are rapidly approaching, and the work required to achieve compliance is already underway.

Plaintiffs are suffering concrete injuries under Regulation 28: they are already incurring compliance costs, and those costs will only increase as the compliance dates rapidly approach. State Defendants make the improbable claim that Plaintiffs' injuries are mere speculation, as if all of the Covered Buildings in Colorado could be modified to achieve the ambitious goals of Regulation 28 without ever touching Covered Products. State Defendants concede that Regulation 28 requires Plaintiffs' members to implement "combinations of energy efficiency measures" (a vague phrase that includes the wholesale removal and replacement of building systems and EPCA-covered equipment) and "building envelope renovations." ECF No. 23 at 3. The fact that these costs will be incurred in the future does not make them speculative.

As the objects of regulation under Regulation 28, any relief from this Court declaring Regulation 28 invalid will redress Plaintiffs' members' injuries, and Plaintiffs' claims are ripe for resolution now.

## ARGUMENT

### I. Legal Standard.

Plaintiffs adopt the legal standard set forth in their Response in Opposition to Denver's Motion to Dismiss Complaint, ECF No. 44 at 6-7.

### I. Plaintiffs have standing to challenge the Building Performance Standards in Regulation 28.

Plaintiffs have established standing because Plaintiffs have shown that (1) at least one of each of their members has suffered or will suffer an injury in fact to a legally

protected interest; (2) a causal connection between State Defendants' challenged conduct and their members' alleged injury; and (3) a likelihood that a favorable decision will redress the alleged injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). These alleged injuries are both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id*. Further, these injuries are "fairly traceable to the challenged action of the defendant." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (quoting *Friends of the Earth*, 528 U.S. at 180–81). Finally, "it [is] 'likely,' as opposed to merely 'speculative,'" that the alleged injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (citations omitted).

### A. Plaintiffs and their members are injured by Regulation 28.

When a plaintiff is "an object of the action (or forgone action) at issue . . . there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561-562 (1992). Plaintiffs' members' here have specifically alleged, and State Defendants concede, that their members are subject to Regulation 28 for both new and existing Covered Buildings. *See e.g.* ECF No. 1-2 at ¶¶ 9, 17 (CAA/AAMD member with existing and planned new Covered Buildings subject to Regulation 28); ECF No. 1-9 at ¶¶ 9, 17 (CHLA member concluding the same); ECF No. 1-11 at ¶¶ 9 (NAIOP Colorado member with existing Covered Buildings subject to Regulation 28); *see also* ECF No. 1, Compl. at ¶¶ 17-20.

Plaintiffs' members have also alleged that they have conducted analyses of their

4

new and existing buildings and determined they are not currently in compliance with the building performance standards in Regulation 28 and thus will have to take actions to come into compliance. *See e.g.* ECF No. 1-2 at ¶¶ 14, 17 (CAA/AAMD member whose has evaluated and concluded that their existing and new buildings are not in compliance with Regulation 28); ECF No. 1-9 at ¶¶ 14, 17 (The same for a CHLA member); ECF No. 1-11 at ¶¶ 14 (The same for a NAIOP Colorado member); *see also* ECF No. 1, Compl. at ¶¶ 21.

Plaintiffs' members have also alleged they will incur significant costs and capital expenditures (including engineering analyses and the cost to modify Covered Buildings) and be forced to materially modify their Covered Buildings (or plans for new buildings) in order to meet the building performance standards in Regulation 28. *See e.g.* ECF No. 1-2 at ¶¶ 15-18; ECF No. 1-9 at ¶¶ 15-18; ECF No. 1-11 at ¶¶ 15-16; *see also* ECF No. 1, Compl. at ¶¶ 21.

State Defendants are incorrect to assert that the only "concrete expenditures" fairly traceable to Regulation 28 are associated with Benchmarking Requirements and not the building performance standards. First, this wrongly implies that only past and current costs are relevant to a standing analysis, and that non-speculative future costs are irrelevant. State Defendants' argument would allow standing only when it is too late, and all the regulatory damage has been done. *See ANR Pipeline v. Corp. Comm'n of Okla.*, 860 F.2d 1571, 1578–79 (10th Cir.1988) (Plaintiff had standing to challenge state agency's regulations as preempted under federal law because compliance with the regulations would "increase the price of natural gas, impair contractual obligations, and

5

disrupt utilization of pipeline facilities.").

Plaintiffs' members' declaration are replete with the estimated costs of the ASHRAE level I and II energy audits that are required by Regulation 28 and are necessary to evaluate a Covered Buildings' current compliance status, and what must be done to achieve compliance with Regulation 28, including determining which EPCA-Covered Products must be replaced to reduce a Covered Buildings' energy consumption. *See e.g.* ECF No. 1-2 at ¶¶ 12-13; ECF No. 1-3 at ¶¶ 12-13; ECF No. 1-4 at ¶¶ 12-13; ECF No. 1-5 at ¶¶ 12-13; ECF No. 1-6 at ¶ 11; ECF No. 1-7 at ¶¶ 12-13; ECF No. 1-8 at ¶¶ 11-12; ECF No. 1-9 at ¶¶ 12-13; ECF No. 1-10 at ¶¶ 12-13; ECF No. 1-11 at ¶¶ 12-13. Plaintiffs' members will be subject to fines and civil injunctive relief if compliance with Regulation 28 is not achieved. Compl. at ¶ 61.

Further, State Defendants' previously calculated that compliance with Regulation 28 would cost the approximately 8,000 Covered Buildings in Colorado subject to Regulation 28 over $1.7 billion in direct costs *including costs for replacing Covered Products such as HVAC units*. *See* Plaintiffs' Appendix, p. 6 - Cost-Benefit Analysis for Regulation 28.

In short, Plaintiffs' members are indisputably subject to Regulation 28, have existing and planned new buildings not currently in compliance with Regulation 28, and must immediately begin spending money and materially modifying those buildings to meet the first compliance deadline under Regulation 28 for the calendar year of 2026. These injuries are concrete and particularized, based on initial energy audits and engineering evaluations completed by Plaintiffs' members. Further, they are exactly the kind of

injuries that EPCA is designed to prevent through the preemption of State regulations which would alter the federal regulatory scheme governing the efficiency of Covered Products. *See Warth v. Seldin,* 422 U.S. 490, 500 (1975) ("The actual or threatened injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing.") (internal quotations omitted).

State Defendants' claim that "[n]either the Complaint nor the Declarations identify the chosen compliance pathways for any individual building, let alone what specific steps the owner must take to accomplish the relevant emissions reduction targets" goes to the ultimate merits of Plaintiffs' Complaint, and not standing. ECF No. 23 at 8. First, it is not relevant at the pleading stage which compliance pathway Plaintiffs' members have chosen, specifically because they have alleged that the only way to meet the prescriptive building performance standards in Regulation 28 is to target EPCA-regulated Covered Products, and thus have alleged that Regulation 28 "concerns" the energy efficiency of Covered Products. Compl. ¶ 119. Second, State Defendants argue for exactly the type of "heightened fact pleading of specifics" rejected by the Supreme Court. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 547 (2007); *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's . . . complaint alone is legally sufficient to state a claim for which relief may be granted."). Where, as is the case here, "there are well-pleaded factual allegations, *a court should assume their veracity* and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

7

Plaintiffs' Complaint is well-pled and replete with more than sufficient factual details to "raise a reasonable expectation that discovery will reveal evidence that Regulation 28 is a regulation "concerning the energy efficiency" and "energy use" of the Covered Products preempted by EPCA. The Complaint and Plaintiffs' members' declarations are clear that the members have employed engineering firms to evaluate their Covered Buildings' status, found that their Covered Buildings do not currently comply with the building performance standards, determined that they will need to conduct additional engineering analysis to determine how to comply, and that they will need to target covered products in order to meet the building performance standards. *See* ECF No. 1, Compl. at ¶ 118-119 ; ECF No. 1-8 at ¶ 15 ; ECF No. 1-4 at ¶16. These are precisely the actions State Defendants want owners of Covered Buildings to be taking: State Defendants cannot credibly claim that it is mere speculation that owners will be expending resources to comply with the performance standards in Regulation 28 between now and 2026.

State Defendants also incorrectly claim that Plaintiffs have not provided declarations discussing new construction plans. However, Plaintiffs provided several declarations from members discussing new construction plans. *See* ECF No. 1-2 at ¶ 17; ECF No. 1-9 at ¶ 17; ECF No. 1-12.

State Defendants' argument that Plaintiffs suffer no injuries as to new buildings because "Regulation 28 only applies after a building is constructed and issued a certificate of occupancy" is absurd. ECF No. 23 at 8. State Defendants admit that new buildings are subject to Regulation 28, and that those new buildings must be designed and constructed to meet the building performance standards of Regulation 28. In no

8

logical world would a person constructing a new building ignore Regulation 28 until after the building has been designed, fully constructed, and a certificate of occupancy had been issued (if that was even possible).  This improbable scenario would require the developer and the financiers to risk having to completely re-design and re-construct the newly completed building, and replace the very Covered Products just installed.  Regulation 28, by definition and intention, directly affects the design and construction of new buildings and in so doing, will injure Plaintiffs' members.

Plaintiffs have pled in great factual detail, supported with declarations, how Regulation 28 directly targets (and in many cases required replacement of) covered products in violation of EPCA.  There is not only a reasonable expectation, but a likelihood, that discovery and further factual development will reveal that Regulation 28 at least in part concerns the energy efficiency of EPCA Covered Products (something State Defendants already acknowledge), and thus Plaintiffs' claims must be permitted to proceed.  *Twombly,* 550 U.S. at 546 (A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

### B. Plaintiffs' injuries are redressable.

The injuries caused by Regulation 28 are directly redressable by this court.  As the "object of" Regulation 28, there is "little question that" Regulation 28 causes Plaintiffs, by and through their members, "injury, and that a judgment preventing or requiring the action will redress it."  *Lujan*, 504 U.S. at 561-562.

Contrary to State Defendants' position, Plaintiffs' injuries stem wholly from

9

Regulation 28, which adopted stringent building performance standards nowhere present in the requirements of Colorado House Bill 21-1286 ("HB 21-1286), which instead directed the Commission to adopt regulations reducing GHG in the building sector.  HB 21-1286, as State Defendants admit, only required the Commission to adopt regulations targeting a reduction in GHG emissions of seven percent by 2026 and 20 percent by 2030. C.R.S. § 25-7-142(8)(II)(A), (B).  HB 21-1286 did not set or mandate the draconian building performance standards in Regulation 28, and instead simply required the Commission to adopt building performance standards that would achieve the GHG reductions mandated by C.R.S. § 25-7-142(3).  The fact that HB 21-1286 authorized and directed the Commission to promulgate regulations does not mean that the scope and content of those regulations are beyond challenge, particularly where the regulation has crossed the line and is preempted by Federal law.

The GHG reductions required by HB 21-1286 could have been accomplished by any variety of measures, including through forced adoption of renewable technologies, requirements for operational controls, utility or local government energy efficiency programs, or by focusing on aspects of Covered Buildings' energy usage that do not encompass Covered Products.  Despite these options, the Commission finalized a version of Regulation 28 that specifically concerns the EPCA Covered Product infrastructure in new and existing buildings.

Most importantly, HB 21-1286 contains no building performance standards, and does not require Plaintiffs to take any actions to modify their Covered Buildings.  Those requirements are found only in Regulation 28, and for that reason, Plaintiffs' injuries were

10

not caused by HB 21-1286, but by the substantive provisions of Regulation 28 that obligate Plaintiffs' members to meet building performance standards. It is Regulation 28 that contains the operative regulatory provisions "concerning the energy efficiency" of EPCA Covered Products. EPCA does not preempt general state statutory declarations of policy and direction for reducing GHG emissions such as are contained in HB 21-1286. Instead, EPCA prohibits any "*State regulation*, or revision thereof, concerning the energy efficiency, energy use, or water use of the covered product." ECF No. 1, Compl. at ¶ 87 (quoting 42 U.S.C. § 6297(b), (c) (emphasis added)); *see also* 42 U.S.C. § 6316 (b)(2)(A). Plaintiffs' members are "the object of" Regulation 28, and "a judgment preventing [Regulation 28] will redress" those injuries. *Lujan*, 504 U.S. at 561-62.

### C. Plaintiffs' members are not indispensable to Plaintiffs' challenge to Regulation 28.

Plaintiffs' claims do not make "each injured party indispensable to proper resolution" of this case. In *Warth*, the Supreme Court clarified the limits of associational standing, holding that:

> so long as the nature of the claim and of the relief sought does not make the individual participation *of each injured party* indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court's jurisdiction.

422 U.S. at 511 (emphasis added). The associational standing analysis has been further clarified by the Supreme Court to be a prudential test that does not rest on "elements of a case or controversy within the meaning of the Constitution", but rather as a "matter[] of administrative convenience and efficiency." *United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 557 (1996) ("Hence the third prong of the

11

associational standing test is best seen as focusing on these matters of administrative convenience and efficiency . . .").

Here, Plaintiffs are the very organizations meant to protect the interests of their members, Covered Building owners in Colorado. Indeed, the Supreme Court, expanding upon *Warth,* held that a state agency, the State Apple Advertising Commission, could appropriately represent the interest of individual apple growers even where the Advertising Commission had no individual members. *Hunt v. Washington State Apple Advertising Com'n,* 432 U.S. 333, 342 (1977).

Further, to the extent that Plaintiffs' claims require an analysis of individual members' covered buildings, the type of analysis necessary from some individual members does not rise to the level of detail or specificity present in *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.,* 958 F.2d 1018, 1022 (10th Cir. 1992). In *Kan Health Care Ass'n*, the Court was tasked with looking at both procedural and substantive claims regarding reimbursement rates under Medicaid – chiefly to determine if reimbursement rates set by Kansas were adequate. *Id.* This required the Tenth Circuit to "examine evidence particular to individual providers" to "determine whether a 4.8% inflation rate insufficiently account[ed] for increased costs incurred by providers" as well as determining whether individual operators were "efficiently and economically operated." *Id.* at 1022-1023.

Here, Plaintiffs allege that their members are injured by the building performance standards due to their *de facto* application to Covered Products. Regulation 28 requires Plaintiffs' members to engage in costly and time-consuming engineering analyses, and

plan and engage in costly and time-consuming modifications to their buildings in order to meet the building performance standards that, at least in part, concern Covered Products. Further, Plaintiffs' members are subject to potential fines and injunctive relief. These are all actions that must be undertaken *now* in order to be completed in time for the first compliance deadline under Regulation 28 for the 2026 calendar year.

Thus, to determine whether Regulation 28 "concerns" the "energy efficiency" of covered products is not an individualized inquiry – it is a broad inquiry across Plaintiffs' membership as a whole. This is not a case such as in *Kan. Health Care Ass'n, Inc.* where each individual member's building must be examined to determine the nature of damages to the individual member, instead the participation of just some of Plaintiffs' members will be sufficient to establish that Regulation 28 "concerns" the energy efficiency of Covered Products in their buildings. *Association of American Physicians & Surgeons, Inc. v. Texas Medical Bd.,* 627 F.3d 547, 552 (5th Cir. 2010) (Finding associational standing where "[p]roving the illegality of the pattern or breach of contract required some evidence from members, but once proved as to some, the violations would be proved as to all.").

II.  **Plaintiffs' claims are ripe because Regulation 28 is effective now and requires immediate action from Plaintiffs' members to meet the 2026 and 2030 compliance deadlines.**

State Defendants' arguments that Plaintiffs' claims are unripe under both Article III's case and controversy standards and under prudential ripeness considerations should be rejected.

**A. Plaintiffs' claims meet Article III ripeness standards.**

Article III ripeness goes to whether a threatened injury is sufficiently "imminent" to

13

establish standing. *Awad v. Ziriax*, 670 F.3d 1111, 1124 (10th Cir. 2012). Plaintiffs have identified specific and imminent harms and steps they must take now in response to Regulation 28. This includes several members having determined they currently have Covered Buildings that do not comply with the fast-approaching 2026 compliance year. These members must engage in costly ASHRAE energy audits and other engineering evaluations to map out a path toward compliance. *See* Section I.B.1, *supra.* This also includes members who have determined they must target replacing EPCA-covered HVAC and water heating systems. ECF No. 1-8 at ¶ 15. State Defendants' ripeness argument essentially relies on an assumption that is simply not credible: that owners of Covered Buildings facing the 2026 compliance deadlines can and should simply sit on their hands and do nothing.

The Supreme Court has routinely recognized that a likelihood of economic injury resulting from governmental action that changes market conditions is sufficient to satisfy Article III justiciability requirements. *E.g.*, *Clinton v. City of New York*, 524 U.S. 417, 432-33 (1998); *Lujan,* 504 U.S. at 578 (Congress may "elevat[e] to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law."). For the same reason Plaintiffs have adequately established standing through alleged injuries Regulation 28 imposes upon their members, they also meet Article III ripeness requirements.

### B. Plaintiffs' claims meet prudential ripeness standards.

Prudential ripeness is properly analyzed under Rule 12(b)(6) rather than Rule 12(b)(1) because it does not implicate subject matter jurisdiction. *North Mill Street, LLC.*

*V. City of Aspen*, 6 F. 4th 1216, 1230 (10th Cir. 2021). Prudential ripeness turns on Court's balancing two factors: (1) "the fitness of the issue for judicial review," and (2) "the hardship to the parties from withholding review." *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019).

Application of the fitness standard requires courts to ask "whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). However, the "major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 891 (1990) (citing *Abbot Laboratories v. Gardner,* 387 U.S. 136, 152-154 (1967)). Plaintiffs' challenge of Regulation 28 is such a "case in which the impact of the regulations upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." *Abbot Laboratories,* 387 U.S. at 152; *see also U.S. Army Corps of Engineers v. Hawkes Co., Inc.,* 578 U.S. 590, 601 (Where compliance with a regulation required an "arduous, expensive, and long" permitting process and extensive "analyses [that ] would cost more than $100,000" issue was suitable for judicial review). Plaintiffs' members have already begun the costly engineering energy audits and engineering evaluations to map out the process for complying with Regulation 28 and replacing Covered Products.

As to the hardship to the parties, courts consider whether Plaintiffs face "a direct and immediate dilemma" arising from the regulation they are challenging. *United States v. Bennett,* 823 F.3d 1316, 1327 (10th Cir. 2016). Plaintiffs' members must immediately

engage in costly ASHRAE energy audits and other engineering evaluations of their buildings and start the process of materially modifying their Covered Buildings to comply with Regulation 28. In many instances, Plaintiffs' members are already incurring these costs. *See e.g.* ECF No. 1-2 at ¶¶ 13-15 (CAA/AAMD member who has Level I ASHRAE energy audits of Covered Buildings and must now proceed with Level II ASHRAE energy audits). The ASHRAE audits are not merely an issue of exercising good professional judgment: if Plaintiffs' members do not timely complete these studies, they will be subject to fines and potential injunctive relief. Compl. at ¶ 61. And, these same hardships apply to Plaintiffs' members with plans to design and build new Covered Buildings. *See e.g.* ECF No. 1-2 at ¶ 17; ECF No. 1-9 at ¶ 17. These hardships weigh in favor of finding prudential ripeness for Plaintiffs' claims.

Under State Defendants' interpretation of ripeness, Plaintiffs would not be able to bring suit until they had already incurred significant costs and begun replacing Covered Products in their buildings. That is not the law (particularly in the context of challenges to regulations), and would render any relief this Court could grant moot, since Plaintiffs are seeking declaratory relief that Regulation 28 is invalid, not monetary relief.

## CONCLUSION

For the reasons stated herein, Plaintiffs' first and second claims for relief against Regulation 28 are adequately plead, establish constitutional and prudential standing, and the claims are ripe to proceed to adjudication. State Defendants' partial motion to dismiss should be denied.

Dated:  August 9, 2024

                                            GREENBERG TRAURIG, LLP

/s/ *Paul M. Seby*
Paul M. Seby
Matthew K. Tieslau
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Phone Number:  303.572.6500
Fax Number: 303.572.6540
E-Mail:
           TieslauM@gtlaw.com

*Attorneys for Plaintiffs*

17

**CERTIFICATE OF SERVICE**

      I hereby certify that on the 9th of August 2024, a copy of the foregoing was served upon all parties using the Court e-filing system.

*s/ Paul M. Seby*
Paul M. Seby