**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-CV-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;

    *Plaintiffs*,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office;

    AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency;

    *Defendants*.

    AND

THE COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB.

    *Intervenor-Defendants.*

**STATE DEFENDANTS' REPLY IN SUPPORT OF THEIR PARTIAL MOTION TO DISMISS**

State Defendants respectfully file this Reply in Support of their Partial Motion to Dismiss Plaintiffs' first and second claims for relief pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), ECF No. 23.

## SUMMARY OF THE ARGUMENT

State Defendants' Partial Motion to Dismiss ("Motion") seeks dismissal of both claims challenging Regulation 28's (5 Colo. Code Regs. 1001-32) Performance Standards based on Plaintiffs' failure to allege sufficient facts to demonstrate standing. Specifically, Plaintiffs lack standing to assert a claim that Regulation 28 is preempted by the Energy Policy and Conservation Act ("EPCA") because they fail to allege any non-speculative injuries to a legally cognizable interest caused by the Performance Standards, and, to the extent they assert an as-applied challenge to the Performance Standards, they further lack standing because their claims require the participation of the associations' individual members. State Defendants also seek dismissal because Plaintiffs' EPCA preemption claim is unripe. Plaintiffs misconstrue State Defendants' arguments as requiring a heightened pleading standard and attempt to shift their pleading burden onto State Defendants by suggesting that State Defendants must demonstrate that the Performance Standards will never require Covered Building owners to take any steps with respect to a Covered Product. Response at 3. The Court should reject these arguments and grant the Motion.

## ARGUMENT

A preemption challenge can take the form of a facial challenge, an as-applied challenge, or a hybrid of the two, with different standards of proof. *See United States v.*

*Supreme Ct. of New Mexico*, 839 F.3d 888, 907 (10th Cir. 2016) (citing *United States v. Carel*, 668 F.3d 1211, 1217 (10th Cir. 2011)). A party asserting a facial challenge must show that the challenged statute or regulation "violates the Constitution in all or virtually all, of its applications." *Id.* (quoting *Carel*, 668 F.3d at 1217). In contrast, a party asserting an as-applied or hybrid challenge must show that the challenged statute or regulation violates the Constitution "under the *particular circumstances* of the case." *Id.* (emphasis in original) (quoting *Carel*, 668 F.3d at 1217).

Plaintiffs do not definitively characterize their challenges to Regulation 28 as facial or as applied. But the court need not decide this issue to grant the State Defendants' Motion. Plaintiffs fail to allege facts sufficient to support their standing to assert a claim for relief under either theory, and they further fail to allege facts sufficient to establish that a hybrid or as-applied claim is ripe for review.

**I.      Plaintiffs lack Article III standing to bring a facial or as-applied challenge to Regulation 28's Performance Standards.**

Plaintiffs incorrectly assert that their members simply being subject to Regulation 28 establishes their standing. Response at 4. But this argument misses the mark. Being subject to Regulation 28, generally, does not absolve Plaintiffs of their burden to allege a non-speculative injury to a legally cognizable interest caused by the Performance Standards that they allege are preempted by EPCA. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs appear to allege two injuries: (1) expending money to conduct audits and engineering analyses, and (2) needing to replace EPCA Covered Products. Neither of these categories of allegations meet Plaintiffs' burden.

3

Throughout their Response, Plaintiffs allege they are injured by the costs incurred in connection with completing energy audits and other engineering evaluations of their buildings. *See* Response at 6-8, 14, 16. These costs are insufficient to establish standing. First, the requirement to evaluate a building's energy usage derives from section 25-7-142(3), C.R.S. and Regulation 28's Benchmarking Requirements—not the challenged Performance Standards. *See California v. Texas*, 593 U.S. 659, 678-79 (2021) (holding that states lacked standing to challenge provision of the Affordable Care Act requiring minimum insurance coverage because their alleged injuries were caused by an unchallenged portion of the Affordable Care Act and were not fairly traceable to the challenged provision). Second, to the extent that Plaintiffs allege they completed or need to complete energy audits or other engineering evaluations to comply with Performance Standards, this claim also fails to establish standing. Owners of Covered Buildings would need to determine how to comply with the Performance Standards regardless of whether EPCA preempts one optional pathway to compliance because it concerns replacing EPCA Covered Products. In other words, the need to conduct energy audits or engineering analyses is not fairly traceable to the provisions of the Performance Standards Plaintiffs allege are preempted.

Concerning Plaintiffs' argument that they have standing because the Performance Standards require them to replace Covered Products, Plaintiffs fail to allege any non-speculative injury. *See* Response at 6, 8, 14, 16. At best, Plaintiffs *speculate* that replacing Covered Products might be part of the actions their members could take to comply with the Performance Standards. Plaintiffs gloss over a

4

fundamental feature of Regulation 28 – that the Performance Standards are not a one-size-fits-all regulatory scheme. Rather, building owners can comply by taking many actions that do not require replacing Covered Products. *Building Industry Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1146 (9th Cir. 2012) (holding a building code was not preempted by ECPA because the use of higher efficiency appliances was not "required" by that code and builders could choose an alternative means of compliance). For example, Covered Building owners may participate in utility demand-side management programs, install renewable energy generation, or change operational controls such as automated lighting or heating/cooling timing. Regulation 28, Part C; *see also* Response at 10 (arguing these actions could replace the Performance Standards though they are already voluntary actions allowed under the rule). Thus, different buildings will have different needs to meet the compliance targets and building owners will take different actions to comply. Plaintiffs acknowledge that they have not yet determined how they will comply, and thus have not alleged they have been injured by a failure of the State Defendants to consider EPCA's pre-emption mandate.

Only one of the declarations relied on by Plaintiffs specifically alleges that the Performance Standards require replacement of any particular Covered Product. ECF No. 1-8, Declaration of Jack Damioli, ¶ 15 (noting that the building owner anticipates replacing HVAC and water heating systems). But this declaration does not allege injury to a legally cognizable interest because it does not allege the need to take any actions preempted by EPCA. For example this building owner could make a like-for-like

5

replacement and replace aged HVAC and water heating systems with newer units that do not exceed the EPCA minimum efficiency standards. And to the extent this declarant alleges injuries caused by needing to replace units with remaining useful life, Regulation 28 allows Covered Building owners to seek adjustments to compliance timelines and requirements, including adjustments based on the remaining useful life of appliances, age of building, and type of building. Regulation 28, Part C, Sections II.A.1f., II.A.3.g., II.B. and II.C.  None of Plaintiffs' other declarations allege that Regulation 28 requires any specific member of their organizations to replace a Covered Product rather than choose any other available measures to comply.[1]

Turning to new buildings, Plaintiffs' assertion that Regulation 28 "directly affects the design and construction of new buildings, and in doing so, will injure Plaintiffs' members" is not sufficiently pled because they fail to identify any constituent building owners who would be affected by Regulation 28. The declaration cited by Plaintiffs as supporting an allegation of an injury caused by Regulation 28 with respect to a new building relates only to Denver's Energize Denver rules. ECF 1-11, Declaration of Tyler Carlson. Further, even if developers consider the Performance Standards during design and construction, Plaintiffs do not allege construction plan revisions would be preempted by EPCA. In reality, this would not be preempted by EPCA because these

---

[1] Even if the Court determines that ECF No. 1-8 contains sufficient allegations to establish standing, this declarant is a member only of Plaintiff Colorado Hotel and Lodging Association ("CHLA") so no other Plaintiff associations would have standing. The same is true regarding a ripeness determination based this declaration, discussed in Section III, below.

6

building owners could simply install EPCA Covered Products using any fuel source so long as the Covered Building meets the overall compliance target.

Finally, Plaintiffs imply they need more time and information to develop facts to support their standing. Response at 8, 9. Plaintiffs claim State Defendants' argument (1) would render non-speculative future costs irrelevant and "would allow standing only when it is too late," Response at 5; (2) imposes an artificially high pleading burden that "goes to the ultimate merits of Plaintiffs' Complaint, and not standing," Response at 7; and (3) short-circuits the litigation process by requiring them to plead such facts before they have had the opportunity to conduct discovery to "reveal evidence that Regulation 28 is . . . preempted by EPCA," Response at 8. These arguments ignore the facts and circumstances of this case. First, State Defendants do not dispute that Plaintiffs would have standing if they had pled non-speculative future costs that could give rise to a legally cognizable injury, but as demonstrated above, Plaintiffs fail to do so. Second, State Defendants' arguments do not turn on the merits of Plaintiffs' claims; instead, they turn on the sufficiency of Plaintiffs' allegations. Plaintiffs have failed to allege with specificity facts supporting that their members have suffered a non-speculative, legally cognizable injury caused by the Performance Standards. Third, the facts essential to Plaintiffs' claim are entirely within their control, because Regulation 28 requires them to elect their compliance pathway and to develop their plan for complying with that pathway. Failing to plead such facts falls short of Plaintiffs' burden to allege facts sufficient to demonstrate their standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### II. Plaintiffs lack prudential standing to bring an as-applied challenge to Regulation 28 because this claim requires participation by individual members of Plaintiff associations.

Claims based on EPCA's preemption of the Performance Standards as applied to any individual Covered Building necessarily require the participation of the owner of that building. However, Plaintiffs argue that their claims do not require the participation of any individual members and attempt to distinguish the Tenth Circuit's holding in *Kansas Health Care Ass'n, Inc. v. Kansas Dep't of Soc. & Rehab. Servs.,* 958 F.2d 1018 (10th Cir. 1992). Response at 12-13. For example, Plaintiffs contend their members are injured by the Performance Standards "due to their de facto application to Covered Products" and attempt to argue that EPCA preemption applies across Plaintiffs' membership as whole. *Id.* But Plaintiffs' argument assumes general applicability of Regulation 28 to all buildings and rests on a mischaracterization and misapplication of *Kansas Health*.

In *Kansas Health*, an association representing individual healthcare providers challenged Kansas Medicaid reimbursement plans that affected the reimbursement schedule for the associations' members. The association sought organizational standing, arguing all its members were similarly situated because they were each potentially eligible for reimbursement. However, the court deemed it necessary to examine financial evidence particular to individual members to determine the appropriate reimbursement rate, and ultimately held the association lacked associational standing because proof and resolution of any claims would "unavoidably

8

require individual participation of associations' members." 958 F.2d at 1022-23 (10th Cir. 1992).

Here, to the extent Plaintiffs assert a facial challenge to the Performance Standards, that claim might not require individual member participation because in that instance, they would be challenging the Performance Standards as they apply to all Covered Buildings, not as they apply to members' individual buildings. But for Plaintiffs' as-applied challenge to the Performance Standards, *Kansas Health* is directly on point. Because Regulation 28 applies to individual Covered Building owners, each with their own unique compliance requirements, associational standing is not appropriate because like the financial health of the individual association members in *Kansas Health*, any alleged harms from Regulation 28 would be unique to each individual Covered Building owner. To show injury from the alleged preempted application of Regulation 28 to a Covered Building owner, each individual member's building must be examined to determine whether compliance requires any actions that run afoul of EPCA preemption. Thus, Plaintiffs' claims require the individual members to participate in the lawsuit and the Court should decline to hear this challenge. *Id.* at 1021.

**III.      An as-applied challenge to Regulation 28 is unripe.**

Finally, any as-applied challenge to Regulation 28 is not prudentially ripe. Generally, courts require a plaintiff to demonstrate that the facts relating to their claim are sufficiently developed to allow meaningful review – that is, that their claim is "fit for judicial review." *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019). Here, Plaintiffs argue that their challenge is exempt from these requirements because "the

9

impact of the regulations on petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." Response at 15 (citing *Abbot Labs*). But as noted in the Motion, Plaintiffs failure to allege concrete facts demonstrating that they have taken any of the necessary steps to determine whether compliance with the Performance Standards will require them to replace Covered Products with Covered Products exceeding EPCA's minimum energy efficiency standards renders this challenge premature.

The mere allegation that Plaintiffs' members are incurring costs to complete energy audits and engineering analyses "to map out a process for complying with Regulation 28," Response at 15-16, is not sufficient. Regulation 28 includes multiple compliance pathways and allows Covered Building owners to seek adjustments to compliance timelines and requirements, including adjustments based on the remaining useful life of appliances, age of building, and type of building. Regulation 28, Part C, Sections II.A.1f., II.A.3.g., II.B. and II.C. Plaintiffs acknowledge that additional work is necessary to determine what future steps are needed to comply with the Performance Standards. Response at 5,14. Thus, the steps they are taking now in response to Regulation 28 (audits and engineering analyses) do not establish that their members must take any future actions allegedly subject to EPCA preemption.

Plaintiffs rely heavily on "anticipation" - claiming that their members *may* need to replace Covered Products to comply with the Performance Standards. Specifically, declarants contend they are "begin[ning] the planning process for making material modifications to [Covered] buildings to implement the chosen options, in order to meet

10

the fast-approaching compliance deadlines" and do not even name replacement of Covered Products as a required action. *See e.g.* ECF 1-2, Declaration of Ryan Rodgers. However, a claim is not ripe if it rests upon "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal citations omitted). Moreover, Plaintiffs suggestion that State Defendants' ripeness argument would require "owners of Covered Buildings facing the 2026 compliance deadlines [to] simply sit on their hands and do nothing" is simply wrong. Response at 14. The declaration most relied upon by Plaintiffs, ECF 1-8, Declaration of Jack Damioli, reveals this deficiency. In his declaration, Mr. Damioli states that he has conducted an audit for his Covered Building (the Broadmoor) "to identify available options" for compliance. ¶ 14. Mr. Damioli then states that he "anticipates" the Broadmoor will spend a significant amount of money to comply, including replacing Covered Products with remaining useful lives. ¶ 15. However, these allegations do not translate into a direct and immediate injury because this compliance option is not related to particularized claimed injury that Regulation 28 eliminates customer choice by requiring exceedance of EPCA energy efficiency standards. *Building Industry Ass'n of Washington*, 683 F.3d 1144, at 1146 (holding a building code was not preempted by ECPA because the use of higher efficiency appliances was not "required" by that code and builders could choose an alternative means of compliance).

## CONCLUSION

State Defendants respectfully request that the Court dismiss Plaintiffs' first and second claims pursuant to Rules 12(b)(1) and 12(b)(6).

11

Respectfully submitted this 12th day of September, 2024.

        PHILIP J. WEISER
        Attorney General

        */s/ David Banas*
        DAVID BANAS*
        JACKIE CALICCHIO*
        DAVID BECKSTROM**
        W. CORY HALLER**
        Assistant Attorneys General
        Natural Resources and Environment Section
        1300 Broadway, 7th Floor
        Denver, CO 80203
        Telephone: 720.508.6000
        Email: David.banas@coag.gov
        Jackie.calicchio@coag.gov
        David.beckstrom@coag.gov
        Cory.haller@coag.gov

\* *Counsel of Record on behalf of Defendant Will Toor, in his Official Capacity as the Executive Director of the Colorado Energy Office*

\*\**Counsel of Record on behalf of Defendants Jill Hunsaker Ryan, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, and Michael Ogletree, in his Official Capacity as the Director of the Colorado Air Pollution Control Division*