IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;

Plaintiffs,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MICHAEL JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency;

Defendants.

---

**DENVER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

---

The City and County of Denver; Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency (collectively "Denver"), through undersigned counsel, hereby reply in support of their Motion to Dismiss [Doc #24] as follows:

**I.   INTRODUCTION**

Energize Denver, the Denver program aimed at reducing greenhouse gas emissions which

is the subject of this litigation, has since 2016 required the owners of commercial buildings 25,000 square feet and larger to submit yearly benchmarking reports to determine the Energy Use Intensity of each building. [Doc. 24-2, § 3]. Energize Denver also requires building owners to meet certain goals, including interim goals, regarding the Energy Use Intensity of each covered building in Denver. [*See* Doc. 24, p. 4]. Plaintiffs make two claims against Denver related to Energize Denver. First, they allege that "Energize Denver requires the replacement of existing Covered Products with Covered Products that exceed the energy use standards under Section 8295 in existing Covered Buildings and effectively prohibits the use of certain classes of EPCA regulated Covered Products . . . ." [Doc. 1, ¶ 174, Third Cause of Action]. Next, Plaintiffs allege that "Energize Denver requires new Covered Buildings to meet energy efficiency and energy use standards and effectively prohibits the use of certain classes of EPCA regulated Covered Products. . . ." [*Id.*, ¶ 180, Fourth Cause of Action]. Both claims expressly and exclusively allege that Energize Denver violates EPCA because of its supposed requirements regarding Covered Products. Denver has moved to dismiss both claims because Plaintiffs fail to include any factual allegations in their Complaint that any Plaintiff member has or will imminently be required to replace a Covered Product with a Covered Product that exceeds EPCA energy use standards, or that Energize Denver effectively requires the installation of Covered Products that exceed EPCA standards.

   Rather than focusing on Covered Products, as do the two claims made against Denver in the Complaint, Plaintiffs' Response focuses on other supposed requirements of Energize Denver such as energy audits, potential fines and potential building modifications not factually tied to the installation of Covered Products. But Plaintiffs' Complaint only alleges that Energize Denver

is preempted by EPCA because of its supposed requirements related to Covered Products. To the extent that Plaintiffs are attempting to expand the allegations in their Complaint via their Response, such attempts are impermissible. Furthermore, Plaintiffs have provided no legal support for the contention that any aspect of Energize Denver is preempted by EPCA.

## II.     PLAINTIFFS DO NOT ASSERT A PLAUSIBLE CLAIM FOR RELIEF

Contrary to Plaintiffs' arguments, Denver is not asking that Plaintiffs prove their case in the Complaint. Rather, Denver is insisting that Plaintiffs comply with prevailing pleading standards and establish that their claims are plausible, not merely possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Meeting this plausibility standard requires them to provide specific facts, not mere conclusory allegations, that they have been injured in the manner they claim. [*Id*.]. To do this, at a minimum, Plaintiffs must provide specific factual support for their allegations that its members have been, or will imminently be required to, install Covered Products that exceed federal energy efficiency guidelines and that Energize Denver effectively operates to require new building owners to install Covered Products that exceed federal energy efficiency guidelines.

All it takes is a simple reading of Energize Denver and its implementing regulations to determine that neither contain a requirement that a building owner install any particular type of equipment, whether the equipment be a Covered Product or otherwise. [Doc. 24-1, 24-2]. Because Energize Denver obviously does not expressly require the installation of any type of Covered Product, let alone Covered Products that exceed EPCA standards, Plaintiffs must show that Energize Denver effectively contains such a requirement. Although twice in their Response, Plaintiffs assert that they have provided allegations to support their contention that compliance with Energize Denver effectively requires the installation of Covered Products that exceed EPCA

efficiency standards [Doc. 44, pp. 9 and 12-13], in fact, none of the cited portions of the declarations mention Covered Products at all and the cited-to portions of the Complaint are conclusory "on information and belief" allegations which themselves are belied by the sworn-to statements of certain declarants. [*Id*., p. 13 (citing to Doc. 1, ¶¶ 142-45); contradicted by Doc. 1-2, ¶¶ 8, 14; Doc. 1-3, ¶¶ 8, 14; and Doc. 1-4, ¶¶ 8, 9, 14 (all admitting that certain of their buildings are already compliant with Energize Denver)].

Having no factual support for their allegations regarding Covered Products, Plaintiffs attempt to support their Complaint by referring to other provisions of Energize Denver not related to Covered Products. Plaintiffs allege that they are not currently in compliance with Energize Denver and will have to take action to come into compliance [Doc. 44, p. 8], and that they will incur costs and capital expenditures to modify their existing buildings or build new buildings [*Id*.]. However, because some Plaintiff buildings are already in compliance with Energize Denver [Doc. 1-2, ¶¶ 8, 14; Doc. 1-3, ¶¶ 8, 14; and Doc. 1-4, ¶¶ 8, 9, 14], and because Plaintiffs do not factually connect the need for the referenced, non-specific building modifications to Covered Products, Plaintiffs' allegations that these building modifications run afoul of EPCA preemption of Covered Products is conclusory. And to be clear, building modifications to bring a building into compliance with Energize Denver, in and of themselves, are not preempted by EPCA – and Plaintiffs do not and cannot make such a broad and unsupported allegation to this effect. Plaintiffs' only argument that EPCA preemption applies, as interpreted by *Berkeley*[1] or any other court opinion, is when compliance with Energize Denver requires the installation of Covered Products that exceed EPCA standards. Accordingly, nothing

---

[1] *California Restaurant Association v. Berkeley*, 89 F.4th 1094 (9th Cir. 2024).

4

prohibits Denver from requiring Plaintiff members to modify their existing building and install Covered Products that <u>meet</u> EPCA efficiency standards or to make other building modifications such as energy efficient windows, insulation, efficient lighting, or installing solar panels, that would reduce the greenhouse gas usage of the buildings. Plaintiffs must link their complained-of building modifications to the installation of Covered Products that exceed EPCA standards and this they have not done.

Next, Plaintiffs assert that energy audits cost them money [*Id*., p. 9] and that they may be subject to fines if they fail to comply with Energize Denver. [*Id*.]. First of all, Energize Denver does not require energy audits; the only requirement is that building owners provide annual benchmarking submissions which is a simple reporting of energy usage through an online tool. [Doc. 24-2, § 3]. The only time Energize Denver requires an energy audit is when a building owner is attempting to obtain a Timeline Adjustment, which is an optional Energize Denver compliance pathway building owners may, but are not required to, choose. [Doc. 24-2, §4.7A]. Accordingly, if building owners are conducting yearly energy audits, those audits are not mandated by Energize Denver. Furthermore, unless Plaintiffs factually connect the costs of any energy audits to their allegations regarding Covered Products, they have not established that an energy audit required to obtain an Alternate Compliance Option is contrary to EPCA's exclusive regulation of Covered Products.

Furthermore, as to potential fines, no Plaintiff member has demonstrated that they have been, or will imminently be, subject to a fine because of Energize Denver's supposed regulation of Covered Products. In fact, the implementing regulations provide for a warning to be issued to a building owner in advance of any implemented fine and there are no allegations that any

Plaintiff member has been issued either a warning or an administrative citation. [Doc. 24-2, ¶ 7.3]. The only allegation is that Plaintiff members could, conceivably be subject to penalties if they fail to comply with Energize Denver's requirements and this is insufficient to support a plausible claim against Denver related to potential fines.

In summary, Plaintiffs provide no legal or factual support for their assertions that any part of Energize Denver is preempted by EPCA as interpreted by *Berkeley* or any other caselaw. Furthermore, they provide no factual support for their allegations that Energize Denver, either directly or indirectly, requires them to install Covered Products that exceed EPCA standards. As such, they have failed to state a cause of action upon which relief can be given and their Complaint must be dismissed as it applies to Denver pursuant to Fed. R. Civ. P. 12(b)(6).

### III.   PLAINTIFFS LACK STANDING

For this Court to have jurisdiction to consider the Complaint, Plaintiffs must first establish Article III standing. In order to do so, Plaintiff must provide specific factual allegations demonstrating three things: 1) they suffered an injury in fact; 2) that is fairly traceable to the challenged conduct of the defendant; and 3) that is likely to be redressed by a favorable judicial decision. *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). Institutional plaintiffs must establish that at least one of their members meet the three-element *Spokeo* test. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 563 (1992). None of the organizations who are named Plaintiffs in this lawsuit have provided the factual detail required to establish Article III standing and this Court has no jurisdiction to consider their claims.

First, as discussed more fully above, because Plaintiffs have not established that Energize Denver improperly regulates Covered Products by requiring the installation of Covered Products

that exceed EPCA energy efficiency standards or cannot be complied with without such installation, no Plaintiff has established that they have suffered an injury in fact. Thus, the first element of standing is unmet.

The "conduct" of Energize Denver which Plaintiffs allege is preempted by EPCA is the supposed requirement that Covered Products be replaced with Covered Products that exceed EPCA efficiency requirements. There is no such requirement and Plaintiffs have not traced their alleged harm to this conduct. Plaintiffs do not provide factual allegations linking their alleged "harm", i.e. the cost of energy audits, building modifications, and/or fines, to EPCA's preemption regarding Covered Products. First of all, as demonstrated, energy audits are required by Energize Denver only when an owner chooses to apply for an Alternate Compliance Option; unless an owner chooses this option, energy audits are simply not required. While the remaining harms maintained by Plaintiffs in their Response, i.e. building modifications and fines, may arguably be traceable to other Energize Denver requirements, Plaintiffs do not factually connect these alleged harms to Covered Products and therefore have not connected these requirements to the elements of Energize Denver which Plaintiffs allege is preempted by EPCA – their preemption allegations only concern Covered Products. Thus, Plaintiffs have not traced their purported harm to the conduct they allege is illegal and, therefore, have not met the second *Spokeo* requirement for standing.

Finally, assuming this Court were to issue an order prohibiting Denver from requiring the installation of Covered Products that exceed EPCA energy efficiency standards, such an order would not redress Plaintiffs claimed injuries seeing as they have not factually connected their injuries to Covered Products. Plaintiffs would still be required to conduct energy audits if they

choose to apply for an Alternate Compliance Option, would still be subject to fines for noncompliance, and may still be required to modify their buildings in ways not connected to Covered Products in order to meet the requirements of Energize Denver. Because Plaintiffs have not provided factual information tracing their harm to Energize Denver requirements concerning Covered Products, because those provisions simply do not exist, any order by this Court concerning Covered Products would provide them no relief for the harms they allege. Thus, Plaintiffs do not meet the third requirement for standing.

For all these reasons, this Court has no jurisdiction to consider Plaintiffs' claims and their Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

### IV. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

Plaintiffs argue that the correct statute of limitations for this action is Colorado's default two-year statute of limitations for § 1983 actions or the two-year, catch-all statute of limitations under C.R.S. § 13-80-102(1)(h), and that the operative Energize Denver regulations at issue were promulgated and signed into law on either November 23, 2022 or July 11, 2023 [Doc. 44, pp. 5 and 14-15].[2] While those dates represent subsequent amendments of the implementing regulations for Energize Denver (amendments 3 and 4), the Energize Denver ordinances were signed into law by the Mayor of Denver on December 20, 2016 and November 24, 2021. City of

---

[2] As the Response notes, Denver's motion to dismiss did cite to the Proposed-Intervenor's motion to dismiss on the statute of limitations issue. [Doc. 44, p. 15]. The Court has since granted that motion to intervene. [Doc. 50]. Denver hereby cites and refers to Intervenor's motion for judicial notice and the accompanying appendix to that motion. [Doc. 31 and 31-1]. The original Energize Denver regulations for annual benchmarking issued on March 29, 2017 and regulations regarding building performance issued on January 20, 2022. [Doc.31-1, pp. 74-78 and 79-93; *see also* Doc. 31, p. 3, fn. 3).

Denver Council Bill CB16-1231 [*see* Doc. 24-1 (2016 ordinance); Doc. 31-1, pp. 47-55 (same); Doc. 31-1, pp. 56-73 (2021 ordinance)]. Thus, even accepting Plaintiffs' argument that the two-year statute of limitations is applicable here, both versions of the Energize Denver ordinances contain the requirements that Plaintiffs now take issue with. [*see* Doc. 24-1, pp. 2-5; Doc. 31-1, pp. 53-54; Doc. 31-1, pp. 56-73 (pp. 69-73)]. Indeed, the 2021 Ordinance is uniformly cited in nearly all supporting declarations to the Complaint [*see* Doc. 1-2, pp. 2-3 and Docs p. 1.3–1.7 and 1.9-1.12 which contain similar paragraphs regarding Energize Denver].

As Plaintiffs concede, the statute of limitations begins to run when a plaintiff knows or should have known of the existence and cause of the injury that is the subject of the action. [Doc. 46 at p. 4 (citing *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)]. Despite Plaintiffs' argument to the contrary, however, "[a] plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *Id.* (citing cases omitted). Here, Plaintiffs knew or should have known of their alleged injuries when the Denver ordinances were made law in 2016 and then again, in 2021, and when the original implementing regulations for Energize Denver were published. Plaintiffs filed their complaint on April 22, 2024, more than two years after the ordinances became law and the original regulations were published and not coincidentally, several months after the Ninth Circuit's final, amended decision in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). [*See* Doc. 1, ¶¶ 106-08]. Thus, even if the Court borrows the two-year statute of limitations for § 1983 actions or the two-year, catch-all statute of limitations under C.R.S. § 13-80-102(1)(h), the Court should dismiss Plaintiffs' claims as to Energize Denver because they are time-barred.

WHEREFORE, for the foregoing reasons, Denver requests that its Motion to Dismiss be granted and all claims against Denver be dismissed in their entirety.

Respectfully submitted this 12th day of September, 2024.

By: *s/ Michele A. Horn*
Michele A. Horn
Edward J. Gorman
Assistant City Attorneys
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332
(720) 913-3275
michele.horn@denvergov.org
edward.gorman@denvergov.org
*Attorneys for Defendants the City and County of Denver, Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency*

**CERTIFICATE OF SERVICE**

      I hereby certify that on September 24, 2024, I caused a true and correct copy of the foregoing **DENVER DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS** to be electronically filed with the Clerk of Court and served on all counsel of record including the following using the CM/ECF system:

Paul M. Seby
Matthew K. Tieslau
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, CO  80202
Email: sebyp@gtlaw.com
        tieslaum@gtlaw.com
*Attorneys for Plaintiffs*

                              *s/ Shannon Egan*
                              Shannon Egan, Paralegal
                              City and County of Denver
                              201 West Colfax Avenue,
                              Dept. 1207
                              Denver, Colorado  80202-5332