IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAOIP COLORADO CHAPTER;

    Plaintiffs,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office; and

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency.

    Defendant

AND

COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB,

    Intervenor-Defendants

## ORDER

    This matter is before the Court on Defendants Jill Hunsaker Ryan, Michael Ogletree, Will Toor ("State Defendants") Motion to Dismiss, ECF No. 23, Defendants City

and County of Denver, Denver City Council, Denver Mayor Michael Johnston, Denver Office of Climate Action, Sustainability, and Resiliency, and Elizabeth Babcock ("Denver Defendants") Motion to Dismiss, ECF No. 24, Intervenor-Defendants Coalition for Community Solar Access, Colorado Solar and Storage Association, Natural Resources Defense Council, and Siera Club ("Intervenor-Defendants") Motion to Dismiss, ECF No. 30, and Motion for Judicial Notice, ECF No. 31. For the reasons stated below, the Court GRANTS State Defendants' and Denver Defendants' Motions to Dismiss for lack of Article III standing and dismisses Plaintiffs' claims without prejudice. Given the Court's determination that it lacks subject matter jurisdiction, Intervenor-Defendants' motions are denied as moot.

## I. BACKGROUND

In this action, Plaintiffs—four organizations whose members either own or manage buildings in Colorado, some of which are in Denver—challenge certain building performance standards enacted by the State of Colorado and the City of Denver. Plaintiffs contend these building performance standards, which require categories of large buildings to reduce their energy use or greenhouse gas emissions by a specified amount over a period of years, run afoul of the Energy Policy and Conservation Act's ("EPCA") express preemption provision, which preempts state and local energy efficiency and energy use standards for certain consumer and commercial appliances ("Covered Products"). Accordingly, Plaintiffs bring this action seeking to have the state and city regulations declared unlawful and void and ask the Court to enjoin Defendants from

implementing and enforcing those regulations. Specifically, Plaintiffs ask the Court for declaratory and injunctive relief under federal law against the enforcement of:

- The Colorado Air Quality Control Commission's ("Commission") final regulation entitled Building Benchmarking and Performance Standards, 5 CCR 1001-32 ("Regulation 28") enacting regulations directed by the State of Colorado's House Bill 21-1286; and

- The City and County of Denver, Colorado's Denver Ordinance No. 20211310 ("Energize Denver Ordinance"), and the implementing rules for Energize Denver enacted by the Denver Office of Climate Action, Sustainability, and Resiliency, ("Denver OCASR") entitled "Rules & Regulations Governing Energize Denver Building Energy Performance Requirements" ("Energize Denver Regulations") (the Ordinance and Regulations may be collectively referred to as "Energize Denver").

A.   **Colorado House Bill 21-1286 and Regulation 28**

In 2019, the Colorado General Assembly began introducing legislation aimed at combatting climate change and reducing greenhouse gas ("GHG") emissions in the state. Consistent with these goals, in 2021 the Colorado General Assembly passed House Bill ("HB") 21-1286. HB 21-1286 aims to reduce GHG emissions from select large residential and commercial buildings (buildings over 50,000 sq/ft) ("State Covered Buildings") seven percent by 2026 and twenty percent by 2030 as compared to 2021 levels. C.R.S. § 25-7-142(8)(a)(II)(A), (B); ECF No. 1, ¶ 34. Beginning on December 1, 2022, HB 21-1286 also required owners of State Covered Buildings to submit annual reports detailing their energy usage for the previous calendar year ("Benchmarking Requirements"). C.R.S. § 25-7-142(3); ECF No.1, ¶ 33.

The General Assembly also directed the Commission to establish statewide building performance standards to meet the statutory emission reductions. C.R.S. § 25-7-142(8)(c)(I); ECF No. 1, ¶ 34. The Commission fulfilled this by adopting Regulation 28,

3

which applies to both existing and new State Covered Buildings. 5 Colo. Code Regs. § 1001-32; ECF No. 1, ¶ 37. Regulation 28 established building performance standards for State Covered Buildings to meet by 2026 and 2030 ("Performance Standards"). *Id.* ¶ 36. To meet the Performance Standards, State Covered Building owners must implement energy efficiency measures to meet certain Energy Use Intensity ("EUI") scores (calculated from a building's total site energy use per square foot per year), or implement measures to decrease the building's GHG emissions and reduce the GHG intensity ("GHG Intensity") score (calculated by the carbon dioxide equivalent measures in kilograms of carbon dioxide equivalent per square foot emitted per year associated with operations of a State Covered Building), or a combination of both. *Id.* ¶¶ 38-40; Regulation 28, Part C. Regulation 28 provides owners flexibility in what efficiency measures are utilized to achieve these targets through multiple compliance pathways. *Id.* ¶ 42. Owners may also enroll in utility-offered programs or purchase renewable energy credits. *Id.* ¶ 45. Owners may also modify their 2026 and 2030 compliance obligations by applying to the Colorado Energy Office ("CEO") for an adjusted EUI score, adjusted GHG Intensity target, or adjusted compliance timeline. *Id.* ¶¶ 46, 54-58. The EUI and GHG Intensity targets are set on a "property type" basis, meaning that the standards differ depending on the property type of the State Covered Building. *Id.* ¶ 40.

    **B.**    **Energize Denver Ordinance and Regulations**

The Energize Denver Ordinance, passed by Denver's City Council in 2021, pushes the city to reach net-zero greenhouse gas emissions by 2040 through energy benchmarking and performance standards for new and existing commercial and

4

multifamily buildings, also known as "covered buildings." Spearheaded by OCASR, commercial and multifamily buildings with more than 25,000 square feet ("City Covered Buildings") are required to meet certain building performance standards in 2024, 2027, and 2030. Energize Denver requires that these covered buildings determine and report the subject building's EUI. Energize Denver calculates a building's EUI as the total energy use over 12 months divided by the building's total square footage and normalized for weather. ECF No. 24-2, § 2.33. Per regulation, every building type is given a target EUI to meet by 2030. Some types of buildings are not given an EUI target at all but are instead required to reduce their EUI by 30% overall. *Id.* § 4.3(A). The 2024 and 2027 interim EUI building performance standards in the Energize Denver Regulations are set drawing a "straight line" from the City Covered Building's 2019 EUI score to the 2030 EUI building performance standard to determine interim targets for the 2024 and 2027 compliance year deadlines. *Id.* § 4.8(A)(i).

Like Regulation 28, Energize Denver offers multiple compliance pathways to achieve the ultimate EUI goals. *See id.* §§ 4.5(A); 4.7(A); 4.7(C); 4.8(C). However, if a building owner chooses to meet the EUI target through 80% whole building electrification, OCASR offers a 10% increase to the 2030 EUI target. *Id.* § 4.5(A). Additionally, the OCASR Regs offer a number of Alternate Compliance Options such as a Timeline Adjustment which gives a Covered Building additional time to meet its interim target, *id.* § 4.7(A), and an alternate compliance option for a City Covered Building that has been issued a 30% reduction goal or which is limited by the Landmark Preservation Board as to what energy efficient measures can be implemented. *Id.* § 4.7(C). Furthermore, proof

5

of renewable power generation, either on- or off-site, is credited towards a building's total energy use. *Id.* § 4.8(C).

### C. EPCA

The EPCA regulates the energy efficiency of certain consumer and commercial equipment. *See* 42 U.S.C. §§ 6292, 6295. Under the ECPA, these "Covered Products" are subject to energy conservation standards established by the U.S. Department of Energy ("DOE"). *Id.* As relevant here, the EPCA's standards explicitly preempt state and local regulations "concerning the energy efficiency" and "energy use" of the products for which the EPCA sets its own energy efficiency standards. *Id.* § 6297(c). Section 6297(c) expressly provides:

> [E]ffective on the effective date of an energy conservation standard established in or prescribed under section 6295 of this title for any covered product, no State regulation <u>concerning the energy efficiency, energy use, or water use of such covered product</u> shall be effective <u>with respect to such product</u> . . . .

*Id.* (emphasis added). This express preemption provision prevents states from adopting or enforcing energy efficiency standards for Covered Products regulated by the EPCA. The Covered Products regulated by EPCA include consumer appliances and commercial equipment such as air conditioners, water heaters, furnaces, clothes washers and dryers, and stoves. *See* 42 U.S.C. §§ 6292; 6295; 6311(1); 6313. "Energy conservation standard" is defined as "performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use . . . for a covered product . . . ." *Id.* §§ 6291(6)(A); 6311(18). "Energy use" is defined as "the quantity of energy directly consumed by a consumer or commercial product at point of use." *Id.* §§ 6291(4);

6

6311(4). "Energy efficiency" is defined as "the ratio of the useful output of services from a consumer product to the energy use of such product." *Id.* §§ 6291(3); 6311(3). "Energy" is defined as "electricity, or fossil fuels." *Id.* §§ 6291(3); 6311(7). There are limited exceptions to the preemption rule for Covered Products. *Id.* §§ 6297(d)-(f); 6316(b)(2)(B).

### D.   Impact of Building Performance Standards on Plaintiffs

Plaintiffs Colorado Apartment Association ("CAA"), Apartment Association of Metro Denver ("AAMD"), the Colorado Hotel and Lodging Association, Inc. ("CHLA"), and the NAIOP Colorado Chapter ("NAIOP Colorado") are four nonprofit corporations who allege their members own covered buildings that are, and plan to construct new buildings that will be, subject to both the state and city regulations.

CAA is a Colorado is a trade association representing the multifamily housing industry, including owners, developers, management companies, and vendors. ECF No. 1, ¶ 17. CAA represents over 3,600 members who own and manage over 350,000 apartments. *Id.* AAMD is an association of local apartment building owners that promotes the multifamily rental housing industry in the Denver metropolitan area, including seeking improvements in the techniques of ownership and management. *Id.* ¶ 18. CHLA is a professional trade association that promotes the hotel and lodging industry in Colorado and advocates on behalf of its members. *Id.* ¶ 19. NAIOP Colorado is a commercial real estate development association that promotes and advocates on behalf of its commercial real estate industry members in Colorado.

Plaintiffs allege that the building performance standards in both Regulation 28 and Energize Denver "effectively require and force Covered Building owners to replace

7

existing Covered Products (or in the context of new construction to choose Covered Products) that exceed current federal energy efficiency standards under the EPCA." ECF No. 1, ¶ 5. Plaintiffs allege their members have "already completed preliminary energy audits that determined that their Covered Buildings cannot meet either regulation's building performance standards without replacing the fossil-fueled, EPCA regulated Covered Products in their existing buildings with elective Covered Products that exceed EPCA standards, and determined that replacement of the Covered Products will require the removal and replacement of the buildings' energy systems." *Id.* ¶ 8. Thus, they argue Regulation 28 and Energize Denver regulate the energy efficiency of Covered Products that are subject to regulation under, and are therefore preempted by, the EPCA. *Id.* ¶ 6.

State Defendants, Denver Defendants, and Intervenor-Defendants each filed separate Motions to Dismiss. State Defendants argue Plaintiffs' claims against them should be dismissed for lack of standing and because their claims are not ripe. ECF No. 23. Denver Defendants also argue that Plaintiffs lack standing to bring the claims against them, Plaintiffs have failed to state a claim upon which relief can be granted, and Plaintiffs' claims are barred by the statute of limitations. ECF No. 24. Finally, Intervenor-Defendants argue for dismissal because Plaintiffs' claims are barred by the statute of limitations. ECF No. 30. Each of the motions are fully briefed and ripe for review.

## II.   LEGAL STANDARD

### A.   12(b)(1)

"To survive a 12(b)(1) motion to dismiss, a plaintiff must demonstrate that the court has subject-matter jurisdiction." *Audubon of Kan., Inc. v. U.S. Dep't of Interior*, 67 F.4th

8

1093, 1108 (10th Cir. 2023). "The party invoking federal jurisdiction has the burden to establish that it is proper, and there is a presumption against its existence." *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014) (internal quotation marks omitted).

A Rule 12(b)(1) challenge may take two different forms. "The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2013). "When resolving a facial attack on the allegations of subject matter jurisdiction, a court must accept the allegations in the complaint as true." *Graff v. Aberdeen Enters., II, Inc.*, 65 F.4th 500, 507 (10th Cir. 2023) (citing *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995)). "When the moving party attacks the factual basis for subject matter jurisdiction, on the other hand, a court 'may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts.'" *Id.* (quoting *SK Fin. SA v. La Plata Cnty., Bd. of Cnty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997)). In such cases, a court may consider affidavits or other documents to resolve the jurisdictional question. Id. (citing *Holt*, 46 F.3d at 1003).

**B.   12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual

9

allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted). As a result, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556 (internal quotation omitted)).

## III.   ANALYSIS

Plaintiffs do not allege that Regulation 28 or Energize Denver directly regulate the energy efficiency or energy use of Covered Products. Rather, they argue that both Regulation 28 and Energize Denver "effectively" regulate Covered Products, because the only way to comply with the regulations is to replace Covered Products in their buildings

with products exceeding DOE's energy efficiency standards. Thus, at the heart of this lawsuit is the question—as yet unanswered in the Tenth Circuit—of whether Congress intended the EPCA to preempt state and local regulation of EUI and GHG emissions that address the energy use and GHG emissions of buildings as a whole, even if they do not specifically regulate Covered Products. Before tackling the merits, the Court must determine whether it has subject matter jurisdiction over this matter.

### A. Standing

As a threshold matter, State and Denver Defendants argue Plaintiffs lack standing to challenge Regulation 28 and Energize Denver. Article III standing is a "bedrock constitutional requirement." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 378, 144 S.Ct. 1540 (2024) (quoting *United States v. Texas*, 599 U.S. 670, 675, 143 S.Ct. 1964, 216 L.Ed.2d 624 (2023)). Article III of the Constitution limits the federal courts' jurisdiction to "Cases" and "Controversies." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016). Because Article III standing is an issue of a court's jurisdiction, a court must first satisfy itself that it exists. *Kerr*, 20 F.4th at 692. Organizations, like Plaintiffs, have standing to bring suit on behalf of their members if (1) at least one of its members would have standing to sue in the member's own right; (2) the interest it seeks to protect is germane to its purpose; and (3) neither the claim asserted nor the relief requested requires the member to participate in the lawsuit. *See Friends of the Earth v. Laidlaw*, 528 U.S. 167, 181, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).

1.     **Standing to Challenge Regulation 28**

State Defendants argue Plaintiffs lack organizational standing for their claims challenging Regulation 28 because (1) they fail to establish that any of their members would have standing to challenge Regulation 28 and (2) they lack prudential standing because the unique compliance obligations of each State Covered Building owner require participation in the lawsuit of specific building owners who allege injury.

To satisfy the first element of organizational standing, Plaintiffs must demonstrate that (1) at least one of their members has suffered or will imminently suffer an injury in fact to a legally protected interest, (2) a causal connection between State Defendants' challenged conduct and their members' alleged injury, and (3) a likelihood that a favorable decision will redress the alleged injury. *Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. at 180–81. The alleged injury must be "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id.* To establish causation, the injury must be "fairly traceable to the challenged action of the defendant." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (quoting *Friends of the Earth*, 528 U.S. at 180–81). To be redressable, "it must be 'likely,' as opposed to merely 'speculative,'" that the alleged injury will be "redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citations omitted).

Here, State Defendants argue that Plaintiffs have not shown that at least one of their members has suffered or will imminently suffer a concrete, particularized injury in fact to a legally protected interest. For an injury to be concrete, "it must actually exist." *Spokeo*, 578 U.S. 338. "For an injury to be 'particularized,' it 'must affect the plaintiff in a

personal and individual way.' " *Id.* (quoting *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. 2130). And for an injury to be imminent, it "must be 'certainly impending.' " *COPE v. Kan. State Bd. of Educ.*, 821 F.3d 1215, 1222 (10th Cir. 2016) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. "However, '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.' " *COPE*, 821 F.3d at 1221 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

Plaintiffs' claims against State Defendants assert that Regulation 28 is preempted by the EPCA. To come within the scope of the EPCA's preemption provision, Regulation 28 must include regulations "concerning" the "energy efficiency" or "energy use" of a Covered Product. *See* 42 U.S.C. § 6297(c). Plaintiffs do not allege that Regulation 28 explicitly regulates the energy efficiency or usage of any Covered Products. Rather, they allege that Regulation 28 "effectively and de facto prohibit[s] the use of natural gas appliances in existing and new buildings by setting the energy conservation standards so stringent as to provide Covered Building owners with no effective choice in reducing their energy consumption or greenhouse gas emissions other than to install electric Covered Products that exceed federal DOE standards." ECF No. 1 ¶ 109. In support, Plaintiffs allege that their members "have determined that the only way to meet the prescriptive building performance standards in Regulation 28 is to replace EPCA-regulated Covered Products in their buildings with Covered Products exceeding federal DOE energy

efficiency standards." *Id.* ¶ 119. They claim that "there is no combination of non-EPCA Covered Products replacements . . . that will allow a Covered Building to meet the building performance standards of Regulation 28 – only replacement of EPCA-regulated Covered Products with products that exceed federal DOE energy efficiency standards can achieve the building performance standards of Regulation 28." *Id.*

The problem for Plaintiffs is that beyond these conclusory statements, they have failed to allege a non-speculative injury caused by Regulation 28. Plaintiffs' claims that Regulation 28 are preempted hinge on the allegation that Regulation 28 "effectively" requires Plaintiffs' members to replace and install Covered Products that exceed DOE efficiency standards. This amounts to a conclusory allegation of Plaintiffs' preemption claim and speculation as what is required to comply with Regulation 28. Plaintiffs have not alleged that Regulation 28 regulates any specific Covered Products, let alone which Covered Products must exceed which DOE efficiency standards in order to comply with Regulation 28.

While the Complaint and declarations allege that some of Plaintiffs' members have evaluated and concluded that their buildings are not in compliance with Regulation 28, they do not allege how they determined that the only way to comply is to install Covered Products that exceed DOE efficiency standards. Indeed, Plaintiffs concede there are multiple compliance pathways for Regulation 28, but neither the Complaint nor the Declarations identify the chosen compliance pathways for any individual building. And aside from speculating as to potential future costs, Plaintiffs' members do not allege they have spent any costs replacing any of their existing Covered Products with those that

14

exceed the DOE efficiency standards. At most, one building owner attests that he "anticipates" that he will need to change out HVAC and/or water heating systems, but he does not state that the need to change out such equipment would require replacing existing equipment with an HVAC or water heating system that exceeds the DOE efficiency standards. ECF No. 1-8 ¶ 15. In fact, he states only that he must "immediately begin" to identify available options to achieve the building performance standards" and "begin the planning process for making material modifications to the [building] to implement the chosen options." *Id.* ¶ 14. Based on these allegations, any injury related to the need to replace Covered Products with those that exceed DOE efficiency standards is wholly speculative. *See Clapper*, 69 U.S. at 409 (" 'Allegations of *possible* future injury' are not sufficient.") (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990)). Without any specific allegations as to what provisions or compliance pathways of Regulation 28 regulate Covered Products or any allegations as to what specific Covered Products must be replaced with Covered Products that exceed the DOE's efficiency standards in order to comply with Regulation 28, Plaintiffs have not sufficiently alleged that this injury is "certainly impending." Thus, Plaintiffs have failed to show that at least one of their members will suffer an injury in fact.

To the extent Plaintiffs have alleged that their members have suffered injuries in the form of costs associated with energy audits and benchmarking requirements, these costs are not causally connected to the challenged portion of Regulation 28. Plaintiffs do not allege that audits or benchmarking requirements are preempted by the EPCA. In any case, the requirement to evaluate a building's energy usage derives from C.R.S. § 25-7-

142(3) and Regulation 28's Benchmarking Requirements—not the challenged Performance Standards. *See California v. Texas*, 593 U.S. 659, 678-79 (2021) (holding that states lacked standing to challenge provision of the Affordable Care Act requiring minimum insurance coverage because their alleged injuries were caused by an unchallenged portion of the Affordable Care Act and were not fairly traceable to the challenged provision). Owners of Covered Buildings need to determine how to comply with Regulation 28 regardless of which compliance pathway they choose. In other words, the need to conduct energy audits or engineering analyses is not fairly traceable to the alleged injury—the need to replace Covered Products. The costs associated with evaluating their energy usage are distinct from any alleged required replacement of Covered Products and therefore not a basis for standing.

### 2. Standing to Challenge Energize Denver

For similar reasons, Plaintiffs lack organizational standing to challenge Energize Denver. Thus, their third and fourth claims for relief against the Denver Defendants must also be dismissed for lack of standing.

As with the challenge to Regulation 28, Plaintiffs make only the conclusory allegation that Energize Denver is preempted by the EPCA because it "effectively" requires Plaintiffs' members to choose Covered Products that exceed the DOE's efficiency standards. But absent from the complaint and declarations are any specific allegations as to what provisions of Energize Denver regulate Covered Products, which of Plaintiffs' members has determined that they must replace existing Covered Products with Covered Products that exceed the DOE efficiency standards, how they reached this

16

determination, or which specific Covered Products that exceed DOE efficiency standards must be installed in new buildings or replaced in existing buildings. They also have not alleged that any costs have been incurred to replace Covered Products or that any of Covered Products have been replaced. Put simply, Plaintiffs allege that complying with Energize Denver may require them to make building modifications to reduce the *entire building's* EUI, but fail to allege that any provision of Energize Denver directly concerns specific Covered Products or attempts to regulate the energy use or efficiency of such Covered Products. Moreover, several of the declarations concede that their buildings are already compliant with Energize Denver without requiring changes—suggesting that Energize Denver does not regulate or require the replacement or installation of Covered Products that exceed the DOE efficiency standards. *See* ECF Nos. 1-2 ¶¶ 8, 14; 1-3 ¶¶ 8, 14; 1-4 ¶¶ 8, 9, 14.

Because the Court concludes that Plaintiffs' allegations fail to establish that any of their members have Article III standing for their claims, the Court does not reach the remaining arguments for dismissal. *See Colorado Outfitters Ass'n v. Hickenlooper*, 823 F.3d 537, 543 (10th Cir. 2016) (court must resolve issues of standing before it may reach the merits of an issue).

## IV.  CONCLUSION

For the reasons stated above, State Defendants' Partial Motion to Dismiss, ECF No. 23, and Denver Defendants' Motion to Dismiss, ECF No. 24, are **GRANTED**. Intervenor-Defendants' Motion to Dismiss, ECF No. 30, and Intervenor-Defendants' Motion for Judicial Notice, ECF No. 31, are **DENIED AS MOOT**. Plaintiffs' claims are

**DISMISSED WITHOUT PREJUDICE**. Plaintiffs shall have twenty-one (21) days from the date of this Order to file a motion for leave to amend, together with a proposed amended complaint.

DATED: March 28, 2025

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge