**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO
DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP
COLORADO CHAPTER,

      *Plaintiffs,*

    v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the
Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his
Official Capacity as the Director of the Colorado Air Pollution Control Division; AND
WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy
Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER
MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION,
SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official
Capacity as the Executive Director of the Denver Office of Climate Action,
Sustainability, and Resiliency,

      *Defendants*; AND

COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND
STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL AND
SIERRA CLUB,

      *Intervenor-Defendants.*

_____

**INTERVENOR-DEFENDANTS' MOTION TO DISMISS FIRST AMENDED
COMPLAINT**

_____

## TABLE OF AUTHORITIES

**Cases**

*Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492 (9th Cir. 2005) ................................................................. 8

*Ass'n of Contr. Plumbers v. City of New York*, 2025 U.S. Dist. LEXIS 49465 (S.D.N.Y. Mar. 18, 2025) ........................................................................... 7, 11, 12, 13

*Cal. Rest. Ass'n v. Berkeley*, 89 F.4th 1094 (9th Cir. 2024) .............. 7, 11, 12, 13, 14, 15

*Chance v. Zinke*, 898 F.3d 1025 (10th Cir. 2018) ......................................................... 3

*Day v. Skywest Airlines*, 45 F.4th 1181 (10th Cir. 2022) ................................. 6, 8, 11, 12

*Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238 (Colo. 2009) ............................................. 5

*Jones v. Bock*, 549 U.S. 199 (2007) ............................................................................ 3

*Mulhern Gas Co. v. Mosley*, 2025 U.S. Dist. LEXIS 141175 (N.D.N.Y. July 23, 2025) . 12

*NRDC v. Herrington*, 768 F.2d 1355 (D.C. Cir. 1985) ..................................................... 7

*Rest. L. Ctr. v. City & Cnty. of Denver*, No. 24-cv-01862, 2025 U.S. Dist. LEXIS 181583 (D. Colo. Sept. 16, 2025) ......................................................................... 3, 4

*Sackett v. EPA*, 598 U.S. 651 (2023) .......................................................................... 11

*Van Buren v. United States*, 593 U.S. 374 (2021) ........................................................ 13

*Watkins v. Ganesh, Inc.*, 135 F.4th 1224 (10th Cir. 2025) .............................................. 3

*Wolf Sales Co. v. Rudolph Wurlitzer Co.*, 105 F. Supp. 506 (D. Colo. 1952) .................. 5

**Statutes**

42 U.S.C. § 6291(1) ................................................................................................ 8

42 U.S.C. § 6291(4) ................................................................................................ 7

42 U.S.C. § 6291(5) ................................................................................................ 7

42 U.S.C. § 6291(6) ................................................................................................ 8

42 U.S.C. § 6293 .................................................................................................... 8

42 U.S.C. § 6293(b)(3) ............................................................................................ 7

42 U.S.C. § 6294 .................................................................................................... 8

42 U.S.C. § 6295 .................................................................................................... 8

42 U.S.C. § 6297(c) ............................................................................................. 6, 8

42 U.S.C. § 6314 .................................................................................................... 8

42 U.S.C. § 6315 .................................................................................................... 8

C.R.S. § 25-7-142(1) .............................................................................................. 1

C.R.S. § 25-7-142(2)(j) ........................................................................................... 1

C.R.S. § 25-7-142(8)(a)(II) ...................................................................................... 1

H.B. 212 (Colo. 1959) ............................................................................................. 5

**Other Authorities**

Colorado Office of the State Architect, *Building Codes* (2025) ...................................... 14

**Regulations**

10 C.F.R. § 429.12 ........................................................................................ 8

10 C.F.R. § 430 ............................................................................................. 8

10 C.F.R. § 431 ............................................................................................. 8

16 C.F.R. § 305.17 ........................................................................................ 8

5 C.C.R. § 1001-32 ....................................................................................... 2

**Federal Register**

47 Fed. Reg. 14424 (Apr. 2, 1982) ............................................................... 9

**Ordinances**

Denver Comm. Bldg. Code § 105.1.2.1 ....................................................... 11

Denver Fire & Bldg. Code § 103.1 .............................................................. 15

Denver Rev. Mun. Code ch. 10, art. II ......................................................... 14

Denver Rev. Mun. Code ch. 10, art. XIV ..................................................... 14

Denver Rev. Mun. Code ch. 10, art. XIV, § 10-404(a) .................................. 2

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 1

LEGAL STANDARDS ................................................................................................... 3

ARGUMENT .................................................................................................................. 3

    I.    PLAINTIFFS' CLAIMS REGARDING NON-INDUSTRIAL APPLIANCES ARE UNTIMELY. .......................................................................................................... 3

        A.    If the Court applies *RLC v. Denver*, the claims challenging Energize Denver are untimely. ....................................................................................... 4

        B.    The Court should apply a 35-Day limitations period to the claims challenging Regulation 28. .................................................................................................... 4

    II.    EPCA DOES NOT PREEMPT THE BUILDING PERFORMANCE STANDARDS. 6

        A.    EPCA preempts only state regulations concerning covered appliances as designed and manufactured. ............................................................................. 6

        B.    The Building Performance Standards do not concern energy use as defined in EPCA. ............................................................................................................... 9

        C.    *Berkeley* does not apply to the Building Performance Standards. .................. 12

CONCLUSION ........................................................................................................... 15

**INTRODUCTION**

Intervenor-Defendants hereby move to dismiss the Complaint under Rule 12(b)(6) on two separate grounds: as barred by the statute of limitations; and for failure to state a preemption claim upon which relief can be granted. Intervenor-Defendants conferred with the parties and represent that the City of Denver does not oppose, the State takes no position, and Plaintiffs oppose the Motion. Intervenor-Defendants have filed an accompanying Motion for Judicial Notice. As explained below, the Court should dismiss the First Amended Complaint in its entirety, with prejudice.

**FACTUAL BACKGROUND**

Climate change, air pollution, and the increasingly volatile costs of fossil fuels are seriously harming Colorado. These harms threaten to intensify if the State fails to mount a strong, comprehensive policy response. Persistently unhealthy air quality has put Colorado's most populous areas along the Front Range in "Severe" nonattainment of federal air quality standards and led to an "F" grade in the American Lung Association's 2024 State of the Air Report. Mot. to Intervene, ECF No. 29 at 2. Climate change is contributing to increased frequency and severity of wildfires in Colorado, as well as drought, decreased snowpack, and extreme weather from high winds to heat waves. *Id.*

To address these threats, in 2021, the Colorado General Assembly enacted House Bill 21-1286, C.R.S. § 25-7-142(1), directing Colorado's Air Quality Control Commission to enact performance standards that apply to most buildings 50,000 square feet or larger, and that reduce these buildings' greenhouse gas emissions 7% by 2026 and 20% by 2030. *Id.* § 25-7-142(2)(j), (8)(a)(II). The Commission carried out this

legislative directive in August 2023 by enacting Regulation 28, which provides for a range of compliance pathways, flexibilities, and deadline adjustments. 5 C.C.R. § 1001-32. Covered building owners have many compliance options, including weatherization, energy efficiency upgrades, replacing polluting fossil fuel equipment with non-emitting electric equipment, and the use of distributed renewable energy and storage such as rooftop solar and batteries.

Colorado's statewide standards build on the foundation laid by Energize Denver, which sets energy performance standards for most buildings in Denver that are 25,000 square feet or larger, targeting 30% energy savings from these buildings by 2030. Denver Rev. Mun. Code ch. 10, art. XIV, § 10-404(a). Like Regulation 28, it provides a flexible range of compliance pathways and adjustments, allowing each covered building owner to select the measures that will meet its targets most cost-effectively.

Together, House Bill 21-1286, Regulation 28, and the Energize Denver ordinance and regulations (collectively, "the Building Performance Standards" or "the Standards") are a critical part of Denver and Colorado's strategies to address buildings' significant emissions and meet broader decarbonization objectives. They will also significantly reduce health-harming air pollution from energy use in large buildings.

On April 22, 2024, Plaintiffs filed a Complaint claiming that the Standards are preempted by the express preemption provision of the federal Energy Policy and Conservation Act ("EPCA"), a federal statute that aims to conserve energy by enacting federal energy efficiency standards for certain appliances. On March 28, 2025, the Court dismissed the Complaint without prejudice for failure to establish any non-

speculative injury as required to show standing. ECF No. 55. On August 29, 2025, Plaintiffs filed the First Amended Complaint with the Court's leave.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that is barred by the statute of limitations. *See Jones v. Bock*, 549 U.S. 199, 215 (2007); *Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018). Dismissal is also appropriate where the complaint's well-pleaded allegations, taken as true, are insufficient to state a plausible claim to relief. *Watkins v. Ganesh, Inc.*, 135 F.4th 1224, 1229 (10th Cir. 2025).

## ARGUMENT

I. **PLAINTIFFS' CLAIMS REGARDING NON-INDUSTRIAL APPLIANCES ARE UNTIMELY.**

As a threshold matter, Plaintiffs' claims are untimely as they apply to non-industrial appliances. In its March 28, 2025 ruling on motions to dismiss the original complaint, this Court did not reach the issue of the applicable statute of limitations. A judge of this court has since ruled that in Colorado, the statute of limitations for a claim that a municipal law is preempted by EPCA differs based on the type of appliance at issue: for non-industrial appliances, the limitations period is two years; for industrial appliances, it is four years. *Rest. L. Ctr. v. City & Cnty. of Denver*, No. 24-cv-01862, 2025 U.S. Dist. LEXIS 181583 at *26, 29-30 (D. Colo. Sept. 16, 2025).

If this Court accepts the premise in *Restaurant Law Center* that state law is the "lender of first resort," *id.* at *18, 29, it should borrow Colorado's two-year limitations period to non-industrial claims challenging Energize Denver, but for non-industrial claims regarding Regulation 28 it should borrow the 35-day limitations period for

lawsuits challenging state agency actions as discussed below.

**A.    If the Court applies *RLC v. Denver*, the claims challenging Energize Denver are untimely.**

Under *Restaurant Law Center*, this Court should dismiss as untimely the claims concerning the Energize Denver ordinances and regulations as to non-industrial appliances. Plaintiffs claim that Denver's Ordinance 2021-1310 and the Energize Denver regulations are preempted by EPCA. First Am. Compl., ECF No. 68 ¶¶ 180-81. The ordinance was signed into law on November 24, 2021. *See* Corrected App. to Mot. for Judicial Notice, ECF No. 74 at 73. The first and second Energize Denver regulations were enacted on March 29, 2017 and January 20, 2022. *Id.* at 74, 79.

Plaintiffs filed the original complaint on April 22, 2024, ECF No. 1, which is more than two years after enactment of the Energize Denver ordinance and the first and second Energize Denver regulations. Moreover, the subsequent amendments to the Energize Denver regulations did not add any of the requirements that Plaintiffs claim are preempted by EPCA; all of those requirements were enacted in the first and second Energize Denver regulations. Thus, under *Restaurant Law Center*, all of Plaintiffs' claims challenging the Energize Denver ordinance and regulations must be dismissed as untimely with respect to non-industrial appliances.

**B.    The Court should apply a 35-Day limitations period to the claims challenging Regulation 28.**

*Restaurant Law Center* holds that for non-industrial appliances, state law is the "lender of first resort." 2025 U.S. Dist. LEXIS 181583 at *29-30. There, the only state limitations period that the court had occasion to consider was the two-year limitations

period in C.R.S. § 13-80-102(1)(g), (h). However, under state law, that limitations period does not apply to claims challenging a state agency action such as Regulation 28, so it would be inappropriate to borrow that limitations period here.

Instead, there is a more recent and more specific limitations period in Colorado law: the 35-day period in C.R.S. § 24-4-106(4) for challenging state agency actions. Colorado courts follow the decisional principle that, in choosing among statutory provisions, a more specific law controls over a more general one and also that a more recent law controls over an older law. *Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 241–42 (Colo. 2009). Here, the 35-day statute of limitations for challenges to actions by state agencies such as the Air Quality Control Commission (which issued Regulation 28) is both more recent[1] and more specific than the two-year limitations periods the *Restaurant Law Center* court relied upon. Thus, following *Restaurant Law Center*'s reasoning that state law should be the "lender of first resort," this Court should borrow the 35-day limitations period in Colorado law for challenges to Regulation 28.

Plaintiffs' original complaint was filed April 22, 2024, ECF No. 1, more than 35

---

[1] The 35-day statute of limitations in C.R.S. §24-4-106(4) was originally enacted in 1959. H.B. 212 (Colo. 1959). The two-year statute of limitations for federal actions "on liability" where the federal statute lacks limitations period was originally enacted prior to 1959. *See Wolf Sales Co. v. Rudolph Wurlitzer Co.*, 105 F. Supp. 506, 507 (D. Colo. 1952) (in a decision issued in 1952, discussing the Colorado law establishing a two-year statute of limitations for federal actions "on liability" without a statute of limitations).

days after Regulation 28 was issued on August 17, 2023. ECF No. 74 at 33. The Court should therefore dismiss the non-industrial claims against Regulation 28 as untimely.

## II.    EPCA DOES NOT PREEMPT THE BUILDING PERFORMANCE STANDARDS.

In addition to being untimely, the Complaint fails to state a claim upon which relief can be granted because EPCA does not preempt the Building Performance Standards, even if the Court accepts as true the factual allegations in the Complaint. EPCA's text, structure, and history show Congress's intent to preempt only state and local laws that address the energy efficiency of federally-regulated appliances as designed and manufactured. Because the Standards are flexible, building-level, emissions-focused standards that impose no requirements on the energy efficiency of specific appliances at the point of manufacture, they are not preempted.

### A.    EPCA preempts only state regulations concerning covered appliances as designed and manufactured.

To resolve Plaintiffs' express preemption claim, the Court must "apply ordinary principles of statutory interpretation, looking initially to the plain language of the federal statute." *Day v. Skywest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (quotation omitted). The party asserting preemption "bear[s] the burden of showing that federal and state law conflict." *Id.* at 1190 (quotation omitted).

EPCA's express preemption provision applies to state regulations "concerning the energy efficiency [or] energy use" of appliances covered by federal energy efficiency standards. 42 U.S.C. § 6297(c). As used in EPCA, "energy efficiency" and "energy use" refer to standardized design characteristics of covered equipment models that are

assessed under controlled testing conditions. EPCA defines "energy use" as "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under [42 U.S.C. § 6293]." 42 U.S.C. § 6291(4). EPCA defines "energy efficiency" as a ratio that is calculated based on a product's energy use, and that is likewise determined using test procedures under Section 6293. 42 U.S.C. § 6291(5). Section 6293, in turn, provides for test procedures that "measure . . . energy use . . . of a covered product during a representative average use cycle or period of use." 42 U.S.C. § 6293(b)(3). And "point of use" is a technical term used to describe a measurement taken "without adjustment for any energy loss in the generation, transmission, and distribution of that energy." *Ass'n of Contr. Plumbers v. City of New York*, 2025 U.S. Dist. LEXIS 49465, at *13 (S.D.N.Y. Mar. 18, 2025) (quotation omitted); *see also Cal. Rest. Ass'n v. Berkeley*, 89 F.4th 1094, 1123-25 (9th Cir. 2024) (Friedland, J., dissenting from denial of reh'g en banc) (describing this "well-established technical meaning that must be applied" when interpreting EPCA).

Taken together, these provisions establish that "'energy use' is a fixed value" that describes the performance of a product as manufactured, *Contr. Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *12, and which is measured under typical, administratively-prescribed conditions "simulating actual use." *NRDC v. Herrington*, 768 F.2d 1355, 1404 (D.C. Cir. 1985). These fixed values do not depend on the actual performance of individual appliances once they are purchased and installed by consumers, which occurs after the testing prescribed by Section 6293 and which is influenced by many factors outside the control or concern of manufacturers and federal regulators.

This focus on the energy use of appliances as designed and manufactured is an essential element of EPCA's statutory framework, and of the statute's "objectives" that courts use "as a guide" in preemption analysis. *Day*, 45 F.4th at 1186 (quotation omitted). EPCA's primary objective is to reduce energy consumption by establishing federal "energy conservation standards" for covered products. Those federal standards "prescribe[] a minimum level of energy efficiency" or a "maximum quantity of energy use" that a covered product must achieve before that product may be "distributed in commerce." 42 U.S.C. §§ 6291(1), (6), 6295. Before a manufacturer may distribute a covered product, the manufacturer must test it under representative conditions, 42 U.S.C. §§ 6293, 6314; 10 C.F.R. §§ 430–31, certify to the U.S. Department of Energy ("DOE") that it meets the standard, 10 C.F.R. § 429.12, and label the product with its energy use, *see* 42 U.S.C. §§ 6294, 6315; 16 C.F.R. § 305.17.

EPCA's preemption clause fits neatly into this statutory framework. When an "energy conservation standard" has been established for a particular covered product, EPCA preempts state or local regulations that likewise "concern[]" the "energy use" of "such covered product." 42 U.S.C. § 6297(c). This ensures that, when manufacturers design and produce their products, they need not juggle competing state and federal energy conservation standards. *Air Conditioning & Refrigeration Inst. v. Energy Res. Conservation & Dev. Comm'n*, 410 F.3d 492, 500 (9th Cir. 2005).

Reading EPCA in this straightforward manner leads to a straightforward rule: once DOE establishes an energy conservation standard, say, for furnaces, a state cannot adopt a different efficiency standard for furnace models installed within that

state. But the mere existence of a DOE-established design standard under EPCA does not require Colorado or Denver to allow the unrestricted "use" of any covered appliance within their boundaries. Indeed, DOE has long interpreted EPCA as preempting only state and local laws establishing the kind of energy conservation standards that DOE promulgates for covered appliances. *See, e.g.*, 47 Fed. Reg. 14424, 14456 (Apr. 2, 1982) (explaining that a "rule whose purpose is other than energy efficiency[,] such as a law on fire safety, would not appear to be preempted by the Federal rule, even if it has a secondary and incidental effect of improving the efficiency of a covered product").

### B. The Building Performance Standards do not concern energy use as defined in EPCA.

The Amended Complaint fails to state a claim because it does not allege that the State or City have issued any regulations that are within the scope of EPCA's preemption provision. EPCA preempts certain laws prescribing the energy use or energy efficiency of individual covered products. But EPCA does not regulate the energy use or energy efficiency of buildings as whole.

The Building Performance Standards do not concern energy use or energy efficiency as those terms are used in EPCA, because they say nothing about how much energy *individual covered products* may be designed and manufactured to use. Instead, they set flexible standards for the energy use and greenhouse gas emissions of *covered buildings as a whole*, and provide multiple pathways to meet those standards. The Standards are outside the scope of EPCA, and outside the scope of EPCA preemption.

Covered buildings may comply with the Standards by meeting an applicable energy use intensity or greenhouse gas intensity value, measured in energy use or

emissions per square foot per year, which *per se* does not regulate or concern the energy use of individual covered products. *See* ECF No. 74 at 7, 18-19, 23-25, 154, 158-64. Indeed, Plaintiffs acknowledge that the Standards' building-wide requirements apply "without regards to whether the energy is attributable to a Covered, or Non-Covered Product." ECF No. 68 ¶ 6. Because the Standards are agnostic about which equipment uses a building's energy or how that energy use is reduced, building owners can comply using measures that do not involve covered appliances at all, such as upgrading windows, sealing doors, and adding insulation. This compliance pathway puts the Standards well outside EPCA's preemptive reach.

Unable to show that the Standards outright require any action that affects covered appliances, Plaintiffs allege that the Standards are so stringent that they "effectively" require replacement of existing appliances. *See* ECF No. 68 ¶¶ 55, 57, 85, 114, 119. Tellingly, the Amended Complaint does not allege that Plaintiffs' members will need to install any equipment that exceeds applicable federal energy conservation standards.[2] And because EPCA only preempts state laws concerning the energy use

_____

[2] Plaintiffs' original Complaint did make conclusory allegations to this effect, but the Court found them insufficient to support Plaintiffs' claims. *See* ECF No. 55 at 13-14. When Plaintiffs amended the Complaint to establish their members' injuries through allegations that energy audits found they must replace covered products in order to comply with the Standards, they conspicuously removed any allegation that the replacement equipment must exceed DOE efficiency standards.

and energy efficiency of covered products as they are designed and manufactured, a requirement to replace old equipment with new EPCA-compliant equipment is not preempted. Otherwise, state and local governments would be powerless to stop the continued use of any covered appliance in any circumstance for any reason, even a damaged furnace that poses an imminent fire hazard. *See* Denver Comm. Bldg. Code § 105.1.2.1 (listing gas-fired appliance defects that may cause a building to be deemed unsafe); *see also Contr. Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *18-19 (listing regulations of appliance fuel types that "are integral to municipal construction and fire codes"). Such a result would "significantly alter the balance between federal and state power" without the "exceedingly clear language" required to do so. *Sackett v. EPA*, 598 U.S. 651, 679 (2023) (quotation omitted). And it would reach far beyond EPCA's objective of setting uniform standards to manufacture efficient appliances, which serves "as a guide" for the preemption analysis. *Day*, 45 F.4th at 1186 (quotation omitted).

Rather than alleging any need to go beyond DOE efficiency standards, Plaintiffs allege that energy audits show their members must replace fossil fuel equipment with electric equipment in some cases. *See* ECF No. 68 ¶¶ 33-35, 65, 93. This is not sufficient to state a claim, because EPCA does not preempt standards that indirectly require building owners to deploy "one set of products with one set of federal efficiency standards (electric appliances)" rather than "another set of products with different federal efficiency standards (gas appliances)." *Berkeley*, 89 F.4th at 1126 (Friedland, J.); *see also Contr. Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *18 (finding indirect regulation of "the type of fuel that a covered product may consume in certain settings"

not preempted because this "does not draw any distinction between products based on their energy efficiency or energy use as manufactured"). Indeed, Plaintiffs do not allege that the Standards have had any effect on appliance manufacturers or interfered with DOE's exclusive authority to set energy conservation standards, because they do not. *Cf. Day*, 45 F.4th at 1190 (finding no preemption where there was no basis to conclude the state law would interfere with nationally uniform policies under the federal statute).

In sum, the Amended Complaint fails to identify any State or City laws that are within the scope of EPCA's preemption provision, and thus the Amended Complaint fails to state a claim upon which relief can be granted.

### C. *Berkeley* does not apply to the Building Performance Standards.

Plaintiffs rely on the interpretation of EPCA preemption adopted by the Ninth Circuit in *Berkeley*, 89 F.4th 1094. ECF No. 68 ¶¶ 115-117. That interpretation is legally incorrect and, even if it were correct, inapplicable to the facts here.

First, this Court should join two other courts in declining to follow *Berkeley*, which is not binding in this Circuit and was wrongly decided. *Berkeley*'s interpretation of EPCA has been rejected by two courts. *Contr. Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *12-13; *Mulhern Gas Co. v. Mosley*, 2025 U.S. Dist. LEXIS 141175 at *41-42 (N.D.N.Y. July 23, 2025). Moreover, eleven Ninth Circuit judges have "urg[ed] any future court that interprets [EPCA] not to repeat the panel opinion's mistakes." *Berkeley*, 89 F.4th at 1119 (Friedland, J.); *id.* at 1126 (Berzon, J., respecting denial of rehearing en banc).

*Berkeley* inappropriately applied colloquial meanings to "energy use" and "point of use," leading to an interpretation that cannot be squared with EPCA's statutory and

technical definitions. *See generally Van Buren v. United States*, 593 U.S. 374, 387-88 & n.7 (2021) (noting that when a statute addresses a technical subject, "a specialized meaning is to be expected") (quotation omitted). Under the Ninth Circuit's interpretation, "energy use" in EPCA refers to the use of energy by individual covered appliances at the "point of use," once they are purchased and installed by consumers. This led the *Berkeley* panel to conclude that EPCA's preemptive concern extends beyond creating a uniform set of efficiency standards for appliance manufacturers, to preempt building codes that "prevent consumers from using covered products in their homes, kitchens, and businesses." 89 F.4th at 1103. Not only is this interpretation divorced from EPCA's text, which defines "energy use" by reference to test procedures that cannot be applied to individual appliances after they are purchased, but it would render multiple provisions of EPCA unworkable, *see Berkeley*, 89 F.4th at 1122-23 (Friedland, J.) and expand EPCA's preemptive reach well beyond appliance efficiency standards to areas of core state authority that Congress never indicated an intent to displace. *See Contr. Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *18-20.

Second, the Court need not even decide whether to follow *Berkeley*'s interpretation of EPCA, because the Standards would not be preempted even under *Berkeley*. The Ninth Circuit emphasized its "very narrow" and "limited" holding meant "only … that EPCA prevents Berkeley from prohibiting new-building owners from 'extending' fuel gas piping within their buildings 'from the point of delivery at the gas meter' by way of a building code." *Berkeley*, 89 F.4th at 1106. A concurring opinion in *Berkeley* noted that "EPCA preemption is unlikely to reach a host of state and local

regulations that incidentally impact 'the quantity of [natural gas] directly consumed by a [covered] product at point of use,'" including "carbon taxes designed to discourage such consumption." *Id.* at 1117 (Baker, J., concurring). Thus, even if *Berkeley* is correct about the scope of EPCA's preemption provision, the standards at issue here would not be preempted under *Berkeley* for two reasons. First, the challenged Standards are not building codes. Second, they do not ban the use of gas by covered appliances.

Much of the *Berkeley* opinion turns on the fact that EPCA explicitly addresses building codes for new construction and provides that certain building codes can be exempted from preemption if they meet certain criteria. *Id.* at 1101 (stating that EPCA's provisions addressing building codes are "[o]f critical importance here"). That renders the decision inapplicable to the Standards, which are not building codes. The Amended Complaint does not allege that Regulation 28 or Energize Denver is a building code. "Colorado has no statewide building code,"[3] and Regulation 28 was enacted by the Air Quality Control Commission—an agency charged with regulating air pollution, not building construction. Likewise, Energize Denver is incorporated into Denver's Municipal Code as a separate Article from its Building and Fire Code, *compare* Denver Rev. Mun. Code ch. 10, art. II *with id.* ch. 10, art. XIV, and is administered by the Office of Climate Action, Sustainability, and Resiliency rather than the Department of Community Planning and Development. *Compare* ECF No. 74 at 149 *with* Denver Fire & Building

---

[3] Colorado Office of the State Architect, *Building Codes* (2025), https://osa.colorado.gov/building-codes.

Code § 103.1. Moreover, the First Amended Complaint expressly does not challenge the Standards' application to new construction. ECF No. 62 at 8.

*Berkeley* is also inapplicable because the Standards do not "prohibit[] consumers from using natural gas." 89 F.4th at 1102. The ordinance at issue in *Berkeley* prohibited extending gas pipelines to new buildings, which was found to "effectively" ban the use of gas appliances by leaving no way to obtain the gas needed to operate them. *Id.* Here, the Standards do not ban gas pipelines or any other equipment needed to operate gas appliances. Instead, they provide covered building owners with flexibility to choose the combination of approaches that best suits their needs to meet emission targets for entire buildings. Even accepting Plaintiffs' allegations that in some cases covered building owners cannot meet the appliance-agnostic energy and emission Standards without installing some electric equipment, this is a far cry from the blanket prohibition on gas equipment at issue in *Berkeley*. At most, this "incidentally impact[s]" certain appliances' ability to use gas under particular circumstances that render other compliance options insufficient. *Id.* at 1117 (Baker, J., concurring). Thus, even under *Berkeley*'s interpretation of EPCA, the Standards challenged here are not preempted.

## <u>CONCLUSION</u>

For the reasons set forth above, this Court should dismiss the First Amended Complaint in its entirety for failure to state a claim. At the very least, this Court should dismiss Plaintiffs' claims challenging Regulation 28 and Energize Denver for non-industrial equipment as untimely. Neither of these defects can be cured by further amendments to the Complaint, so the Complaint should be dismissed with prejudice.

Dated this 3rd day of October, 2025.

/s/ Matthew Gerhart
Matthew Gerhart
Senior Attorney
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

Jim Dennison
Staff Attorney
Sierra Club
1650 38th St # 103W
Boulder, CO 80301
(435) 232-5784
jim.dennison@sierraclub.org

**ATTORNEYS FOR SIERRA CLUB AND NATURAL RESOURCES DEFENSE COUNCIL**

/s/ Ellen Howard Kutzer
Ellen Howard Kutzer
General Counsel
Colorado Solar and Storage Association
1536 Wynkoop St., Suite 104
Denver, CO 80202
(303) 333-7342
ekutzer@cossa.co

**ATTORNEY FOR COLORADO SOLAR AND STORAGE ASSOCIATION AND COALITION FOR COMMUNITY SOLAR ACCESS**

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2025, a true and correct copy of the foregoing **INTERVENOR-DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT** was served via the CM/ECF system upon all counsel of record in this matter.

/s/ *Maddie Lipscomb*
Maddie Lipscomb