IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01093

**COLORADO APARTMENT ASSOCIATION et al.**

        Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, et al.**

        Defendants.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST CAUSE OF ACTION**
_____

State Defendants' (Jill Hunsaker Ryan, the Executive Director of the Colorado Department of Public Health and Environment; Michael Ogletree, the Director of the Colorado Air Pollution Control Division; and Will Toor, the Executive Director of the Colorado Energy Office (collectively "State Defendants")) Motion to Dismiss Plaintiffs' First Cause of Action (ECF No. 72, "State Mot.") should be denied. Plaintiffs challenge the Colorado Air Quality Control Commission's ("Commission") regulation entitled Building Benchmarking and Performance Standards, 5 CCR 1001-32 ("Regulation 28"), which imposes building energy consumption performance standards for commercial and multifamily buildings over 50,000 square feet ("Covered Buildings"). Regulation 28 requires Covered Buildings to reduce the energy consumption or greenhouse gas ("GHG") emissions associated with the operation of the Covered Buildings, including the consumer and commercial equipment and appliances ("Covered Products")[1] in those buildings. First Amended Complaint ("Compl."), ECF No. 68 at ¶ 3.

The Energy Policy and Conservation Act ("ECPA") preempts any state or local regulation "concerning" the energy efficiency of Covered Products. 42 U.S.C. § 6297(c). EPCA was created to ensure that manufacturers can adequately plan for the sale, distribution, and lifetime servicing of Covered Products, and so that building owners can make purchasing decisions understanding that they will be permitted to maintain, repair, and service that equipment over its useful life. The few limited exemptions from

---

[1] Consumer equipment is defined as "Covered Products" (42 U.S.C. § 6291 *et seq*.) whereas commercial and industrial equipment are defined as "Covered Equipment" (42 U.S.C. § 6311 *et seq*.). *See also* Compl., ECF No. 68 at ¶ 5. This Opposition will refer to both as Covered Products.

2

preemption in EPCA only apply prospectively: to new construction, and to newly manufactured Covered Products. Regulation 28 regulates the energy efficiency of existing, already installed EPCA Covered Products, requiring building owners to expend resources, and capital analyzing, modifying, and often replacing Covered Products with remaining useful life, and thus is preempted by EPCA.

## SUMMARY OF ARGUMENT

First, rather than accepting Plaintiffs' well pleaded allegations as true, State Defendants instead ask this Court to accept their alternative characterization of how Regulation 28 works. State Mot. at 11-13. Not only must this Court and State Defendants accept Plaintiffs' well pleaded allegations as true, Plaintiffs dispute State Defendants' characterizations, as set forth herein and in Plaintiffs' well pleaded Complaint. The State Defendants thus raise issues of disputed fact that cannot be resolved at the motion to dismiss stage. This Court must reject the State Defendants' attempt to characterize Regulation 28 in a light most favorable to State Defendants.

Second, EPCA's language, and the analysis in recent decisions by the Ninth Circuit and the District of New York, demonstrate that Regulation 28 "concerns" the energy efficiency of Covered Products in existing buildings and that Plaintiffs have adequately pleaded a claim for relief. Plaintiffs' Complaint alleges that Regulation 28's whole building energy standard requires Plaintiffs' members to replace functioning Covered Products with remaining useful life. Those Covered Products were placed into commerce and installed in compliance with and reliance on EPCA, and the State's requirements forcing Plaintiffs' members to remove those protected compliant products

3

and compromise their ability to use, maintain, and service those Covered Products violates EPCA's express preemption provisions. Plaintiffs have therefore stated a plausible claim for relief against Regulation 28, and State Defendants' Motion should be denied.

## ARGUMENT

### I. Legal Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted). When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A claim is plausible when the plaintiff pleads facts that, assuming their veracity, allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* at 678. The liberal pleading standard remains, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotations and citation omitted).

### II. State Defendants' Motion Relies on a Disputed Characterization of the Operation of Regulation 28, Creating Disputed Issues of Fact Inappropriate for this Stage of the Litigation.

Plaintiffs have pled, supported by detailed affidavits, that Plaintiffs' members have

4

conducted extensive energy audits of their covered buildings, analyzed Regulation 28, and determined that they cannot meet the building performance requirements of Regulation 28 without targeting the energy efficiency of Covered Products, often being forced to replace those Covered Products. Compl., ECF No. 68 at ¶ 128. State Defendants do not accept the veracity of Plaintiffs' factual allegations, and instead construct an alternative narrative that mischaracterizes Regulation 28 to support their assertions that it does not impact Covered Products. Mot. at 3-4; *id.* at 11-13. State Defendants aim is to distract from the fundamental consequences of Regulation 28 (forcing owners to evaluate, modify, and replace EPCA regulated Covered Products) by claiming that building owners can choose different "compliance pathways" to comply with Regulation 28.[2]

This erroneous narrative is a direct challenge to the well pled factual allegations in Plaintiffs' Complaint, which states that Plaintiffs' members have conducted comprehensive energy audits (required by Regulation 28) that assessed compliance options and concluded that Regulation 28 forces "the removal of Covered Products" and requires "replacing them with either newer Covered Products or electrified Covered Products" (Compl., ECF No. 68 at ¶ 36), **regardless of the compliance pathway chosen**. *Id.* at ¶ 65; *see also* ¶¶ 32,-36, 65, 129-134, 168-169. Under any of the

---

[2] To extent State Defendants argue that the flexibility offered in the compliance pathways of Regulation 28 resolve any preemption concerns because they allow owners to apply for adjustments, that is incorrect. Regulation 28 is either preempted, or it is not, and Plaintiffs are not required to exhaust variance provisions in order to prove Regulation 28 "concerns" Covered Products. *See* Plaintiffs' Response in Opposition to Denver's Second Motion to Dismiss Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (6), at 7-12.

supposedly "flexible" compliance pathways mischaracterized in Defendants' alternate characterization of Regulation 28, Plaintiffs' members must target, modify, and replace Covered Products in their buildings. Plaintiffs supported these factual allegations with extensive declarations. *Id.* at ¶¶ 65, 130, 132; *see also* Exhibits 1-10, ECF Nos. 68-1 – 68-10.[3] Accepting the veracity of these well pleaded and supported facts, Plaintiffs have established that Regulation 28 concerns the energy efficiency of Covered Products sufficient to withstand a motion to dismiss.

State Defendants' attempt to contest Plaintiffs' well pleaded and supported factual allegations at the motion to dismiss stage must be rejected. *Doe v. School Dist. No. 1, Denver, Colorado*, 970 F.3d 1300, 1304 (10th Cir. 2020) ("We ignore factual assertions by the [defendant] unless they are based on allegations in the complaint or on other sources proper to consider on a motion to dismiss."). A motion to dismiss cannot be based on Defendants' version of the facts. Defendants' motion raises factual disputes as to whether Regulation 28 forces Plaintiffs' members to replace or modify the Covered Products in their buildings. However, at this stage of the case, Plaintiffs allegations, supported by extensive member declarations, that Regulation 28 requires the replacement of covered Products regardless of the compliance pathway chosen, must be accepted as true. *See* Compl. at ¶ 65. As such, State Defendants' motion to dismiss is "fundamentally a fact dispute that is inappropriate for resolution" and should be denied. *Hudson v. HomeAdvisor, Inc.*, 348 F.R.D. 690, 692 (D. Colo. 2025).

---

[3] On October 1, 2025, Plaintiffs also initiated the Court's procedures for assessing summary judgment proceedings, and are ready to move forward with presenting all necessary evidence, including introducing those energy audits.

### III. EPCA's Express Preemption Provisions Demonstrate that Regulation 28 "Concerns" Covered Products.

EPCA expressly preempts state and local regulations "concerning the energy efficiency" and "energy use" of consumer and commercial/industrial Covered Products such as lights, HVAC systems and domestic water heating systems. Compl. ¶¶ 11, 95-102; 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2).

#### A. Waivers from preemption are not available to Colorado.

EPCA preempts any "State regulation concerning the energy efficiency, energy use, or water use of such covered product" once the Department of Energy ("DOE") has set an energy efficiency standard for that covered product. 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2). There is no waiver option for **commercial/industrial** Covered Products, the bulk of the Covered Products at issue in this matter. 42 U.S.C. § 6316(b)(2). Colorado can only regulate **consumer** Covered Products in existing buildings if it first obtains a waiver from the Secretary of the DOE. 42 U.S.C. § 6297(c), (d). Colorado has never applied for or obtained such a waiver.

Not only did Colorado never apply for or receive a waiver, a waiver is not available for the existing consumer Covered Products at issue in this case. The Secretary may only grant a waiver if the applying State establishes "unusual and compelling State or local energy or water interests." 42 U.S.C. § 6297(d)(B). The Secretary is prohibited from granting a waiver if the Secretary finds that "such State regulation will significantly burden manufacturing, marketing, distribution, sale, **or servicing** of the covered product on a national basis." *Id.* at (d)(C)(3) (emphasis added). It is clear that Congress contemplated the use of EPCA Covered Products during their full service life, intending that Covered

7

Products could be used, and serviced, to the end of their useful life.

The Secretary is also prohibited from allowing the waiver to apply to any consumer Covered Products manufactured "within three years after such rule [i.e., the waiver] is published in the *Federal Register* or within five years if the Secretary finds that such additional time is necessary due to the substantial burdens of retooling, redesign, or distribution needed to comply with the State regulation." *Id.* at (d)(C)(5).[4]  By requiring any waiver to only apply to consumer Covered Products that will be manufactured in the future, Congress made it clear that States and local governments may not regulate existing Covered Products already placed in commerce.

### B. Exemptions to preemption for whole-building energy conservation standards can only apply to new, and not existing, construction.

Regulation 28 imposes "whole building" conservation standards for existing Covered Buildings.  Whole building conservation standards for **existing** construction are preempted by EPCA.  EPCA provides a limited exemption from preemption for whole-building energy conservation standards that, while not available to Regulation 28, is nonetheless instructive as to how Congress intended EPCA to preempt building conservation standards. For **consumer** Covered Products in **new** construction, EPCA states that building conservation standards must comply with all of the following requirements to avoid preemption:

(1) the code must allow building owners to select products themselves (rather than have mandated products), 42 U.S.C. § 6297(f)(3)(A);
(2) the building code cannot require Covered Products to exceed current

---

[4] Similarly, when the Secretary promulgates a new energy standard, it cannot apply to products manufactured within three years after publication of the final rule establishing the new or amended standard. *See* 42 U.S.C. § 6295(b)(3)(C).

EPCA standards unless a waiver has been granted, *id.* at (f)(3)(B);

(3) credits for Covered Products exceeding current EPCA requirements must be "on a one-for-one equivalent energy use or equivalent cost basis", *id.* at (f)(3)(C);

(4) if baseline building designs are used, they must be based on Covered Products which meet, but do not exceed current EPCA standards, *id.* at (f)(3)(D);

(5) If the building code contains optional combinations of items that will meet the energy efficiency standards, there must be a combination with products not exceeding EPCA's current standard, *id.* at (f)(3)(E);

(6) the energy conservation objective must be specified in terms of an estimated total consumption of energy, *id.* at (f)(3)(F); and

(7) the estimated energy use of Covered Products must be determined using the applicable test procedures under EPCA, *id.* at (f)(3)(G).

Congress placed explicitly imposed limitations on whole building energy conservation standards for new construction. Such whole building standards cannot: require buildings to select Covered Products that exceed existing federal standards; provide unequal crediting for Covered Products exceeding federal standards based on energy use or cost basis (e.g. type of energy utilized or the cost of such energy); or create baseline building designs that require Covered Products exceeding existing federal standards. For whole building energy standards concerning **commercial/industrial** Covered Products in **new** construction, the exemption from preemption is even narrower: such standards are preempted unless the standards do "not require that the energy efficiency of such product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1." 42 U.S.C. § 6316(b)(2)(B)(i).

These exemptions only apply to building codes for **new construction**: there are no such exemptions for whole building standards applicable to **existing construction** that use Covered Products already placed into commerce. Congress knew how to exempt whole-building energy conservation standards from preemption, and chose to do

9

so only for **new construction**.

Congress' decision to limit State and local government's ability to regulate existing Covered Products through whole building energy conservation codes also makes practical sense. Only in new construction can builders accommodate the kind of trade-offs that a whole building energy code imposes on Covered Products. However, once a building is constructed, energy conservation standards can imperil a building owner's ability to use, and **service**, existing EPCA-compliant Covered Products with a remaining useful service life. *Id.* at (d)(C)(3) The same is true for manufacturers – once a compliant Covered Product has been placed into commerce, it cannot be re-designed or re-manufactured to meet new energy efficiency standards. Thus, any regulation of existing Covered Products by a state would necessarily imperil the ability of the manufacturer to "market[], distribut[e], s[el]l, or servic[e]" its product on a national basis. *Id.* Allowing otherwise would usurp Congress' intention in EPCA to prevent a "patchwork of conflicting state appliance energy conservation requirements." State Mot., ECF No. 72 at 10.

EPCA's limitations on whole building energy conservation standards demonstrate Congressional intent to prevent state and local government from evading EPCA's preemption provisions by cleverly drafting regulations or ordinances that indirectly and unlawfully regulate existing EPCA-compliant Covered Products. That type of cleaver drafting is precisely what Defendants have done in this case. As set forth in Plaintiffs' well pleaded and supported Complaint, even though Regulation 28 does not explicitly regulate Covered Products, the whole building energy conservation standard effectively and unlawfully regulate Covered Products in existing construction.

10

State Defendants' admit that Regulation 28 requires the reduction of "*Covered Buildings*' energy consumption" on a whole building basis. ECF No. 72 at 11 (emphasis in original). If Regulation 28 only applied to new buildings, State Defendants would have to prove that Regulation 28 met the exemption provisions to avoid preemption (which they would be unable to do). Yet Regulation 28 goes well beyond that and applies to existing Covered Buildings, containing already installed Covered Products. There is no exemption from preemption under which State Defendants can shelter and Regulation 28 is thus preempted.

## IV. Regulation 28 "Concerns" the Energy Efficiency of Covered Products .

Three recent cases dealt with EPCA's preemption provisions. *California Rest. Ass'n v. City of Berkeley,* 89 F.4th 1094 (9th Cir. 2024); *Ass'n of Contr. Plumbers v. City of New York,* 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025); *Mulhern Gas Co., Inc. v. Mosley*, 2025 WL 2062194 (N.D.N.Y Jul. 23, 2025). While none of the three cases is directly on point to the instant challenge, all three support Plaintiffs' Complaint that Regulation 28's whole building energy conservation standard concerns the energy efficiency of Covered Products and is therefore preempted by EPCA.

As a threshold matter, Regulation 28 differs from the ordinances examined in those three recent EPCA cases in two key ways: First, Regulation 28 regulates **existing** Covered Products installed in existing construction, as opposed to solely regulating **new** construction and installation of **new** Covered Products.

Second, all three recent EPCA cases dealt with explicit **bans** of fossil fuel hookups in new construction. Regulation 28 does not explicitly ban specific types or classes of

11

Covered Product or fuel sources. Instead, Regulation 28 regulates whole building energy consumption, requiring Covered Building owners to "reduce the energy consumption of the building through the implementation of energy efficiency measures and/or technologies."  5 C.C.R. 1001-32, Part C, I.A.1. (ECF No. 74, Intervenor-Defendants' Appx., p. 19).  As Plaintiffs' have clearly pleaded and supported in their Complaint, those standards cannot be met without targeting, modifying, and replacing the EPCA-compliant Covered Products with a remaining useful service life in their members' buildings. Compl., ECF No. 68 at ¶ 36; *see id.* at ¶¶ 128-134.

While these three recent ECPA cases reached different results, all three support a finding of preemption here as to Regulation 28.  In *Berkeley,* the Ninth Circuit held that an ordinance "prohibiting the installation of natural gas piping within newly constructed buildings" "concerned" the energy efficiency of Covered Products and thus triggered EPCA's preemption provisions.  *Berkeley*, 89 F.4th at 1098.  The Ninth Circuit found that the natural gas ban for new construction did in fact "concern" the energy use of a Covered Product because the ban "lowers the 'quantity of energy' consumed to 'zero.' In other words, a regulation on 'energy use' fairly encompasses an ordinance that effectively eliminates the 'use' of an energy source."  *Id.* at 1102.

*Berkely* also provided insight on the Ninth Circuit's view of indirect whole building energy standards as distinguished from individual product or class of product bans:

> Say a State enacts a broad regulation on all appliances—some that are "covered" and some that are not. EPCA would only supersede the regulation's impact on the covered products. And the State could still enforce its regulation against the non-covered products. In other words, if a building code concerns the "energy use" of covered and non-covered products alike, EPCA's preemptive effect is limited to the covered products.

12

Here, Berkeley may enforce its building code on non-covered products, but EPCA displaces its effect on covered products. But this language in no way narrows a "regulation concerning the ... energy use" to direct regulations on covered products themselves.

Thus in *Berkeley* the Ninth Circuit held that "[a]t a minimum then, by using the term 'concerning,' Congress meant to expand preemption beyond direct or facial regulations of covered appliances." 89 F.4th at 1103.

The two New York District Court cases State Defendants rely on do not contradict the Ninth Circuit's conclusion in *Berkely*. In *Mulhern Gas Co., Inc.*, the Northern District of New York stated that a hypothetical regulation setting "a maximum building-wide energy consumption limit" "would be an indirect regulation concerning the energy use of the [C]overed [P]roducts that could be used in the building" and "would be clearly preempted" under EPCA. 2025 WL 2062194 at *14. Examining the limited exception from preemption for whole-building energy conservation standards in **new** construction in 42 U.S.C. § 6297(f)(3), the Court added that the "relevant exception makes clear that it is applicable in situations where the underlying building code regulation is one concerning energy efficiency or energy use, as such regulations are typically preempted." *Id.* Regulation 28 is precisely the hypothetical regulation posited by the *Mulhern* Court that would be "clearly" preempted: a regulation setting maximum building-wide energy consumption limits that indirectly regulates Covered Products (and in this case, installed Covered Products with remaining service life). The *Mulhern* Court distinguished a gas ban, finding that a ban did not "in any way concern the energy use of a covered product – rather, [it] merely prohibit[ed] the installation of" such equipment. *Id.* Regulation 28, on the other hand, directly adversely effects already installed Covered Products.

13

Similarly, in *Contr. Plumbers,* the Southern District of New York specifically recognized that actual energy efficiency standards implicating Covered Products, as opposed to outright bans on a specific fuel source, could implicate EPCA's preemption provisions. 2025 WL 843619 at *5. The Court discussed *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152 (2d Cir. 2010), where plaintiffs sought to enforce a similar EPCA preemption provision focused on fuel economy standards. *Id.* In *Metro. Taxicab Bd. of Trade*, state rules which "'reference[d]' fuel economy standards" were found to be preempted "because the rules' distinction between hybrid and non-hybrid vehicles was 'equivalen[t]' to distinguishing between 'vehicles with greater or lesser fuel efficiency.'" *Id.* at *7 (quoting *Metro. Taxicab Bd. of Trade,* 615 F.3d at 157). The Court in *Contr. Plumbers* then reasoned that a ban on certain appliances "does not impose performance standards by proxy" such as in *Metro. Taxicab Bd. of Trade*, because a ban is blind to the efficiency of an appliance, and either way gas appliances could be more efficient than electric appliances in some instances. *Id.*

Here, Colorado is not only imposing "performance standards by proxy" by favoring one type of equipment (electric) over another (fossil fuel-fired), but is also imposing performance standards *directly* on existing Covered Buildings and the existing Covered Products within them because the Covered Products use the vast majority of the energy that must be reduced to comply with Regulation 28. Regulation 28 plainly is an energy conservation standard – for existing whole buildings and the Covered Products within them.

Further, both the *Mulhern Gas Co., Inc.* and *Contr. Plumbers* Courts found that

14

regardless of how they interpreted the term "concerning" under EPCA, a fossil fuel ban on new construction might not be preempted, but a whole-building energy conservation standard (*Mulhern Gas Co., Inc.*, 2025 WL 2062194 at *14) or a regulation by proxy on Covered Products (*Contr. Plumber* 2025 WL 2062194 at *9) would be preempted. Regulation 28, as described in Plaintiffs' well pleaded and supported Complaint, is clearly a whole-building energy conservation standard concerning the existing Covered Products in Plaintiffs' members existing buildings.

Finally, under either the *Mulhern Gas Co., Inc.* or *Contr. Plumbers* Courts' interpretation of "point of use", Regulation 28 is preempted by EPCA. Those Courts both held that "energy use" under EPCA concerns "the amount of energy a [Covered P]roduct consumes under typical conditions." *Ass'n of Contr. Plumbers*, 2025 WL 843619 at *4; *Mulhern Gas Co., Inc.*, 2025 WL 2062194 at *14  As the Court held in *Contr. Plumbers*, the ban of natural gas appliances at issue did "not 'focus[ ] on' the performance standards applicable to covered products" because it did "not draw any distinction between products based on their energy efficiency or energy use as manufactured. It instead regulates, indirectly, the type of fuel that a covered product may consume in certain settings, irrespective of that product's energy efficiency or use." *Ass'n of Contr. Plumbers*, 2025 WL 843619 at *6. Here, Regulation 28 clearly focuses on Covered Products energy efficiency and use on a whole building basis, and thus restricts which Covered Products may be used in Covered Buildings based on their relative efficiency. This is in part because Regulation 28 forces changes to building energy consumption by installed Covered Products in existing construction, that, as set forth in the Complaint and

15

accompanying declarations, are the primary source of energy consumption. Regulation 28's whole building energy conservation standards applicable to existing construction clearly concern the energy use and efficiency of the installed Covered Products in those buildings.

## CONCLUSION

For the reasons stated herein, Plaintiffs' first cause of action in the Complaint adequately pleads a claim for relief that is legally cognizable under EPCA, Plaintiffs' claims should proceed, and State Defendants' motion should be denied.


Dated: November 6, 2025

                                      GREENBERG TRAURIG, LLP

                                      */s/ Paul M. Seby*
                                      Paul M. Seby
                                      Matthew K. Tieslau
                                      GREENBERG TRAURIG, LLP
                                      1144 15th Street, Suite 3300
                                      Denver, Colorado 80202
                                      Phone Number: 303.572.6500
                                      Fax Number: 303.572.6540
                                      E-Mail:
                                                      TieslauM@gtlaw.com


                                      *Attorneys for Plaintiffs*

16

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th of November 2025, a copy of the foregoing was served upon all parties using the Court e-filing system.

*s/ Paul M. Seby*
Paul M. Seby