IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01093

**COLORADO APARTMENT ASSOCIATION et al.**

                Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, et al.**

                Defendants.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DENVER'S SECOND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and (6)**
_____

## SUMMARY OF ARGUMENT

The City and County of Denver; Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency's ("Denver" or "Denver Defendants") Motion to Dismiss First Amended Complaint Pursuant To Fed. R. Civ. P. 12(b)(1) and (6) (ECF No. 71, "Denver Mot.") should be denied for the following reasons:

First, Plaintiffs have plausibly pleaded cognizable claims for relief that Energize Denver "concerns" the energy efficiency of products regulated by the Energy Policy and Conservation Act ("EPCA"), referred to as "Covered Products", and is preempted.

Second, Plaintiffs claims are not barred by the applicable four-year (commercial/industrial Covered Products) and two-year (consumer Covered Products) limitations periods established in *Restaurant Law Center v. City and County of Denver*, 2025 WL 2652871 (D. Colo. Sept. 16, 2025).

Third, Plaintiffs claims are ripe, and, as this Court has already found, Plaintiffs have Article III standing to challenge Energize Denver. Energize Denver requires Plaintiffs' members to replace Covered Products within their existing buildings, requirements that are preempted by EPCA. Denver's arguments that Plaintiffs have not availed themselves of discretionary variance-type options under Energize Denver are irrelevant – no amount of potentially available discretionary relief can make an unlawful preempted regulation lawful.

Fourth, Denver's claim that it has no plans to enforce penalties for Energize Denver

is directly contradicted by the penalty threats sent to Plaintiffs' members, and Denver's own public "penalty calculator," which threaten owners of Covered Buildings with millions of dollars in penalties.

## ARGUMENT

I. **Legal Standard.**

Plaintiffs adopt the legal standard stated in their Opposition to the State Defendants' Motion to Dismiss.

II. **Energize Denver "Concerns" the Energy Efficiency of Covered Products.**

Energize Denver is preempted because its whole-building energy conservation standards "concerns" the energy efficiency of installed Covered Products with remaining useful service life in existing buildings, and forces Plaintiffs' members to modify existing buildings by implementing "energy efficiency measures that target Covered Products." First Amended Complaint ("Compl."), ECF No. 68 at ¶ 175.[1]  Plaintiffs have pled, supported by detailed affidavits, that Plaintiffs' members have conducted extensive energy audits of their buildings, analyzed the applicability of Energize Denver, and determined that they cannot meet Energize Denver's building performance standards without targeting the energy efficiency of Covered Products that are a major source of energy consumption in their buildings, often requiring the replacement of those Covered Products while they still have remaining useful service life. *Id.* at ¶ 144.  Plaintiffs have also pled that regardless of the compliance pathway they choose under Energize Denver,

---

[1] Plaintiffs adopt the same arguments made in their response to the State Defendants' Motion to Dismiss regarding whether Energize Denver concerns the energy efficiency of Covered Products under EPCA. *See* ECF No. 81.

3

Plaintiffs' members will still be required to remove and replace Covered Products with remaining useful service life with new, frequently electric, Covered Products because the standards are so strict as to effectively prohibit Covered Products that use natural gas. *Id.; id.* at ¶¶ 32-36, 93, 145-151, 175-177.[2]

EPCA preempts state and local regulations "concerning the energy efficiency" and "energy use" of consumer and commercial/industrial Covered Products such as lights, HVAC systems and domestic water heating systems. Compl. ¶¶ 11, 95-102; 42 U.S.C. § 6297(c); 42 U.S.C. § 6316(b)(2). "Energy use" is defined as "the quantity of energy directly consumed by a consumer or commercial product at point of use." 42 U.S.C. § 6291(4); 42 U.S.C. § 6311(4). "Energy" is defined as "electricity, or fossil fuels," such as natural gas or propane. 42 U.S.C. § 6291(3); 42 U.S.C. § 6311(7). EPCA defines an "energy conservation standard" as "a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use." 42 U.S.C. § 6291(6)(A); 42 U.S.C. § 6311(18).

Sharon Jaye, the Policy Manager for the City and County of Denver Office of Climate Action, Sustainability and Resiliency ("OCASR") submitted a declaration in support of Denver's motion to dismiss which states that Energize Denver "prescribes a minimum level of energy efficiency or a maximum quantity of energy use for a building as a whole." ECF No. 71-4, at 2 (¶ 6). This mirrors language from EPCA defining an "energy

---

[2] Further, as set forth in Section III, *infra*, Denver Defendants' argument that the flexibility offered in the compliance pathways of Energize Denver render this challenge unripe is incorrect. Energize Denver is either preempted, or it is not, and Plaintiffs are not required to exhaust variance provisions in order to prove Energize Denver "concerns" Covered Products.

conservation standard." 42 U.S.C. § 6291(6); 42 U.S.C. § 6311(18). Denver thus concedes that Energize Denver is a regulation concerning the energy efficiency of Covered Products. *See Mulhern Gas Co., Inc. v. Mosley*, 2025 WL 2062194 at *14 (N.D.N.Y Jul. 23, 2025) (Stating that a hypothetical regulation setting "a maximum building-wide energy consumption limit" "would be an indirect regulation concerning the energy use of the [C]overed [P]roducts that could be used in the building" and "would be clearly preempted" under EPCA.). Further, Energize Denver does not qualify for any of the few limited exceptions from preemption, as Denver has not obtained a waiver, and by its unambiguous terms Energize Denver's whole building energy conservation standard does not solely apply to new construction. Energize Denver is thus preempted by EPCA.

### III. Plaintiffs' Claims are Not Barred by any Statute of Limitations.

Denver makes a fleeting argument that Plaintiffs' claims are barred by a statute of limitations. ECF No. 71 at 10-11. As addressed in Plaintiffs' Response in opposition to Intervenor-Defendants' motion to dismiss, the correct statute of limitations under *Restaurant Law Center v. City and County of Denver* is four years for commercial/industrial Covered Products under 28 U.S.C. § 1658(a), and two years for consumer Covered Products under C.R.S. § 13-80-102(1)(h) (g). *See* Plaintiffs' Response in Opposition to Intervenor-Defendants' Motion to Dismiss First Amended Complaint, ECF No. 83 at Section II, pp. 5-13.[3]

The first building performance standards set forth in Energize Denver were

---

[3] Plaintiffs' adopt all arguments made in response to Intervenor-Defendants' motion to dismiss.

5

promulgated within the last four years (*see* ECF No. 74, Intervenor-Defendants' Appx. at 79 (Jan. 20, 2022 Energize Denver regulations), and Plaintiffs' claims as to commercial/industrial Covered Products are timely. As to consumer Covered Products: (1) there are disputed issues of fact as to when Plaintiffs claims accrued under *Corner Post Inc. v. Board of Governors, FRS*, 603 U.S. 799 (2024) that are not appropriate for a motion to dismiss; and (2) even taking the most favorable date on when building performance standards were first promulgated (Jan. 20, 2022), Plaintiffs' members required adequate time to conduct the technical analyses (including energy audits) necessary to determine that Energize Denver concerned consumer Covered Products at their buildings sufficient to trigger the statute of limitations and start the accrual of that 2 year statute of limitations. *Id*. at 8-12; *Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994)) ("The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action.").

## IV.  Denver Has Threatened Plaintiffs' Members With Enforcement.

Denver's claim that Plaintiffs' challenge is not ripe and that Plaintiffs' lack injury sufficient for standing because Denver does not intend to seek penalties should be rejected outright. Denver Defendants' non-binding claim that they are not focused on "penalizing building owners" is belied by their blunt communications to Plaintiffs' members. Plaintiffs' members have received letters from OCASR threatening millions in penalties. Plaintiffs' Appx., pp. 3-10 – Letter from Denver OCASR/Sharon Jaye to Court Place Land, LLC (Jan. 30, 2023) (threatening $87.6 million in penalties). OCASR staff

6

has provided templates of those letters to Plaintiffs' members, indicating these letters are sent out *en masse*. *Id.* at pp. 11-19, OCASR Template Compliance and Penalty Letters. Plaintiffs' members have also received spreadsheets created by OCASR staff listing potential penalties across their portfolio of buildings. *Id.* at pp. 20-33 – Sage Hospitality Initial Notice to Comply Spreadsheet (showing cumulative penalties from $1.5M to $14.8M for individual buildings as of 2023). Finally, Energize Denver maintains a public Building Performance Forecasting Calculator which calculates penalties for Covered Buildings. *See* https://calculator.energizedenver.org/ (last visited Nov. 6, 2025). Plaintiffs compiled the calculated penalties for the properties identified in the declarations to the amended Complaint from this public database, which show cumulative potential penalties of $64 million for Plaintiffs' declarants alone. Plaintiffs' Appx., pp. 34-36 – Chart of Declarant Penalties. Plaintiffs' members have been threatened with enforcement through debilitating penalties, and any assertion from Denver to the contrary should be rejected.

### V. Plaintiffs' Claims are Ripe.

Plaintiffs' claims are ripe because Energize Denver applies to Plaintiffs' members, and the Covered Products in their buildings today. No amount of discretionary variance "Adjustments" changes that conclusion. Denver's argument that Plaintiffs' claims cannot be ripe until Plaintiffs' members exhaust all variance allowances they claim are available under Energize Denver should be rejected.

To show finality and ripeness to challenge agency regulations, "[a]ll a plaintiff must show is that 'there [is] no question . . . about how the regulations at issue apply to the particular [property] in question.'" *Pakdel v. City and County of San Francisco, California*,

7

594 U.S. 474, 478-479 (2021) (quoting *Suitum v. Tahoe Regional Planning Auth.,* 520 U.S. 725, 739 (1997)).  This is contrasted with situations where "avenues still remain for the government to clarify or change its decision." *Id.* at 480.  Where the regulator "is committed to a position," such as here where Denver is emphatic that the Covered Products in Plaintiffs' members' buildings are subject to the requirements of Energize Denver, any "potential ambiguities evaporate and the dispute is ripe for judicial resolution." *Id.* at 479.

In *Darby v. Cisneros*, the Supreme Court recognized that finality requirement is conceptually distinct from any claimed exhaustion requirements.  509 U.S. 137 (1993).  Finality is concerned with whether a decisionmaker has "arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate." *Id.* at 144 (citation omitted).  Under Supreme Court and Tenth Circuit precedent, the inclusion of limited and discretionary variance options in Energize Denver does not change the fact that Energize Denver is a complete and final ordinance that applies to and concerns Covered Products, and Plaintiffs' members are not required to exhaust permissive variance adjustments to show harms from Energize Denver.

First, there are no "uncertain or contingent future events" as to whether Plaintiffs' members must comply with the building performance standards of Energize Denver.  Denver Mot. at 11 (quoting *Salt Lake Trib. Publ'g Co., LLC v. Mgmt. Plan., Inc.* 454 F.3d 1128, 1140 (10th Cir. 2006)).  Denver Defendants' make it very clear that they believe

8

Energize Denver applies to Plaintiffs' members' Covered Buildings and the Covered Products within those buildings. Further, the optional "Adjustments" can only extend or adjust timelines and targets, can only be sought for a limited universe of Covered Products, and cannot avoid the application of Energize Denver to Covered Products. Thus, Denver admits that Energize Denver applies to the Covered Products in Plaintiffs' members' buildings, and the availability of limited variances does not change that conclusion. Energize Denver is thus complete and ripe for challenge.

Even if Plaintiffs' members apply and Denver decides in its discretion that they qualify for these variances, the "Adjustments" cannot provide full relief to Plaintiffs' members, as they (1) do not apply to all classes of Covered Products; and (2) only provide limited temporal relief to adjust for the "useful life" of the Covered Product as calculated by Denver. *See e.g.* ECF No. 71-2 at 18-19 (April 1, 2025 version of Energize Denver regulations, stating that timeline adjustments are only available for Covered Products "50% or longer into its service life and for the length of time listed in the CASR-defined End of System Service Life chart"; and requiring the application for an Adjustment "include a plan and timeline for replacing the equipment at the end of its service life."); ECF No. 71-3 at 90 (April 1, 2025 Technical Guidance for Energize Denver, Service Life Chart that lacks any service life or allowances for classes of Covered Products such as lighting, faucets, water closets, or kitchen equipment such a refrigerators, washers, dryers, and stoves). In short, only older Covered Products over 50% into their service life, and generally only "major" Covered Products such as HVAC and domestic water heating systems qualify for Adjustments. Newer Covered Products with more than 50% service

9

life remaining (thus, counter-intuitively, existing buildings with newer equipment, including, for example, renovated buildings, will be subject to a heavier compliance burden), and more "minor" Covered Products with lower energy consumption, such as lighting, faucets, water closets, or kitchen equipment such a refrigerators, washers, dryers, and stoves do not qualify for potential extensions.[4]

Further, most of Energize Denver's allowances for "Adjustments" are contained in the unenforceable "Technical Guidance" for Energize Denver, which by its own terms is superseded by the Energize Denver ordinance and regulation and thus the Adjustments are subject to the unpredictable discretion of the regulators. *See* ECF No. 71-3, Technical Guidance at 1 (April 1, 2025) (Stating "[n]othing in this Technical Guidance shall supersede any Denver ordinance or regulation."). Thus, Denver's own documents concede that the majority of the already limited (in both scope and effect) variances are wholly discretionary, that the plain terms of the Energize Denver regulations control, and those terms are clear that Covered Products are subject to the requirements of the regulation. *See also Jake's Fireworks Inc. v. Acosta*, 893 F.3d 1248, 1262 (10th Cir. 2018) (policy statements do not have the "force and effect of law") (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 n.31 (1979)).

Thus, Energize Denver's whole building energy conservation rules target Covered Products in existing buildings, and the default requirement is that Plaintiffs must address

---

[4] To the extent Denver Defendants argue that Energize Denver can provide complete relief for Covered Products, that is a factual dispute, intertwined with the jurisdictional determination at issue here, which is inappropriate for a motion to dismiss. *Holt v. U.S.*, 46 F.3d 1000, 1002 (10th Cir. 1995).

the energy efficiency of those Covered Products in order to comply with Energize Denver. The discretionary "Adjustments" also only adjust the timing of when Covered Products must be replaced, and are not available for many Covered Products (not the least the large universe of Covered Products with more than 50% of their useful life remaining). The limited and discretionary "Adjustments" Plaintiffs' members may apply for do not change the fact that Energize Denver's whole building energy conservation ordinance "concerns" Covered Products and its implementation will in most cases require their replacement.

Second, the limited and discretionary variance provisions of Energize Denver are not "exhaustion requirements." The general rule is that there is not an "exhaustion" requirement absent a specific statutory requirement for first administratively challenging the statute's or regulation's application. *Big Cats of Serenity Springs, Inc. v. Vilsack*, 84 F.Supp.3d 1179, 1201-1202 (D. Colo. 2015).  If there is no statutory requirement for administrative exhaustion, or the regulation does not provide a method "for challenging the application" of the regulation, "the plaintiffs may file suit without filing an administrative action or appeal." *Id.* at 1202.  Even where there are such exhaustion requirements, a Plaintiff is not required to exhaust variance provisions under an otherwise unlawful ordinance in order to challenge it in Court. *Pakdel*, 594 U.S. at 479-480; *State of Colo. v. Veterans Administration*, 430 F.Supp. 551, 558 (D. Colo. 1977) (citing to *McGee v. United States*, 402 U.S. 479, 484 (1971)); *Abbot Laboratories v. Gardener,* 387 U.S. 136, 153 (1967); *Qwest Corp. v. City of Santa Fe, New Mexico,* 380 F.3d 1258 (10th Cir. 2004).

There are no statutory requirements or even provisions for administratively

11

challenging the applicability or constitutionality of Energize Denver, and Energize Denver does not contain any administrative exhaustion requirements. Plaintiffs' members will remain subject to and suffer from the unlawful effects of Energize Denver regardless of the limited and discretionary target and timeline "Adjustment" provisions. Energize Denver solely gives building owners the ability to apply for what amount to timing (not applicability) adjustments. Plaintiffs' members do not have to await the end of an administrative process to determine if they are subject to Energize Denver: that has already been established. That a particular schedule for a limited scope of certain Covered Products might be adjusted at Denver's discretion, is not an administrative "remedy" that needs to "exhausted" to conclude that the Energize Denver whole building energy conservation ordinance unlawfully targets Covered Products.

## VI. Plaintiffs Have Standing to Challenge Energize Denver.

Plaintiffs have established standing because Plaintiffs have shown that (1) at least one of each of their respective members has suffered or will suffer an injury in fact to a legally protected interest; (2) a causal connection between the Denver Defendant's challenged conduct and their members' alleged injury; and (3) a likelihood that a favorable decision will redress the alleged injury. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). As this Court already recognized when granting Plaintiffs' motion to amend their complaint, "Plaintiffs have remedied their Article III standing issues in the Complaint by alleging non-speculative, certainly impending injuries related to their members' necessary replacement of Covered Products to comply with . . . . Energize Denver." ECF No. 67 at 5. Plaintiffs' members' alleged injuries are

both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Id*. Further, these injuries are "fairly traceable to the challenged action of the defendant." *Utah Physicians for a Healthy Env't v. Diesel Power Gear, LLC*, 21 F.4th 1229, 1241 (10th Cir. 2021) (quoting *Friends of the Earth*, 528 U.S. at 180–81). Finally, "it [is] 'likely,' as opposed to merely 'speculative,'" that the alleged injury will be "redressed by a favorable decision." *Lujan,* 504 U.S. at 561 (citations omitted).

Ignoring this Court's determination that Plaintiffs' have standing, Denver's continued challenge to Plaintiffs' standing essentially reiterates their ripeness and exhaustion arguments.

First, as discussed *supra*, Denver Defendants acknowledge that Energize Denver applies to Covered Products, and none of the limited and discretionary "Adjustment" variances would exclude Covered Products from applicability under Energize Denver. *See also* ECF No. 71 at 4-7; ECF No. 71-4 (Decl. of Sharon Jaye)   Denver Defendants do not and cannot claim that that Plaintiffs could apply to **exclude** any Covered Products from Energize Denver's compliance obligations   Therefore, Denver's much touted variance options, even where potentially applicable, only effect the degree, not the occurrence, of the injuries.

Plaintiffs' alleged injuries from Energize Denver include, in addition to the injuries associated with removing and replacing EPCA-compliant Covered Products with remaining useful life, the costly and resource-intensive requirement "to analyze their building energy usage, including the energy usage and efficiency of Covered Products, and implement energy efficiency measures that target Covered Products."  Compl., ECF

13

No. 68 at ¶ 175. Denver's protestations amount to complaints that Plaintiffs have not bent over backwards to tailor their "compliance" with Energize Denver by opening their private books, and requesting admittedly limited and discretionary "Adjustments" from the default operation of Energize Denver. Even if the limited and discretionary Adjustments are allowed in certain situations, they might at most temporarily mitigate, but not eliminate, only some of Plaintiffs' members' injuries, which include the forced the replacement of Covered Products in Plaintiffs' members' buildings, often with electrified products. In any event, Plaintiffs are not obligated to seek these limited and discretionary Adjustments as Energize Denver is preempted on its face for regulating Covered Products – and any actions required of Plaintiffs' members to comply with a preempted regulation are unlawful. In a motion to dismiss, all of those alleged harms must be accepted as true for the purposes of resolving Denver Defendants' motion and establishing Plaintiffs standing. *Ashcroft*, 556 U.S. at 678.

Thus, no matter what "Adjustments" are applied for, Plaintiffs' members must spend the resources to evaluate the energy efficiency of the Covered Products in their buildings, identify the Covered Products with a remaining useful life that must be removed and replaced, and apply for "Adjustments" for the limited universe of Covered Products for which variances are available. Even if the "Adjustments" are granted at the discretion of Denver, the "Adjustments" solely change the **timing** or **intensity** of those replacements. The availability of these limited and discretionary variances regarding only select kinds of Covered Products does not contradict Plaintiffs' allegations of injury.[5]

---

[5] To the extent Denver Defendants contest Plaintiffs' well pled allegations – that Energize

Second, Denver's argument that Plaintiffs cannot establish injury under the threat of enforcement, arguing that Plaintiffs cannot establish any building owner has been monetarily penalized, is belied by the plain language of Energize Denver.

As a threshold matter, Denver Defendants' litigation assurances that Plaintiffs do not face enforcement threats are merely unenforceable claims regarding enforcement discretion, which do not have the "force and effect of law." *Jake's Fireworks Inc.*, 893 F.3d at 1262 (10th Cir. 2018). The plain text of Energize Denver states that "[i]t is unlawful for any person to violate any provision of this Rule." ECF No. 71-2 at 31 (Section 7.2) (April 1, 2025 version of Energize Denver). Failure to comply allows OCASR to issue a Notice or Order seeking penalties (*id.*), which penalties are set in the Energize Denver Ordinance (*See* Intervenor-Defendants' Appx. at 73, Sec. 10-407. – Enforcement (Energize Denver Ordinance 2, Council Bill 21-1310 (Nov. 24, 2021)). As alleged by Plaintiffs, these enforcement threats include creating perpetual liens on Plaintiffs' members properties. Compl., ECF No. 68 at ¶ 78. Further, as discussed above, the enforcement threat is not speculative: Denver Defendants have directly communicated specific enforcement threats to several of Plaintiffs' members totaling millions of dollars. Under this threat of enforcement (and consistent with the reasonable expectation that citizens will comply with the law), Plaintiffs' members have already incurred the significant costs of Energy Audits, and have started the process of modifying their buildings (and the Covered Products in

---

Denver requires concerns Covered Products and requires Plaintiffs' members to modify their behavior in respect to those products, including replacement – Defendants are contesting factual allegations which is inappropriate for a motion to dismiss.

15

them) to meet the fast-approaching compliance deadlines. *Id.* at ¶¶ 155-166. Plaintiffs' alleged harms from enforcement encompass much more than penalties, including irreparable changes to their buildings. This threat of enforcement, including specific letters sent by Denver Defendants to Plaintiffs' members, is sufficient to establish Article III standing. *Peck v. McCann*, 43 F.4th 1116, 1129 (10th Cir. 2022) ("an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by statute, [creates] a credible threat of prosecution thereunder."). Denver's suggestion that Plaintiffs are not injured should be rejected.

Third, to the extent Denver's arguments rely on their (inaccurate and misleading) characterization of Energize Denver, including the scope and effect of the Adjustment variances, Denver is disputing the facts pled in Plaintiffs' Complaint and has converted their motion to dismiss into a motion for summary judgment. Denver implicitly concedes that they cannot prevail on their motion to dismiss if one assumes, as the Court (and Denver) must, the veracity of Plaintiffs' allegations. Denver has not followed this Court's process for seeking summary judgment, and their effort to disguise a motion for summary judgment in their motion to dismiss must be rejected.

Plaintiffs have established non-speculative, imminent harms for purposes of Article III standing.

## CONCLUSION

Denver's motion to dismiss should be denied.

Dated:  November 6, 2025

           GREENBERG TRAURIG, LLP

           /s/ *Paul M. Seby*
           Paul M. Seby
           Matthew K. Tieslau
           GREENBERG TRAURIG, LLP
           1144 15th Street, Suite 3300
           Denver, Colorado 80202
           Phone Number:  303.572.6500
           Fax Number: 303.572.6540
           E-Mail:
                  TieslauM@gtlaw.com

           *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th of November 2025, a copy of the foregoing was served upon all parties using the Court e-filing system.

*s/ Paul M. Seby*
Paul M. Seby