IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01093

**COLORADO APARTMENT ASSOCIATION et al.**

        Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, et al.**

        Defendants.

_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO INTERVENOR-DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**
_____

Intervenor-Defendants' (Coalition for Community Solar Access, Colorado Solar and Storage Association, Natural Resources Defense Council and Sierra Club) Motion to Dismiss Plaintiffs' First Amended Complaint (ECF No. 75, "Intervenor Mot.") should be denied for the following reasons:

First, Intervenor-Defendants admit that Plaintiffs' claims under the federal Energy Policy and Conservation Act ("EPCA") challenging Regulation 28 and Energize Denver as they apply to **commercial** and **industrial** equipment were timely filed within the applicable four-year statute of limitations. Commercial and industrial equipment (e.g., large heating and air conditioning ("HVAC") and water heating systems) represent the vast majority of the Covered Products in Plaintiffs' members' buildings affected by these regulations. Intervenor-Defendants only challenge whether Plaintiffs' EPCA claims against Regulation 28 and Energize Denver as **consumer** Covered Products were filed timely, and this case will proceed regardless.

Second, the appropriate statute of limitations for Plaintiffs' EPCA preemption claims against Regulations 28 as to consumer products is the 2-year statute of limitations under C.R.S. § 13-80-102(1)(g), (h) *Restaurant Law Center v. City and County of Denver*, 2025 WL 2652871 (D. Colo. 2025). Regulation 28 was promulgated within two years of this action, and all of Plaintiffs' claims against Regulation 28 are timely.

Third, as Intervenor-Defendants admit, the appropriate statute of limitations for Plaintiffs' EPCA preemption claims against Energize Denver as to consumer products is also the 2-year statute of limitations under C.R.S. § 13-80-102(1)(g), (h). The first version of Energize Denver establishing specific whole building energy conservation standards

2

was promulgated on January 20, 2022. Under *Corner Post Inc. v. Board of Governors, FRS*, 603 U.S. 799 (2024), Plaintiffs claims did not accrue upon promulgation of that version of Energize Denver, but rather only accrued after Plaintiffs' members diligently conducted the technical analyses necessary to determine those requirements adversely effected Covered Products, and thus that Energize Denver was subject to challenge under EPCA. That investigative process took well over three months, which would make Plaintiffs April 22, 2024 initiation of this action timely under the two-year limitations period. Finally, to the extent Defendants dispute when Plaintiffs' claims regarding consumer Covered Products under Energize Denver accrued, they raise issues of disputed fact which are not appropriate for resolution at this stage of the case.

Fourth, both Regulation 28 and Energize Denver concern the energy efficiency of EPCA Covered Products,[1] and Plaintiffs have therefore stated a claim for relief.

## ARGUMENT

### I. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint that is barred by the statute of limitations. *Jones v. Bock*, 549 U.S. 199, 215 (2007); *see also Chance v. Zinke*, 898 F.3d 1025, 1034 (10th Cir. 2018). Typically, "facts must be developed to support dismissing a case based on the statute of limitations." *Herrera v. City of Espanola*, 32 F.4th 980, 991 (10th Cir. 2022). Therefore, "a court may grant a

---

[1] Consumer equipment is defined as "Covered Products" (42 U.S.C. § 6291 *et seq*.) whereas commercial and industrial equipment are defined as "Covered Equipment" (42 U.S.C. § 6311 *et seq*.). *See also* Compl., ECF No. 68 at ¶ 5. This Opposition will refer to both as Covered Products.

3

motion to dismiss based on a statute of limitations defense only 'when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements.'" *Id.* (citing *Fernandez v. Clean House, LLC,* 883 F.3d 1296, 1299 (10th Cir. 2018)). For that reason, "motions to dismiss on statute of limitations grounds generally are not favored", and "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Dodge v. Shoemaker,* 695 F.Supp.2d 1127, 1147 (D. Colo. 2010) (internal quotations omitted).

Limitations on a federal claim of right are grounded in federal law. *DelCostello v. Int'l Brotherhood of Teamsters*, 462 U.S. 151, 159 n. 13 (1983). When a federal statute does not supply a limitations period, courts "generally 'borrow' the most closely analogous state limitations period." *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 414 (2005). In resolving this question, courts will look for a state statute that is "actually designed to accommodate a balance of interests very similar" to that struck by the federal law at issue. *DelCostello*, 462 U.S. at 169. Relevant factors include "commonality of purpose and similarity of elements." *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 358 (1991). Further, federal limitations periods will preempt state statutes of limitation when the state limitations are "inconsistent with Congress's full purposes and objectives in passing" the federal statute. *Allen v. Environmental Restoration, LLC,* 32 F.. 4th 1239, 1244 (10th Cir. 2022); *see also DelCostello*, 462 U.S. at 171-172 (presumption that a state statute of limitations should be applied can be overridden ""when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and

the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking.").

Regardless of the source of the limitations period, federal law rather than state law determines when a cause of action brought under Federal law accrues. *See Indus. Constructors Corp. v. United States Bureau of Reclamation*, 15 F.3d 963, 968 (10th Cir. 1994). A statute of limitations does not accrue "as soon as the defendant acts, but only after the plaintiff suffers the injury required to press her claim in court." *Corner Post, Inc. v. Board of Governors, FRS*, 603 U.S. 799, 811 (2024). Pursuant to federal law, "[t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp.,* 15 F.3d at 969.

## II. Plaintiffs' Claims are Not Barred by the Appropriate Statute of Limitations.

### A. Plaintiffs have met the four-year statute of limitations applicable to their claims as to commercial/industrial Covered Products under both Regulation 28 and Energize Denver.

This District determined what statute of limitations applied to the City and County of Denver's separate Building and Energy Codes in *Restaurant Law Center.* 2025 WL 2652871. In *Restaurant Law Center,* Chief Judge Brimmer held that (1) EPCA's 60-day statute of limitations under 42 U.S.C. § 6306(b)(1) does not apply to EPCA challenges to state regulations, but only Department of Energy ("DOE") rulemakings; (2) that for EPCA challenges involving commercial/industrial Covered Products, the correct statute of limitations is the four-year limitations period under 28 U.S.C. § 1658(a); and (3) that for EPCA Challenges involving consumer Covered Products, the correct statute of limitations

5

period is Colorado's catchall two-year statute of limitations under Colo. Rev. Stat. §§ 13-80-102(1)(g), (h). *Id.* at *9-10.

Plaintiffs' claims against Energize Denver and Regulation 28 involve both commercial/industrial Covered Products, and consumer Covered Products. First Amended Complaint ("Compl."), ECF No. 68 at First and Second Causes of Action. Indeed, the biggest impact of Regulation 28 and Energize Denver will be on the commercial/industrial Covered Products in Plaintiffs' members' covered buildings, such as large HVAC systems and boilers. *Compare* 42 U.S.C. § 6291(1)B, 6292 (defining consumer Covered Products as those typically "distributed in commerce for personal use or consumption by an individual") *with* 42 U.S.C. 6311 (describing commercial/industrial Covered Products as the types of equipment seen in commercial and multifamily buildings, including boilers, commercial package air conditioners, walk in refrigerators, and large domestic water heating equipment).

Intervenor-Defendants admit Plaintiffs challenges are timely as to commercial/industrial Covered Products. Regulation 28 was promulgated on September 25, 2023, and the Energize Denver Regulations which first included enforceable building performance standards (via Energy Use Intensity ("EUI") whole building energy conservation standards) were first promulgated on January 20, 2022. ECF No. 74 at 1, 79. Plaintiffs' first Complaint was filed on April 22, 2024. Plaintiffs' claims against Regulation 28 and Energize Denver are clearly timely as to commercial/industrial Covered Products.

### B. Colorado's general two-year statute of limitations applies to Plaintiffs' claims regarding consumer Covered Products under Regulation 28, and Plaintiffs' claims may proceed.

The general two-year statute of limitations contained in C.R.S. § 13-8-102(1)(g) and (h) is the closest analog and the most appropriate statute of limitations to apply to Plaintiffs claims for consumer (and not commercial/industrial) Covered Products under *Restaurant Law Center*. Intervenor-Defendants' argument that the 35-day limitations period under the Colorado APA (C.R.S. § 24-4-106(4)) applies to Plaintiffs' claims pertaining to consumer products under Regulation 28 should be rejected for several reasons.

First, the 35-day limitations period applies to challenges under Colorado law to agency actions by plaintiffs that were a party to the agency rulemaking proceedings. C.R.S. § 24-4-106(4). The Colorado APA's limitation period is designed to allow parties to challenge both procedural deficiencies, such as whether the agency failed to comply with notice requirements, and bring challenges to the validity of the agency's actions under state law. *See* C.R.S. § 24-4-106(7)(b)(I)-(IX). The 35-day period for bringing challenges under state law represents the Colorado Legislature's intent that challenges to deficiencies in State agency regulations under state law should be limited. One set of Plaintiffs – the Colorado Apartment Association and the Apartment Association of Metro Denver – have challenged Regulation 28 in state court (including alleging state APA violations), which the parties have agreed to stay pending the outcome of this broader, federal case. *See Colorado Apartment Association and Apartment Association of Metro Denver v. The Colorado Air Quality Control Commission*, Case No. 2023CV33354. In

7

bringing those challenges, the Colorado Apartment Association and the Apartment Association of Metro Denver recognized that a federal supremacy challenge was not an appropriate claim in the State court APA case.

Second, applying the Colorado APA's 35-day limitations period to a federal EPCA preemption claim brought in federal court would "not appropriately protect the federal interest at stake" that "state and local governments do not enact laws that are contrary to EPCA, which preempts state and local regulation in that area." *Restaurant Law Center*, 2025 WL 2652871 at *9. As this District already determined in *Restaurant Law Center*, even a "60-day limitation period would place a tight limit on the time period in which a private party could challenge a regulation, thus limiting the opportunity to vindicate the federal interest in uniform appliance standards." *Id.* (citing *DelCostello*, 462 U.S. at 165-66). Applying the even shorter 35-day standard would further frustrate the federal interest at stake under EPCA and would be inconsistent with *Restaurant Law Center*. This court should follow *Restaurant Law Center* and apply the two-year statute of limitations under C.R.S. § 13-8-102(1)(g) and (h) to Plaintiffs' claims involving consumer Covered Products under Regulation 28.

Regulation 28 was published on September 25, 2023 and became effective on October 15, 2023. ECF No. 74 at 1, 4. Plaintiffs filed their original complaint on April 22, 2024, and thus filed within two years of either the publication or effective date of Regulation 28, and their claims are timely.

### C. Colorado's general two-year statute of limitations applies to Plaintiffs' claims regarding consumer Covered Products under Energize Denver, and Plaintiffs' claims may proceed.

Intervenor-Defendants admit that Colorado's two-year statute of limitations applies to Plaintiffs' challenge to consumer Covered Products under Energize Denver. Energize Denver was promulgated over several iterative processes:

1. December 20, 2016 – Ordinance 1: solely established benchmarking requirements ECF No. 74, Intervenor-Defendants' Appx., p. 47).
2. March 29, 2017 – First Energize Denver Regulation: implemented benchmarking requirements. *Id.* at p. 74.
3. November 24, 2021 – Ordinance 2: established the concept of whole building energy conservation standards, and directed the Office of Climate Action, Sustainability, and Resiliency ("OCASR") to establish regulations implementing such standards. *Id.* at p. 56, 70.
4. January 20, 2022 – Second Energize Denver Regulation: the first ever whole building energy conservation standards are codified in terms of EUI targets. *Id.* at 79.

The 2016 and 2017 versions of Energize Denver only established benchmarking requirements addressing baseline energy use, and did not include enforceable energy standards implicating Covered Products. The November 24, 2021 ordinance introduced the concept of whole building energy conservation standards, but did not contain specific targets that could be evaluated to determine if Covered Products would be implicated, and gave the OCASR the authority to promulgate regulations setting building performance standards. ECF No. 74, Intervenor-Defendants' Appx., p. 56-73. OCASR promulgated Energize Denver regulations on January 20, 2022, which for the first time published enforceable EUI standards. *Id.* at 79-93. However, this regulation stated that OCASR would not set the shorter term mandatory interim targets until May 1, 2022 at the earliest (for buildings that had already benchmarked), or until September 1, 2022 (or 6

9

months after receiving benchmarking) for buildings that had not yet benchmarked. *Id.* at 88. Further, Denver has continued to revise and expand the regulations: doubling them in size; adding definitions; adjusting deadlines and targets; adding allowances for service life; and changing how interim compliance dates are addressed. *Compare* January 20, 2020 version of the Energize Denver regulations (*Id.* at 79-93 (14 pages) *with* April 1, 2025 version of the Energize Denver regulations (*id.* at 148-185 (37 pages)); *see also* Denver Defendants' Motion to Dismiss, ECF No. 71 at 3-4 (acknowledging that the Energize Denver regulations were amended in 2025 to add additional adjustment options for the remaining useful life of "major" Covered Products.).

Intervenor-Defendants argue that Plaintiffs claims are barred as Plaintiffs filed their original complaint on April 22, 2024, at least two years after the January 20, 2022 version of Energize Denver. Intervenor Mot. at 4. Intervenor-Defendants' are incorrect because they ignore the Supreme Court's recent precedent in *Corner Post,* which holds that the statute of limitations clock does not start running upon promulgation of a regulation, but instead starts only once a plaintiff has a complete and present cause of action. 603 U.S. at 800.

In *Corner Post*, the Supreme Court rejected the premise that a "right of action 'accrues' when a regulation is final, full stop" for purposes of calculating a statute of limitations. *Corner Post, Inc.,* 603 U.S. at 821. While *Corner Post* dealt with a statute of limitations for Administrative Procedure Act ("APA") claims, the statutes at issue here have nearly identical "after the right of action first accrues" language. *See* C.R.S. § 13-8-102(1) ("civil actions . . . must be commenced within two years *after the cause of action*

*accrues*"); 28 U.S.C. § 1658 ("a civil action . . . may not be commenced later than 4 years *after the cause of action accrues*").

Thus, under *Corner Post*, Plaintiffs' EPCA preemption claim did not accrue until Plaintiffs' members (1) had their interim targets to be set by OCASR (which at earlier occurred by May 1, 2022); (2) conducted studies their buildings and evaluated the results in light of the EUI building performance standards in Energize Denver to determine whether Energize Denver implicated EPCA such that a preemption claim would be viable.[2] Without this analysis and information, it was not possible to determine if Plaintiffs' members were injured and if Energize Denver was preempted by EPCA .

Plaintiffs' Complaint (and supporting declarations) demonstrate that Plaintiffs *first* engaged in the work of analyzing the building performance standards in both Regulation 28 and Energize Denver to determine whether they "concerned" the energy efficiency of Covered Products such that they were preempted by EPCA *before* they brought this action. Compl., ECF No. 68 at ¶¶ 31-37, 127-134, 143-151. Given the need to analyze the building performance standards in both regulations, Plaintiffs' claims did not "accrue" for purposes of triggering any statute of limitations for purposes of an EPCA preemption

---

[2] Confoundingly, Denver (who also makes a statute of limitations argument), argues that Plaintiffs claims are not yet ripe and that Plaintiffs cannot establish any injury until a future time in which they apply for variances (timeline and target "adjustments") under Energize Denver. If that were the case (which, as discussed in Plaintiffs' response to Denver's motion to dismiss, it is not) Plaintiffs would be stuck in a Schrödingerian state of already having passed the statute of limitations, while simultaneously being unable to accrue an injury for purposes of ripeness and standing. Such an absurd result must be rejected. *See Corner Post, Inc.*, 603 U.S. at 811 (Supreme Court noting it has "reject[ed]" the possibility that a "limitations period commences at a time when the [plaintiff] could not yet file suit" as "inconsistent with basic limitations principles." (quoting *Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997))).

11

claim until Plaintiffs had sufficiently analyzed their buildings, completed energy audits, and affirmatively determined that they would be required to target covered product replacements in order to comply with Energize Denver and Regulation 28. *Indus. Constructors Corp.*, 15 F.3d at 969. This did not occur until much later in 2022 (and for some of Plaintiffs' members even later), and Plaintiffs filed within the two-year statute of limitations from those accrual dates. Plaintiffs' claims as to consumer Covered Products under Energize Denver are timely.

> **D. To the extent Intervenor-Defendants contest when Plaintiffs' claims as to consumer Covered Products under Energize Denver accrued, this Court should decline to resolve the matter at this time.**

The history of the promulgation of the Energize Denver regulations, including the need for OCASR to set the interim building EUI performance standards and for Plaintiffs' members to then analyze those standards emphasizes that there are contested issues of fact as to when Plaintiffs' claims accrued as to Energize Denver. The earliest time Energize Denver contained initial and incomplete EUI whole building performance standards was January 20, 2022. *See* ECF No. 74, Intervenor-Defendants' Appx., at 80. Intervenor-Defendants' (and Denver's) claim that Plaintiffs' members should have immediately known that Energize Denver unlawfully regulated EPCA preempted consumer Covered Products sufficient to cause injury upon the day of promulgation of this version of Energize Denver strains credulity. Plaintiffs had to take sufficient time to benchmark their buildings, compare that to the 2030 EUI targets in Energize Denver, and then inventory building equipment and conduct energy audits to understand what compliance with those EUI targets would entail. All of those actions took time, with some

of Plaintiffs' members not even having completed the energy audits until earlier this year.

To the extent Intervenor-Defendants (or Denver) contest Plaintiffs' position, they raise critical questions as to when Plaintiffs' cause of action accrued in this matter – specifically when Plaintiffs' members determined that Energize Denver injured them by requiring replacement of Covered Products, and thus applied in a manner that "concerns" the energy efficiency of consumer Covered Products in their buildings such that an EPCA preemption claim would be supported.  To the extent Intervenor-Defendants argue for an earlier date (such as January 20, 2022), they raise disputed issues of fact inappropriate for resolution in a motion to dismiss.  *See Fernandez v. Clean House, LLC,* 883 F.3d 1296, 1299 (10th Cir. 2018) ("Only when the plaintiff pleads itself out of court—that is, admits all the ingredients of an impenetrable defense—may a complaint that otherwise states a claim be dismissed under Rule 12(b)(6)." (citing *Xechem, Inc. v. Bristol–Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004))).

### III. Both Regulation 28 and Energize Denver "Concern" the Energy Efficiency of Covered Products, and Plaintiffs' Have Therefore Plead Cognizable Claims that Survive a Motion to Dismiss.

Plaintiffs incorporate their responses to both State Defendants' and Denver Defendants' motions to dismiss, and add only a few discrete arguments made by Intervenor-Defendants meriting discussion.

First, Intervenor-Defendants erroneously claim it is significant that Plaintiffs' Complaint "does not allege that Plaintiffs' members will need to install any equipment that exceeds applicable federal energy conservation standards."  Intervenor Mot. at 10.  As explained in Plaintiffs' response to State Defendants' motion to dismiss, EPCA's

13

preemption provisions for individual covered products applies whenever a federal energy conservation standard is established for the Covered Product.  *See* 42 U.S.C. § 6297(c) ("**[O]n the effective date of an energy conservation standard established in or prescribed under section 6295 of this title** for any covered product, **no State regulation** concerning the energy efficiency, energy use, or water use of such covered product **shall be effective**. . . " (emphasis added)).  It is irrelevant if a State energy conservation standard is more or less stringent, or simply different than a federal standard – in any instance, a State energy conservation standard is preempted.  As Plaintiffs' have pled and supported in their affidavits, whole building energy standards that force building owners to remove and replace EPCA-compliant Covered Products with a remaining useful service life are preempted by EPCA: the new replacement equipment does not have to exceed EPCA standards to trigger preemption.

Intervenor-Defendants' argument also mistakenly home in on a claim Plaintiffs have declined to carry forward in their amended Complaint – that Regulation 28 and Energize Denver are preempted as to new construction/buildings.  *Compare* ECF No. 1 at Second and Fourth Causes of Action *with* ECF No. 68 at First and Second Causes of Action.

Plaintiffs are no longer challenging Regulation 28 or Energize Denver as they apply to new construction, and thus this argument by Intervenor-Defendant is irrelevant.

Second, Intervenor-Defendants incorrectly claim that if Plaintiffs are successful "state and local governments would be powerless to stop the continued use of any EPCA-covered appliance in any circumstance for any reason, even a damaged furnace that

14

poses an imminent fire hazard." Intervenor Mot. at 11. Regulations unrelated to the energy use of Covered Products, such as safety regulations, would clearly not be preempted by ECPA because they do not "concern" the energy efficiency of Covered Products.

<u>Third</u>, Intervenor-Defendants incorrectly claim that Plaintiffs' claims hinge on a required replacement of Covered Products in their buildings with electrified Covered Products. Intervenor Mot. at 11-12. This is an incorrect characterization of the Complaint and supporting affidavits, which address the removal of any EPCA-compliant Covered Products with a remaining useful service life and their replacement by any other Covered Products, not just electrified Covered Products. Plaintiffs' claims are based on the fact that Regulation 28 and Energize Denver "concern" the energy efficiency of Covered Products in their buildings and are preempted. Compl., ECF No. 68 at ¶¶ 168, 175.

## CONCLUSION

Intervenor-Defendants' motion to dismiss should be denied.

15

Dated: November 6, 2025

        GREENBERG TRAURIG, LLP

        /s/ *Paul M. Seby*
        Paul M. Seby
        Matthew K. Tieslau
        GREENBERG TRAURIG, LLP
        1144 15th Street, Suite 3300
        Denver, Colorado 80202
        Phone Number: 303.572.6500
        Fax Number: 303.572.6540
        E-Mail:
                TieslauM@gtlaw.com

        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th of November 2025, a copy of the foregoing was served upon all parties using the Court's e-filing system.

*s/ Paul M. Seby*
Paul M. Seby
