IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-CV-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;

    *Plaintiffs*,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office;

  AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency.

    *Defendants*,

  AND

THE COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB.

    *Intervenor-Defendants.*

**STATE DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

## INTRODUCTION

Colorado's Air Quality Regulation 28 aims to reduce greenhouse gas ("GHG") emissions attributable to large buildings by requiring owners of Covered Buildings to report on their energy usage ("Benchmarking") and then reduce their GHG emissions by employing energy efficiency measures or utilizing renewable energy ("performance standards"). EPCA, on the other hand, preempts state rules that impose energy efficiency or energy use standards for certain products for which the Department of Energy ("DOE") has promulgated an energy efficiency or energy use standard ("Covered Products"). State Defendants' Motion to Dismiss explains how EPCA's preemption clause does not at all relate to Regulation 28 because Regulation 28 does not require owners of Covered Buildings to replace Covered Products based on their energy use in conflict with federal standards, nor does it impose any requirements upon the manufacturing or servicing of Covered Products.

Plaintiffs' Response misapplies the standard of review for motions to dismiss, mischaracterizes Regulation 28, misinterprets EPCA preemption, improperly conflates Regulation 28 with building code standards, and fails to address many of the arguments in State Defendants' Motion to Dismiss. Amicus curiae, Air-Conditioning, Heating, and Refrigeration Institute ("AHRI"), provide similarly unavailing arguments that rest upon a misinterpretation of the legislative history of EPCA and fail to apply EPCA's preemptive effect to the law in question—Regulation 28.

The Court should reject Plaintiffs' arguments and grant State Defendants' Motion to Dismiss.

## REPLY ARGUMENT

**I.   Plaintiffs wrongly claim that disagreements concerning the meaning of Regulation 28 constitute factual disputes.**

Plaintiffs argue that because State Defendants disagree with Plaintiffs about "how Regulation 28 works," i.e., how the law applies to the facts they have alleged, they have "raise[d] issues of disputed fact that cannot be resolved at the motion to dismiss stage." Plaintiffs' Response in Opposition to State Defendants' Motion to Dismiss Plaintiffs' First Cause of Action, ("Response") at 3. Specifically, Plaintiffs state that their "members have conducted extensive energy audits … analyzed Regulation 28[] and determined that they cannot meet the building performance requirements … without targeting the energy efficiency of Covered Products, often being forced to replace those Covered Products" and that Plaintiffs believe this to be true "regardless of the compliance pathway chosen." *Id.* at 5 (emphasis omitted).[1] Because State Defendants identify in their Motion to Dismiss that the plain language of Regulation 28 offers different compliance pathways that can obviate the need to replace Covered Products,

---

[1] This statement by Plaintiffs reveals two additional problems:
   First, Plaintiffs do not define the phrase "targeting the energy efficiency of Covered Products," or explain how such "targeting" could form the basis of EPCA preemption.
   Second, Plaintiffs continue to equivocate regarding the scope of their challenge. Plaintiffs broadly assert that Regulation 28 is preempted as applied to all existing buildings. *See, e.g.,* Response, at 11. But, Plaintiffs also repeatedly admit that compliance with Regulation 28 does not uniformly require replacement of any Covered Products, *see, e.g.,* Response, at 5 (noting that compliance "often" requires replacement of Covered Products). If some applications of Regulation 28 do not involve Covered Products, then it cannot be preempted as applied to all existing buildings.

3

Plaintiffs suggest State Defendants "direct[ly] challenge [] the well pled factual allegations in Plaintiffs' Complaint." *Id.* at 5.

Notwithstanding Plaintiffs' argument to the contrary, a court is not required to "accept as true legal conclusions that are masquerading as factual allegations." *Rancho Del Oso Pardo, Inc. v. New Mexico Dep't of Game & Fish*, 508 F. Supp. 3d 867, 877 (D.N.M. 2020) (citing *Brooks v. Sauceda*, 85 F. Supp. 2d 1115, 1123 (D. Kan. 2000)). And questions regarding the interpretation of Regulation 28 "are questions of law ripe for resolution at the pleadings stage." *See Simmons v. Galvin*, 575 F.3d 24, 30 (1st Cir. 2009) (as applied to questions of statutory interpretation).

To be clear, for the purposes of their Motion to Dismiss, State Defendants do not dispute Plaintiffs' facts as pled—that is, that their constituents conducted energy audits or that those audits reached certain conclusions. Instead, State Defendants dispute the legal conclusions to the extent they rest on Plaintiffs' misinterpretation and misapplication of Regulation 28 to the buildings reviewed in those audits. As State Defendants note in their Motion to Dismiss, Regulation 28 offers owners of Covered Buildings compliance pathways, and Plaintiffs have pointed to nothing in Regulation 28 requiring a Covered Building owner to take any action with respect to or precluding the use of a Covered Product.[2] For example, building owners unable to comply with GHG

---

[2] Plaintiffs suggest that the flexibility offered in the compliance pathways of Regulation 28 does not impact whether EPCA preempts the Rule. Response, at fn2. This argument is wrong for at least two reasons. First, as State Defendants have repeatedly pointed out, Plaintiffs misread EPCA preemption when they argue that EPCA preempts rules that require building owners to replace Covered Products. In reality, EPCA preempts local rules that require product manufacturers to manufacture products that meet emissions standards that conflict with federal energy efficiency standards. In other

4

emissions reduction targets by employing energy efficiency measures may use renewable energy or renewable energy credits instead. Regulation 28, Part C, § I.B.1. Or building owners that can demonstrate a plan to replace building heating and cooling systems at the end of their useful life can apply for an adjustment to the timeline by which they will meet performance standards. *Id.*, § II.A.3.d. These provisions of Regulation 28 exist as a matter of law despite Plaintiffs' factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."). To the extent a dispute exists, it is a dispute regarding the proper interpretation of Regulation 28 and its application to certain of Plaintiffs' members. That dispute is squarely within the scope of the Court's authority to rule upon State Defendants' Motion to Dismiss.

II. **Plaintiffs mischaracterize Regulation 28 to imply it is a building code that imposes energy conservation standards and misapply case law concerning preemption of building codes.**

Plaintiff's arguments concerning waiver appear related to the incorrect notion that Regulation 28 should be analyzed as if it were a building code. Plaintiffs state that "Regulation 28 imposes 'whole building' [energy] conservation standards for existing Covered Buildings." Response, at 8. Later, Plaintiffs wrongly refer to "Regulation 28's whole building energy conservation standard." Response, at 11. And again, Plaintiffs assert that "Regulation 28 regulates whole building energy consumption." Response, at

---

words, this entire argument is a red herring that relies on a misreading of EPCA. Second, even if EPCA did preempt local rules that require building owners to replace Covered Products, State Defendants point to Regulation 28's flexible compliance pathways in part to demonstrate that Plaintiffs misread the law when they argue it requires their members to replace Covered Products.

5

12. As a threshold matter, nowhere does EPCA employ or define the term or concept of "whole building energy conservation standard." Rather, EPCA defines "energy conservation standard" to explicitly apply to efficiency and design standards for enumerated Covered Products—not entire buildings. *See* 42 U.S.C. § 6291(6). Furthermore, Regulation 28 is not a building code as Plaintiffs insinuate because, unlike a building code, Regulation 28 applies to all *existing* buildings and does not establish permitting requirements.[3] Response, at 8-10. However, even if the Court accepts the analogy between Regulation 28 and a building code, EPCA does not preempt Regulation 28.

Contrary to the "whole building energy conservation standard" Plaintiffs portray, Regulation 28 establishes a regulatory scheme designed to reduce GHG emissions associated with energy consumed by Covered Buildings. *See* Regulation 28, Part F, at 30 ("The Commission established building benchmarking and building performance standards (BPS) as one means to track and reduce GHG emissions in the built environment."). Rather than require every building owner to measure, monitor, and report on actual GHG emissions from every source within every Covered Building, Regulation 28 employs different metrics for measuring GHG emissions reductions by offering multiple compliance pathways. Some of these compliance pathways involve reducing a building's energy consumption, but not all. One way Regulation 28 provides

---

[3] *See* § 30-28-114, C.R.S., which discusses at length local building code requirements. Further, while building codes apply to new construction and major modifications, here, Plaintiffs are challenging Regulation 28 only as it applies to existing buildings. *See* Amended Complaint, ¶ 168.

for this is the energy use intensity pathway establishing targets for all Covered Building types. Another is to reduce the building's GHG intensity, which provides the option of reducing energy consumption or replacing high GHG intensity energy sources with energy sources with a lower GHG intensity. Regulation 28 Part C, § I.

For example, a Covered Building owner can show a reduction in overall building GHG emissions by reducing the building's energy use through energy efficiency measures such as building envelope improvements. Regulation 28 Part C, § I.A. Alternatively, a Covered Building owner can reduce the GHG emissions intensity of their building through energy efficiency or by replacing fossil fuel equipment with high-efficiency electric equipment or more efficient fossil fuel powered equipment that complies with current DOE energy efficiency standards. Regulation 28 Part C, § I.B. Building owners unable to comply with Regulation 28 using these methods can comply by employing one of several renewable energy options, such as utilizing onsite renewable energy or by purchasing renewable energy through a utility subscription service. Regulation 28 Part C, § I.B.1.

Even though Regulation 28 is not a building code, the flexibility built into Regulation 28's compliance pathways and the optionality to choose different actions to achieve compliance within a chosen pathway align with well-recognized case law addressing EPCA's application to building codes. The Ninth Circuit has recognized that building codes typically allow for compliance through prescriptive or performance-based pathways, or a combination of the two, with prescriptive codes likely being preempted and performance-based codes surviving preemption. *Building Industry Ass'n of*

*Washington v. Washington State Bldg. Code Council,* 683 F.3d 1144, 1145 (9th Cir. 2012).

A key consideration in determining if a building code contains prescriptive compliance pathway requirements versus performance-based pathways is whether the code requires a builder to use Covered Products that have an energy efficiency rating in excess of federal standards. *See id.; Air Conditioning, Heating & Refrigeration Inst. v. City of Albuquerque*, 835 F. Supp. 2d 1133 (D.N.M. 2010). In *Washington*, the Ninth Circuit determined that the Washington code was not preempted because the use of higher efficiency appliances was not "required" by the Washington Code and builders had multiple options in meeting the code's overall energy reduction requirement applicable to newly constructed buildings. In contrast, the court in *City of Albuquerque* held that Alburquerque's building code was preempted by EPCA because many, if not all, of the prescriptive standards in the code exceeded the federal EPCA efficiency standards for Covered Products. *City of Albuquerque,* 835 F.Supp.2d at 1138-1139. Like the Washington building code, Regulation 28 is a performance based regulatory scheme, avoids mandating the use of specific Covered Products, and instead provides compliance pathways that provide multiple options to achieve building-wide energy efficiency and GHG reduction targets. As such, even if the Court analyzed Regulation 28 as if it were a building code—a characterization State Defendants strongly reject—it would still not be preempted by EPCA because it is not prescriptive.

### III. EPCA does not preempt Regulation 28 because Regulation 28 does not "concern" the energy efficiency of Covered Products.

State Defendants have explained that the plain language of EPCA, as supported by the law's legislative history, establishes a federal regime to shield product manufacturers from the need to navigate a patchwork of conflicting state standards. *See* State Defs.' Motion, at 10. Plaintiffs' arguments to the contrary are without merit.

### A. None of the cases cited by Plaintiffs support their argument that EPCA preempts regulations like Regulation 28 that do not directly or indirectly implicate Covered Products.

Plaintiffs' Response does not address State Defendants' plain language analysis, nor does it provide an alternative reading of the legislative history of EPCA's preemption clause. Instead, Plaintiffs cite three recent judicial decisions which they argue point to a different understanding of EPCA preemption. Response, at 11-16. None of these cases supports Plaintiffs' interpretation of EPCA.

Plaintiffs begin with *California Rest. Ass'n v. City of Berkeley,* 89 F.4th 1094 (9th Cir. 2024). State Defendants' Motion to Dismiss discusses this decision at length, showing that while State Defendants and two post-*Berkeley* rulings disagree with the *Berkeley* court's analysis, EPCA does not preempt Regulation 28 even under *Berkeley*'s broad reading of EPCA preemption. State Defs.' Motion, at 13-16. Plaintiffs' Response does not appear to address any of the arguments in State Defendants' Motion and Plaintiffs concede that the regulation at issue in *Berkeley* (a gas ban) is distinguishable from Regulation 28. Response, at 11-12. Plaintiffs highlight that the *Berkeley* court held EPCA's preemption of local rules that "concern" the energy use of Covered Products

9

preempted the City of Berkeley's building-wide ban on natural gas in new construction. Additionally, Plaintiffs cite *Berkeley* for the proposition that, "by using the term 'concerning,' Congress meant to expand preemption beyond direct or facial regulations of covered appliances." Response, at 13 (internal cite omitted). Even if true, neither of these points support EPCA preemption here. As State Defendants have pointed out, Regulation 28 does not require or preclude the use of any energy source, let alone preclude the use of a Covered Product based on energy source, nor does it mandate the replacement of gas-powered Covered Products with electric-powered Covered Products. *See* State Defs.' Motion, at 16. Put differently, unlike the ordinance at issue in *Berkeley*, Regulation 28 does not even indirectly attempt to regulate the type of energy used by Covered Products, so it is not preempted even under the Ninth Circuit's broad interpretation of the scope of EPCA preemption.

      Plaintiffs next discuss *Ass'n of Contr. Plumbers v. City of New York,* 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025) and *Mulhern Gas Co., Inc. v. Mosley*, 2025 WL 2062194 (N.D.N.Y Jul. 23, 2025), suggesting that these decisions "do not contradict the Ninth Circuit's conclusion in *Berkely* (sic)." Response, at 13. However, both these decisions *explicitly* contradict and reject *Berkeley*. *See Plumbers* at *5 ("The Court therefore declines to adopt the interpretation of 'energy use' employed by the Ninth Circuit in [*Berkeley*].)," *Mulhern* at *14 ("Recognizing the flaws in the Ninth Circuit panel's reasoning, the Court declines to follow [the *Berkeley* decision] . . ."). Further, Plaintiffs cite *Mulhern* for the statement that a hypothetical regulation setting "a maximum building-wide energy consumption limit" would be preempted by EPCA.

10

Response, at 13. But, as discussed above, Regulation 28 is no such regulation because, contrary to Plaintiff's repeated claims, Regulation 28 does not mandate energy consumption limits—it requires Covered Buildings to reduce their GHG emissions attributable to energy consumption, which can be achieved through multiple means. And as State Defendants have demonstrated, this dicta of the *Mulhern* Court misstates EPCA preemption because EPCA preempts certain local rules concerning Covered Products, not rules concerning whole buildings. Similarly, Plaintiffs cite *Plumbers*, claiming that Court "specifically recognized that actual energy efficiency standards implicating Covered Products, as opposed to outright bans on a specific fuel source, could implicate EPCA's preemption." Response, at 14. This argument ignores the *Plumbers* holding, which explicitly concluded that EPCA did not preempt a rule which goes far beyond Regulation 28 by generally prohibiting fossil fuels in new construction. This was because EPCA does not concern what appliances or fuel sources a building owner uses but instead "EPCA sets energy conservation standards for covered products and requires that they be tested for compliance with such standards and labeled accordingly." *Plumbers,* at *6. Neither the rules at issue in *Plumbers* and *Mulhern* nor Regulation 28 approach this EPCA preemption trigger.

      Finally, Plaintiffs cite *Metro. Taxicab Bd. of Trade v. City of New York*, 615 F.3d 152 (2d Cir. 2010) and the notion of imposing efficiency standards by proxy. Response, at 14. Plaintiffs correctly note that the *Plumbers* Court distinguished *Metro Taxicab*. *Id.* But Plaintiffs confusingly suggest that Colorado is imposing "performance standards by proxy," presumably suggesting that Regulation 28's building performance standards

constitute energy conservation standards for Covered Products *See id.* State Defendants have repeatedly explained that Regulation 28 does not ban the use of any product, covered or otherwise. Further, as State Defendants have explained, Regulation 28 does not establish any energy efficiency or energy use standards for any Covered Product and Plaintiffs do not allege that Regulation 28 requires a building owner to install an appliance exceeding EPCA energy efficiency standards.

### B. AHRI's argument rests on a misinterpretation of EPCA's legislative history.

AHRI acknowledges the importance of EPCA's legislative history to the court's interpretation of EPCA's preemption provision. Amicus, at 3-4. And State Defendants and AHRI agree that "Congress enacted the strengthened preemption provision in large part to protect manufacturers from the harmful effects of different state standards." Amicus, at 5 (citing State Defs.' Motion, at 10). AHRI nonetheless argues incorrectly that EPCA's legislative history supports the conclusion that Regulation 28 is preempted.

According to AHRI, the evolution of EPCA's preemption provision and concomitant changes to the scope of DOE's authority to waive EPCA preemption "support[] a broad reading of preemption." Amicus, at 7. But this argument misconstrues the relevant legislative history and the regulatory background against which these provisions were implemented.

DOE has frequently interpreted EPCA to preempt only a narrow subset of state energy regulations. In 1982, DOE advised that "only State regulations that are <u>appliance efficiency standards</u>" or that "established the energy efficiency <u>of a particular appliance</u>" were preempted, not "regulations that have only a peripheral effect on the energy

efficiency of a covered product." 47 Fed. Reg. 14,424, 14,456 (Apr. 2, 1982) (emphasis added). DOE explained that EPCA would preempt, for example, a "[p]rohibition of hook-ups for appliances with less than a certain efficiency," *i.e.*, less than a specific energy use figure. 47 Fed. Reg. 57,198, 57,215 (Dec. 22, 1982). But a prohibition on installing a Covered Product at all in new buildings would *not* be preempted. *See id.* ("Prohibition against placing oversized furnaces and air conditioners in new buildings, would not be subject to preemption."). The difference between the two is that the latter "does not draw any distinction between products based on their . . . energy use as manufactured" and as defined by EPCA. *Plumbers*, at *6.

Congress acquiesced to DOE's view of EPCA preemption a few years later when it adopted the current preemption provision. National Appliance Energy Conservation Act ("NAECA"), Pub. L. No. 100-12, 101 Stat. 103 (1987). Congress's deliberate choice to maintain the status quo in NAECA reinforces EPCA's narrow preemptive scope. *See Monsalvo v. Bondi*, 145 S. Ct. 1232, 1242 (2025) ("When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' this Court generally presumes the new provision should be understood to work in harmony with what has come before." (quoting *Haig v. Agee*, 453 U.S. 280, 297-98 (1981))).

As AHRI notes, NAECA changed "the criteria" for DOE preemption *waivers*, H.R. Rep. No. 100-11, at 24 (1987). AHRI (and Plaintiffs) suggest that the scope of EPCA's waiver provisions supports their broad reading of EPCA preemption. But NAECA did not change how DOE determined the antecedent question of what laws were preempted in the first place. And as noted in *Mulhern* "there is simply no connection between what the

13

Secretary is made to consider when assessing whether to grant a waiver for a regulation that is preempted and what actually renders a regulation preempted in the first place." 2025 WL 2062194, at *15 (N.D.N.Y. July 23, 2025) (rejecting similar arguments regarding the relationship between the scope of EPCA's waiver provision and the scope of EPCA preemption on this and other grounds).

### C. The other arguments raised by AHRI are similarly unavailing.

AHRI raises several other arguments in support of its contention that Regulation 28 is preempted by EPCA. But those arguments fail for at least two reasons. First, like Plaintiffs, AHRI's arguments rely on a mischaracterization of Regulation 28. As discussed above, Regulation 28 does not necessarily require any action with respect to any Covered Product. And it most certainly does not ban the purchase or use (or service) of any Covered Products. Second, AHRI's attempts to liken EPCA preemption to the scope of the Clean Air Act's preemption of state and local motor vehicle emissions standards are without merit. The context and language (and legislative history) of that waiver provision is markedly different from EPCA's preemption provision, and there is no reason to consult case law interpreting a completely different provision when EPCA's language, context, and legislative history answer the question.

## CONCLUSION

Because EPCA does not preempt Regulation 28, State Defendants respectfully request that the Court dismiss Plaintiffs' First Cause of Action pursuant to Rule 12(b)(6). Should the court disagree, State Defendants respectfully request the Court dismiss

14

pursuant to Rule 12(b)(6) the portion of Plaintiffs' claims that relate to buildings for which Plaintiffs have not alleged harm.

Respectfully submitted this 25th day of November, 2025.

        PHILIP J. WEISER
        Attorney General

        */s/ David Banas*
        DAVID BANAS*
        JACKIE CALICCHIO*
        DAVID BECKSTROM**
        W. CORY HALLER**
        Assistant Attorneys General
        Natural Resources and Environment Section
        1300 Broadway, 7th Floor
        Denver, CO 80203
        Telephone: 720.508.6000
        Email: David.banas@coag.gov
        Jackie.calicchio@coag.gov
        David.beckstrom@coag.gov
        Cory.haller@coag.gov

        *\* Counsel of Record on behalf of Defendant Will Toor, in his Official Capacity as the Executive Director of the Colorado Energy Office*

        *\*\*Counsel of Record on behalf of Defendants Jill Hunsaker Ryan, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, and Michael Ogletree, in his Official Capacity as the Director of the Colorado Air Pollution Control Division*

## CERTIFICATE OF SERVICE

  I hereby certify that on November 25, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the Parties of record for this matter.

              */s/ Barbara Dory*
              Barbara Dory