IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-01093-RMR-KAS

COLORADO APARTMENT ASSOCIATION et. al.

Plaintiffs,

v.

JILL HUNSAKER RYAN, et. al

Defendants.

---

**DENVER'S REPLY IN SUPPORT OF MOTION TO DISMISS AND IN RESPONSE TO AMICUS CURIAE OF AIR-CONDITIONING, HEATING AND REFRIGERATION INSTITTUE**

---

The City and County of Denver; Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency (collectively "Denver"), through undersigned counsel, hereby reply in support of the Motion to Dismiss and in response to the Amicus Curae of the Air-Conditioning, Heating and Refrigeration Institute as follows:

I. **INTRODUCTION**

It is axiomatic that an "as applied" challenge to a municipal program alleging federal preemption must apply the entirety of the program as it is written and designed. Plaintiffs here can support their as applied challenge only if they apply a portion of Energize Denver ("Energize Denver" or "Program") and ignore provisions that do not support their theory of recovery. Even though Energize Denver contains provisions that would either eliminate or at the very least

significantly delay their alleged injuries, Plaintiffs either do not mention or do not factor in these provisions in their Amended Complaint or their supporting Declarations.

Plaintiffs can only manufacture standing or ripeness by ignoring those provisions of Energize Denver which already redress their alleged injuries. The Energize Denver Program provides for Timeline Adjustments, Standard Adjustments, and Custom Target Adjustments, which either individually or combined would eliminate or substantially delay the supposed negative consequences Plaintiffs are allegedly facing. When, as here, Plaintiffs only apply a portion of a program and ignore remaining provisions, Plaintiffs cannot trace their injury to the effective application of the Program and thus do not have standing.

Furthermore, Plaintiffs seek an order of this Court extending the scope of EPCA preemption far beyond that supported by any legal precedent. Energize Denver does not proscribe any energy source nor does it dictate any type of Covered Product a building owner may use. Even so, Plaintiffs argue that when they apply the Energize Denver provisions that are detrimental to them and completely ignore other beneficial provisions, some building owners would face penalties or be forced to install Covered Products that use electricity rather than the building owner's preferred energy source. In this limited situation, Plaintiffs claim that EPCA preempts Energize Denver. However, there is no sound legal argument supporting a finding of EPCA preemption under these circumstances.

II.     **EPCA DOES NOT PREEMPT ENERGIZE DENVER**

Energize Denver consists of the Ordinance found in Chapter10, Article XIV of the Denver Revised Municipal Code ("D.R.M.C.") and implementing regulations. [See ECF 71, p.

4]. The regulations implementing Energize Denver are specifically authorized by D.R.M.C. § 10-406.

Plaintiffs read the EPCA preemption provision found at 42 U.S.C. § 6297(c) so broadly as to encompass any situation in which they would be required by government regulation to replace a Covered Product utilizing one energy source with a Covered Product utilizing another energy source. This interpretation is wholly without legal support.

Energize Denver is an overall building energy performance standard and does not proscribe any particular type of energy use nor does it directly regulate the type of energy used by any particular Covered Product. Nonetheless, Plaintiffs allege that Energize Denver is expressly preempted by EPCA. This, Plaintiffs allege, is because they will not be able to meet their 2030 energy targets without installing Covered Products that are powered by an energy source other than that preferred by the building owner. No court has ever interpreted EPCA in such a way.

By its very terms EPCA only preempts a local regulation that "concerns the energy efficiency [or] energy use . . . of [a] covered product . . . *Id*. Energy use is defined as "the quantity of energy directly consumed by a consumer product at point of use." 42 U.S.C. § 6297(c). Energy efficiency is "the ratio of the useful output of services from a consumer product to the energy use of such product." 42 U.S.C. § 6291(5). The Energize Denver program regulates none of these things.

A different reading of EPCA preemption than that espoused by Plaintiffs is supported by the legislative history surrounding the legislation. EPCA was enacted to combat the then-existing "patchwork" of state standards for appliances, meaning that appliance manufacturers were

3

subject to multiple manufacturing standards. *See Air Conditioning and Refrigeration Inst. v. Energy Resources Cons. and Dev.*, 410 F.3d 492, 499 (9th Cir. 2005); S. Rep. No. 100-6, at 4 (1987). Thus, while there is argument that EPCA was designed to create uniform standards concerning how much energy is utilized by appliances so that manufacturers are only subject to one standard, there is no argument that it was designed to limit the ability of state and local governments to regulate overall building energy usage as does Energize Denver even when a portion of the building energy usage is due to Covered Products. *See* S. Rep. No. 100-6, at 3-4 (1987).

This interpretation of EPCA has been supported by two recent district court decisions. *See Assoc. of Contracting Plumbers v. City of New York*, 2025 WL 843619 (S.D.N.Y., March 18, 2025); *Mulhern Gas Co. v. Mosley*, 2025 WL 2062194 (N.D.N.Y., July 23, 2025) (both finding that laws regulating energy usage by building owners by totally eliminating natural gas as an option do not risk creating a patchwork of conflicting standards on manufacturers and thus are not preempted by EPCA).

Indeed, only when a building code completely and directly proscribed an energy source has any court found that EPCA preempted the municipal program. In *California Restaurant Assoc. v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), the municipality's building code prohibited the installation of natural gas connections in new construction and it was this absolute prohibition that the Ninth Court found to violate EPCA preemption. "[W]e conclude EPCA preempts building codes . . . that ban natural gas piping within new buildings. Our holding here is limited. We conclude only that EPCA applies to building codes and that Berkeley's Ordinance falls within the Act's preemptive scope." *Id.* at 1101. Plaintiffs can point to no case law which

4

supports a finding of preemption when there is no express proscription of an energy source or when Plaintiffs can only support their preemption claims by partially applying the program they are challenging. Thus, Plaintiffs have failed to demonstrate that EPCA preempts Energize Denver as applied to them.

### III. PLAINTIFFS HAVE NOT ESTABLISHED STANDING OR RIPENESS

Because the Energize Denver Program does not directly regulate Covered Products nor does it proscribe any source of energy, to support their claims Plaintiffs are forced to argue that the Program, as applied, effectively does these things. They can make this argument, however, only if they apply a portion of the Program and ignore other portions that already redress their claims of injury. Under these circumstances, Plaintiffs improperly manufacturer their own injuries and their own standing. *See Clapper v. Amnesty International*, 568 U.S. 398, 416 (2013).

To be clear, contrary to arguments presented in Plaintiffs' Response, Denver is not arguing administrative exhaustion. Rather, Denver is asserting that in an "effective application" claim cannot stem from applying only those portions which demonstrate potentially dire consequences and overlooking the provisions of the Program that already redress alleged injuries. In other words, an effective application argument cannot be supported by picking and choosing among some provisions and completely ignoring others.

Plaintiffs' allegations of injury contained in the First Amended Complaint do not factor in the 2025 changes to the Energize Denver Program which were included in the Program to address the very concerns raised by Plaintiffs. These changes provide numerous Adjustments to the Program designed to eliminate or substantially delay the injuries claimed by Plaintiffs. The new 2025 changes include Timeline Adjustments to extend the time in which building owners

5

must comply with the Program if they have concerns regarding the end of system life of their products, energy capacity constraints and the timing of major renovations. [*See* ECF 72, p. 5]. All of the injuries alleged by the Declarants concern the replacement of major equipment prior to end of system life, energy capacity constraints or the timing of major renovations making this Timeline Adjustment a redress for their alleged injuries. [ECF ## 68-1 ¶¶ 21, 23, 25; 68-2 ¶¶ 21, 26; 68-3, ¶¶ 20; 68-4 ¶¶ 19, 23, 27, 29; 68-5 ¶¶ 21, 23, 26; 68-6 ¶¶ 20, 22; 68-7 ¶¶ 21-22; 68-8 ¶¶ 19, 21; 68-9 ¶¶ 21, 23, 68-10 ¶¶ 20, 22, 24]. Energize Denver also allows building owners who cannot find viable options to meet their Performance Targets to obtain a Customized Target, which provides a building owner with an entirely new energy target, and also allows a building owner to increase their 2030 Final Performance Target by other means. [ECF 71, pp. 6-7].

It is well-settled that a party invoking federal court jurisdiction has the burden to establish standing. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014). For this case, Plaintiffs must provide sufficient factual detail in their Amended Complaint that their alleged injuries are effectively caused by and traceable to Energize Denver. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (Plaintiffs must support standing "with the manner and degree of evidence required at the successive stages of the litigation"). Plaintiffs have not provided sufficient factual detail tracing their alleged injuries to Energize Denver seeing as the Program already redresses their alleged injuries.

Traceability "examines the causal connection between the assertedly unlawful conduct and the alleged injury." *Allen v. Wright*, 468 U.S. 737, 753 n. 19 (1984). Traceability requires "proof of a substantial likelihood that the defendant's conduct caused plaintiff's injury in fact." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1156 (10th Cir. 2005) (quotation omitted). Here,

6

unless Plaintiffs apply the entirety of Energize Denver, rather than only a portion of the Program, they cannot plausibly assert that Energize Denver is the cause of their alleged injuries.

Plaintiffs argue in their Response that the Adjustments related to end of system life would only extend the timeline by which they must comply with Energize Denver and thus do not provide them with redress and that the end of system life remedy only applies to older products. This argument has several flaws. First, it ignores that a Timeline Adjustment is also available for other reasons including major renovation and similar reasons. [Doc. 71-2, Rule 4.7.A, p. 16]. Additionally, there are Custom Adjustments, which would completely change the building's energy goals, and other Adjustments afforded by the Program which also redress their injuries. [Doc. 71, pp. 6-7]. Second, it ignores Plaintiffs' burden of proof to show that their alleged injuries are imminent and concrete. *Spokeo, Inc. v. Robbins*, 578 U.S. 330, 340 (2016). An alleged injury that can be delayed by decades, or even eliminated, by application of the Program being challenged is neither. Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*, 568 U.S. at 415 (citation omitted). Nor are such uncertain, distant injuries ripe for determination. *Salt Lake Trib. Publ'g Co., v. Mgmt. Plan., Inc.* 454 F.3d 1128, 1140 (10th Cir. 2006). It remains to be seen what might hypothetically happen to Plaintiffs' buildings, Energize Denver or technological advancements in the next few years which would impact the application of Energize Denver to the subject buildings. Thus, Plaintiffs' fears may never actually be realized.

Furthermore, Plaintiffs argue that preemption allegations alone are sufficient to establish ripeness and standing. Plaintiffs confuse a cause of action with standing – they are not the same.

7

*See TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021) (finding that whether a plaintiff has a cause of action for a violation of law is separate inquiry than whether plaintiff has suffered a concrete harm because of the alleged violation of law so as to have standing to sue). So, to the extent that Plaintiffs argue that EPCA preemption alone gives them standing to sue, they are mistaken. Rather, as stated, Plaintiffs must prove both an imminent injury and an injury that is traceable to Energize Denver. *Spokeo,* 578 U.S. at 338; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

The documents Plaintiffs attach to their Response do not demonstrate an imminent threat of danger of prosecution by Denver. As stated in Denver's Motion to Dismiss, the Energize Denver provisions which act to eliminate the harms complained of by Plaintiffs were enacted in 2025 in response to building owner concerns. Any document generated by CASR prior to the enactment of these 2025 Adjustments obviously did not take the Adjustments into account. This includes Plaintiffs' Exhibits 1, 2, 3, 4 and 5 which all date from 2023 and each of which is premised on building owners taking "no action to improve energy performance of your building between the 2019 baseline and 2030." Furthermore, simply because CASR created a template letter in 2023 concerning a potential future violation of Energize Denver in 2030, it does not logically follow that Plaintiffs are currently under the imminent threat of enforcement or the imposition of penalties. [ECF 82-1, Ex. 2, 3, 4]. In addition, the letters and templates themselves confirm that Denver's priority is to work with building owners to meet their energy goals as they contain the following language: "We hope to assess no penalties in this program and are committed to working with building owners to find the combination of compliance options that work for each building" [*Id*.]. As to Plaintiffs' calculation of potential damages, these again

8

appear to be calculated without application of any of the 2025 Adjustments to the Program and from a worst case scenario perspective. [ECF, 82-1, Ex. 5].

Likewise, Plaintiffs' argument regarding injury related to the expense of energy audits and benchmarking is unavailing as they are unrelated to their claims of EPCA preemption. Plaintiffs' claims stem from the supposed need to replace perfectly good Covered Products with Covered Products that are powered by a different source of energy. Plaintiffs have not, and cannot, establish that EPCA preempts benchmarking such as is required by Energize Denver. *See* D.R.M.C. § 10-403. Thus, as this supposed "injury" is unrelated to their claims of preemption, it cannot form the basis of their standing argument. Similarly, Plaintiffs' assertions that the costs of energy audits are injuries which establish standing are unavailing. Energy audits are only required by Energize Denver when a building owner is seeking a Timeline or Customized Target Adjustment. As Plaintiffs have not sought any of these Adjustments, they cannot connect the supposed expense of conducting an energy audit to Energize Denver.

If Plaintiffs choose not to follow the Program as designed, including choosing not to take advantage of any of the provided Adjustments, they cannot point to the Program as the cause of their alleged injuries rather than their own failures to follow the Program and thus cannot carry their burden of showing imminent injury so as to have standing. The Plaintiffs cannot prove that their claims of harm are either imminent or traceable to Energize Denver in that the harm can be entirely avoided, or at least significantly delayed so as to not be imminent, by compliance with the Energize Denver Program. Furthermore, seeing as Plaintiffs have not yet determined how their buildings will be impacted by Energize Denver, their claims are not yet ripe for determination.

### IV. PLAINTIFFS' CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS

As stated in Denver's Motion to Dismiss, another division of this court has recently found that preemption challenges such as those brought by Plaintiffs here are subject to a two-year statute of limitations. [ECF 71, pp. 10-11]. Plaintiffs attempt to distinguish this holding by first citing to the *Corner Post* case which concerns whether a statute of limitations regarding the Administrative Procedures Act was triggered when there had been no final agency. *Corner Post Inc. v. Board of Governors*, 603 U.S. 799 (2024). Curiously, this argument echoes and supports Denver's arguments regarding ripeness and standing, *supra*. Denver agrees that it is yet to be determined whether Energize Denver causes the injuries which Plaintiffs assert. However, Plaintiffs cannot have it both ways. Either the harms are concrete and existing or they are yet to be determined. If they are concrete and existing so as to support standing, then they are barred by the two-year statute of limitations. Second, Plaintiffs argue that they had no way of knowing that EPCA effectively preempted Energize Denver until they conducted energy audits. Plaintiffs do not provide the dates they conducted the energy audits so their assertions along these lines do not establish that they filed their complaint within the applicable two-year statute of limitations.[1]

---

[1] In their footnote 3, Plaintiffs adopt all arguments made in response to Intervenor-Defendants' motion to dismiss, thereby impermissibly extending their response to Denver's motion by 15 pages (to a total of 30 pages) which is twice the permissible length. To the extent the Court allows this adoption, Denver adopts the intervenor-defendants' reply in support of their motion to dismiss in its entirety.

## V.  CONCLUSION

Wherefore, for all the foregoing reasons and for the reasons contained in Denver's Motion to Dismiss, the First Amended Complaint should be dismissed in its entirety with prejudice.

Respectfully submitted this 26th day of November, 2025.

          By: *s/ Michele A. Horn*
          Michele A. Horn
          Assistant City Attorney
          City and County of Denver
          201 West Colfax Avenue, Dept. 1207
          Denver, CO 80202-5332
          (720) 913-3275
          michele.horn@denvergov.org
          *Attorney for Defendants the City and County of Denver, Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency*

## CERTIFICATE OF SERVICE

      I hereby certify that on November 26, 2025, I caused a true and correct copy of the foregoing **DENVER'S REPLY IN SUPPORT OF MOTION TO DISMISS AND IN RESPONSE TO AMICUS CURIAE OF AIR-CONDITIONING, HEATING AND REFRIGERATION INSTITTUE** to be electronically filed with the Clerk of Court and served on the following parties using the CM/ECF system:

| | |
|---|---|
| Paul M. Seby<br>Matthew K. Tieslau<br>GREENBERG TRAURIG, LLP<br>1144 15th Street, Suite 3300<br>Denver, CO 80202<br>sebyp@gtlaw.com<br>tieslaum@gtlaw.com | David Banas<br>Jackie Calicchio<br>David Beckstrom<br>W. Cory Haller<br>Assistant Attorneys General<br>Natural Resources and Environment Section<br>1300 Broadway, 7th Floor<br>Denver, CO 80203<br>720.508.6000<br>David.banas@coag.gov<br>Jackie.calicchio@coag.gov<br>David.beckstrom@coag.gov<br>Cory.haller@coag.gov |
| Matthew Gerhart<br>Senior Attorney<br>Sierra Club<br>1536 Wynkoop St., Suite 200<br>Denver, CO 80202<br>(303) 454-3346<br>matt.gerhart@sierraclub.org | Jim Dennison<br>Staff Attorney<br>Sierra Club<br>1650 38th St # 103W<br>Boulder, CO 80301<br>(435) 232-5784<br>jim.dennison@sierraclub.org |
| Ellen Howard Kutzer<br>General Counsel<br>Colorado Solar and Storage Association<br>1536 Wynkoop St., Suite 104<br>Denver, CO 80202<br>(303) 333-7342<br>ekutzer@cossa.co | |

                                              *s/ Shannon Egan*
                                              Shannon Egan, Paralegal
                                              City and County of Denver
                                              201 West Colfax Avenue, Dept. 1207
                                              Denver, Colorado 80202-5332