**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER,

    *Plaintiffs,*

  v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency,

    *Defendants*; AND

COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL AND SIERRA CLUB,

    *Intervenor-Defendants*.

_____

**INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**

_____

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Oklahoma*, 382 F.3d 1206 (10th Cir. 2004) .................................................. 2

*Ass'n of Contr. Plumbers v. City of New York*, No. 23-cv-11292, 2025 U.S. Dist. LEXIS 49465 (S.D.N.Y. Mar. 18, 2025) ....................................................................... 6, 7, 9, 10

*California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). 8, 9, 11

*Corner Post, Inc. v. Board of Governors of the Federal Reserve System*, 603 U.S. 799 (2024) ........................................................................................................................ 3

*Day v. Skywest Airlines*, 45 F.4th 1181 (10th Cir. 2022) ................................................ 11

*Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963 (10th Cir. 1994) ............................................................................................................................... 2, 3

*Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238 (Colo. 2009) .............................................. 4

*Koehler v. Colo. Dep't of Health Care Pol'y & Fin.*, 252 P.3d 1174 (Colo. App. 2010) .... 4

*Mulhern Gas Co. v. Mosley*, No. 1:23-cv-1267, 2025 U.S. Dist. LEXIS 141175 (N.D.N.Y. July 23, 2025) ....................................................................................................... 6, 12

*Restaurant Law Center v. City and County of Denver*, No. 24-cv-01862, 2025 U.S. Dist. LEXIS 181583 (D. Colo. Sept. 16, 2025) ................................................................. 1, 3

*Sackett v. EPA*, 598 U.S. 651 (2023) ............................................................................... 9

*United States v. Supreme Court of N.M.*, 839 F.3d 888 (10th Cir. 2016) ........................ 3

**Statutes**

42 U.S.C. § 6201(4) .......................................................................................................... 6
42 U.S.C. § 6201(5) .......................................................................................................... 6
42 U.S.C. § 6295(a) .......................................................................................................... 6
42 U.S.C. § 6295(a)(1) ...................................................................................................... 8
42 U.S.C. § 6296 ............................................................................................................... 6
42 U.S.C. § 6297(d)(3) ................................................................................................ 6, 11
42 U.S.C. § 6297(d)(5) ...................................................................................................... 6
42 U.S.C. § 6302 ............................................................................................................... 6
42 U.S.C. § 6302(a)(5) ...................................................................................................... 6
C.R.S. § 24-4-106(4) ......................................................................................................... 4
C.R.S. § 42-4-310 ............................................................................................................. 9

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 1

    I.    PLAINTIFFS' CLAIMS REGARDING NON-INDUSTRIAL APPLIANCES ARE TIME-BARRED. ................................................................................................. 1

        A.    Plaintiffs' Claims Accrued When the Standards Were Enacted. ........................ 1

        B.    *RLC v. Denver* Supports Applying a 35-Day Limitations Period to Regulation 28. ................................................................................................. 3

    II.    EPCA DOES NOT PREEMPT THE BUILDING PERFORMANCE STANDARDS. 4

        A.    Plaintiffs Fail to State a Preemption Claim Under *Plumbers* and *Mulhern*. ....... 5

        B.    Plaintiffs Fail to State a Preemption Claim Under *Berkeley*. ............................. 8

        C.    Plaintiffs' Interpretation Lacks a Limiting Principle, and Would Upend Fundamental State and Local Authority. ............................................................ 9

        D.    EPCA's Statutory Exceptions to Preemption Do Not Support Plaintiffs' Interpretation. .................................................................................................... 10

        E.    Plaintiffs' Reliance on Dicta from *Mulhern* is Misplaced. ................................ 12

CONCLUSION ................................................................................................................... 13

## INTRODUCTION

Plaintiffs' preemption claims rely on a novel interpretation of EPCA that is at odds with the statute's text, structure, and purpose. They contend that Energize Denver and Regulation 28 (collectively, "the Building Performance Standards" or "the Standards") are preempted simply because Plaintiffs' members must replace old Covered Products with new ones in order to comply, even though the new products need not exceed EPCA's applicable energy conservation standards. Even accepting Plaintiffs' factual allegations that the Standards require equipment replacement, EPCA does not preempt such requirements as a matter of law. Moreover, many of Plaintiffs' claims are time-barred. This Court should dismiss the entire Complaint with prejudice.

## ARGUMENT

### I. PLAINTIFFS' CLAIMS REGARDING NON-INDUSTRIAL APPLIANCES ARE TIME-BARRED.

Plaintiffs agree that *Restaurant Law Center v. City and County of Denver*, No. 24-cv-01862, 2025 U.S. Dist. LEXIS 181583 (D. Colo. Sept. 16, 2025), provides the correct framework for evaluating the timeliness of their EPCA preemption claims. Pls.' Opp'n to Intervenor-Defs.' Mot. to Dismiss, ECF No. 83 at 5, 7-8. But they misconstrue when their claims challenging Energize Denver accrued, and they apply the wrong state statute of limitations to Regulation 28. Under the correct claim accrual rules and state limitations periods, Plaintiffs' claims are time-barred as to non-industrial appliances.

#### A. Plaintiffs' Claims Accrued When the Standards Were Enacted.

Plaintiffs agree that under *RLC v. Denver*, the two-year state statute of limitations in C.R.S. § 13-80-102(1)(g), (h) applies to Plaintiffs' non-industrial claims against

Energize Denver. ECF No. 83 at 9. Plaintiffs admit that the Energize Denver standards they challenge were first enacted in January 2022, more than two years before Plaintiffs filed their complaint in April 2024. ECF No. 83 at 2-3, 6, 9, 12. However, Plaintiffs argue that their claims did not accrue, and the limitations period did not begin to run, until after Energize Denver was enacted, asserting that precisely when their claims accrued is a question of fact that cannot be resolved on a motion to dismiss. ECF No. 83 at 12-13.

But "[t]he statute of limitations begins to run when the plaintiff knows *or has reason to know* of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (emphasis added). This is an "objective" standard that turns on when "facts giving rise to a claim were available generally"—not when a particular Plaintiff actually discovered those facts. *Alexander v. Oklahoma*, 382 F.3d 1206, 1219 n.6 (10th Cir. 2004). "A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *Indus. Constructors Corp.*, 15 F.3d at 969.

Here, Plaintiffs assert that their injury is the need to comply with Energize Denver's requirements or face penalties. First Am. Compl., ECF No. 68 ¶¶ 36, 155-161. Plaintiffs' members should have known they were subject to these requirements as soon as they were enacted. The Complaint alleges that the facts constituting the EPCA violation are apparent from the face of Energize Denver. *See* ECF No. 68 ¶ 139. Thus, the Complaint belies Plaintiffs' argument that their claims accrued only after their members completed energy audits to determine their compliance options. ECF No. 83 at 11-12. While the energy audits may shed additional light on the extent of Plaintiffs'

2

injuries, they were not needed to discover the existence of the injury, according to the Plaintiffs' theory of their case. *See Indus. Constructors Corp.*, 15 F.3d at 969.

   *Corner Post, Inc. v. Board of Governors of the Federal Reserve System* does not support the Plaintiffs' position. 603 U.S. 799 (2024). That case held that the statute of limitations begins to run for facial challenges to regulations when all elements of the plaintiff's claim exist, including an injury arising from regulation. *Id.* at 804. But *Corner Post* does not address when the injury from a regulation first arises. That question is answered by Tenth Circuit precedent holding that an injury occurs when there is a credible threat of enforcement, which can be established by a regulation that facially proscribes a plaintiff's desired conduct and the government's failure to disavow any intent to enforce it. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 901 (10th Cir. 2016). Consistent with this precedent, Plaintiffs themselves allege that the injuries giving rise to their claims are apparent from the face of Energize Denver. *See* ECF No. 68 ¶ 139. Therefore, Plaintiffs' injuries occurred and their claims accrued as soon as Energize Denver's performance requirements were enacted in January 2022, making their April 2024 complaint untimely under the applicable two-year statute of limitations.

  **B.**  ***RLC v. Denver* Supports Applying a 35-Day Limitations Period to Regulation 28.**

  *RLC v. Denver* did not address which limitations period applies to an action challenging a rule enacted by a Colorado state agency, but held that in an EPCA preemption challenge for non-industrial appliances, state law is the "lender of first resort." 2025 U.S. Dist. LEXIS 181583 at *29-30. Plaintiffs do not dispute that as a matter of state law, a more specific law controls over a more general one, and a more

3

recent law controls over an older one. *Jenkins v. Pan. Canal Ry. Co.*, 208 P.3d 238, 241–42 (Colo. 2009). Nor do Plaintiffs dispute that the state APA's 35-day limitations period in C.R.S. § 24-4-106(4) for challenging state agency actions is more recent and more specific than the two-year limitations period in C.R.S. § 13-80-102(1)(g), (h). *See* Intervenor-Defs.' Mot. to Dismiss, ECF No. 75 at 5. Thus, under *RLC v. Denver's* instruction to look first to state law for a limitations period, the 35-day limitations period in the Colorado APA applies to Plaintiffs' claims challenging Regulation 28.

Plaintiffs respond that they could not have brought a preemption claim under the Colorado APA. ECF No. 83 at 7-8. Plaintiffs do not cite any law in support of this proposition. To the contrary, Colorado courts have resolved questions of federal preemption in cases brought under the state APA. *E.g., Koehler v. Colo. Dep't of Health Care Pol'y & Fin.*, 252 P.3d 1174, 1182 (Colo. App. 2010). Also, contrary to Plaintiffs' assertions, a plaintiff need not have been a party to an agency rulemaking to challenge the final rule under the state APA. *See* C.R.S. § 24-4-106(4) ("any person adversely affected or aggrieved by any agency action" may seek review of an agency rulemaking).

Because it is uncontested that Plaintiffs' original complaint was filed more than 35 days after Regulation 28 was issued in August 2023, the Court should dismiss the non-industrial claims against Regulation 28 as untimely.

## II. EPCA DOES NOT PREEMPT THE BUILDING PERFORMANCE STANDARDS.

This case does not turn on factual disputes that are unfit for resolution on a motion to dismiss, as Plaintiffs argue. *See* Pls.' Opp'n to State Defs.' Mot. to Dismiss, ECF No. 81 at 4-6; Pls.' Opp'n to Denver's Mot. to Dismiss, ECF No. 82 at 14-16. To

4

the extent there are factual disputes, they concern whether the Standards' various flexibilities provide Plaintiffs' members with options to comply short of replacing existing Covered Products.[1] But even accepting as true Plaintiffs' allegations that the Standards will have the practical effect of requiring some of their members to replace old Covered Products with new ones, such requirements do not give rise to an EPCA preemption claim as a matter of law. Plaintiffs do not allege their members will have to install replacement products that exceed EPCA standards or that use a particular fuel type, but instead rely on the novel legal theory that the mere need to replace old Covered Products triggers EPCA preemption.[2] ECF No. 83 at 14-15. No court has ever interpreted EPCA in this way. As explained below, Plaintiffs have failed to state a cognizable EPCA preemption claim, and the Court should dismiss the Complaint.

### A. Plaintiffs Fail to State a Preemption Claim Under *Plumbers* and *Mulhern*.

Plaintiffs' interpretation of EPCA is incompatible with the holdings of *Plumbers* and *Mulhern*. EPCA preempts state and local regulations concerning Covered Products' "energy use." *Plumbers* and *Mulhern* both held that "energy use" refers to a fixed value representing the amount of energy a Covered Product is designed and manufactured to

---

[1] The State Defendants and Denver persuasively argue that these are not factual disputes, but legal disputes about how to interpret the Standards. But even accepting Plaintiffs' allegations that the Standards' flexibilities and multiple compliance pathways do not avoid the need to replace Covered Products, the flexibilities show that the Standards concern building-wide emissions and energy use that can be reduced in myriad ways, many of which have nothing to do with Covered Products. This shows that any effect the Standards have on covered products' energy use is incidental, and does not implicate EPCA preemption. *See* ECF No. 75 at 13-15; ECF No. 72 at 7-8, 13.

[2] The Standards would not be preempted even if they did require Plaintiffs to replace gas equipment with electric equipment. *See* ECF No. 75 at 11-12. But Plaintiffs have made clear that they are not alleging even this much. ECF No. 83 at 14-15.

5

use under typical conditions, as determined through EPCA's testing procedures. *Ass'n of Contr. Plumbers v. City of New York*, No. 23-cv-11292, 2025 U.S. Dist. LEXIS 49465, at *12 (S.D.N.Y. Mar. 18, 2025); *Mulhern Gas Co. v. Mosley*, No. 1:23-cv-1267, 2025 U.S. Dist. LEXIS 141175, at *41-43 (N.D.N.Y. July 23, 2025); ECF No. 75 at 6-7. They expressly rejected the holding of *California Restaurant Association v. City of Berkeley,* 89 F.4th 1094 (9th Cir. 2024), that "energy use" refers to energy consumption by individual products once they are purchased and installed by end consumers, since this is incompatible with EPCA's definition of "energy use" by reference to standardized test procedures and it would render many of EPCA's provisions unworkable.

      EPCA's statutory context and structure support *Plumbers*' and *Mulhern*'s interpretation of "energy use" as a design feature of new covered products. EPCA aims to conserve energy by providing for federal conservation standards that improve the efficiency of new Covered Products. 42 U.S.C. §§ 6201(4)-(5), 6295(a). It effectuates those federal standards by prohibiting manufacturers from distributing in commerce "any new covered product" that does not meet the applicable standard. *Id.* § 6302(a)(5). EPCA is replete with provisions concerning the design, production, labeling, distribution, and sale of Covered Products—actions by manufacturers relating to new equipment. *See, e.g., id.* §§ 6302, 6296, 6297(d)(3) & (d)(5); ECF No. 75 at 8. Viewed in this context, the role of EPCA's preemption provision is to ensure uniform application of the federal new product standards by prohibiting state and local regulations that likewise

6

concern the "energy use" of new Covered Products as manufactured.[3]

Plaintiffs do not dispute *Plumbers*' and *Mulhern*'s interpretation of EPCA. *See* ECF No. 75 at 6-7; ECF No. 72 at 11; ECF No. 71 at 9-10. Instead, Plaintiffs argue that those cases support their claim that EPCA preempts regulations that have the practical effect of requiring existing Covered Products to be replaced.

But *Plumbers* and *Mulhern* held that EPCA only preempts regulations that concern the way *new* products are designed and manufactured. It does not "reach the actual use of covered products, nor does it grant consumers an absolute right to use such products." *Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *12. Plaintiffs' claim depends on such an absolute right: they assert that the Standards "restrict[] which Covered Products *may be used in Covered Buildings*" and that the Standards "concern the energy use and efficiency of the installed Covered Products *in those buildings*." ECF No. 81 at 15-16 (emphasis added). Moreover, like the regulations upheld in *Plumbers* and *Mulhern*, the Standards do not "draw any distinction" between the new products that building owners may install "based on their energy efficiency or energy use as manufactured." *Plumbers,* 2025 U.S. Dist. LEXIS 49465 at *18. Plaintiffs do not allege that the Standards limit their choice of replacement equipment based on its energy use. And the alleged need to replace old equipment has no effect on the products that manufacturers may design, produce, and sell. Thus, Plaintiffs have failed to state an EPCA preemption claim under *Plumbers* and *Mulhern*.

---

[3] AHRI emphasizes that the purpose of preemption is "to protect manufacturers" from a patchwork of standards disrupting their design, production, and marketing, not to protect consumers from eventually needing to replace old equipment. ECF No. 84-1 at 5.

7

Finally, Plaintiffs attempt to conflate the "energy conservation standards" that EPCA directs DOE to set for *new Covered Products* with the Building Performance Standards' provisions addressing energy conservation for *existing buildings as a whole*. ECF No. 81 at 14-16; ECF No. 82 at 4-5. There is simply no such thing as a "whole building energy conservation standard" under EPCA, which sets standards "applicable to covered products," not buildings. 42 U.S.C. § 6295(a)(1).

### B.  Plaintiffs Fail to State a Preemption Claim Under *Berkeley*.

Plaintiffs' reliance on *Berkeley* is similarly unavailing. *Berkeley* holds that a building code for new construction may be preempted if it effectively bans the installation and use of certain Covered Products. *Berkeley* is distinguishable because the Standards are not building codes for new construction, and they do not effectively ban the installation of any product.

It was "[o]f critical importance" to *Berkeley*'s "limited" holding that the regulation at issue was a "State or local building code *for new construction*." 89 F.4th at 1101 (emphasis added). Plaintiffs concede that the Standards are not building codes, *see* ECF No. 75 at 14-15, and they only challenge the Standards' application to existing buildings, not new ones. ECF No. 83 at 14. Thus, *Berkeley* does not apply here.

Moreover, while *Berkeley* read EPCA preemption as being "concerned with the end-user's ability to *use* installed covered products at their intended final destinations," nothing in the opinion recognizes any right to use existing covered products *indefinitely*. 89 F.4th at 1101-02. Instead, *Berkeley* held that a ban on the pipes needed to deliver energy to Covered Products is tantamount to "a direct ban on the products themselves,"

8

just as a ban on purchasing new equipment is tantamount to a ban on selling it. *Id.* at 1103, 1106-07. The Building Performance Standards are not tantamount to a ban on the purchase or sale of any product. ECF No. 75 at 15. Instead, they impose flexible building-wide standards that allegedly require equipment replacement, but do not restrict building owners' choice of replacement equipment.[4] Thus, the Plaintiffs have failed to state a preemption claim even under *Berkeley's* flawed interpretation of EPCA.

### C. Plaintiffs' Interpretation Lacks a Limiting Principle, and Would Upend Fundamental State and Local Authority.

In addition to finding no support in case law, Plaintiffs' interpretation of EPCA would also undermine myriad state and local powers that are "peculiarly within the province of state and local legislative authorities," and that Congress never indicated any intent to disrupt. *Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *19-20 (quotation omitted). But Congress must use "exceedingly clear language" to "significantly alter the balance between federal and state power," and it did not do so in EPCA. *Sackett v. EPA*, 598 U.S. 651, 679 (2023) (quotation omitted).

The crux of Plaintiffs' case is that EPCA preempts the Standards because they have the practical effect of requiring building owners to "remove and replace" some existing Covered Products, even though they do not expressly require such replacement. ECF No. 83 at 14. But if EPCA preempted any state or local regulation

---

[4] AHRI's comparison to the Clean Air Act's preemption provision illustrates the difference between bans on new equipment sales and permissible regulation of existing equipment. ECF No. 84-1 at 9-11. States cannot interfere with manufacturers' right to sell new vehicles that meet federal emission standards by preventing purchasers from buying them. But after a vehicle has been purchased, state requirements to pass emission tests as a condition of registration are commonplace. *E.g.*, C.R.S. § 42-4-310.

9

with such incidental effects on existing Covered Products, states and cities would be prevented from enacting countless "vital safety regulations" that "are integral to municipal construction and fire codes." *Plumbers*, 2025 U.S. Dist. LEXIS 49465 at *18-19 (quotation omitted). Plaintiffs' interpretation would preempt fire codes that keep equipment from reaching an unsafe condition, and it would exempt the oldest, most dangerous equipment from prohibitions on indoor use of kerosene space heaters, use of unvented fuel-fired furnaces, and use of combustion appliances next to gas station pumps or in surgical rooms, among others. *See id.*; ECF No. 75 at 11.

Unable to articulate a limiting principle to their interpretation, Plaintiffs simply declare that "[r]egulations unrelated to the energy use of Covered Products" would not be preempted. ECF No. 83 at 15. This circular logic says nothing about what makes a regulation related to energy use. And it would apparently sweep in myriad regulations that, like the Building Performance Standards, are focused on an objective other than Covered Products' energy efficiency (such as reducing building emissions), but that may incidentally affect it. If a court must decide whether a regulation is "unrelated to energy use" to know whether it is preempted, then the need to replace equipment cannot be what triggers preemption as Plaintiffs contend.

**D.    EPCA's Statutory Exceptions to Preemption Do Not Support Plaintiffs' Interpretation.**

Plaintiffs argue that because EPCA's provisions for waivers or exceptions to preemption do not apply to regulation of existing buildings and equipment, such regulations must be preempted. ECF No. 81 at 8-11. This ignores a simpler explanation: There was no need to provide exceptions for regulation of existing equipment because

10

EPCA does not preempt such regulation in the first place.

Plaintiffs argue that because EPCA contains exceptions to preemption for new building codes, its lack of exceptions for regulation of existing buildings and equipment indicates that such regulation is preempted. ECF No. 81 at 9. This turns the preemption analysis on its head. Plaintiffs ask the Court to presume that Congressional silence implies an intent to preempt state law, but it is the party claiming preemption who "bears the burden of showing with specificity that Congress intended to preempt state law." *Day v. Skywest Airlines*, 45 F.4th 1181, 1184 (10th Cir. 2022) (quotation omitted).

Moreover, Plaintiffs' argument is contrary to the *Berkeley* decision they repeatedly cite. *Berkeley* reasoned that the existence of an exception to preemption for certain new construction building codes indicates that at least some such codes fall within EPCA's preemptive scope, creating the need for the exception. 89 F.4th at 1101. There is no such exception for regulations that effectively require replacement of existing covered products in existing buildings. Under the reasoning in *Berkeley*, this suggests that EPCA does not preempt those regulations at all.

Plaintiffs' and AHRI's argument from EPCA's waiver provision fares no better. They contend that because EPCA prohibits DOE from issuing a waiver for state regulations that it determines will significantly burden various activities performed by manufacturers including "servicing of the covered product on a national basis," 42 U.S.C. § 6297(d)(3), the waiver provision indicates that "Congress contemplated the use of EPCA Covered Products during their full service life." ECF No. 81 at 7-8; *see also* ECF No. 84-1 at 7-8. *Mulhern* squarely rejected this argument because it is "simply

11

not a logical interpretation of the EPCA." 2025 U.S. Dist. LEXIS 141175 at *46-47.

"[T]here is simply no connection between what [DOE] is made to consider" in a waiver decision "and what actually renders a regulation preempted in the first place." *Id.* at 47-48. "If a provision is preempted, Congress can permit [DOE] to consider whatever factors it chooses when determining whether to grant a waiver." *Id.* at 48.

### E. Plaintiffs' Reliance on Dicta from *Mulhern* is Misplaced.

Plaintiffs and AHRI cite a single line of dicta from *Mulhern* for the proposition that a regulation setting "a maximum building-wide energy consumption limit" would be preempted under EPCA. ECF No. 81 at 12-13, 15; ECF No. 82 at 5; ECF No. 84-1 at 13. This sentence does not support Plaintiffs' case, and is dicta in any event.

*Mulhern* addressed a hypothetical "building code" that sets a maximum building-wide energy consumption "calculated by adding up all the appliances' off-the-rack, lab-tested 'estimated energy use' values." 2025 U.S. Dist. LEXIS 141175 at *44-45. The plaintiffs in *Mulhern* argued that if EPCA only preempts regulations that concern appliances' energy use as determined through EPCA's test procedures, then the hypothetical building code would not be preempted, rendering superfluous EPCA's exception to preemption for certain building codes for new construction. The *Mulhern* court responded that the hypothetical building code would be preempted, and therefore would not render the building code exception superfluous, "because it explicitly sets a maximum building-wide energy consumption limit" for the total energy use of the building's appliances, "and therefore would be an indirect regulation concerning the energy use of the covered products that could be used in that building." *Id.* at 45.

12

This dicta from *Mulhern* is inapplicable here, for three reasons. First, *Mulhern*'s hypothetical related to EPCA's exception for "building code[s] for new construction," which is not implicated in this case because the challenged Standards are not building codes and the Plaintiffs challenge their application to existing buildings, not new ones.

Second, *Mulhern's* hypothetical code limited the total "off-the-rack, lab-tested" energy consumption of the building's appliances. That is not what the Building Performance Standards at issue in this case do. Instead, the Standards account for the energy and emissions intensity of the entire building, including its weatherization and insulation, operations and maintenance practices, use of on-site renewable energy, and the impacts of other building systems. Thus, even if *Mulhern*'s hypothetical code would be preempted, it does not follow that the Standards are preempted.

Finally, even if the Court believes that *Mulhern*'s discussion of this hypothetical were somehow applicable to the Standards—which it is not—that passage is dicta and should not be followed by this Court.

## **CONCLUSION**

Plaintiffs do not allege that the Building Performance Standards impede appliance manufacturers from selling any type of EPCA-compliant new products, or building owners from purchasing them. Accordingly, the Standards do not concern the energy use of EPCA-covered products as manufactured, and they are not preempted as a matter of law. This Court should dismiss the entire First Amended Complaint with prejudice for failure to state a claim. At the very least, this Court should dismiss Plaintiffs' claims regarding non-industrial equipment as untimely.

Dated this 26th day of November, 2025.

/s/ Matthew Gerhart
Matthew Gerhart
Senior Attorney
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

Jim Dennison
Staff Attorney
Sierra Club
1650 38th St # 103W
Boulder, CO 80301
(435) 232-5784
jim.dennison@sierraclub.org

***ATTORNEYS FOR SIERRA CLUB AND NATURAL RESOURCES DEFENSE COUNCIL***

/s/ Ellen Howard Kutzer
Ellen Howard Kutzer
General Counsel
Colorado Solar and Storage Association
1536 Wynkoop St., Suite 104
Denver, CO 80202
(303) 333-7342
ekutzer@cossa.co

***ATTORNEY FOR COLORADO SOLAR AND STORAGE ASSOCIATION AND COALITION FOR COMMUNITY SOLAR ACCESS***

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of November, 2025, a true and correct copy of the foregoing **INTERVENOR-DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT** was served via the CM/ECF system upon all counsel of record in this matter.

/s/ *Maddie Lipscomb*
Maddie Lipscomb

15