**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER,

*Plaintiffs,*

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency,

*Defendants*; AND

COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL AND SIERRA CLUB,

*Intervenor-Defendants*.

---

**INTERVENOR-DEFENDANTS' OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

## TABLE OF CONTENTS

INTRODUCTION ........ 1

OBJECTIONS ........ 1

I. THE STANDARDS ARE NOT PREEMPTED UNDER THE RECOMMENDATION'S INTERPRETATION OF "ENERGY USE." ........ 1

II. EPCA'S BUILDING CODE EXEMPTION DOES NOT SUPPORT A FINDING THAT THE STANDARDS ARE PREEMPTED. ........ 4

III. PARTS OF THE AMENDED COMPLAINT MUST BE DISMISSED EVEN IF THE COURT ADOPTS THE RECOMMENDATION IN FULL. ........ 9

CONCLUSION ........ 10

## INTRODUCTION

The Magistrate Judge's Recommendation correctly finds that EPCA defines "energy use" to mean a standardized, fixed measure assigned to a covered product before it reaches consumers, and that Regulation 28 and Energize Denver (collectively, "the Building Performance Standards" or "the Standards") do not directly regulate or refer to such "energy use." ECF #106 at 26-28, 31. The Recommendation then takes a turn, concluding Plaintiffs have plausibly alleged that parts of the Standards bear an impermissible connection to covered products' energy use, and are therefore preempted, based on EPCA's building code exemption from preemption. *Id.* at 32-41.

Intervenor-Defendants respectfully raise three objections. First, the Recommendation misapplies its correct interpretation of "energy use." Second, its conclusion is not supported by the building code exemption. Third, even adopting all of the Recommendation's findings would require dismissal of Plaintiffs' claims challenging Regulation 28 and alleging that the Standards effectively ban gas appliances. Intervenor-Defendants respectfully urge the Court to modify the Recommendation's findings in response to these objections and dismiss the entire Amended Complaint.

## OBJECTIONS

### I. THE STANDARDS ARE NOT PREEMPTED UNDER THE RECOMMENDATION'S INTERPRETATION OF "ENERGY USE."

The Recommendation adopts the correct interpretation of "energy use" but misapplies it to the Standards, which do not directly or indirectly regulate covered products' energy use as defined in EPCA.

The Recommendation correctly rejects the Ninth Circuit's interpretation that

EPCA preempts regulations concerning end-users' ability to use installed covered products, and correctly finds that the preemption analysis is governed by EPCA's technical definition of covered products' "energy use" as a fixed and standardized value. ECF #106 at 26-28; *accord* ECF #75 at 6-9, 12-13. The Recommendation then finds that the Standards do not "refer to," "set … a ceiling on," "impose design standards concerning," "operate as proxies for," or "have a direct impact on" covered products' "energy use." ECF #106 at 26, 28, 31. Instead, they "impose building-wide energy and emission standards, leaving building owners with the choice of how to comply, without reference to or regard for the energy use of any particular appliance." *Id.* at 28. Based on these findings, the Recommendation should have concluded that the Standards are not preempted, for two reasons.

**First**, the Standards do not directly or indirectly concern covered products' "energy use." ECF #75 at 9-12. In concluding that they may, the Recommendation conflates EPCA's fixed and standardized "energy use" with covered products' day-to-day energy consumption in the hands of consumers, despite finding that EPCA preempts regulations concerning the former but not the latter.

Specifically, the Standards incorporate targets for covered buildings' energy use intensity ("EUI"), calculated as a building's total annual energy use divided by its total square footage. ECF #106 at 4-5. While EUI may be influenced by how much energy the covered products in a building *actually consume over a year*, "'[e]nergy use' as preempted in EPCA is ... unimpacted by the actual energy an appliance consumes in the hands of consumers." *Clean Energy Choice Coal. v. Vill. of Oak Park*, No. 25-cv-

04353, 2026 U.S. Dist. LEXIS 169462, at *23 (N.D. Ill. July 30, 2026). Thus, the Standards' "building-wide energy consumption caps" and regulation of "energy usage on a building-wide level," ECF #106 at 32, 39, do not concern EPCA's "energy use." The same federal conservation standards "will apply before and after the challenged laws are implemented," and the Standards "will not apply any significant pressures on manufacturers to produce appliances that exceed federal standards." *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, 180 F.4th 434, 444-45 (2d Cir. 2026) (*Plumbers II*); ECF #75 at 11-12. The EUI targets could affect covered products' "energy use" if they were so stringent that the only way to comply was to install new covered products whose "energy use" exceeds federal energy conservation standards, but the Amended Complaint does not allege this. ECF #106 at 8-9, 32.

**Second**, the only effects of the Standards that *are* alleged in the Amended Complaint do not relate to covered products' "energy use." The Amended Complaint alleges that the Standards (1) effectively require replacement of existing covered products with new ones, and (2) effectively prohibit the use of gas-fired covered products. ECF #106 at 7-9; ECF #93 at 5, 7. Neither of these alleged effects concerns covered products' "energy use" as the Recommendation interprets that term. First, a need to replace covered products does not implicate "energy use" unless the replacement products must exceed federal energy conservation standards, which Plaintiffs have not alleged. After all, EPCA does not "affirmatively protect consumers' ability to access covered products." ECF #106 at 31 (quoting *Plumbers II*, 180 F.4th at 443). And EPCA does not preempt essential regulations requiring replacement of

covered equipment, for example if it is obsolete, improperly maintained, or unsafe. ECF #93 at 10; ECF #75 at 11. Second, "EPCA does not preempt laws that effectively ban gas-powered appliances."[1] *Plumbers II*, 180 F.4th at 450 n.15; *accord* ECF #106 at 37.

Because the Standards do not directly or indirectly regulate the "energy use" of covered products and because neither of their alleged effects implicates that energy use, the Amended Complaint must be dismissed.

## II. EPCA'S BUILDING CODE EXEMPTION DOES NOT SUPPORT A FINDING THAT THE STANDARDS ARE PREEMPTED.

The Recommendation finds that Plaintiffs have plausibly stated a preemption claim because it interprets EPCA's "building code exemption" from preemption, 42 U.S.C. § 6297(f)(3), and recent *dicta* discussing the exemption as suggesting that EPCA must preempt any building-wide energy cap. ECF #106 at 32-40. This conclusion is at odds with the building code exemption and the cited *dicta*'s reasoning.[2]

The cited *dicta* uses the building code exemption in two ways: first, as an

---

[1] After recognizing this case's similarities to *Nat'l Ass'n of Home Builders of the U.S. v. District of Columbia*, the Recommendation attempts to distinguish that case on the grounds that the D.C. law pursued its net-zero-energy standard by "ban[ning] the use of gas appliances" in covered buildings. ECF #106 at 38. But the D.C. law also requires buildings to conserve a specified "amount of energy attributable to building operations." *District of Columbia,* No. 24-cv-02942, 2026 U.S. Dist. LEXIS 64829, at *7 (D.D.C. Mar. 26, 2026). The court expressly found that "EPCA does not preempt" this part of the regulatory scheme, which "provides for reduced energy consumption in certain buildings without setting any product-design standard." *Id.* at 26 n.24. Plaintiffs allege exactly the same thing here: that the Standards both effectively ban the use of gas appliances and enact building-wide energy targets. *District of Columbia* is indistinguishable.

[2] This Section advances arguments that Defendant-Intervenors previously raised in support of their Motion to Dismiss. ECF #93 at 10-13. It elaborates on those arguments by addressing cases cited in the Recommendation that were decided after briefing on the Motion was completed, and that therefore could not have been addressed previously. RMR Civ. Practice Standard 72.3(b).

indication of what kinds of building regulations Congress intended to preempt, and second, as a check for whether an interpretation of "concerning energy use" would render the building code exemption superfluous. Both uses of the exemption show that Congress did *not* intend to preempt all building-wide energy caps, but to (1) prevent building codes from setting building-wide caps so stringent that they indirectly require the use of covered products that exceed federal energy conservation standards, and (2) require codes that directly regulate appliance efficiency to comport with the federal standards by satisfying the exemption's seven criteria. The Building Performance Standards do not directly or indirectly require the use of covered products that exceed federal standards, and they do not directly regulate appliance efficiency. Thus, they are not preempted under the correct interpretation of the building code exemption.

**First:** The building code exemption is primarily intended to prevent codes from effectively requiring covered products that exceed federal standards. For the exemption to apply, a code must not "require that the covered product have an energy efficiency exceeding" the applicable federal standard, 42 U.S.C. § 6297(f)(3)(B). Legislative history confirms that the exemption is "designed to ensure the performance-based building codes cannot circumvent the federal standard for a given covered product by effectively requiring the installation of such product with an efficiency exceeding the applicable Federal standards." S. Rep. No. 100-6, at 11 (1987).

This primary function is recognized in the recent decisions discussing the exemption. The Ninth Circuit dissent specified that the "indirect regulations" that EPCA may preempt are those that "aim to require consumers to use products with higher

efficiency standards than those prescribed by DOE." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1125 (9th Cir. 2024) (Friedland, J., dissenting). The dissent then cited the building code exemption as evidence that "EPCA contemplates preempting building codes that set building-wide energy efficiency standards *that can only be met through the use of hyper-efficient appliances*"—that is, appliances that exceed federal standards. *Id.* (emphasis added). Similarly, the District of Maryland repeatedly emphasized that the text of § 6297(f)(3), its legislative history, and other provisions of § 6297(f) show that the kinds of "building regulations that Congress intended to preempt" are those "that mandate the installation of high-efficiency appliances"—that is, "products whose efficiencies exceed[] federal standards." *Md. Bldg. Indus Ass'n v. McIlwain*, 828 F. Supp. 3d 617, 637-39 (D. Md. 2026).[3] Similar discussion appears in decisions by the Second Circuit, the D.C. District, and the Northern District of Illinois. *Plumbers II*, 180 F.4th at 447 ("The criteria for triggering the exemption provide that the regulation must allow builders the freedom to choose a mix of products to meet a general energy conservation objective without requiring that builders use covered products which exceed federal standards.") (cleaned up); *District of Columbia*, 2026 U.S. Dist. LEXIS 64829, at *22 n.23 ("Congress added § 6297(f) to 'prevent[] State building codes from being used as a means of setting mandatory State

[3] The Recommendation quotes a footnote where the court declined to decide whether EPCA would preempt potential future revisions to the subject regulations adding EUI targets. ECF #106 at 36. This footnote is consistent with the rest of the opinion. The potential EUI targets that the court declined to reach were specifically targets "that may push building owners to install more efficient products," potentially requiring them to exceed federal standards. *Md. Bldg. Indus.*, 828 F. Supp. 3d at 639 n.14.

appliance standards in excess of the Federal standards.'") (quoting H.R. Rep. No. 100-11, at 26 (1987)); *Oak Park*, 2026 U.S. Dist. LEXIS 169462, at *24 ("The building code exemption illustrates that Congress intended to preempt regulations that mandate installation of appliances with energy efficiency exceeding predetermined federal standards. This is in line with [interpreting 'energy use' as] a predetermined value …").

**Second:** Some courts have also used the building code exemption to check that an interpretation of "concerning energy use" does not introduce superfluity. *See Plumbers II*, 180 F.4th at 447. The Court should not use the exemption in this way here, because the Standards are not "the kind of regulation it describes." *Id.* Specifically, they are not "building codes for new construction," ECF #75 at 14-15; ECF #93 at 8, 11, 13, so comparing them to the exemption's requirements "is like trying to fit a square peg into a round hole." *Md. Bldg. Indus.*, 828 F. Supp. 3d at 639.[4] "This is evidence that the [Standards] are not the type of building regulation that Congress understood would need an exception to preemption in the first place." *Id.*

But even if it applied here, the superfluity check does not suggest that all regulation of building-wide day-to-day energy consumption must be preempted. This is because a building code may concern covered products' lab-tested "energy use" by

---

[4] The Recommendation says this "weighs in Plaintiffs' favor" because Congress "only intended to exempt building-wide energy consumption caps in new constructions where builders had more flexibility." ECF #106 at 40. But there is no evidence that Congress chose to address new construction because it provides "more flexibility." Instead, the text and legislative history suggest it was because "building codes governing new construction typically regulate the energy efficiency of" covered products in ways that other regulations do not. S. Rep. No. 100-6, at 10. Because these codes regulate how much energy buildings are *designed to use* (not their actual day-to-day use), they directly implicate the fixed "energy use" of the covered products that builders select.

directly referencing that energy use, in which case the exemption would (non-superfluously) allow the code to escape preemption by meeting the requirements of § 6297(f)(3). It makes sense that Congress contemplated this use case, because when it enacted the exemption (as today) "State and local building codes governing new construction typically regulate[d] the energy efficiency of central heating and cooling equipment and water heaters," often through specific numeric standards. S. Rep. No. 100-6, at 10. The exemption created a pathway for codes to continue doing so, while ensuring they do not compete with uniform national appliance standards. *Id.* at 10-11.

This understanding is consistent with the Recommendation's cited *dicta*. *Mulhern Gas Co. v. Mosley* discussed a hypothetical building code with a building-wide energy cap "calculated by adding up all the appliances' off-the-rack, lab-tested 'estimated energy use' values." 798 F. Supp. 3d. 304, 326 (N.D.N.Y. 2025). By calculating the building-wide cap in this way, the code uses covered products "energy use," as that term is defined in EPCA, "as a mechanism for regulating." *Plumbers II*, 180 F.4th at 447 n.12. As the Second Circuit explained, this is what triggers preemption. *Id.* This is also what distinguishes the Standards from the *Mulhern* hypothetical, from building codes that "regulate the energy efficiency of" covered products, S. Rep. No. 100-6, at 10, and from a building code presenting options that directly "call for higher efficiency covered products," *Plumbers II*, 180 F.4th at 448 n.13 (quoting *Bldg. Indus. Ass'n of Wa. v. Wa. State Bldg. Code Council*, 683 F.3d 1144, 1151 (9th Cir. 2012). The distinction is not about how "appliance-focused" the regulations are, *see* ECF #106 at 41, but about whether or not they use EPCA-defined "energy use" "as a mechanism for regulating."

Thus, the "judicial consensus … as to building-wide energy caps" is not that *any* such cap triggers preemption as the Recommendation finds, ECF #106 at 41, but that a building-wide cap *may* trigger preemption if it either uses covered products' fixed "energy use" as a mechanism for regulating or effectively requires the installation of covered products exceeding federal energy conservation standards.[5] Because the challenged Standards do neither, they are not preempted.

To sum up: A building code for new construction that directly references or regulates covered appliances' "energy use" concerns that energy use, but may avoid preemption if it meets the requirements of § 6297(f)(3). A building regulation that indirectly requires covered products exceeding federal standards has an impermissible effect on their "energy use," and cannot avoid preemption because it does not satisfy § 6297(f)(3)(B). The challenged Standards neither directly regulate "energy use" nor indirectly require the use of products exceeding federal standards, so they do not concern covered products' energy use and are not preempted.

## III. PARTS OF THE AMENDED COMPLAINT MUST BE DISMISSED EVEN IF THE COURT ADOPTS THE RECOMMENDATION IN FULL.

Even if the Court were to adopt the full Recommendation, its findings require additional portions of the Amended Complaint to be dismissed.

First, even under the Recommendation's finding that a binding EUI target may be

[5] To be sure, these decisions at times use shorthand phrases and loose descriptions of building regulations, or conflate different kinds of building regulations that were not at issue. But this is exactly the kind of imprecision that is expected in *dicta*. The Court should adopt and apply the interpretation of § 6297(f)(3) that aligns with the correct interpretation of "energy use" and with the recent decisions' reasoning.

preempted, no part of Regulation 28 would be preempted. This is because building owners are expressly allowed to comply through other pathways, without needing to meet any EUI target. 5 CCR 1001-32 § C.I.B.1; ECF #75 at 6, 15; ECF #93 at 5 & n.1. Thus, the EUI target does not require replacement of covered products, because covered building owners need not meet the EUI target at all—it is simply one of many flexibilities and optional compliance pathways available. It is irrelevant that building owners may need to replace covered products in order to satisfy *other* compliance pathways, which the Recommendation recognizes *do not* concern energy use. Because Regulation 28's EUI target does not impose any requirements that the Recommendation says are preempted, Plaintiffs' claims against it must be dismissed.

Second, the Recommendation finds that EPCA does not preempt equipment bans based on fuel type. ECF #106 at 37; *accord* ECF #75 at 11-12. This finding requires dismissal of the Amended Complaint's claims that the Standards are preempted because they require or favor replacement of gas equipment with electric equipment. ECF #68 ¶¶ 13(c), 55-58, 63, 65, 84, 93, 119, 128, 145, 170, 177. It is not clear what portions of the Amended Complaint (if any) would survive after removing these fuel ban-related claims, or what facts the Plaintiffs could prove in order to prevail on any surviving claims if their fuel ban-related claims are dismissed.

## CONCLUSION

For the reasons stated above, Intervenor-Defendants respectfully urge the Court to modify the Recommendation's findings in response to these objections and dismiss the entire Amended Complaint with prejudice.

Dated this 4th day of September, 2026.

/s/ Matthew Gerhart
Matthew Gerhart
Senior Attorney
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

Jim Dennison
Staff Attorney
Sierra Club
1650 38th St # 103W
Boulder, CO 80301
(435) 232-5784
jim.dennison@sierraclub.org

***ATTORNEYS FOR SIERRA CLUB AND NATURAL RESOURCES DEFENSE COUNCIL***

/s/ Michael Foote
Michael Foote
General Counsel
Colorado Solar and Storage Association
1536 Wynkoop St., Suite 104
Denver, CO 80202
(303) 519-2183
mfoote@cossa.co

***ATTORNEY FOR COLORADO SOLAR AND STORAGE ASSOCIATION AND COALITION FOR COMMUNITY SOLAR ACCESS***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September, 2026, a true and correct copy of the foregoing **INTERVENOR-DEFENDANTS' OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** was served via the CM/ECF system upon all counsel of record in this matter.

/s/ *Maddie Lipscomb*
Maddie Lipscomb