**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 24-cv-01093-RMR-KAS

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;

Plaintiffs,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado
Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in
his Official Capacity as the Executive Director of the Colorado Energy Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MICHAEL JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and
Resiliency;

Defendants,

And

THE COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB,

Intervenor-Defendants.

---

**DENVER DEFENDANTS' OBJECTION TO MAGISTRATE JUDGE'S RECOMMENDATION TO DENY IN PART DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

---

**TABLE OF CONTENTS**

I. PRELIMINARY STATEMENT ........ 1

II. LEGAL STANDARD ........ 3

III. OBJECTION: The Recommendation erroneously concluded that Energize Denver has an impermissible "connection with" Covered Products' "energy use" ........ 3

A. EPCA's building code exceptions do not evince a congressional purpose in conflict with Energize Denver, but merely show Congress's concern for circumvention ........ 4

B. Dicta from recent case law is in accord with Denver's interpretation ........ 8

IV. CONCLUSION ........ 11

CERTIFICATE OF SERVICE ........ 12

In response to the Recommendation of United States Magistrate Judge (ECF #106) ("Recommendation"), Defendants The City and County of Denver; Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as Executive Director of the Office of Climate Action, Sustainability, and Resiliency (collectively "Denver"), respectfully submit this Objection to the Magistrate Judge's Recommendation to Deny in Part Defendants' Motion to Dismiss the Complaint ("Objection") pursuant to *Fed. R. Civ. P.* 72(b) and 28 U.S.C. § 626(b)(1)(B) and state as follows:

## I. PRELIMINARY STATEMENT

Energize Denver is a municipal ordinance that establishes a building performance program to reduce greenhouse gas emissions from existing buildings. Energize Denver consists of the Ordinance codified at Denver Revised Municipal Code ("D.R.M.C.") § 10-400 et. seq., and implementing regulations consisting both of Governing Energize Denver Building Energy Benchmarking and Performance Requirements ("Regulations") and Technical Guidance ("Guidance") (collectively, the "Program" or "Energize Denver"). Plaintiffs claim the Program is preempted by the Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. § 6201 et. seq., which preempts state regulations "concerning the . . . energy use" of covered products. 42 U.S.C. §§ 6297(c) & 6316(b).

But Energize Denver is not preempted because it does not "concern" the "energy use" of any covered product. The Program prescribes minimum levels of energy

efficiency or maximum quantities of energy use for buildings as a whole and does not directly regulate the energy usage of any particular piece of equipment (including covered products) within the building, require the use of any particular type of equipment, or dictate the means by which any particular piece of equipment is powered. The Magistrate Judge correctly determined that Energize Denver does not "refer to" covered products' "energy use," but erred in nevertheless concluding that Energize Denver has an impermissible "connection with" EPCA's core concern for Covered Products' energy use because it might conflict with the statute's secondary purpose.

The implication of the Recommendation is that *any* building-wide energy cap is "plausibly" preempted. ECF #106 at 39. But as discussed below, there is no support for that position in the text of EPCA nor in the dicta from out-of-circuit decisions on which the Recommendation relied. Those dicta do no more than posit that a building-wide cap could hypothetically be preempted were it so stringent as to necessitate the installation of new appliances that exceed the EPCA standards. But Plaintiffs have amended their Complaint specifically to remove any allegation that Energize Denver is so stringent that it would necessitate the installation of hyper-efficient appliances. So, if the Recommendation means that Energize Denver is "plausibly" preempted because "the adversarial process of litigation" might reveal it to be that type of hypothetical building-wide cap, ECF #106 at 41, then the Recommendation is based on a mis-reading of the Complaint. Because Energize Denver does not conflict with EPCA's purposes, Denver's motion to dismiss should be granted in full.

## II. LEGAL STANDARD

Rule 72(b)(1) permits the District Court to refer dispositive motions to a magistrate judge for recommended disposition. *See* RMR Civ. Practice Standard 72.3(a). Within 14 days, a party may serve and file an objection to the proposed findings and recommendations. *Fed.R.Civ.P.* 72(b)(2). The district judge must then determine *de novo* any part of the magistrate judge's recommendation to which a party has properly objected. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. *Fed.R.Civ.P.* 72(b)(3); *see also Weeks v. Snyder,* 19-cv-02133-RMR-SKC, 2021 WL 8155441, *2 (D. Colo. Dec. 10, 2021).

## III. OBJECTION: The Recommendation erroneously concluded that Energize Denver has an impermissible "connection with" Covered Products' "energy use"[1]

The Magistrate Judge correctly determined that Energize Denver does not "refer to Covered Products' energy use or energy efficiency." ECF #106 at 28. But the Recommendation erred in recommending that Energize Denver *does* have an impermissible "connection" with Covered Products' "energy use." The Recommendation rightly observed that "it is not the prohibitive nature of a regulation governing covered products that triggers preemption; it is the law's use of the appliance's 'energy use' as a mechanism for regulating." ECF #106 at 37 (quoting *Ass'n of Contracting Plumbers of*

---

[1] This Section advances arguments that Denver previously raised in support of its Motion to Dismiss. ECF #71 pp. 8-10. It elaborates on those arguments by addressing cases cited in the Recommendation that were decided after briefing on the Motion, and thus could not have been addressed previously. RMR Civ. Practice Std. 72.3(b).

*the City of New York, Inc. v. City of New York*, 180 F.4th 434, 447 n.12 (2d Cir. 2026)). And as the Recommendation determined, Energize Denver does not use any appliances' energy use as a mechanism for regulation. By the same logic, Energize Denver does not have an impermissible "connection with" covered products' energy use.

To reach the opposite recommendation, the Recommendation reasoned that Energize Denver may conflict with EPCA's purposes—and even then, not "Congress's *primary* objective." ECF #106 at 32. In identifying that potential conflict, the Recommendation relied on an inapposite exception to EPCA's express preemption provision and a misapplication of dicta from out-of-circuit cases.

**A. EPCA's building code exceptions do not evince a congressional purpose that conflicts with Energize Denver, but merely show Congress's concern for circumvention**

The Recommendation found that Energize Denver may "plausibly" conflict with EPCA's purpose. The basis for that finding was EPCA's building code exception—an exception from the consumer product preemption provision for certain "regulation[s] or other requirement[s] contained in a State or local building code for new construction." 42 U.S.C. § 6297(f)(3). This exception, the Recommendation reasoned, "may serve as a useful interpretive guide to understand Congress's broader preemptive intent." ECF #106 at 34.[2]

---

[2] *See also Maryland Bldg. Indus. Ass'n, Inc. v. McIlwain*, 828 F. Supp. 3d 617, 636 (D. Md. 2026) ("Exceptions to preemption, while sometimes helpful, do not themselves delineate Congress's intended preemptive scope.") (citing *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 264 (2013)).

The Recommendation, however, imbues the exception with meaning its plain text cannot bear. As an initial matter, while section 6297(f) applies to state regulation of consumer appliances, the comparable provision for commercial equipment—i.e., the only equipment as to which Plaintiffs' claims are not time barred—goes all but unmentioned in the Recommendation. 42 U.S.C. § 6316(b)(1)(B)(i); *see also* ECF #106 at 20 (recommending dismissal of claims regarding consumer appliances as time barred). Nor is it the subject of the out-of-circuit dicta on which the Recommendation relied.

With respect to commercial equipment, Congress exempted from preemption any "standard in a building code" that "does not require that the energy efficiency *of such product* exceed the applicable minimum energy efficiency requirement." *Id.* That is, section 6316 provides an exception from preemption for a building code unless it sets a *standard* for equipment that exceeds Federal efficiency standards. In this way, the exception demonstrates Congress's concern that a State or municipality might do through a building code what it could not do via product-specific regulation: set energy efficiency standards more stringent than the applicable Federal standards.

Section 6297(f) is much the same. That building code exception applies only if the relevant code "does not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard established in or prescribed under section 6295 of this title." 42 U.S.C. § 6297(f)(3)(B). Like section 6316(b)(1)(B)(i), then, 6297(f) shows that Congress wanted to preclude state building codes that mandate a product-specific energy-efficiency level beyond that required by Federal law.

The legislative history of the building code exception to § 6297(c) confirms that EPCA's purpose is frustrated only by building codes that require products more efficient than required by federal standards.[3] Section 6297 was added to EPCA in the National Appliance Energy Conservation Act of 1987 (NAECA). The NAECA Senate report explained that § 6297(f) is "designed to ensure the performance-based building codes cannot circumvent the federal standard for a given covered product by effectively requiring the installation of such product with an efficiency exceeding the applicable Federal standards or State standards for which a waiver from preemption has been obtained." *See* S. Rep. No. 100–6, at 11. Thus, "Congress wanted to ensure that state building codes could not frustrate national uniformity in appliance standards by requiring the installation of products whose efficiencies exceeded federal standards." *McIlwain*, 828 F. Supp. 3d at 38.

Finally, the Recommendation erred by disregarding the fact that EPCA's building code exception applies only to codes for *new* buildings and is thus inapplicable to Energize Denver. The Recommendation assumed that because there are no express preemption exceptions for codes that apply to existing buildings, such codes face even broader preemptive effect than new building codes. ECF #106 at 40. This assumption disregards the Supreme Court's instruction that exceptions to preemption do not delineate Congress's intended preemptive scope. *See Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 264 (2013). It also misunderstands EPCA, which exclusively regulates *new* covered products and thus is particularly attentive to codes for new

[3] *See McIlwain*, 828 F. Supp. 3d at 637–38.

buildings, because new buildings typically incorporate new appliances. EPCA prohibits the distribution in commerce of "any new covered product" not in conformance with applicable efficiency standards or labeling requirements, *see* 42 U.S.C. § 6302(a)(1), (5), and generally has nothing to say about existing products (or the buildings in which they are used).

Energize Denver is not the kind of building code for which either 6316(b)(1)(B) or 6297(f) were enacted. Critically, Plaintiffs have explicitly excised from their FAC any allegation that Energize Denver's building-wide standards require building owners to install any appliance more efficient than what the Federal energy efficiency standards adopted under EPCA require. *See* ECF #106 at 8; ECF #62-1 [*Redlined Proposed Am. Compl.*] at 159 (replacing allegation that the subject regulations require building owners to replace Covered Products "*with products that exceed the federal standards* that DOE established under EPCA" with allegation that the subject regulations require building owners to replace Covered Products "in order to meet the building performance standards of Regulation 28 and Energize Denver"); *see also id.* at 156, 176-78, 185-87, 188, 194-95, 197, 199, 201-02, 208, 214, 220, 222. The Recommendation also rightly recognized that the FAC "all but concede[s]" that replacing covered products is not required by the Program because "there are *technically* other ways to reduce a building's energy use besides replacing EPCA-covered appliances." ECF #106 at 30.[4]

---

[4] *See* FAC, ECF #68 ¶ 56 ("In *most* cases, the most effective (but not cost effective) way for Covered Buildings to meet the building performance standards of Regulation 28 is to target the removal fossil fuel utilizing Covered Products, as those products have the greatest associated GHG emissions at the Covered Buildings.") (emphasis added); *id.* ¶ 65 ("In *many* instances, the Covered Building owner will not be able meet the

But despite recognizing that Energize Denver does *not* require appliances with efficiencies that exceed Federal standards—i.e., that it does not "circumvent" the Federal standard—the Recommendation nevertheless found a potential conflict with EPCA's purpose. It reasoned that "regulations imposing building-wide energy reductions very well could be" preempted. ECF #106 at 37. But the Recommendation did not grapple with *which* regulations imposing building-wide energy reductions are preempted. Instead, it pointed to the "legal landscape" created by dicta in recent case law to conclude that Plaintiffs had plausibly alleged that Energize Denver conflicts with EPCA's purposes. Dicta in that recent case law, which interprets only 6297(f), not 6316(b)(1)(B), cuts sharply against the Recommendation's interpretation.

**B. Dicta from recent case law is in accord with Denver's interpretation**

The Recommendation starts with Judge Friedland's opinion in *California Restaurant*, which considered how her interpretation of EPCA's preemption provision, 6297(c), comported with the building code exception, 6297(f). Judge Friedland reasoned that the building code exception reflected Congress's intent to prevent "indirect regulations" that "aim to require consumers to use products with higher

---

building performance standards in Regulation 28 by simply replacing existing compliant Covered Products with similarly fueled, but higher efficiency, Covered Products, instead being forced to purchase electric Covered Products.") (emphasis added). That Energize Denver may *incentivize* installation of more efficient products does not mean it is preempted. As the Ninth Circuit has explained, "a builder is not 'required' to select an option, within the meaning of subsection [6297(f)(3)(B)], simply because there is an economic incentive to do so. Section 6297(f)(3)(B) is violated when the code requires a builder, as a matter of law, to select a particular product or option." *Bldg. Indus. Ass'n of Washington v. Washington State Bldg. Code Council*, 683 F.3d 1144, 1145 (9th Cir. 2012).

efficiency standards than those prescribed by DOE and may ultimately cause manufacturers to change the design of their products to meet those higher standards." *California Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1125 (9th Cir. 2024) (Friedland, J., dissenting from denial of rehearing en banc). So, the building-code exception does not exempt from preemption building codes that set building-wide energy efficiency standards that can only be met through the use of "hyper-efficient appliances"—that is, through the installation of appliances *more efficient* than what the Federal standards require. *Id.*

The district court in *McIlwain* reached the same conclusion. After considering the text and legislative history of section 6297(f), the court reasoned that "Congress wanted to ensure that state building codes could not frustrate national uniformity in appliance standards by requiring the installation of products whose efficiencies exceeded federal standards." *McIlwain*, 828 F. Supp. 3d at 637.[5] But, like Energize Denver, the building performance standards at issue in that case did "not require building owners to install appliances whose energy efficiencies exceed federal standards." Accordingly, "they are not like the building codes that Congress intended to preempt." *Id.*

The lesson from these cases is clear: to the extent 6297(f) serves as an interpretive guide to the scope of 6297(c), it shows that a regulation imposed by a building code "concerns" a covered product's "energy use" only insofar as it requires installation of covered products more efficient than required by Federal standards.

---

[5] *See also id.* ("Congress intended to preempt state regulations that require the installation of covered products whose energy efficiency exceeds federal standards.").

The Second Circuit's decision in *Association of Contracting Plumbers* is consistent with that view. There, the court relied on the building code exception to "check . . . the viability of [its] interpretation of the preemption provision." 180 F.4th at 447. The building code exception showed that, although regulations covered by the exception are not of the kind "Congress was most concerned with," they nevertheless have an "impermissible relationship" with EPCA's core focus. *Id.* Thus, were it not for the exception, the regulations covered by the exception would be preempted "under the interpretation" of 6297(c) adopted by that court. Building codes that would be preempted but for the building-code exception rely on the "appliance's 'energy use' as a mechanism for regulating." *Id.* at 447 n.12. [I]it is not the prohibitive nature of a regulation governing covered products that triggers preemption; it is the law's use of the appliance's "energy use" as a mechanism for regulating." *Id.*; *see* ECF #106 at 37.

Here, the Recommendation rightly found that Energize Denver does *not* use the appliance's energy use as a mechanism for regulating. *See* ECF #106 at 26 (finding that Energize Denver "does not act immediately and exclusively upon any Covered Products' energy efficiency or use or otherwise depend on the existence of the same for [its] operation."). If Energize Denver did use appliances' energy use as a mechanism for regulating, then it would have an impermissible relationship with EPCA's regulatory focus, and could fall within the class of building codes covered by 6297(f). But, by the Second Circuit's reasoning, because it does not regulate "energy use," Energize Denver does not implicate the building code exception at all.

## IV. CONCLUSION

Based upon the foregoing, Denver respectfully requests that the Court sustain the objection set forth above and issue an order granting the Motion to Dismiss, dismissing Plaintiffs' claims in their entirety.

Respectfully submitted this 4th day of September 2026.

By: *s/ Michele A. Horn*

Michele A. Horn
Assistant City Attorney
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332
(720) 913-3275
michele.horn@denvergov.org

*s/ Gabriel J. Daly*

Gabriel J. Daly
Sam Walsh
Roselle LLP
300 New Jersey Ave, NW, Suite 300
Washington, DC 2001
(617) 817 4105
Gabe.daly@rosellelllp.com

*Attorneys for Defendants the City and County of Denver, Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of September, 2026, a true and correct copy of the foregoing **DENVER DEFENDANTS' OBJECTION TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** was served via the CM/ECF system upon all counsel of record in this matter.

*/s/ Shannon Egan*
Shannon Egan, Paralegal
Denver City Attorney's Office