**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01093

**COLORADO APARTMENT ASSOCIATION, APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND COMMERCIAL REAL ESTATE DEVELOPMENT ASSOCIATION COLORADO;**

Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, et al.**

Defendants.

AND

**COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB**

Intervenor-Defendants.

---

**PLAINTIFFS' OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE [ECF No. 106]**

---

Pursuant to Fed. R. Civ. P. 72(b)(2), 28 U.S.C. § 636(b)(1)(C), and D.C.COLO.LCivR 72.3, Plaintiffs respectfully submit these Objections to the Recommendation of the United States Magistrate Judge ("Recommendation", ECF No. 106).

## STANDARD OF REVIEW

The District Court reviews objections to a Magistrate Judge's recommendation on a "dispositive motion" *de novo*. Fed. R. Civ. P. 72(b)(3).

## ARGUMENT

Plaintiffs agree with the Magistrate Judge's Recommendation that most of Plaintiffs' claims can proceed and submit these objections to certain conclusions reached in the Recommendation.

### I. Objection to the Recommendation that Plaintiffs' Claim Concerning Consumer Products Under Energize Denver is Time-Barred.

Plaintiffs object to the Magistrate Judge's Recommendation to grant in part the Denver Defendants' and the Intervenor-Defendants' motions to dismiss Plaintiffs' claim concerning consumer appliances in Energize Denver on statute of limitations grounds.

Plaintiffs agree that Colorado's two-year limitations period applies to their claims concerning consumer appliances to the extent a statute of limitations applies at all.[1] Plaintiffs object, however, to the Recommendation's conclusion that those federal claims accrued on the date Energize Denver was promulgated. Although C.R.S. § 13-80-102(1)

[1] For Plaintiffs' equitable claims, "statutes of limitation are not controlling measures of equitable relief." *U.S. v. Telluride Co.*, 146 F.3d 1241, 1245 (10th Cir. 1998) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946)).

supplies the applicable limitations period, federal law controls when a federal cause of action accrues. *See Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). Under the federal discovery rule cited in the Recommendation, a claim accrues when the plaintiff knows or has reason to know of the existence and cause of the injury that forms the basis of the action. ECF No. 106 at 19. That rule requires knowledge of the injury and its cause—not merely knowledge that a regulatory program exists. Although a plaintiff "need not know the full extent of his injuries before the statute of limitations begins to run," *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994), the plaintiff must know enough facts to put a reasonable person on notice of the injury that forms the basis of the claim. *Alexander*, 382 F.3d at 1216. In this case, that occurred no earlier than April 22, 2022, the relevant limitations cutoff date.

The Recommendation does not examine when Plaintiffs had knowledge of the existence and cause of their injuries. Instead, the Recommendation places undue weight on Plaintiffs' statement that Energize Denver was preempted "by its plain terms" and assumes that the injury occurred when those plain terms were promulgated—an approach commonly applied to facial preemption challenges. ECF No. 106 at 19. However, the Court has already rejected the suggestion that Plaintiffs assert a facial preemption claim, holding instead that Plaintiffs assert "an as-applied (or at most a hybrid) challenge" to Energize Denver. ECF No. 67 at 6.

For as-applied claims, this Court has recognized a different accrual standard: "[A]n as-applied challenge does not accrue until Plaintiff's personal rights were allegedly violated and all the events necessary to state a claim have accrued." *GRCO LLC v.*

*Granby Ranch Metro. Dist.*, No. 23-cv-1351-RMR-STV, 2023 WL 9104819, at *4 (D. Colo. Dec. 21, 2023) (citing *Waltower v. Kaiser*, 17 F. App'x 738, 740 (10th Cir. 2001)). That standard is consistent with the Supreme Court's finding that "[a] right of action accrues when the plaintiff has a complete and present cause of action" and that "the statute of limitations does not begin to run until [plaintiff] is injured." *Corner Post, Inc. v. Board of Governors of Federal Reserve System*, 603 U.S. 799, 809 (2024).[2]

Under the present facts, both the as-applied accrual standard and the federal discovery rule compel the same conclusion. Plaintiffs knew or had reason to know of the injury and its cause only after Energize Denver's performance standards were set and Plaintiffs' members were able to perform the energy audits and related analyses necessary to determine whether Energize Denver would cause their members to sustain concrete, building-specific injuries.

When this Court granted the initial motions to dismiss on March 28, 2025, based on the absence of standing, it implicitly concluded that Plaintiffs' claims had not yet accrued, holding that Plaintiffs' alleged injury was speculative because Plaintiffs had not shown that any member would be unable to comply without replacing Covered Products. ECF No. 55 at 14–15. Plaintiffs' members then did exactly what the Court suggested: they undertook building-specific energy audits and analyses to determine whether members would suffer concrete injuries. When it granted Plaintiffs' motion to file an amended complaint on August 21, 2025, which motion was supported by declarations relying on

[2] While *Corner Post* involved a unique circumstance where the plaintiff came into existence after the challenged regulation was promulgated, the Court's holding derived from broad and well-settled accrual principles. *See Corner Post*, 603 U.S. at 809–812.

energy audits, this Court found that those analyses "confirm[ed] what was previously only 'anticipated'"—that members would need to replace compliant Covered Products with remaining useful life to comply with Energize Denver, at costs ranging from "hundreds of thousands to millions of dollars at each Covered Building." ECF No. 67 at 5.

Those facts were not known—and could not have been known—on the day Energize Denver was promulgated. Nor is there any basis to conclude from the pleadings that Plaintiffs reasonably could or should have known of those injuries in sufficient detail to state a claim before April 22, 2022, the statute of limitations cutoff date measured from the filing of the original complaint.

The November 24, 2021, promulgation of Energize Denver introduced the general concept of whole-building energy conservation standards, but it did not establish the specific enforceable energy use intensity ("EUI") standards necessary for Plaintiffs' members to evaluate whether they would have to take any specific actions or suffer concrete injuries. ECF No. 83 at 9. OCASR's first regulations, promulgated on January 20, 2022, stated that mandatory interim EUI targets would not be set until May 1, 2022, at the earliest, for buildings that had already established their benchmark energy use, and not until September 1, 2022—or six months after benchmarking—for buildings that had not. *Id.* at 9–10. Plaintiffs' members could not determine whether and how Energize Denver would apply to them until after Defendant OCASR set their interim EUI targets. Plaintiffs' members could not have completed comprehensive, months-long, building-specific evaluations and discovered concrete injuries sufficient to state a claim before April 22, 2022, because the standards against which Plaintiffs' members had to measure

their buildings (*i.e.*, conduct the audits) had not yet been set. The Recommendation thus starts the clock running before enforceable EUI standards existed, and before Plaintiffs' members could practically conduct audits to determine how the EUI standards applied.

Because Plaintiffs did not have, and could not reasonably have had, facts establishing concrete injuries before April 22, 2022 (nor did those facts exist), Plaintiffs' consumer-appliance claims were brought within the two-year limitations period and were timely brought. At minimum, the pleadings do not establish untimeliness as a matter of law. If reasonable diligence is to be evaluated, that fact-intensive inquiry is not appropriately resolved on a Rule 12(b)(6) motion—much less through dismissal with prejudice.

## II. Objection to the Recommendation That Regulation 28 and Energize Denver Do Not "Refer To" or "Concern" Subject Matter Preempted by EPCA.

Plaintiffs object to the Recommendation's reasoning that Regulation 28 and Energize Denver do not "refer to" or "concern" "energy use" because they do not act immediately and exclusively upon the energy use or efficiency of any Covered Product. ECF No. 106 at 26.[3]

In reaching that conclusion, the Magistrate Judge addressed a circuit split and adopted a definition of "point of use" and "energy use" consistent with the recent *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, 180 F.4th 434 (2d

---

[3] Although the Magistrate Judge found that Regulation 28 and Energize Denver have an "impermissible connection" to EPCA's subject matter (ECF No. 106 at 31-43), this issue is relevant to Plaintiffs' challenge to EPCA as a whole and the greenhouse gas ("GHG") intensity portions of Regulation 28 (*see* Section III, *infra*).

Cir. 2026) ("*Plumbers II*") decision, and contrary to the *California Restaurant Ass'n v. City of Berkeley*, 89 F.4th 1094, 1101 (9th Cir. 2024). The Magistrate Judge found that "energy use" for purposes of determining EPCA preemption "is a standardized, fixed measure assigned to a product before it reaches consumers." ECF No. 106 at 26 (citing *Plumbers II*). The Magistrate Judge concluded that Regulation 28 and Energize Denver do not "refer to" or "concern" a Covered Product's "energy use" under EPCA because they do not impact Covered Products' energy use at the point of manufacture. *Id.* at 26–31.

Plaintiffs object to this reasoning. First, even accepting the definition of "energy use" and "point of use" adopted in the Recommendation, the correct conclusion is that Regulation 28 and Energize Denver "refer to" and "concern" the energy efficiency of Covered Products. ECF No. 81 at 15. Regulation 28 and Energize Denver regulate Covered Products specifically because their energy use, however defined, is allegedly too high. The building performance standards of Regulation 28 and Energize Denver are designed to reduce existing buildings' energy consumption by removing and replacing the energy-consuming Covered Products in those buildings. Thus, to reduce total energy use, both regulatory programs necessarily "restrict[] which Covered Products may be used in Covered Buildings based on their relative efficiency." ECF No. 81 at 15.

Similarly, the Magistrate Judge's conclusion did not address provisions of EPCA that indicate a Congressional intent to preserve the availability of Covered Products. *See* 42 U.S.C. § 6297(c)(2), (d). For example, EPCA prohibits waiving preemption of State and local measures that are "likely to result in the unavailability ... of performance characteristics [or] features" in Covered Products available within a state or locality. §

6297(d)(4). This includes prohibiting regulations restricting the energy use of those Covered Products once placed into commerce, even as determined by test procedures at the manufacturer, by making them suddenly noncompliant. *See* ECF No. 81 at 7 (discussing 42 U.S.C. § 6297(d)(3), which prohibits regulations that "significantly burden manufacturing, **marketing, distribution, sale, or servicing** of the covered product on a national basis." (emphasis added)). Regulation 28 and Energize Denver impose a significant burden on the marketing, distribution, sale, and servicing of Covered Products because they require the removal and replacement of such products and effectively prohibit their use.

The Ninth Circuit's reasoning in *Berkeley* also supports the conclusion that Regulation 28 and Energize Denver "refer to" and "concern" the "energy use" of the Covered Products. ECF No. 81 at 10–15. As such, it was not necessary to the Magistrate Judge's Recommendation to define "energy use" or "point of use" to determine whether Plaintiffs' claims could proceed. *See Valley Forge Ins. Co. v. Health Care Management Partners, Ltd.*, 616 F.3d 1086, 1094 (10th Cir. 2010).[4]

The Court should find that Regulation 28 and Energize Denver "refer to" and "concern" subject matter preempted by EPCA. ECF No. 81 at 8–15.

---

[4] To the extent a definition for "energy use" and "point of use" becomes relevant to the Court's review of the Magistrate Judge's Recommendation, Plaintiffs submit that where a term is not defined by statute, such as "point of use", the term should be given its ordinary meaning, *see Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018). In this instance, the phrase means the "place where something is used, administered." Oxford English Dictionary Online (2026); *City of Berkeley*, 89 F.4th at 1101. The "point of use" of a Covered Appliance is where that appliance is being used, not when it is sitting in the warehouse, where it is not being used for its intended purpose, nor using any energy.

### III. Objection to the Recommendation That the Portions of Regulation 28 Regarding Greenhouse Gas Intensity Are Not Subject to Preemption.

Plaintiffs object to the Magistrate Judge's conclusion that "building-wide regulations concerning greenhouse gas emissions are *not* preempted by the EPCA" to the extent that conclusion applies to the GHG intensity pathway of Regulation 28. ECF No. 106 at 37. In reaching that conclusion, the Magistrate Judge relied on *Md. Bldg. Indus. Ass'n, Inc. v. McIlwain,* 828 F. Supp. 3d 617 (D. Md. April 2, 2026) and *Nat'l Ass'n of Home Builders of the U.S. v. District of Columbia*, No. 24-cv-02942 (ACR), 2026 WL 837674 (D.D.C. Mar. 26, 2026). ECF No. 106 at 29–31, 35–41. Those cases, however, do not stand for the proposition that Regulation 28's GHG intensity mandate on existing buildings can evade EPCA preemption.

First, the regulatory regimes in those two cases are very different from those at issue here. Both cases dealt with regulations that did not "set an objective for energy consumption or conservation at all." ECF No. 106 at 36 (citing *Md. Bldg. Indus. Ass'n*, 828 F. Supp. at 639). For example, the *Md. Bldg. Indus. Ass'n* regulations were designed to require "net zero" emissions only from fossil fuel-utilizing equipment, rather than from all equipment (e.g., electric equipment), and, in any event, allowed building owners to do nothing and instead simply pay a compliance fee. 828 F. Supp. at 622, 642. The regulations in the *District of Columbia* case required a building to achieve "net zero" energy consumption without reference to any building operations or equipment, an objective that could be reached by changing building operations, simply buying renewable energy "credits" without changing anything, or a combination of both. 2026 WL 837674 at *3. Those courts concluded (incorrectly, Plaintiffs believe) that fossil fuels, not "energy

use," were being regulated.

However, Regulation 28 is a GHG intensity reduction mandate, measured as the kilograms of "carbon dioxide equivalent" emitted per square foot per year associated with the operations of a Covered Building. This mandate applies to all energy use, regardless of fuel type, including electricity whose emissions are generated by the power grid, not the Covered Building. ECF No. 68 at ¶ 44. Further, when Regulation 28 requires a building to reduce its GHG intensity, it requires actual reductions in GHG emissions associated with building operations, which necessarily requires reductions in the energy consumed by the Covered Equipment.[5] *See Plumbers II*, 180 F.4th at 447 n.12 ("[I]t is not the prohibitive nature of a regulation governing Covered Products that triggers preemption; it is the law's use of the appliance's 'energy use' as a mechanism for regulating.").

Further, Plaintiffs submit that *Md. Bldg. Indus. Ass'n* and the *District of Columbia* cases were incorrectly decided. Regardless of whether a building regulation focuses on emissions, net zero energy, or a specific fuel, it is clearly "concerned" with "energy use" as defined by EPCA, which specifically defines "energy" to "mean[] electricity, or fossil fuels." § 6291(3). A regulation aimed at fossil fuel or electricity use is by definition aimed at "energy use." Where such regulations are aimed at buildings, they also necessarily "concern" the energy use (fossil fuel or electric) of the Covered Products in them. The

[5] Regulation 28 does allow the use of renewable energy credits in the very limited situation where the building owner demonstrates that it has already "exhausted" cost-effective energy efficiency and electrification measures before being able to even qualify for such credits.

major source of buildings' energy use is the equipment in them that consumes energy (i.e., the Covered Products). A building's emissions footprint, however described, cannot be meaningfully reduced without "concerning" the energy use and efficiency of the Covered Products in the building. Thus, any regulation which requires a building-wide reduction in GHG intensity necessarily regulates the energy use of the Covered Products in those buildings. ECF No. 81 at 14–15 (discussing "performance standards by proxy"). This conclusion cannot be evaded by careful or clever drafting that attempts to conceal how these mandates work and what their purpose is.

Driving the point home, the Supreme Court has repeatedly instructed that a broadly worded preemption clause (such as that found in EPCA) cannot be evaded by slightly "shifting the[] regulatory focus" to employ an "indirect but wholly effective means" of achieving a preempted objective. *American Trucking Ass'ns, Inc. v. City of Los Angeles,* 569 U.S. 641, 652 (2013); *see also Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008) (preempting "the very effect that the federal law sought to avoid" even if pursued "less direct[ly] than it might be" (quotation marks omitted)). Though Regulation 28 is careful to not explicitly state it is regulating the energy use of Covered Products in the GHG intensity pathway, it is nonetheless preempted because the GHG intensity cap is in reality "an energy cap" that is preempted. ECF No. 106 at 39. The conclusion in the Recommendation that the GHG Intensity cap is not subject to EPCA preemption should be rejected.

Dated: September 4, 2026

GREENBERG TRAURIG, LLP

*/s/ Paul M. Seby*

Paul M. Seby
Matthew K. Tieslau
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Phone Number: 303.572.6500
Fax Number: 303.572.6540
E-Mail: SebyP@gtlaw.com
Tieslaum@gtlaw.com

*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 4th of September 2026, a copy of the foregoing was served upon all parties using the Court e-filing system.

*s/ Paul M. Seby*
Paul M. Seby