IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:24-cv-01093

**COLORADO APARTMENT ASSOCIATION, APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; and COMMERCIAL REAL ESTATE DEVELOPMENT ASSOCIATION COLORADO,**

Plaintiffs,

**v.**

**JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; and WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office,**

Defendants,

AND

**COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB,**

Intervenor-Defendants.

---

## STATEMENT OF INTEREST OF THE UNITED STATES

The United States respectfully submits this Statement of Interest pursuant to 28 U.S.C. §§ 517 and 518 to address the preemptive scope of the Energy Policy and Conservation Act (EPCA) administered by the United States Department of Energy in response to the Recommendation of United States Magistrate Judge dated August 21, 2026. Dkt. 106.[1]

As the United States stated in its prior Notice of Potential Participation, Dkt. 100, this case presents significant questions of interest to the United States regarding EPCA's express preemption provisions. Ensuring the utility of nationally applicable standards adopted by the Department and preempting state and local regulations that would undermine those standards both upholds EPCA's broad preemption provisions and advances the Department's administration of the statutory scheme.

## INTRODUCTION

The question here is whether state and local laws regulating the "energy use intensity" of buildings plausibly are "regulation[s] concerning the energy efficiency [or] energy use" of appliances whose use determines that "energy use intensity." The answer is yes.

---

[1] Congress has authorized the Attorney General to send "any officer of the Department of Justice ... to any ... district in the United States to attend to the interests of the United States in a suit pending in a court of the United States." 28 U.S.C.§ 517; *see id.* § 518 ("When the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested, or he may direct the Solicitor General or any officer of the Department of Justice to do so."). These statutes provide a mechanism for the United States to submit its views in cases in which the United States is not a party. *See, e.g.*, *Blondin v. Dubois*, 78 F. Supp. 2d 283, 288 n.4 (S.D.N.Y. 2000), and are not intended to "subject[ ] it to the general jurisdiction" of a court, *Flatow v. Islamic Republic of Iran*, 305 F.3d 1249, 1252–53 & n.5 (D.C. Cir. 2002).

EPCA directs the Department of Energy to establish energy conservation standards for certain consumer products and industrial equipment—such as appliances—and then expressly preempts state and local "regulation[s] concerning the energy efficiency [or] energy use" of those products that the Federal Government has authorized to be sold. 42 U.S.C. §§ 6297(c), 6316(b). These broad preemption provisions enable appliance manufacturers to design, produce, and market appliances across the country in accordance with a single set of nationally applicable regulations. But Plaintiffs have plausibly alleged here that Colorado and Denver ban the use of certain products that meet federal standards, making them effectively unmarketable by manufacturers and unavailable to consumers. Regulating the "energy efficiency" or "energy use" of federally authorized appliances in this manner is preempted, a conclusion mandated by EPCA's plain text, consideration of the statutory context and history, and the Department's implementation of the statutory regime. *Id.*

The Magistrate Judge's Recommendation correctly recognizes that the challenged "regulation[s] concern[] energy efficiency [or] energy use" given their impermissible "connection with" the preempted subject matter. Dkt. 106 at 31–41. That narrow conclusion is sufficient to resolve the preemption issue presented. Accordingly, the United States respectfully submits that the Recommendation's broader rejections of preemption based on lack of "reference to" or "impact on" the preempted subject matter and "interference with … Congress's primary objectives," Dkt. 106 at 26–32, are unnecessary to its recommended disposition and (if considered) incorrect.

## STATEMENT

"If it is not necessary to decide more, it is necessary not to decide more." *People for Ethical Treatment of Prop. Owners v. U.S. Fish & Wildlife Serv.*, 852 F.3d 990, 1008

(10th Cir. 2017) (cleaned up). Recognizing that the challenged Colorado and Denver regulations concerning buildings' "energy use intensity" have an impermissible "connection with" the "energy efficiency" or "energy use" of products subject to federal energy use standards under EPCA resolves the question whether Plaintiffs plausibly state a preemption claim. Dkt. 106 at 31–41. The various Defendants' efforts to resist that straightforward conclusion are unavailing. *See* Dkts. 111, 112, 113. So the Court can and should resolve the issue on that narrow ground.

**1.** As the Recommendation correctly concludes, Colorado and Denver's building-wide "energy cap" and "mandatory reductions in energy-use intensity" plausibly are preempted by EPCA because of their impermissible connection with the energy efficiency and energy use of appliances covered by EPCA. Dkt. 106 at 39–40. A building's "energy use intensity" is in large part determined by the energy use of appliances in that building, however one defines the term. Thus, regulating "energy use intensity" is connected with "energy use" and "energy efficiency."

Defendants primarily resist this conclusion by attempting to sow confusion over the term "energy use." *See* Dkt. 111 at 2–3; Dkt. 112 at 1–2. That resistance is futile because regardless of the precise time or means of measuring "energy use," the challenged regulations prohibit products that are compliant with EPCA standards *because* their energy use building-wide is too high (or alternatively because their energy efficiency is too low)—whether those measures are obtained in a laboratory setting or elsewhere. Functionally, then, Colorado and Denver set standards that Congress determined are preempted. That is impermissible, whether they employ direct or "indirect but wholly effective means," such as a proxy for energy use or energy efficieny. *Am. Trucking Ass'ns v. City of Los Angeles*, 569 U.S. 641, 652 (2013); *see Nat'l Meat*

*Ass'n v. Harris*, 565 U.S. 452, 458, 463–64 (2012) (holding that a state cannot evade a preemption clause aimed at requirements "with respect to" slaughterhouses by framing its regulation "as a ban on the sale of meat produced in whatever way the State disapproved"); *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 372 (2008) (preempting "the very effect that the federal law sought to avoid" even if pursued "less directly than it might be" (cleaned up)).

Defendants also take issue with the Recommendation's discussion of EPCA's exception to preemption for certain building codes. *See* 42 U.S.C. § 6297(c)(3), (f)(3); Dkt. 111 at 4–9; Dkt. 112 at 4–8; Dkt. 113 at 4–8. They do not dispute that the exception is "relevant" to the preemption inquiry, Dkt. 113 at 4, in keeping with the Supreme Court's observation that exceptions to a preemption clause are helpful in interpreting a preemption provision's scope, *see Medtronic, Inc. v. Lohr*, 518 U.S. 470, 486 (1996).

Indeed, EPCA's building code exception provides an especially important part of the "'statutory framework' surrounding" the preemption provision and, therefore, a significant source of evidence regarding § 6297(c)'s scope. *Id.* The statute provides that "a regulation … contained in a State or local building code for new construction concerning the energy efficiency [or] energy use of such covered product is not superseded" if it "complies with all" of the seven specified requirements. 42 U.S.C. § 6297(f)(3). By exempting only a narrow sliver of energy use regulations contained in building codes, and preempting all others, Congress underscored that "EPCA's preemptive scope extends beyond direct or facial regulations of covered products" and prevents states from evading preemption by regulating appliances indirectly through other types of measures, including the building-wide measures at issue here. *Cal. Rest.*

*Ass'n v. City of Berkeley*, 89 F.4th 1094, 1101 (9th Cir. 2024), *amended on denial of reh'g en banc*; *see id.* at 1125 (Friedland, J., dissenting from denial of reh'g en banc) (agreeing that the building code exception reflects congressional intent to prevent certain "indirect regulations" concerning energy use or energy efficiency).[2]

Defendants fail to refute the building code exception's relevance. They focus on just one of the exception's seven criteria, Dkt. 111 at 5; on a *different* preemption exception addressing certain "standard[s]" in building codes (as distinct from "regulation[s] concerning … energy use"), Dkt. 112 at 5–6; and on "legislative history" (to the neglect of the statutory text), Dkt. 111 at 5–7; Dkt. 112 at 6; Dkt. 113 at 6. But ultimately, where, as here, a building code or other state or local regulation effectively requires the use of products that exceed federal energy use or energy efficiency standards (as Plaintiffs have plausibly alleged), that exception demonstrates Congress's intent to preempt.

Lastly, Intervenor-Defendants (but notably *not* Colorado or Denver) attempt to sow concern over the Recommendation's potential impact on certain health and safety regulations. *See* Dkt. 111 at 3–4. Application of the Recommendation's rule would not require that health and safety regulations' incidental impacts on covered products trigger preemption. It merely would prevent products subject to a federal standard, after

[2] Even under a narrower view of EPCA preemption previously advanced by the Federal Government, "[s]tate and local building codes fall within the scope of the preemption clause if they establish energy conservation standards or similar requirements, such as a regulation prohibiting 'hook-ups for appliances with less than a certain efficiency.'" Brief for the United States, *Cal. Rest. Ass'n*, No. 21-16278 (June 12, 2023) (quoting *Final Rule for Clothes Dryers and Kitchens Ranges and Ovens*, 47 Fed. Reg. 57,198, 57,215 (Dec. 22, 1982)).

rigorous testing, from being regulated in connection with their energy efficiency or energy use.

**2.** The Recommendation could have started and ended the preemption analysis there. Accordingly, its broader rejections of preemption based on different framings ("reference to" or "impact on" the preempted subject matter or "interference with … Congress's primary objectives," Dkt. 106 at 26–32) are unnecessary. If considered by the Court, however, those pronouncements are also incorrect.

Start with the statutory text. EPCA provides that, once the Department of Energy has approved a standard for a covered product, "no State regulation concerning the energy efficiency [or] energy use … of such covered product shall be effective." 42 U.S.C. § 6297(c); *see id.* § 6316(b). The domain preempted is therefore "State regulation[s] 'concerning … energy efficiency [or] energy use'" of covered products.

The term "State regulation" also includes laws of "political subdivisions" like Denver. *Id.* § 6297(a)(2)(A). Next, the subject of preempted regulations is "energy use," a term defined to mean "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title." *Id.* § 6291(4).[3] "Energy," in turn, "means electricity, or fossil fuels," which includes natural gas and oil. *Id.* § 6291(3). "Point of use" is not defined in the statute, but, giving the term its ordinary meaning, *see Encino Motorcars, LLC v. Navarro*, 584 U.S. 79, 85 (2018), the phrase means the "place where something is used." *Cal. Rest. Ass'n*, 89 F.4th at 1101 (quotation marks omitted); *see also Statement of Policy for Adopting Full-Fuel-Cycle Analyses Into Energy Conservation*

[3] "Energy efficiency" is defined by reference to "energy use." 42 U.S.C. § 6291(5).

*Standards Program*, 76 Fed. Reg. 51,281, 51,283 (Aug. 18, 2011) (explaining that the "point-of-use method for measuring energy consumption considers the use of electricity, natural gas, propane, and/or fuel oil by an appliance at the site *where the appliance is operated*" (emphasis added)).

Putting all this together, then, EPCA preempts state and local regulations concerning the quantity of fossil fuels consumed by a covered product where that product is used, once the Department has set a standard to cover that specific type or class of product. *See Cal. Rest. Ass'n*, 89 F.4th at 1101–02.

This rule plainly covers the challenged regulations. By banning the use of products whose energy use is too high or whose energy efficiency is too low, they "necessarily regulate[]" how much energy those products consume when used. *Id.* at 1102. Because federal standards exist for several types of such products, the regulations are preempted as to those products.

But were there any doubt on this score, EPCA's preemption clauses sweep even more broadly than facial regulations of a product's energy use or energy efficiency. They displace any regulation "concerning" the energy use or energy efficiency of a covered product. "Concerning means relating to, and is the equivalent of regarding, respecting, about." *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 717 (2018) (quotation marks omitted). The use of such words "in a legal context generally has a broadening effect, ensuring that the scope of a provision covers not only its subject but also matters relating to that subject." *Id.* Congress therefore intended EPCA to reach broadly, a choice that must be given meaningful effect. That reach is not unlimited, but, at a bare minimum, a law that prohibits a particular class of products based on their energy use or energy efficiency "relates to" their "energy use" or "energy efficiency."

Further, as discussed, the Supreme Court has repeatedly instructed that such a broadly worded preemption clause cannot be evaded by slightly "shifting the[] regulatory focus" to employ an "indirect but wholly effective means" of achieving a preempted objective. *Am. Trucking Ass'ns*, 569 U.S. at 652; *see supra* Part I. It follows that states and "localities can't skirt the text of broad preemption provisions by doing *indirectly* what Congress says they can't do *directly*." *Cal. Rest. Ass'n*, 89 F.4th at 1107.

To the extent that the Recommendation determined that the challenged regulations are not preempted because they do not *directly* regulate "energy use" or "energy efficiency," that determination gives no effect to Congress's choice to broaden preemption using the word "concerning." As soon as the preemptive scope is recognized to be broader than regulations that use the words "energy conservation standard" or "energy use as defined by EPCA," measures like these cannot stand. Thus, for example, measures that regulate a proxy for appliances' energy use or energy efficiency (such as building-wide energy use or efficiency), and that drive non-compliant options out of the marketplace, would be preempted even if the measures do not themselves impose numerical targets or otherwise appear to directly "touch on" the energy use or energy efficiency of a particular product. *See Morales v. Trans World Airlines, Inc.*, 504 U.S 374, 386 (1992) (regulations need not "specifically address[]" preempted subject matter given "the sweep of the 'relating to' [or concerning] language").

Statutory context and history further confirm the preemption provisions' breadth. In addition to the building code exception discussed above, EPCA's waiver provision demonstrates that Congress intended regulations "likely to result in the unavailability … of performance characteristics (including reliability), features, sizes, capacities, and

volumes" in "any covered product type (or class)" "that are substantially the same as those generally available" in the regulating jurisdiction to be preempted. 42 U.S.C. § 6297(d)(4). So too for regulations that "will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis." *Id.* § 6297(d)(3). Thus, Congress intended to preempt regulations that eliminate currently authorized classes of products or products' performance characteristics or features from the market and avoid significant burdens on "the complete lifecycle of an appliance," not just its "design or manufacture." *Cal. Rest. Ass'n*, 89 F.4th at 1104. But that is precisely what the challenged regulations seek to do.

Similarly, EPCA's amendment history demonstrates that Congress broadened the scope of preemption from reaching only state and local "energy efficiency standard[s] or similar requirement[s]" to instead covering any "regulation[s] concerning … energy efficiency [or] energy use."[4] This evolution puts to rest any contention that the operative language equates "regulation concerning the energy efficiency [or] energy use" with "energy conservation standard" or limits preemption only to *direct* regulations of the preempted subject matter. 42 U.S.C. § 6297(c). Even under the narrower language, the Department interpreted EPCA to preempt indirect bans on products subject to a federal standard. 47 Fed. Reg. at 57,215.[5] In addition to the

---

[4] *Compare* Pub. L. No. 94-163, § 327(a), 89 Stat. 871, 926–27 (1975), *with* Pub. L. No. 95-619, sec. 424(a), § 327(b)(1), 92 Stat. 3206, 3263–64 (1978), *and* Pub. L. No. 100-12, sec. 7, § 327(c), 101 Stat. 103, 118 (1987).

[5] This interpretation followed a proposed rule that "[m]any commenters indicated [left] uncertainty" as to the scope of preempted State and local laws. 47 Fed. Reg. at 57,215; *see Proposed Rulemaking and Public Hearings Regarding Energy Efficiency Standards for Refrigerators and Refrigerator-Freezers, Freezers, Clothes Dryers, Water Heaters, Room Air Conditioners, Kitchen Ranges and Ovens, Central Air Conditioners, and Furnaces*, 47 Fed. Reg. 14,424, 14,455 (Apr. 2, 1982) (focusing on "energy

building codes discussed above, the Department advised that a "[p]rohibition of hook-ups for appliances with less than a certain efficiency" and "[p]rohibitions on standing pilot lights" in covered products would both "be subject to preemption." *Id.* & n.34.

Lastly, a broader conception of EPCA preemption (albeit unnecessary to resolving this dispute) accords with Congress's objectives and facilitates the federal administration of the statute. EPCA prevents states and localities from interfering with what the Department does at the federal level. If products authorized for sale pursuant to a federal standard can be categorically outlawed by any state or locality, that would disrupt the Department's administration of EPCA's Energy Conservation Program and severely limit or even cut off consumers' options. *Cf. Wyeth v. Levine*, 555 U.S. 555, 576 (2009) ("[W]e have attended to an agency's explanation of how state law affects the regulatory scheme.").

In particular, recognizing such authority to end-run EPCA would run directly counter to the Department's implementation of EPCA to facilitate reducing costs and increasing choice for consumers, alongside increasing domestic energy supply and energy conservation. *See* U.S. Dep't of Energy, *Secretarial Order: Unleashing the Golden Era of American Energy Dominance* (Feb. 5, 2025), https://perma.cc/8GHX-PRA5; *Procedures, Interpretations, and Policies for Consideration of New or Revised Energy Conservation Standards and Test Procedures for Consumer Products and Certain Commercial/Industrial Equipment*, 90 Fed. Reg. 16,093, 16,096–97 (Apr. 17, 2025); *cf.* 42 U.S.C. § 6295(o)(4). To the extent that legislative history is considered,

---

efficiency standards" under the header "Preemption of State Regulations"). Yet even that proposed rule recognized that "effectively ban[ning] appliances using certain types of fuel" "should not be the consequence of standards" because EPCA's focus on "saving energy is relative, not absolute." 47 Fed. Reg. at 14,434.

"reduc[ing] the regulatory and economic burdens on the appliance manufacturing industry" was yet another congressional objective in EPCA. S. Rep. No. 100-6, at 2 (1987).

EPCA's preemptive reach is not unlimited, but this is not an edge case. There is no need to decide the outer limits here, because regulations of "energy use intensity" plausibly are "regulation[s] concerning the energy efficiency [or] energy use" of appliances whose use determines that "energy use intensity"—whether viewed through the lens of "connection with," "reference to," or "impact on" the preempted subject matter, or of "interference with … Congress's primary objectives," Dkt. 106 at 26–32. All paths lead to the same, preempted conclusion.

Dated: September 15, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*<u>/s/ Charles E.T. Roberts</u>*
CHARLES E.T. ROBERTS
(DC Bar No. 1780573)
Deputy Assistant Attorney General
Energy & Natural Resources Division
U.S. Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530
Tel.: (202) 305-1141
Fax: (202) 616-8470
E-mail: charles.roberts@usdoj.gov

*Counsel for the United States*