**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01093-RMR

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER,

*Plaintiffs,*

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office; AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency,

*Defendants*; AND

COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL AND SIERRA CLUB,

*Intervenor-Defendants*.

---

**INTERVENOR-DEFENDANTS’ RESPONSE TO PLAINTIFFS’ OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**TABLE OF CONTENTS**

INTRODUCTION ..... 1

RESPONSE TO OBJECTIONS ..... 1

I. PLAINTIFFS' CLAIMS AGAINST ENERGIZE DENVER CONCERNING CONSUMER PRODUCTS ARE TIME-BARRED. ..... 1

II. THE STANDARDS DO NOT "CONCERN" OR "REFER TO" COVERED PRODUCTS' ENERGY USE ..... 5

III. THE RECOMMENDATION CORRECTLY FOUND THAT REGULATION 28'S GREENHOUSE GAS INTENSITY TARGETS ARE NOT PREEMPTED. ..... 7

CONCLUSION ..... 10

## INTRODUCTION

Plaintiffs object to three findings in the Magistrate Judge's Recommendation. First, they object to the finding that their claims against Energize Denver accrued when Energize Denver was enacted, and that those claims are barred by the applicable two-year statute of limitations. ECF #106 at 18-20. Second, Plaintiffs object to the finding that EPCA defines covered products' "energy use" as "a standardized, fixed measure assigned to a product before it reaches consumers." *Id.* at 26-27 (citation omitted). Third, Plaintiffs object to the finding that EPCA does not preempt Regulation 28's greenhouse gas intensity targets.[1] All three of these findings are correct, and Plaintiffs' Objections do not offer any persuasive reason to depart from them. Plaintiffs' Objections should be overruled.

## RESPONSE TO OBJECTIONS

### I. PLAINTIFFS' CLAIMS AGAINST ENERGIZE DENVER CONCERNING CONSUMER PRODUCTS ARE TIME-BARRED.

The Recommendation correctly finds that Plaintiffs' claims against Energize Denver concerning consumer products are barred by the applicable two-year statute of limitations. ECF #106 at 18-20. Plaintiffs agree that a two-year limitations period applies,[2] ECF #114 at 2, and they previously conceded that Energize Denver's

---

[1] The Recommendation incorrectly found that EPCA does preempt the energy use intensity targets in both Regulation 28 and Energize Denver. ECF #106 at 39-41. Intervenor-Defendants' maintain their objections to these findings. ECF #111.

[2] To the extent Plaintiffs now suggest their "equitable claims" are not subject to any statute of limitations, ECF #114 at 2 n.1, Plaintiffs waived this argument by failing to raise it before the Magistrate Judge and failing to develop it in their Objections. *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996). Indeed, Plaintiffs have expressly agreed that a two-year limitations period applies. ECF #83 at 2.

enforceable standards were enacted more than two years before Plaintiffs filed their complaint. ECF #106 at 17 n.5. However, Plaintiffs argue that their claims accrued after Energize Denver was enacted, when their members conducted energy audits of their buildings. ECF #114 at 4. This is incorrect, as Intervenor-Defendants have previously argued, ECF #93 at 1-3, and as the Recommendation found after thoroughly considering Plaintiffs' arguments. ECF #106 at 19 (finding that the Supreme Court has "identified the moment of accrual as when the plaintiff *has the right* to file suit and obtain relief, not when Plaintiff did the necessary research to learn the extent of its injury"). Plaintiffs' claims accrued as soon as they were injured by the need to comply with Energize Denver and had a complete EPCA preemption claim. This occurred as soon as Energize Denver was enacted—the energy audits merely add detail about the extent of Plaintiffs' injuries. ECF #93 at 2-3; ECF #106 at 19.

Under applicable federal law, a claim accrues "when the plaintiff knows *or has reason to know* of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994) (emphasis added). This is an "objective" standard that turns on when "facts giving rise to a claim were available generally," not when a particular Plaintiff actually discovered those facts. *Alexander v. Oklahoma*, 382 F.3d 1206, 1219 n.6 (10th Cir. 2004). "A plaintiff need not know the full extent of his injuries before the statute of limitations begins to run." *Indus. Constructors Corp.*, 15 F.3d at 969.

The Recommendation correctly applied the federal accrual standard to find that Plaintiffs should have known that they were injured by Energize Denver under "its plain

terms," and that they had a complete cause of action, as soon as Energize Denver's enforceable performance standards were enacted in January 2022. ECF #106 at 19. Neither the existence of Plaintiffs' alleged injury nor the substance of their preemption claim depends on the outcome of any energy audit.

Plaintiffs' asserted injury is the need to comply with Energize Denver's requirements or face penalties. ECF #68 ¶¶ 36, 155-161. In its standing analysis (to which Plaintiffs do not object), the Recommendation found that this injury does not depend on what Plaintiffs must do to comply with Energize Denver or whether they receive flexibility, extensions, or variances from the compliance deadlines. ECF #106 at 13-14. These questions "concern only the extent and degree of Plaintiffs' injuries, not the existence of an injury in the first place." *Id.* The fact that "Plaintiffs' members are presently subject to the Energize Denver program, and as such, must explore pathways to comply with its mandate" is sufficient to establish a legal injury. *Id.*; *see Hydro Res., Inc. v. EPA*, 562 F.3d 1249, 1259 (10th Cir. 2009) ("[T]he unwanted result of the government rule whether or not there was an associated pecuniary loss suffices as an injury in fact." (citation omitted, cleaned up)). Plaintiffs' members did not need to conduct energy audits to determine that they were subject to Energize Denver's requirements, so they should have known of their injury as soon as the requirements were enacted in January 2022.

Likewise, Plaintiffs allege that the facts constituting the EPCA violation are apparent from Energize Denver's "plain terms." ECF #106 at 19; ECF #82 at 14 ("Energize Denver is preempted on its face for regulating Covered Products."). Thus,

"although the extent of Plaintiffs' injuries may rest upon contingent future events" such as the specific actions that Plaintiffs' members take to comply with Energize Denver (which they might select based on their energy audits), "adjudication of the legal theory underlying this lawsuit does not." ECF #106 at 15 (citation omitted, cleaned up). Plaintiffs were on notice of all the facts underlying their claim, and the limitations period began to run, as soon as Energize Denver was enacted.

This analysis is not affected by whether Plaintiffs' claims are facial or as-applied. *Contra* ECF #114 at 3-4. "[T]he distinction between facial and as-applied challenges is not so well defined that it has some automatic effect," and "[t]he label is not what matters." *United States v. Supreme Court of N.M.*, 839 F.3d 888, 907 (10th Cir. 2016) (citations and quotations omitted). Plaintiffs agree that for both facial and as-applied challenges, a claim accrues "when the plaintiff has a complete and present cause of action." ECF #114 at 4 (quoting *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve System*, 603 U.S. 799, 809 (2024)). Unlike most as-applied challenges, Plaintiffs' claims do not arise from any enforcement actions that occurred after Energize Denver was enacted—their alleged injury is simply the need to comply with Energize Denver's requirements. So regardless of how Plaintiffs' claims are labelled, Plaintiffs were on notice of the facts giving rise to their injury as soon as Energize Denver was enacted.

Nor does the Court's standing analysis affect when Plaintiffs' claims accrued. Contrary to Plaintiffs' assertion, the Court's order dismissing the original complaint for lack of standing never "implicitly concluded that Plaintiffs' Claims had not yet accrued." ECF #114 at 4. Instead, the order concluded that Plaintiffs had not pled sufficient factual

allegations to establish concrete injuries without relying on pure speculation or "a conclusory allegation of Plaintiffs' preemption claim." ECF #55 at 14, 16. This was a conclusion about the adequacy of Plaintiffs' pleading, not about when Plaintiffs' claims came into existence. In other words, it was a conclusion about standing, not ripeness. ECF #55 at 17 (declining to reach ripeness and other arguments for dismissal, after concluding that Plaintiffs had not established standing). The Court later found that the Amended Complaint "does not arise out of a subject matter different from what was set forth in the complaint," which confirms that the Amended Complaint did not rely on any later-occurring events to cure the standing defects, and that the Plaintiffs could have established their standing through adequate pleading when they filed the original Complaint. ECF #67 at 6-7 (citation omitted, cleaned up). This is consistent with the Recommendation's correct finding that Plaintiffs' claims accrued when they had "the right to file suit and obtain relief, not when [they] did the necessary research to learn the extent of [their] injury" by performing energy audits. ECF #106 at 19.

## II. THE STANDARDS DO NOT "CONCERN" OR "REFER TO" COVERED PRODUCTS' ENERGY USE.

Plaintiffs' objections do not provide any persuasive reason to depart from the Recommendation's interpretation of "energy use," or to conclude that the Standards concern the energy use of covered products.

First, Plaintiffs make the conclusory assertion that "Regulation 28 and Energize Denver regulate Covered Products specifically because their energy use, however defined, is allegedly too high." ECF #114 at 7. This does no more to show how EPCA would preempt the Standards than the original Complaint's "conclusory allegation of

Plaintiffs' preemption claim." ECF #55 at 14. Plaintiffs do not identify any provision of Energize Denver or Regulation 28 that "regulate[s] Covered Products specifically" or sets any limit on their energy use as defined in EPCA. To the extent Plaintiffs suggest that EPCA preemption is triggered by the Standards' regulation of day-to-day building-wide energy use or the alleged need to replace existing covered products with new ones that do not exceed federal energy conservation standards, they are wrong for the reasons given in Intervenor-Defendants' Motion to Dismiss, ECF #75 at 9-12, Reply, ECF #93 at 5-8, and Objections to Recommendation, ECF #111 at 2-4.

Second, Plaintiffs argue that EPCA's provisions for waivers of preemption "indicate a Congressional intent to preserve the availability of Covered Products." ECF #114 at 7-8. But as multiple courts have now found, "[T]here is simply no connection between what [DOE] is made to consider" when granting a waiver "and what actually renders a regulation preempted in the first place." ECF #93 at 11-12 (quoting *Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 327 (N.D.N.Y. 2025), *aff'd* 180 F.4th 434 (2d Cir. 2026)); *accord Nat'l Ass'n of Home Builders of the U.S. v. District of Columbia*, No. 24-cv-02942, 2026 U.S. Dist. LEXIS 64829, at *24-25 (D.D.C. Mar. 26, 2026) (finding that plaintiffs had "read too much" into the waiver provision's use of the terms "sale" and "servicing," and that the requirement for DOE's waiver decisions to consider these aspects of covered product lifecycles "does not mean that the corresponding preemption provision covers *all* laws governing an appliance's entire life cycle in all contexts"). Moreover, even if the waiver provision did provide some insight into Congress' intent, it would not overcome EPCA's statutory definition of "energy use" as a

fixed value determined through test procedures. *See* ECF #106 at 26-27.

Finally, Plaintiffs seek support from the Ninth Circuit's interpretation of EPCA. ECF #114 at 8. The Recommendation rightly rejected this interpretation—following the lead of all eight federal courts to consider the issue—because it is inconsistent with EPCA's technical statutory definition of "energy use" as "a standardized, fixed measure assigned to a product before it reaches consumers." ECF #106 at 26-27 (citation omitted). The Ninth Circuit's interpretation is incorrect for the additional reasons given in Intervenor-Defendants' Motion to Dismiss. ECF #75 at 12-13. And even under the Ninth Circuit's flawed interpretation, the Standards are not preempted because they do not fall within that court's "narrow" holding that EPCA preempts building codes that ban the use of gas by covered products. ECF #75 at 13-15; ECF #93 at 8-9.

## III. THE RECOMMENDATION CORRECTLY FOUND THAT REGULATION 28'S GREENHOUSE GAS INTENSITY TARGETS ARE NOT PREEMPTED.

The Recommendation correctly finds that Regulation 28's greenhouse gas intensity targets are not preempted. This finding follows directly from *Maryland Building Industry Association v. McIlwain*, 828 F. Supp. 3d 617 (D. Md. 2026), which considered an EPCA preemption challenge to a similar building performance standard.[3] Plaintiffs attempt to both distinguish *Building Industry Association* and directly oppose its holding. Neither argument has merit.

[3] Intervenor-Defendants maintain that the reasoning of *Maryland Building Industry* and other recent decisions dismissing EPCA preemption claims applies equally to the Standards' building-wide energy use intensity ("EUI") targets, and that the Standards' EUI targets are not preempted. *See* ECF #111 at 4-9. However, this Response focuses only on Plaintiffs' argument that the greenhouse gas intensity targets are preempted.

First, Plaintiffs attempt to distinguish *Maryland Building Industry* on the grounds that the policy challenged there "did not set an objective for energy consumption or conservation at all."[4] ECF #114 at 9 (quotation omitted). But this is as true of Regulation 28's greenhouse gas intensity pathway as it is of the building performance standard challenged in *Maryland Building Industry*. That standard set "interim emissions benchmarks" that, like Regulation's greenhouse gas intensity provisions, are based on a building's emissions in kilograms of carbon dioxide equivalent per square foot. 828 F. Supp. 3d at 622; ECF #106 at 4. Nor do the Maryland standard's alternative compliance options distinguish it from Regulation 28. Regulation 28 also includes multiple flexibilities and compliance options, as Plaintiffs admit. ECF #114 at 10 n.5; *see* ECF #106 at 4-5; ECF #75 at 6.

Next, unable to distinguish *Maryland Building Industry*, Plaintiffs assert that it was wrongly decided. ECF #114 at 10-11. Plaintiffs propose an interpretation of EPCA preemption that is far broader than any court has adopted, and broader than Plaintiffs have previously suggested in this case. Specifically, Plaintiffs assert that EPCA preempts any building regulation that is "aimed at fossil fuel or electricity use," that "focuses on emissions, net zero energy, or a specific fuel," or that "requires a building-wide reduction in GHG intensity." ECF #114 at 10-11. This interpretation is wholly divorced from EPCA's text and definition of covered products' energy use. It is also

[4] Plaintiffs also attempt to distinguish *District of Columbia*, which upheld a building code that applied a net-zero energy standard. *District of Columbia* is indistinguishable from this case for the reasons given in Intervenor-Defendants' Objections. ECF #111 at 4 n.1.

directly at odds with the interpretation adopted in the Recommendation and a growing body of persuasive precedent. Not even the Ninth Circuit held that EPCA would preempt *any* building regulation "aimed at fossil fuel or electricity use." *Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094, 1117 (9th Cir. 2024) (Baker, J., concurring) ("[A]s far as EPCA is concerned, states and local governments are likely free to impose carbon taxes designed to discourage [natural gas] consumption.").

Most alarmingly, Plaintiffs' interpretation lacks any limiting principle and would preempt "a whole slate of seemingly standard regulations." *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, 180 F.4th 434, 449-50 (2d Cir. 2026) (*Plumbers II*). It would preempt fire codes that ban kerosene heaters, since they use "a specific fuel"—a result that the Second Circuit deemed "absurd." *Id.* Plaintiffs' interpretation would also preempt local safety requirements to properly install and maintain fuel-burning products, as well as prohibitions on the use of combustion appliances next to gas station pumps or in surgical rooms. ECF #93 at 9-10; ECF #75 at 15. And it would preempt emission standards for furnaces and water heaters, which states have enacted pursuant to the Clean Air Act for decades and which the Ninth Circuit has expressly found are not preempted. *Rinnai Am. Corp. v. SCAQMD.*, 184 F.4th 1094 (9th Cir. 2026).

Contrary to Plaintiffs' assertion, their astoundingly broad interpretation is not needed to ensure that EPCA precludes states from pursuing "indirect but wholly effective means of achieving a preempted objective." ECF #114 at 11 (quotation omitted). As discussed in Intervenor-Defendants' Objections, the "preempted objectives"

that Congress was concerned about were states directly or indirectly requiring the use of equipment that exceeds federal energy conservation standards. ECF #111 at 5-7. The correct interpretation of "concerning energy use" as defined in EPCA ensures that states cannot achieve this preempted objective through clever drafting, but it does not sweep in "a whole slate of seemingly standard regulations." The Building Performance Standards are not preempted under the correct interpretation of "concerning energy use," because they do not directly regulate the energy use of covered products and they do not indirectly require the use of covered products that exceed federal standards. ECF #111 at 1-4. These are precisely the outcomes Congress sought to avoid, so there is no need to resort to overbroad interpretations to foreclose "indirect but wholly effective means" of evading preemption.

**CONCLUSION**

For the reasons stated above, the Court should overrule Plaintiffs' Objections. The Court should instead grant Intervenor-Defendants' Objections and dismiss the entire Amended Complaint with prejudice.

Dated this 18th day of September, 2026.

/s/ Matthew Gerhart
Matthew Gerhart
Senior Attorney
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

Jim Dennison
Staff Attorney
Sierra Club
1650 38th Suite #103W
Boulder, CO 80301
(435) 232-5784
jim.dennison@sierraclub.org

***ATTORNEYS FOR SIERRA CLUB AND NATURAL RESOURCES DEFENSE COUNCIL***

/s/ Michael Foote
Michael Foote
General Counsel
Colorado Solar and Storage Association
1536 Wynkoop St., Suite #104
Denver, CO 80202
(303) 519-2183
mfoote@cossa.co

***ATTORNEY FOR COLORADO SOLAR AND STORAGE ASSOCIATION AND COALITION FOR COMMUNITY SOLAR ACCESS***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of September, 2026, a true and correct copy of the foregoing **INTERVENOR-DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** was served via the CM/ECF system upon all counsel of record in this matter.

/s/ *Maddie Lipscomb*
Maddie Lipscomb