**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-CV-01093-RMR-KAS

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER;

*Plaintiffs*,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office;

AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MIKE JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency.

*Defendants*,

AND

THE COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB.

*Intervenor-Defendants.*

---

**STATE DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

Defendants Jill Hunsaker Ryan, the Executive Director of the Colorado Department of Public Health and Environment; Michael Ogletree, the Director of the Colorado Air Pollution Control Division; and Will Toor, the Executive Director of the Colorado Energy Office, all in their official capacities (collectively the "State Defendants"), respond to Plaintiffs' Objections (ECF #114) to the Recommendation of United States Magistrate Judge Kathryn A. Starnella (ECF #106) ("Recommendation") to address Plaintiffs' incorrect assertions regarding supposed errors in the Recommendation and their mischaracterizations of Regulation 28's requirements.[1]

## BACKGROUND

On August 21, 2026, Magistrate Judge Starnella issued her Recommendation addressing several pending motions, including State Defendants' Motion to Dismiss (ECF #72) ("State Defendants' Motion"). On September 4, 2026, the Parties and intervenors each filed Objections to the Recommendation (ECF #111 through 114).

## RESPONSE TO PLAINTIFF'S OBJECTIONS

### I. Plaintiffs incorrectly claim the magistrate did not need to define "energy use" or "point of use," and urge the Court to adopt incorrect meanings for these terms.

#### A. The definition of "energy use" is fundamental to determining EPCA preemption.

Plaintiffs argue that "it was not necessary to the Magistrate Judge's Recommendation to define 'energy use' or 'point of use' to determine whether Plaintiffs'

[1] Plaintiffs also object to the Recommendation's conclusion that the portions of Regulation 28 regarding greenhouse gas intensity are not subject to preemption. *See* Pls.' Obj. at 9-11. The Court should deny this objection for the reasons set forth in the Recommendation itself and State Defendants' Motion to Dismiss (ECF #72) at 11-13 and 15-16 and State Defendant's Reply in Support of its Motion to Dismiss (ECF #53), at 9-12.

claims could proceed." Pls.' Obj. at 8. But EPCA preempts only those state or local regulations that "concern[] the energy efficiency, energy use, or water use" of federally covered appliances. 42 U.S.C. § 6297(c). The statute's plain language therefore makes "energy use" the touchstone of preemption, and Congress supplied the controlling definition.

Congress defined "energy use" narrowly as "the quantity of energy directly consumed by a consumer product at point of use," as measured solely by DOE's manufacturer test procedures, 42 U.S.C. § 6291(4). The Magistrate correctly applied this definition, explaining that "energy use" is "a standardized, fixed measure assigned to a product before it reaches consumers." Recommendation at 27. Notably, the Magistrate recognized a circuit split and explicitly declined to apply an alternative interpretation of "energy use" adopted by the Ninth Circuit in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). Instead, the Magistrate adopted the reasoning in the *Berkeley* dissent and in a more recent decision in the Second Circuit. Recommendation at 27; *See Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York,* 180 F.4th 434, 451-533 (2d Cir. 2026) ("*Plumbers II*"). Further, the Magistrate explicitly noted that "[e]very federal district court (of which this Court is aware) to consider similar EPCA challenges since *California Restaurant* has departed from the panel's position and adopted Judge Friedland's analysis instead." Recommendation at 27 (citing *Rest. L. Ctr. v. City & County of Denv.*, No. 24-cv-01862, slip op. (D. Colo. Aug. 7, 2026); *Clean Energy Choice Coal., NFP v. Vill. of Oak Park*, No. 25-CV-04353, 2026 WL 2205908, at *8-9 (N.D. Ill. July 30, 2026); *Md. Bldg. Indus. Ass'n*, 828 F. Supp. 3d at 637; *Nat'l Ass'n of Home Builders of the U.S. v. District of*

*Columbia*, No. 24-cv-02942 (ACR), 2026 WL 837674, at *6-8 (D.D.C. Mar. 26, 2026) (*District of Columbia*); *Montgomery Cnty.*, 2026 WL 817322, at *7; *Mulhern*, 798 F. Supp. 3d at 325; *Plumbers I*, 2025 WL 843619, at *4-5.)

### B. Plaintiffs incorrectly substitute EPCA's definition of "energy" for the definition of "energy use."

Plaintiffs argue that Regulation 28 "concerns 'energy use'" because EPCA's definition of "energy" includes "electricity, or fossil fuels." *See* Pls.' Obj. at 10 (citing 42 U.S.C. § 6291(3)). This is a fundamental error. The question under EPCA is not whether a regulation concerns "energy," but whether it concerns "energy use," which exists as a distinct statutory term with its own separate definition. 42 U.S.C. § 6291(4). By collapsing "energy use" into "energy," Plaintiffs imply that any regulation involving electricity or fossil fuels is automatically preempted. This is not the law. EPCA's definition of "energy" identifies fuel types. EPCA's definition of "energy use" identifies a fixed performance metric measured at the manufacturing stage under DOE test procedures. Notably, this error is precisely why the Magistrate Judge and the Second Circuit have rejected preemption theories premised on operational energy consumption rather than DOE's test-procedure metric. *See Plumbers* II, 180 F.4th at 449 (distinguishing statutory "energy use" from "operational consumption").

## II. Plaintiffs mischaracterize Regulation 28's regulatory structure and its application to covered products.

Although Plaintiffs have clarified that they bring only an as-applied challenge to Regulation 28, *see* Pls.' Obj. at 3, they continue to make broad claims about Regulation 28 as whole in their preemption analysis, incorrectly assuming that Regulation 28 requires or intends to require replacing Covered Products. These claims are

contradicted by both the plain language of Regulation 28 and the allegations in Plaintiffs' Amended Complaint.

First, Plaintiffs mischaracterize Regulation 28, claiming that because it is a building wide performance standard designed to reduce overall building energy use, it directly regulates "Covered Products" by restricting "which Covered Products may be used in Covered Buildings based on their relative efficiency." Pls.' Obj. at 7. That characterization is not accurate. Regulation 28 does not ban, specify, or mandate the use of any appliance model or appliance fuel source—either by its plain language or through "careful or clever drafting." Pls.' Obj. at 11.[2] Rather, the compliance pathways provided for in Part C of Regulation 28 provide covered building owners flexibility based on the unique characteristics of each individual building while also ensuring that overall compliance will accomplish the greenhouse gas emissions reduction targets in § 25-7-142(8)(a)(II)(A) and (B).

Even after choosing a compliance pathway, a covered building owner may comply in many ways, including but not limited to any combination of changes to building operations, tenant behavior, building envelope improvements (i.e. installing new windows or insulation), load shifting, or fuel switching. Regulation 28 Part C, Sections I.A and I.B. As Plaintiffs concede, building owners unable to comply with Regulation 28 using these methods can comply by employing one of several renewable energy options, such as utilizing onsite renewable energy or by purchasing renewable energy through a utility subscription service. Regulation 28 Part C, Section I.B.1 and Pls.' Obj.

[2] Indeed, as the Magistrate correctly noted, even if Regulation 28 did constitute an all-out ban on gas-powered appliances, it would not be preempted. Recommendation at 37.

at 10 n.5 (stating that "Regulation 28 does allow the use of renewable energy credits in 'very limited situation[s].'").

In addition, Plaintiffs' own allegations contradict their assertion that Regulation 28 restricts which Covered Products may be used in Covered Buildings based on their relative efficiency. Plaintiffs repeatedly acknowledge in footnotes and parentheticals that Regulation 28 allows numerous ways to comply with the statutory greenhouse gas emission reduction targets. As the Magistrate Judge notes, "Plaintiffs all but concede, there are technically other ways to reduce a building's energy use besides replacing EPCA-covered appliances." Recommendation at 30 (citing Am. Compl. [[ECF] #68] ¶ 56, "In *most* cases, the most effective (but not cost effective) way for Covered Buildings to meet the building performance standards of Regulation 28 is to target the removal fossil fuel utilizing Covered Products, as those products have the greatest associated GHG emissions at the Covered Buildings.") (emphasis added); *id.* ¶ 65 ("In *many* instances, the Covered Building owner will not be able meet the building performance standards in Regulation 28 by simply replacing existing compliant Covered Products with similarly fueled, but higher efficiency, Covered Products, instead being forced to purchase electric Covered Products.") (emphasis added)). Further, Plaintiffs' own filing admits Regulation 28 regulates building-wide performance, not individual appliance specifications, by incorrectly equating it to a building code. *See* Am. Compl. ¶ 106 ("Performance-based building codes contemplate the entire building and all of its systems as a single design and cannot be applied retroactively in a piecemeal fashion, such as to renovations or replacements of systems or equipment."). Simply because an individual building owner may prefer to utilize the most cost-effective option to comply

with Regulation 28's requirements does not mean that the law imposes a preempted mandate to comply in that fashion.

### III. Plaintiffs misuse EPCA's waiver provisions to broaden the scope of EPCA preemption.

Plaintiffs argue that EPCA's waiver provisions broaden the scope of preemption by reflecting congressional "intent to preserve the availability of Covered Products." Pls.' Obj. at 7–8. As recent decisions demonstrate, this attempt to use EPCA's waiver provisions to broaden the scope of preemption is misplaced.

As the Second Circuit recognized, EPCA's waiver provisions do not define the scope of EPCA preemption, and "it is hard to draw conclusions about Congress's objective through the exceptions of a statute." *Plumbers II*, 180 F.4th at 444 (recognizing that exceptions to a general rule, such as DOE's ability to grant waivers, while sometimes a helpful interpretive guide, do not in themselves delineate the scope of the rule). The United States District Court for the District of Columbia recently agreed, holding that exceptions to preemption, while sometimes a helpful interpretive guide, do not in themselves delineate the scope of the preemptive rule. *Nat'l Ass'n of Home Builders v. District of Columbia*, 24-CV-02942 (ACR), 2026 WL 837674, at *10 (D.D.C. Mar. 26, 2026) (citations omitted).

## CONCLUSION

Plaintiffs' contention that Regulation 28's regulation of buildings, which contain Covered Products, amounts to an impermissible regulation of Covered Products rests on a fundamental mischaracterization of Regulation 28's structure and effect and ignores the plain language of EPCA's preemption provision. The Magistrate Judge correctly rejected the majority of these arguments, and the reasoning in the *Berkeley*

decision, based on a careful analysis of EPCA's definitions of "energy use" and "point of use" and instead adopted the Second Circuit's interpretation in *Plumbers II.* State Defendants therefore respectfully request the Court deny the objections raised by Plaintiffs.

Respectfully submitted this 18th day of September, 2026.

PHILIP J. WEISER
Attorney General

*/s/ David Banas*
DAVID BANAS*
JACKIE CALICCHIO*
W. CORY HALLER**
Assistant Attorneys General
Natural Resources and Environment Section
1300 Broadway, 10th Floor
Denver, CO 80203
Telephone: 720.508.6000
Email: David.banas@coag.gov
Jackie.calicchio@coag.gov
Cory.haller@coag.gov

* *Counsel of Record on behalf of Defendant Will Toor, in his Official Capacity as the Executive Director of the Colorado Energy Office*

***Counsel of Record on behalf of Defendants Jill Hunsaker Ryan, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment, and Michael Ogletree, in his Official Capacity as the Director of the Colorado Air Pollution Control Division*

## CERTIFICATE OF SERVICE

I hereby certify that on September 18th, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the Parties of record for this matter.

*/s/ Barbara Dory*
Barbara Dory