**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:24-cv-01093-RMR-KAS

COLORADO APARTMENT ASSOCIATION; APARTMENT ASSOCIATION OF METRO DENVER; COLORADO HOTEL AND LODGING ASSOCIATION, INC.; AND NAIOP COLORADO CHAPTER,

Plaintiffs,

v.

JILL HUNSAKER RYAN, in her Official Capacity as the Executive Director of the Colorado Department of Public Health and Environment; MICHAEL OGLETREE, in his Official Capacity as the Director of the Colorado Air Pollution Control Division; AND WILL TOOR, in his Official Capacity as the Executive Director of the Colorado Energy Office;

AND

THE CITY AND COUNTY OF DENVER; THE DENVER CITY COUNCIL; DENVER MAYOR MICHAEL JOHNSTON; THE DENVER OFFICE OF CLIMATE ACTION, SUSTAINABILITY, AND RESILIENCY; AND ELIZABETH BABCOCK, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency,

Defendants,

AND

THE COALITION FOR COMMUNITY SOLAR ACCESS, COLORADO SOLAR AND STORAGE ASSOCIATION, NATURAL RESOURCES DEFENSE COUNCIL, AND SIERRA CLUB,

Intervenor-Defendants.

---

**DENVER DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT [ECF No. 68]**

---

Defendants the City and County of Denver; the Denver City Council; Denver Mayor Mike Johnston; the Denver Office of Climate Action, Sustainability, and

Resiliency ("CASR"); and Elizabeth Babcock, in her official capacity as Executive Director of CASR (collectively, "Denver" or the "City Defendants"), through undersigned counsel, answer Plaintiffs' First Amended Complaint (ECF No. 68) (the "FAC") as follows:

## PRELIMINARY STATEMENT

1. On September 30, 2026, the Court adopted the Magistrate Judge's Recommendation (ECF No. 106) and dismissed with prejudice all of Plaintiffs' claims concerning consumer appliances. Order Adopting Magistrate Judge Recommendation, ECF No. 122 at 13 & n.4, 26. Only Plaintiffs' claims concerning commercial or industrial equipment remain. *Id*. at 13 n.4. Denver responds to the FAC's allegations to the extent they relate to the remaining claims. Allegations relating only to consumer products, or to claims that have been dismissed, require no response. To the extent a response is deemed required, Denver denies them.

2. The FAC's headings, subheadings, footnotes, and introductory or unnumbered text are not allegations to which a response is required. To the extent a response is deemed required, Denver denies them. Denver responds to footnotes where noted below.

3. Many paragraphs of the FAC are directed solely at Regulation 28, Colorado House Bills 21-1286 and 25-1269, or the State Defendants. Energize Denver and Regulation 28 are separate programs. Denver does not administer or enforce Regulation 28. Allegations directed solely at Regulation 28 or the State Defendants require no response from Denver. To the extent a response is deemed required, Denver

lacks knowledge or information sufficient to form a belief about the truth of those allegations and therefore denies them.

4. Many paragraphs of the FAC state legal conclusions, or characterize federal statutes, the Denver Revised Municipal Code, or regulations. No response is required to legal conclusions. Where the FAC characterizes a statute, ordinance, rule, or other document, Denver refers to that document for its complete and accurate contents and denies any allegation inconsistent with it.

5. As used in this Answer, the "Ordinance" means Denver Revised Municipal Code ("D.R.M.C.") Chapter 10, Article XIV, §§ 10-400 to 10-407, as enacted by Ordinance No. 1310-21 (Council Bill 21-1310) and as amended. The "Rules" means CASR's Rules & Regulations Governing Energize Denver Building Energy Benchmarking and Performance Requirements, adopted April 1, 2025. The "Guidance" means the Energize Denver Benchmarking and Energy Performance Requirements for Buildings 25,000 Square Feet and Larger, Technical Guidance, Version 3.0 (April 1, 2025). Where relevant, this Answer also identifies instances where the Ordinance, the Rules, and the Guidance have been amended since the filing of the FAC, and refers to those amended versions of the Ordinance, the Rules, and the Guidance. Denver refers to the Ordinance, Rules, and Guidance collectively as "Energize Denver." See ECF Nos. 71-1, 71-2, 71-3.

6. In May 2026, Denver amended the Ordinance. *See* Ord. No. 565-26 (May 20, 2026). Denver has also issued amended Rules and Guidance. *See* CASR, Rules & Regulations Governing High-Performance Existing Buildings Program (August 27,

2026); Guidance, Version 4.0 (September 1, 2026). Where relevant, Denver notes changes to the Ordinance, Rules, or Guidance adopted in 2026 that differ from the Ordinance, Rules, and Guidance in effect when the FAC was filed.

7. Denver uses certain terms defined in the FAC, such as "Covered Products" and "Covered Buildings," for convenience only. Doing so is not an admission that any term is accurate or legally correct. In particular, Denver denies that the FAC's "Covered Products" accurately describes the separate categories of "covered products" (42 U.S.C. § 6291 et seq.) and "covered equipment" (42 U.S.C. § 6311 et seq.) in the Energy Policy and Conservation Act (EPCA).

8. Under Fed. R. Civ. P. 8(b)(3), Denver denies every allegation of the FAC, including allegations in headings, footnotes, and the prayer for relief, that is not specifically admitted below.

## RESPONSES TO THE NUMBERED ALLEGATIONS

### Introduction (FAC ¶¶ 1–15)

1. Denver admits that Plaintiffs purport to seek declaratory and injunctive relief against enforcement of Regulation 28 and Energize Denver. Denver denies that Plaintiffs are entitled to any relief. Subparagraph 1(a) is directed at Regulation 28 and requires no response from Denver; to the extent a response is required, Denver incorporates Preliminary Statement ¶ 3. As to subparagraph 1(b), Denver admits that Energize Denver includes the Ordinance and the Rules, and that the Rules complained of are titled "Rules & Regulations Governing Energize Denver Building Energy Benchmarking and Performance Requirements" and were adopted April 1, 2025.

2. Denver denies that Energize Denver establishes or imposes energy conservation standards on appliances or equipment, and denies that EPCA preempts Energize Denver. Denver admits that Plaintiffs purport to seek a declaration that Energize Denver is unlawful and void, and denies that Plaintiffs are entitled to that relief. The remaining allegations of paragraph 2 state legal conclusions and characterize EPCA, NAECA, and EPACT, to which no response is required. To the extent a response is required, Denver refers to those statutes for their complete and accurate contents and denies the remaining allegations. To the extent paragraph 2 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

3. Paragraph 3 is directed at Regulation 28 and requires no response from Denver. To the extent a response is required, Denver incorporates Preliminary Statement ¶ 3 and denies the allegations.

4. Denver admits that the Ordinance required owners of covered buildings with a gross floor area of 25,000 square feet or more to meet energy performance targets in calendar years 2024, 2027, and 2030, subject to the adjustments, timeline adjustments, and alternate compliance options the Ordinance and Rules provide. As amended, the ordinance requires compliance on a 2025/2027/2030 timeline for all buildings. *See* Preliminary Statement ¶ 6. Denver denies that Energize Denver requires covered buildings "to reduce the energy consumption . . . associated with the use of consumer and commercial appliances in the buildings." Energize Denver sets whole-building energy use intensity targets and leaves to each owner how to meet them. Denver further states that, under Rule 4.7.E, owners may obtain a timeline adjustment

that shifts the 2024 target to 2028, eliminates the 2027 target, and shifts the 2030 target to 2032. Denver denies the remaining allegations of paragraph 4.

5. Paragraph 5 states legal conclusions and defines terms, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. §§ 6291 and 6311 for their complete and accurate contents. Denver denies that any appliance or equipment is "affected by" Energize Denver in any manner relevant to EPCA, and denies the remaining allegations of paragraph 5. Paragraph 5 acknowledges that the FAC uses the term “Covered Products” to refer indiscriminately to consumer “Covered Products” and commercial “Covered Equipment.” Given that the FAC’s claims regarding consumer Covered Products have been dismissed, Plaintiffs’ choice to lump these categories together renders many of the allegations in the FAC incomplete and insufficient to state a claim.

6. Denver denies the allegations of paragraph 6 as they relate to Energize Denver. To the extent paragraph 6 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

7. Denver denies the allegations of paragraph 7 as they relate to Energize Denver. Energize Denver allows owners to apply for timeline adjustments due to, among other things, the end of major equipment system life. Rule 4.7.A. To the extent paragraph 7 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

8. Denver denies the allegations of paragraph 8 as they relate to Energize Denver. To the extent paragraph 8 is directed at Regulation 28, Denver incorporates

Preliminary Statement ¶ 3. Paragraph 8 fails to distinguish between consumer "Covered Product" claims, which have been dismissed, and commercial "Covered Equipment" claims.

9. Paragraph 9 states legal conclusions and characterizes EPCA's history and purposes, to which no response is required. To the extent a response is required, Denver refers to EPCA and its legislative history for their complete and accurate contents and denies the allegations of paragraph 9.

10. Paragraph 10 characterizes 42 U.S.C. §§ 6295(a) and 6312(a), to which no response is required. To the extent a response is required, Denver refers to those provisions for their complete and accurate contents and denies any allegation inconsistent with them.

11. Paragraph 11 states a legal conclusion, to which no response is required. To the extent a response is required, Denver admits that 42 U.S.C. § 6297(c) contains the quoted language. Denver refers to § 6297(c) for its complete and accurate contents, and denies that § 6297(c) applies to or preempts Energize Denver. Denver further states that the Court has dismissed with prejudice Plaintiffs' claims concerning consumer products, to which § 6297(c) applies. ECF No. 122 at 13 & n.4, 26.

12. Denver denies the allegations of paragraph 12.

13. Denver denies the allegations of paragraph 13, including each of its subparagraphs, as they relate to Energize Denver. To the extent paragraph 13 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3. Denver

further states that the Court has dismissed with prejudice Plaintiffs' claims concerning consumer products. ECF No. 122 at 13 & n.4, 26.

14. Denver denies the allegations of paragraph 14.

15. Denver admits that Plaintiffs purport to bring this action on behalf of their members and purport to seek a declaration that the Energize Denver Ordinance and Rules are void and unenforceable and an injunction against their enforcement. Denver denies that Plaintiffs are entitled to any relief and denies the remaining allegations of paragraph 15.

**Jurisdiction and Venue (FAC ¶¶ 16–17)**

16. Paragraph 16 states legal conclusions, to which no response is required. To the extent a response is required, Denver admits that the Court has determined that it has subject-matter jurisdiction (ECF No. 122 at 9), and that 42 U.S.C. § 6306(c), made applicable to commercial and industrial equipment by 42 U.S.C. § 6316(a)–(b), vests the federal district courts with jurisdiction over actions brought by any adversely affected person to determine whether a State or local government is complying with EPCA's requirements. Denver denies that 28 U.S.C. § 1343 or 42 U.S.C. §§ 1983 or 1988 provides a basis for jurisdiction or relief, because the FAC pleads no claim under 42 U.S.C. § 1983. Denver preserves its position that Plaintiffs lack Article III standing and that their claims are not ripe, and denies the remaining allegations of paragraph 16.

17. Denver admits that venue is proper in this District, that the City Defendants are located in this District, and that Energize Denver is enforced in this District. Denver lacks knowledge or information sufficient to form a belief about the truth

of the allegations concerning the other Defendants, and therefore denies them. Denver denies the remaining allegations of paragraph 17.

**Parties (FAC ¶¶ 18–30)**

18. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 18 and its subparagraphs concerning CAA's corporate status, membership, members' holdings, and assets, and therefore denies them. Denver denies that CAA's members "will be harmed" by Energize Denver in any manner cognizable under EPCA. To the extent paragraph 18 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

19. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 19 and its subparagraphs concerning AAMD's corporate status, purposes, membership, and members' holdings, and therefore denies them. Denver denies that AAMD's members "will be harmed" by Energize Denver in any manner cognizable under EPCA. To the extent paragraph 19 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

20. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 20 and its subparagraphs concerning CHLA's corporate status, purposes, membership, and members' holdings, and therefore denies them. Denver denies that CHLA's members "will be harmed" by Energize Denver in any manner cognizable under EPCA. To the extent paragraph 20 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

21. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 21 and its subparagraphs concerning NAIOP Colorado's corporate status, name, purposes, membership, and members' holdings, and therefore denies them. Denver denies that NAIOP Colorado's members "will be harmed" by Energize Denver in any manner cognizable under EPCA. To the extent paragraph 21 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

22–25. Paragraphs 22 through 25 are directed at the State Defendants and require no response from Denver. To the extent a response is required, Denver incorporates Preliminary Statement ¶ 3 and denies the allegations.

26. Denver admits the allegations of paragraph 26.

27. Denver admits that the Denver City Council is established under Article III of the Charter of the City and County of Denver. Denver refers to Charter §§ 3.2.1 and 3.2.3 for their complete and accurate contents and denies any allegation inconsistent with them. As to subparagraph 27(c), Denver admits that the Denver City Council adopted Council Bill 21-1310 on November 22, 2021, and that then-Mayor Michael B. Hancock signed it into law on November 24, 2021. Denver denies the remaining allegations of paragraph 27.

28. Denver admits that Mike Johnston is the Mayor of the City and County of Denver.

29. Denver admits the allegations of paragraph 29.

30. Denver admits the allegations of paragraph 30.

**Standing (FAC ¶¶ 31–37)**

31. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the energy audits Plaintiffs' members have conducted and their reasons for conducting them, and therefore denies them. Denver admits that Energize Denver does not require any owner to conduct an ASHRAE Level II energy audit to comply with its energy performance targets. Denver denies that any audit was "necessary" for any member to determine how to meet Energize Denver's requirements, and denies the remaining allegations of paragraph 31. To the extent paragraph 31 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

32. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the contents and conclusions of Plaintiffs' members' energy audits and the declarations attached to the FAC as Exhibits 1–10, and therefore denies them. Paragraph 32 fails to distinguish between consumer "Covered Product" claims, which have been dismissed, and commercial "Covered Equipment" claims. Denver denies that Energize Denver requires the replacement of any appliance or equipment, including any appliance or equipment with remaining useful life, and denies the remaining allegations of paragraph 32.

33. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 33 and footnote 2 concerning the contents and conclusions of CAA's members' energy audits and the declarations attached as Exhibits 1–4, and therefore denies them. Denver denies that Energize Denver makes it "necessary to remove and replace existing and functioning EPCA-compliant Covered

Products," and denies the remaining allegations of paragraph 33. Both paragraph 33 and footnote 2 concern, at least in part, consumer products. Plaintiffs' claims concerning consumer products have been dismissed with prejudice, so no response is required. To the extent a response is required, Denver refers to 42 U.S.C. §§ 6292 and 6297(c) for their complete and accurate contents and denies the remaining allegations of footnote 2.

34. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 34 concerning the contents and conclusions of CHLA's members' energy audits and the declarations attached as Exhibits 5–8, and therefore denies them. Denver denies that Energize Denver makes it necessary to remove and replace existing and functioning EPCA-compliant appliances or equipment, and denies the remaining allegations of paragraph 34.

35. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations of paragraph 35 concerning the contents and conclusions of NAIOP Colorado's members' energy audits and the declarations attached as Exhibits 9–10, and therefore denies them. Denver denies that Energize Denver makes it necessary to remove and replace existing and functioning EPCA-compliant appliances or equipment, and denies the remaining allegations of paragraph 35.

36. Denver admits that the Ordinance requires owners of covered buildings to submit annual benchmarking reports to the City. D.R.M.C. § 10-403. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning which of Plaintiffs' members have submitted benchmarking reports, what

processes they have begun, and what expenses they have incurred, and therefore denies them. Denver denies the remaining allegations of paragraph 36, including each of its subparagraphs (a) through (d). To the extent paragraph 36 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

37. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Plaintiffs' membership and their members' business operations, and therefore denies them. Denver denies that Energize Denver forces the replacement of any appliance or equipment, and denies that Plaintiffs have associational standing. Denver acknowledges the Court's ruling on standing (ECF No. 122 at 9) and preserves its position for further proceedings. Denver denies the remaining allegations of paragraph 37.

**The Challenged Regulations — Colorado House Bill 21-1286, Regulation 28, and House Bill 25-1269 (FAC ¶¶ 38–74)**

38–74. Paragraphs 38 through 74 concern Colorado House Bill 21-1286, Regulation 28, and Colorado House Bill 25-1269. They are directed at the State Defendants and require no response from Denver. To the extent a response is required, Denver incorporates Preliminary Statement ¶ 3 and denies the allegations. Paragraphs 54 through 57 and 65 also allege general premises about building energy use: that the only sources of greenhouse-gas emissions are energy-consuming equipment within a building; that EPCA-regulated products are responsible for the vast majority of building energy use; and that the only feasible way to meet a building performance standard is

to replace EPCA-regulated products. To the extent those allegations are asserted as general facts or are directed at Energize Denver, Denver denies them.

**The Energize Denver Ordinance (FAC ¶¶ 75–78)**

75. Denver admits that the Ordinance establishes a program, codified at D.R.M.C. Chapter 10, Article XIV, titled "High-Performance Existing Buildings Program." Denver admits that the program requires owners of covered buildings with a gross floor area of 25,000 square feet or more to meet energy performance targets in calendar years 2024, 2027, and 2030, subject to the adjustments, timeline adjustments, and alternate compliance options the Ordinance and Rules provide. D.R.M.C. § 10-404(a); Rules 4.1, 4.5, 4.7. As amended, the ordinance requires compliance on a 2025/2027/2030 timeline for all buildings. *See* Preliminary Statement ¶ 6. Denver denies the remaining allegations of paragraph 75.

76. Denver admits that D.R.M.C. § 10-404(a) provides, in part, that "[t]he targets will be set for 2030 for every covered building type in Denver such that thirty (30) percent total energy savings across all covered buildings is achieved" and that "CASR shall establish the rules by which every covered building will be assigned a building type." Denver states that the 30% figure is an aggregate across all covered buildings, not a reduction required of each building. See Guidance § 5.2. Denver denies the remaining allegations of paragraph 76.

77. Denver admits that D.R.M.C. § 10-407(d) previously provided for a civil penalty of up to seventy cents ($0.70) per year for each required kBtu reduction that the owner's covered building fails to achieve in that year. Under the Ordinance as amended,

D.R.M.C. § 10-408(f)(2) provides for civil penalties of up thirty five cents ($0.35) per year for each required kBtu reduction that the building fails to achieve. *See* Preliminary Statement ¶ 6. Denver refers to § 10-407 (2025) and § 10-408 (2026) for their complete and accurate contents and denies any allegation inconsistent with them. As to footnote 3, Denver states that the Guidance, Version 4.0 (September 1, 2026), sets minimum penalty rates below the $0.70 maximum, which CASR will assess. 2026 Guidance § 10.2 & Table 17. *See* Preliminary Statement ¶ 6. Denver denies Plaintiffs' characterization of the Guidance and the remaining allegations of paragraph 77 and footnote 3. Denver further states that CASR has never assessed a penalty against any building owner for failing to meet an interim or final performance target.

78. Denver admits that D.R.M.C. § 10-407(e) previously provided that a civil penalty unpaid after 180 days will be considered a debt to the City until paid in full, and that the debt is a perpetual lien on the property, superior and prior to all other liens except liens for general taxes and prior special assessments. Denver further states a similar provision is now codified at § 10-408(h). *See* Preliminary Statement ¶ 6. Denver refers to § 10-407 (2025) and § 10-408 (2026) for their complete and accurate contents and denies any allegation inconsistent with them.

**The Energize Denver Regulations (FAC ¶¶ 79–94)**

79. Denver admits that CASR adopted the Rules to implement the Ordinance. Denver admits that the Rules establish 2030 site energy use intensity ("EUI") targets by building type, and interim targets, for covered buildings with a gross floor area of 25,000 square feet or more, including certain manufacturing, agricultural, and industrial

buildings. Denver denies Plaintiffs' characterization of the compliance deadlines. Under Rule 4.7, owners may obtain a timeline adjustment that shifts the 2024 target to 2028, eliminates the 2027 target, and shifts the 2030 target to 2032. Denver denies the remaining allegations of paragraph 79.

80. Denver admits that, subject to the exclusions in D.R.M.C. § 10-400(d), the performance requirements of the Ordinance and Rules apply to covered buildings regardless of whether they are undergoing renovation or construction. Denver states that the timing of a major renovation is a basis for a timeline adjustment under Rule 4.7. Denver denies the remaining allegations of paragraph 80.

81. Denver admits that the Rules assign 2030 EUI targets by building type, and that building types are defined by ENERGY STAR Portfolio Manager definitions of property types. Rules 4.2.A, 4.3 & Table 1. Denver lacks knowledge or information sufficient to form a belief about the truth of the comparison to Regulation 28, and therefore denies it. Denver denies the remaining allegations of paragraph 81.

82. Denver admits that D.R.M.C. § 10-404(a) provides that interim targets for 2024 (now, 2025) and 2027 are calculated by drawing a straight line from the covered building's 2019 baseline EUI to the final target. *See* Preliminary Statement ¶ 6. Denver states that the baseline year may differ from 2019 in the circumstances set out in D.R.M.C. § 10-404(b) and Rule 4.4.A. Denver further states that, for an owner who obtains the timeline adjustment in Rule 4.7.E, the original 2024 target is shifted to 2028 and the 2027 target is eliminated. See Guidance § 5.3. As to footnote 4, Denver admits that Table 1 of the Rules assigns certain property types, including those listed in

footnote 4, a 30% EUI reduction from their baseline EUI in place of a numeric 2030 EUI target. Rules 4.3.A & Table 1. Denver denies the remaining allegations of paragraph 82 and footnote 4.

83. Denver denies the allegations of paragraph 83. Energize Denver's EUI targets are not "based on GHG emissions." The Ordinance defined a building's EUI as its weather-normalized site energy use per square foot per year, calculated by dividing the total energy the building consumes in one year (in kBtu) by its gross floor area. D.R.M.C. § 10-400(l) (2025); Rule 2.47 (2025). Currently, the Rules as amended define EUI similarly. *See* D.R.M.C. § 10-400(v) (2026); Rule 2.48 (2026). *See* Preliminary Statement ¶ 6. Denver denies that the only sources of greenhouse-gas emissions are energy-consuming equipment and fixtures within a covered building, and denies that Energize Denver regulates, de facto or otherwise, the energy efficiency of any appliance or equipment. Denver lacks knowledge or information sufficient to form a belief about the truth of the comparison to Regulation 28, and therefore denies it. To the extent paragraph 83 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

84. Denver denies the allegations of paragraph 84. As to footnote 5, Denver admits that the Rules assign the Multifamily Housing property type a 2030 EUI target of 44.2. Rules 4.3 & Table 1. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Regulation 28's targets, and therefore denies them. Denver denies the remaining allegations of footnote 5, including that the targets are "essentially identical." Paragraph 84 fails to distinguish between

consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

85. Denver denies the allegations of paragraph 85. Paragraph 85 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

86. Denver admits that the Rules provide for timeline adjustments and target adjustments. Rules 4.5, 4.7. Denver denies the remaining allegations of paragraph 86.

87. Denver admits that owners may apply to adjust the baseline year used to calculate a covered building's targets. Rule 4.5.C.i. Denver denies that the Rules contain a "maximum percent energy reduction pathway that requires a 42% energy reduction." The Rules provide that no covered building shall have a 2030 site EUI target that is more than a 42% weather-normalized site EUI reduction from its baseline-year EUI. Rule 4.3.D. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Plaintiffs' members' buildings, and therefore denies them. Denver denies that Energize Denver results in the forced replacement of any appliance or equipment, and denies the remaining allegations of paragraph 87. Denver further states, on information and belief, that none of the ten declarants whose declarations are attached to the FAC has applied for a timeline adjustment or a customized target. Paragraph 87 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

88. Denver admits that, under Rule 4.5.A.i, CASR will apply a 20% increase to

the 2030 EUI target for a covered building that has reached 80% whole-building electrification by demonstrating 80% for the percent-electricity metric. Further, Denver admits that Rule 4.5.B.i previously provided that, CASR will apply a 10% increase to the 2030 EUI target for a covered building that has reached 80% whole-building electrification by demonstrating 80% for the percent-electricity metric. Denver states that "Percent Electricity" means the percent of total site energy use attributed to electrical usage. Calculated using kBtu, it combines all site electrical consumption, including grid purchased electricity, on-site Renewable Energy, and district chilled water, and divides it by the total site energy used. (Rule 2.37). It is not the percentage of a building's "systems" that are electrified. Denver denies the remaining allegations of paragraph 88.

89. Denver admits that an owner may apply for a timeline adjustment under Rule 4.7.A, and that the application must include an energy audit, a compliance plan, an operations and maintenance program document, and supporting documentation. Rule 4.7.A.ii. Denver denies that a timeline adjustment application must include an evaluation of the electrification feasibility of natural gas equipment. Denver denies the remaining allegations of paragraph 89.

90. Denver admits that Rule 4.7.E provides: "When submitting benchmarking data or exemption request in the 2025 reporting year, owners will have an option to request and receive a timeline adjustment for any Covered Building experiencing compliance challenges. The adjustment will shift the 2024 target to 2028, eliminate the 2027 target, and shift the 2030 target to 2032." Denver denies that the final targets require the replacement of any appliance or equipment, and denies the remaining

allegations of paragraph 90. Paragraph 90 fails to distinguish between consumer "Covered Product" claims, which have been dismissed, and commercial "Covered Equipment" claims.

91. Denver admits that the Rules allow owners to obtain credit toward a covered building's energy use for qualifying renewable energy, subject to the conditions in Rule 4.8.C. Those conditions include a minimum five-year term for certain off-site subscriptions and a limit allowing short-term renewable contracts for up to 20% of a building's electricity usage. Denver refers to Rule 4.8.C for its complete and accurate contents and denies the remaining allegations of paragraph 91.

92. Denver admits that Rule 4.5.D.ii provided, and Rule 4.5.C currently provides, a customized target process for owners who have completed the standard target adjustment process and still cannot determine a viable path to the final target. Denver admits that an application must include an energy audit meeting the minimum requirements of the Guidance and a renewable energy options memo. Denver admits that, under the 2025 Rules, a customized target was calculated using the estimated EUI savings from four items: (1) energy efficiency measures with less than a 20-year simple payback; (2) improvements to envelope leakage identified in the energy audit; (3) replacing or upgrading equipment identified as necessary to reach the final EUI target at the end of its service life, using CASR's End of System Service Life chart; and (4) viable renewable energy options. As amended, the Rules provide additional flexibility in calculating energy efficiency measures other than the 20-year payback and provide that a customized target will no longer consider improvements to envelop leakage. *See*

Preliminary Statement ¶ 6. Denver denies that an approved customized target requires an owner to implement any particular measure, or to replace any particular appliance or equipment. Denver denies the remaining allegations of paragraph 92.

93. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the contents and conclusions of Plaintiffs' members' energy audits, and therefore denies them. Denver denies the remaining allegations of paragraph 93. Paragraph 93 fails to distinguish between consumer "Covered Product" claims, which have been dismissed, and commercial "Covered Equipment" claims.

94. Denver denies the allegations of paragraph 94.

**Federal Law Governing State and Local Energy Regulations (FAC ¶¶ 95–113)**

95. Paragraph 95 states legal conclusions and characterizes EPCA, to which no response is required. To the extent a response is required, Denver refers to EPCA for its complete and accurate contents, denies any allegation inconsistent with it, and denies that EPCA preempts Energize Denver.

96. Paragraph 96 states legal conclusions and characterizes EPCA, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. §§ 6292, 6295, 6311, and 6313 for their complete and accurate contents and denies any allegation inconsistent with them. Denver further states that Plaintiffs' claims concerning consumer products have been dismissed with prejudice. ECF No. 122 at 26.

97. Paragraph 97 states legal conclusions, to which no response is required. To the extent a response is required, Denver refers to the cited provisions of EPCA for their complete and accurate contents and denies the allegations of paragraph 97.

Denver further states that Plaintiffs' claims concerning consumer products have been dismissed with prejudice. ECF No. 122 at 26.

98. Paragraph 98 states legal conclusions, to which no response is required. To the extent a response is required, Denver refers to the cited provisions for their complete and accurate contents, denies any allegation inconsistent with them, and denies that Energize Denver is an "energy conservation standard" under EPCA.

99. Paragraph 99 characterizes EPCA's definitions, to which no response is required. To the extent a response is required, Denver states that EPCA defines "energy use" by reference to the quantity of energy directly consumed by a product at point of use, "determined in accordance with test procedures" prescribed under EPCA. See 42 U.S.C. §§ 6291(4), 6311(4). The FAC's quotation omits that language. Denver refers to the cited provisions for their complete and accurate contents and denies any allegation inconsistent with them.

100. Paragraph 100 characterizes EPCA's definitions, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. §§ 6291(6) and 6311(18) for their complete and accurate contents and denies any allegation inconsistent with them.

101. Paragraph 101 states legal conclusions and characterizes EPCA, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. §§ 6297(c) and 6316 for their complete and accurate contents, denies any allegation inconsistent with them, and denies that those provisions preempt Energize Denver.

102. Denver denies the allegations of paragraph 102.

103. Paragraph 103 states legal conclusions concerning consumer products, as to which Plaintiffs' claims have been dismissed with prejudice, and no response is required. To the extent a response is required, Denver refers to 42 U.S.C. § 6297(d) for its complete and accurate contents and denies the allegations of paragraph 103.

104. Denver admits that it has not applied to the U.S. Department of Energy for, or obtained, a waiver of preemption under 42 U.S.C. § 6297(d). Denver denies that any waiver is required for Energize Denver. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other Defendants, and therefore denies them.

105. Paragraph 105 states legal conclusions, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. § 6297(c) and (f) for their complete and accurate contents and denies the allegations of paragraph 105.

106. Denver denies the allegations of paragraph 106.

107. Denver admits that Energize Denver applies to existing buildings but otherwise denies the allegations of paragraph 107 as they relate to Energize Denver. To the extent paragraph 107 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

108. Paragraph 108 states legal conclusions, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. § 6316(b)(2) for its complete and accurate contents, denies any allegation inconsistent with it, and denies that § 6316(b)(2) preempts Energize Denver.

109. Paragraph 109 states legal conclusions, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. §§ 6297(d), which applies only to consumer products, and 6316(b)(2)(D) for their complete and accurate contents and denies the allegations of paragraph 109.

110. Denver admits that it has not applied to the U.S. Department of Energy for, or obtained, a waiver under 42 U.S.C. § 6316(b)(2)(D) or § 6297(d). Denver denies that any waiver is required for Energize Denver. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other Defendants, and therefore denies them.

111. Paragraph 111 states legal conclusions, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. § 6316(b)(2)(B) for its complete and accurate contents and denies the allegations of paragraph 111.

112. Paragraph 112 states legal conclusions, to which no response is required. To the extent a response is required, Denver refers to 42 U.S.C. §§ 6297(f)(3) and 6316(b)(2) for their complete and accurate contents and denies the allegations of paragraph 112.

113. Denver admits that Energize Denver applies to existing buildings, but otherwise denies the allegations of paragraph 113 as they relate to Energize Denver. To the extent paragraph 113 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

**Allegations — Section I (FAC ¶¶ 114–122)**

114. Denver denies the allegations of paragraph 114 as they relate to Energize Denver. To the extent paragraph 114 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

115. Denver admits that the Ninth Circuit issued decisions in *California Restaurant Ass'n v. City of Berkeley*, 65 F.4th 1045 (9th Cir. 2023), and, after denial of rehearing en banc, 89 F.4th 1094 (9th Cir. 2024). Denver refers to those decisions for their complete and accurate contents. Denver denies that the Berkeley ordinance is "comparable" to Energize Denver and denies the remaining allegations of paragraph 115.

116. Denver refers to the Ninth Circuit's amended opinion for its complete and accurate contents and denies that it applies to Energize Denver or is controlling in this Circuit. As to footnote 7, Denver admits that the Southern District of New York issued *Ass'n of Contracting Plumbers of City of New York, Inc. v. City of New York*, 2025 WL 843619 (S.D.N.Y. Mar. 18, 2025). Denver states that the decision was affirmed, 180 F.4th 434 (2d Cir. 2026). Denver denies the remaining allegations of paragraph 116 and footnote 7.

117. Denver denies the allegations of paragraph 117.

118. Denver denies the allegations of paragraph 118 as they relate to Energize Denver. To the extent paragraph 118 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

119. Denver denies the allegations of paragraph 119 as they relate to Energize

Denver. To the extent paragraph 119 is directed at Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

120. Denver denies the allegations of paragraph 120.

121. Denver admits that it has not applied for or obtained a waiver from the U.S. Department of Energy. Denver denies that any waiver is required for Energize Denver. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the other Defendants, and therefore denies them.

122. Denver admits that Plaintiffs purport to seek the described declaration and injunction. Denver denies that Plaintiffs are entitled to any relief.

**Allegations — Section II: Regulation 28 (FAC ¶¶ 123–137)**

123–137. Paragraphs 123 through 137 are directed at Regulation 28 and the State Defendants and require no response from Denver. To the extent a response is required, Denver incorporates Preliminary Statement ¶ 3 and denies the allegations. To the extent any allegation in these paragraphs is directed at Energize Denver or the City Defendants, Denver denies it.

**Allegations — Section III: Energize Denver (FAC ¶¶ 138–154)**

138. Denver admits that the Ordinance applies to covered buildings in the City and County of Denver, subject to the exclusions in D.R.M.C. § 10-400(d) and Rule 2.10. Denver admits that D.R.M.C. § 10-404(a) requires owners of covered buildings with a gross floor area of 25,000 square feet or more to meet energy performance targets in calendar years 2024 (now, 2025), 2027, and 2030, subject to the adjustments, timeline

adjustments, and alternate compliance options the Ordinance and Rules provide. *See* Preliminary Statement ¶ 6. Denver admits that Rule 4.7.E allows owners to shift the 2024 target to 2028 and the 2030 target to 2032. Denver denies the remaining allegations of paragraph 138.

139. Denver denies the allegations of paragraph 139. Energize Denver sets whole-building energy use intensity targets for covered buildings. It does not prescribe a minimum level of energy efficiency or a maximum quantity of energy use for any covered product or covered equipment, and it is not an "energy conservation standard" within the meaning of 42 U.S.C. §§ 6291(6) or 6311(18).

140. Denver admits that D.R.M.C. § 10-404(a) requires owners of covered buildings to "meet energy performance targets in calendar years 2024 (now, 2025), 2027 and 2030," and that Rule 4.6.A provides that owners "shall maintain the interim targets each subsequent year and shall maintain the final energy performance target indefinitely." *See* Preliminary Statement ¶ 6. Denver refers to those provisions for their complete and accurate contents and denies the remaining allegations of paragraph 140.

141. Denver denies the allegations of paragraph 141. Like paragraph 83, which it references, paragraph 141 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

142. Denver denies the allegations of paragraph 142. Paragraph 142 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

143. Denver lacks knowledge or information sufficient to form a belief about the

truth of the allegations concerning what Plaintiffs' members have determined, and therefore denies them. Denver denies the remaining allegations of paragraph 143. Paragraph 143 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

144. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the contents and conclusions of Plaintiffs' members' energy audits and the declarations attached to the FAC, and therefore denies them. Denver denies the remaining allegations of paragraph 144. Paragraph 144 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

145. Denver denies that Energize Denver has an "electrification bias." Denver states that electrification is not a requirement to meet Energize Denver's targets. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning what Plaintiffs' members have determined, and therefore denies them. Denver denies the remaining allegations of paragraph 145.

146. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the contents and conclusions of Plaintiffs' members' energy audits, and therefore denies them. Denver denies the remaining allegations of paragraph 146.

147. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Plaintiffs' members' cost estimates, and therefore denies them. Denver denies that Energize Denver requires any capital expenditure for

the replacement of appliances or equipment, and denies the remaining allegations of paragraph 147.

148. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the remaining useful life and financing of Plaintiffs' members' equipment, and therefore denies them. Denver denies that Energize Denver requires the removal or replacement of any appliance or equipment, and denies the remaining allegations of paragraph 148. Paragraph 148 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

149. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the resources Plaintiffs' members have expended, and therefore denies them. Denver denies that Energize Denver caused any such expenditure and denies the remaining allegations of paragraph 149.

150. Denver denies the allegations of paragraph 150.

151. Denver denies the allegations of paragraph 151.

152. Denver denies the allegations of paragraph 152.

153. Denver admits that it has not applied for or obtained a waiver under 42 U.S.C. § 6297(d), which applies only to consumer products. Denver denies that any waiver is required for Energize Denver, and denies the remaining allegations of paragraph 153.

154. Denver denies the allegations of paragraph 154.

**Allegations — Section IV: Alleged Injury (FAC ¶¶ 155–166)**

155. Denver denies the allegations of paragraph 155 as they relate to Energize Denver. To the extent paragraph 155 concerns Regulation 28, Denver incorporates Preliminary Statement ¶ 3.

156. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning harms Plaintiffs and their members have experienced, and therefore denies them. Denver denies that Energize Denver has caused or will cause any such harm, and denies the remaining allegations of paragraph 156.

157. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning what Plaintiffs' members have determined, and therefore denies them. Denver denies that Energize Denver forces the replacement of any appliance or equipment, and denies the remaining allegations of paragraph 157. Paragraph 157 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

158. Denver admits that Energize Denver does not require any owner to conduct an ASHRAE Level II energy audit to comply with its energy performance targets. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning the costs Plaintiffs' members have incurred, and therefore denies them. Denver denies the remaining allegations of paragraph 158, including that any member incurred costs "under the threat of penalty and enforcement action" from Denver.

159. Denver denies the allegations of paragraph 159 as they relate to Energize Denver. Denver states that Energize Denver allows owners to apply for timeline adjustments that account for the end of major equipment system life. Rule 4.7.A.

160. Denver denies the allegations of paragraph 160.

161. Denver lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning Plaintiffs' members' business planning, investments, hiring decisions, and financing, and therefore denies them. Denver denies that Plaintiffs' members "must now replace" any appliance or equipment because of Energize Denver, and denies the remaining allegations of paragraph 161. Paragraph 161 fails to distinguish between consumer “Covered Product” claims, which have been dismissed, and commercial “Covered Equipment” claims.

162. Denver denies the allegations of paragraph 162.

163. Denver denies the allegations of paragraph 163.

164. Denver denies the allegations of paragraph 164.

165. Denver denies the allegations of paragraph 165.

166. Denver denies the allegations of paragraph 166.

**First Cause of Action — Regulation 28 (FAC ¶¶ 167–173)**

167. Denver incorporates its responses to the preceding paragraphs as if fully set forth here.

168–173. The First Cause of Action is directed at Regulation 28 and the State Defendants, and paragraphs 168 through 173 require no response from Denver. To the extent a response is required, Denver incorporates Preliminary Statement ¶ 3 and

denies the allegations. To the extent paragraph 173 seeks to enjoin Denver, Denver denies that Plaintiffs are entitled to that relief.

**Second Cause of Action — Energize Denver (FAC ¶¶ 174–180)**

174. Denver incorporates its responses to the preceding paragraphs as if fully set forth here.

175. Denver denies the allegations of paragraph 175.

176. Denver denies the allegations of paragraph 176. Denver further states that Plaintiffs' claims concerning consumer products have been dismissed with prejudice. ECF No. 122 at 26.

177. Denver denies the allegations of paragraph 177.

178. Denver admits that the City and County of Denver has not applied for a waiver from preemption. Denver denies that any waiver is required, denies that Energize Denver is preempted, and denies the remaining allegations of paragraph 178, including subparagraphs (a) and (b).

179. Denver denies the allegations of paragraph 179.

180. Denver admits that Plaintiffs purport to request the described relief. Denver denies that Plaintiffs are entitled to any relief and denies the remaining allegations of paragraph 180.

**Requested Relief (FAC ¶ 181)**

181. Denver denies that Plaintiffs are entitled to any of the relief requested in paragraph 181 and its subparagraphs (a) through (e), or to any other relief.

## AFFIRMATIVE AND ADDITIONAL DEFENSES

Denver asserts the following defenses. By listing a defense, Denver does not assume any burden of proof or persuasion that would otherwise rest on Plaintiffs. Denver reserves the right to amend this Answer to assert additional defenses as they become known through discovery or otherwise.

### First Defense — Failure to State a Claim

The FAC fails to state a claim on which relief can be granted. Denver preserves this defense under Fed. R. Civ. P. 12(h)(2), notwithstanding the Court's ruling at the pleading stage (ECF No. 122).

### Second Defense — No Preemption

Energize Denver is not preempted by EPCA, including 42 U.S.C. §§ 6297(c) and 6316(b)(2)(A). Energize Denver regulates the energy use intensity of buildings, not the energy efficiency or energy use of any covered product or covered equipment. It does not require the installation, replacement, or removal of any appliance or equipment, and it does not require the use of any product whose efficiency exceeds an applicable federal standard.

### Third Defense — Lack of Subject-Matter Jurisdiction: Standing and Ripeness

Plaintiffs lack Article III standing, and their claims are not ripe. Plaintiffs' members' alleged injuries are not fairly traceable to Energize Denver, and are speculative, because Energize Denver provides timeline adjustments, target adjustments, customized targets, and alternate compliance options that Plaintiffs' members have not pursued. Denver acknowledges the Court's contrary ruling at the

pleading stage (ECF No. 122 at 9). Denver asserts this defense to preserve it, because subject-matter jurisdiction may be challenged at any stage and Plaintiffs must establish standing with the manner and degree of evidence required at each successive stage of the litigation.

**Fourth Defense — Claims Limited to Equipment Subject to an Effective Federal Standard**

EPCA's preemption provision for commercial and industrial equipment applies only to "a product for which a standard is prescribed or established" under 42 U.S.C. § 6313(a), and only "beginning on the effective date of such standard." 42 U.S.C. § 6316(b)(2)(A). Plaintiffs' claims fail to the extent they rest on equipment that is not covered equipment under 42 U.S.C. § 6311, on equipment for which no federal energy conservation standard is in effect, or on measures that do not involve covered equipment at all.

**Fifth Defense — Consumer-Product Claims Dismissed with Prejudice**

Plaintiffs' claims concerning consumer products have been dismissed with prejudice as time-barred (ECF No. 122 at 13, 26). Plaintiffs may not obtain relief, directly or indirectly, based on any consumer product, including the showerheads, faucets, residential water heaters, and other consumer products identified in the FAC and its exhibits.

**Sixth Defense — Scope of Relief**

Any relief must be no broader than necessary to remedy a proven violation as to Plaintiffs' members. It must be limited to the remaining claims concerning commercial

and industrial covered equipment, to existing buildings, and to those applications of Energize Denver, if any, that are actually shown to be preempted. Any provision found preempted is severable from the remainder of Energize Denver.

**Seventh Defense — No Entitlement to Attorneys' Fees**

Plaintiffs are not entitled to attorneys' fees. The FAC pleads no claim under 42 U.S.C. § 1983, so 42 U.S.C. § 1988 does not apply. EPCA's fee-shifting provision, 42 U.S.C. § 6305(d), applies only to actions brought under 42 U.S.C. § 6305(a), and Plaintiffs do not proceed under that section.

## PRAYER FOR RELIEF

WHEREFORE, the City Defendants respectfully request that the Court enter judgment in their favor and against Plaintiffs on all remaining claims; deny all relief Plaintiffs request; dismiss the FAC with prejudice; award the City Defendants their costs as permitted by law; and grant such other relief as the Court deems just and proper.

Respectfully submitted this 14th day of October, 2026.

*s/ Michelle Horn*
Michele A. Horn,
Assistant City Attorney
City and County of Denver
201 West Colfax Avenue, Dept. 1207
Denver, CO 80202-5332
(720) 913-3275
michele.horn@denvergov.org

*s/ Gabriel J. Daly*
Gabriel J. Daly
Sam Walsh
Roselle LLP

300 New Jersey Ave, NW, Suite 300
Washington, DC 20001
(617) 817-4105
gabe.daly@rosellellp.com

*Attorneys for Defendants the City and County of Denver, Denver City Council; Denver Mayor Michael Johnston; Denver Office of Climate Action, Sustainability, and Resiliency; and Elizabeth Babcock, in her Official Capacity as the Executive Director of the Denver Office of Climate Action, Sustainability, and Resiliency*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2026, I electronically filed the foregoing CITY DEFENDANTS' ANSWER TO FIRST AMENDED COMPLAINT with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Shannon Egan*
Shannon Egan, Paralegal